| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-_____ |
| Plaintiff, | |
| vs. | **SUMMONS** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon Lee Schoenbeck, Plaintiff's attorney, whose address is P.O. Box 1325, Watertown, South Dakota 57201, an Answer to the Complaint which is herewith served upon you and filed in the Clerk of Courts Office for the Third Judicial Circuit, Lake County, South Dakota. You must serve the Plaintiff's attorney with your Answer within thirty (30) days after the service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Under SDCL 15-6-4(d)(1), service upon any director or officer of East River Electric Power Cooperative, Inc. ("East River"), including CEO of East River, Tom Bokyo, constitutes personal service upon East River. If no directors or officers can be conveniently found, SDCL 15-6-4(d)(1) prescribes that service is completed if the documents are left at East River's office located at 211 South Harth Ave., Madison, South Dakota 57042.

This action involves an anticipatory breach of contract or alternatively a request for declaratory judgment relief on the terms of contract between the above-named parties.

Dated: November 6, 2020                    Respectfully submitted,

                                           __/s/  Lee Schoenbeck_____.
                                           Lee Schoenbeck
                                           Joe Erickson
                                           SCHOENBECK LAW, PC
                                           PO Box 1325

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39 CIV. 20- |
| Plaintiff, | |
| vs. | **COMPLAINT FOR ANTICIPATORY BREACH OF CONTRACT, DECLARATORY RELIEF, AND JURY TRIAL DEMAND** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

Comes now Plaintiff, Dakota Energy Cooperative, Inc. ("Dakota Energy"), and for its Complaint against Defendant, East River Electric Power Cooperative, Inc., states and alleges as follows:

## INTRODUCTION

1.      This action involves a dispute arising under the Bylaws, a contract that governs membership in a nonprofit electric transmission cooperative known as East River Electric Power Cooperative, Inc. ("East River"). A core principle of all cooperatives, as explained on East River's website, is "voluntary and open membership."

2.      In order to become a member of East River, Dakota Energy was required to enter into a Wholesale Power Contract ("WPC") pursuant to which it agreed to buy substantially all of its power requirements from East River. The WPC has been extended several times at East River's request and now expires in 2075.

3.      Consistent with the principle of voluntary membership, and pursuant to East River's Bylaws that permit any member to withdraw on equitable terms, Dakota Energy seeks to withdraw from East River. To that end, Dakota Energy asked East

River's Board of Directors for an equitable buy-out number pursuant to which it could discharge any contractual obligations to East River.

4.      East River responded by claiming that no member could buy out of its WPC under any circumstances, thus effectively holding Dakota Energy as a prisoner in East River and subjecting Dakota Energy and its customers to uncompetitive electric rates for the next 55 years.

5.      East River's refusal to provide Dakota Energy with equitable terms and conditions for withdrawal—and specifically, a buy-out price—is a violation of East River's Bylaws and constitutes an anticipatory breach of contract under South Dakota law. Dakota Energy seeks to confirm its right to withdraw from East River and to recover damages from East River measured by the difference in cost to its members between power purchased from East River and power Dakota Energy could have purchased at competitive rates had East River not prevented it from withdrawing.

## THE PARTIES

6.      Dakota Energy is a nonprofit electric distribution cooperative located in Huron, South Dakota.

7.      An electric distribution cooperative is a private, independent, non-profit electric utility business—owned by the customers it serves—and dedicated to distributing electricity to rural areas. In contrast, investor-owned utilities generally serve in-town homes and businesses that they believe are more lucrative than rural customers.

8.      Many rural electric cooperatives in the U.S. have banded together to form their own wholesale power cooperatives, often called "G&Ts" for generation and transmission, to supply their member-owners with electricity.

2

9.      East River is a nonprofit electric transmission cooperative located in Madison, South Dakota. East River owns no generation capacity. It purchases electricity from Basin Electric Power Cooperative ("Basin Electric"), headquartered in Bismarck, North Dakota, and resells that electricity and transmission services to its members.

10.      Dakota Energy is a member of East River and purchases electricity from East River. Dakota Energy then distributes electricity to a range of residential, farm, business, commercial, and industrial consumers in Beadle, Hand, and Hyde counties, and portions of other counties in South Dakota.

## JURISDICTION AND VENUE

11.      Jurisdiction is proper in this Court pursuant to SDCL 15-7-2 because East River transacts business in this State, and the acts giving rise to the claims asserted occurred within this State.

12.      Venue is proper in this Court pursuant to SDCL 15-5-6 because Defendant, East River, is located in Lake County, South Dakota.

13.      This Court has subject matter jurisdiction pursuant to SDCL 21-24-1 and 21-24-3.

## FACTUAL ALLEGATIONS

14.      On January 1, 1995, two rural electric distribution cooperatives consolidated to become Dakota Energy. The two cooperatives were members of East River at the time they consolidated to become Dakota Energy.

15.      In January 1995, Dakota Energy became a member of East River.

16.      Membership in East River required Dakota Energy to enter into an agreement to purchase from East River "all electric power and energy required by the member to serve its loads," except as otherwise provided in the Bylaws. (Bylaws, Art. I,

3

Exhibit A - Page 000004

§4(b); *see also id.*, Art. I, § 1(b) ("Requirements for membership" include "[a]greeing to purchase from the Cooperative electric energy as hereinafter specified").[1] South Dakota law similarly ties membership to the purchase of electricity. SDCL 47-21-49 ("no other person may become a member thereof unless such other person agrees to use electric energy furnished by the cooperative when it is made available through its facilities").

17.     In January 1995, Dakota Energy completed its membership requirements by entering into a long-term WPC with East River for the supply of electricity.[2] The WPC called for East River to supply and Dakota Energy to purchase "all electric power and energy which Member shall require to serve all of Member's electric loads, to the extent that East River shall have such power and energy and facilities available." (WPC, ¶ 1.)

18.     The WPC's original term was until December 31, 2038. It subsequently was amended to extend the term to December 31, 2058, and, ultimately, to December 31, 2075. (WPC, Amendments 2 & 3.)

19.     Dakota Energy's membership in East River is inextricably intertwined with the WPC, under which it must purchase from East River "all electric power and energy required by [Dakota Energy] to serve its loads." (Bylaws, Art. I, § 4(b).)

20.     Dakota Energy's membership in East River cannot exist without the WPC, and the WPC cannot continue without Dakota Energy's membership.

21.     East River's Bylaws constitute a membership contract between Dakota Energy and East River, pursuant to which a "member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors

---

[1] Ex. 1, East River Bylaws dated September 9, 2015.
[2] Ex. 2, WPC, with amendments.

may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative." (Bylaws, Art. I, § 5(a).) In other words, the Bylaws contemplate:

- That a member, including Dakota Energy, shall be allowed to withdraw from membership in East River upon compliance with "equitable terms and conditions;"

- "Equitable terms and conditions" for withdrawing from membership include satisfaction of the withdrawing member's "contractual obligations to the Cooperative;"

- An East River member can satisfy its contractual obligations to the Cooperative by buying out those obligations.

22.     Standard and customary practice in the industry establishes that an equitable buy-out of a distribution cooperative's contractual obligations under a power supply contract like the WPC can be calculated by subtracting the distribution cooperative's patronage capital from that portion of the debt incurred to supply the distribution cooperative with electricity.[3] Such an amount is consistent with the non-profit business model of cooperatives.

23.     The WPC acts primarily as a financing instrument that allows East River to secure debt used to provide member-owners of East River with electric power.

---

[3] Cooperatives generally establish rates to recover their cost-of-service and to collect a portion of revenues in excess of expenses, which constitute margins. Because cooperatives are not-for-profit organizations, the margins ("profits" on the sale of electricity) not yet distributed to cooperative members constitute patronage capital, a cooperative's principal source of equity. Patronage capital is held without interest by the cooperative for the accounts of the cooperative members.

Exhibit A - Page 000006

24.     Pursuant to § 14 of the WPC, Dakota Energy is permitted to reorganize or consolidate with or merge into another corporation, or to sell, lease, or transfer all or a substantial portion of its assets, so long as it pays a pro rata portion of East River's outstanding indebtedness and complies with other reasonable terms and conditions.

25.     Dakota Energy believes, and therefore alleges, that the lending instruments securing East River's outstanding indebtedness as defined in the WPC specifically anticipate that East River member-owners may terminate their commercial arrangements with East River and exit the East River system.

26.     In recent years, East River has greatly increased the electricity rates for Dakota Energy. These increases necessarily have been passed on to consumers, and have negatively impacted the economy of the areas served. In fact, even though South Dakota is in an area that traditionally enjoys some of the lowest electricity costs in the United States, the rates East River is currently charging Dakota Energy are nearly two times the rate of what is available on the spot market.

27.     In response to these onerous price increases, Dakota Energy's Board of Directors adopted Board Resolution No. 2018-02 on September 25, 2018. This Resolution directed Dakota Energy's staff to work with East River's staff to obtain a dollar figure for Dakota Energy to buy out of its WPC with East River, which would end its membership in East River.

28.     In response, East River's Board President, Jim Ryken, issued a letter to Dakota Energy's President, Garry Dearborn, dated March 7, 2019. Mr. Ryken stated that the WPC "between our two cooperatives does not provide for a buy-out. As a result, we must decline your request." In other words, East River refused to provide any terms,

Exhibit A - Page 000007

much less equitable terms, for Dakota Energy to buy out of its WPC and withdraw from East River.

29.     Further, in his letter dated March 7, 2019, Mr. Ryken explained that East River had forwarded Dakota Energy's Board Resolution No. 2018-02 to its own G&T cooperative power supplier, Basin Electric. Mr. Ryken enclosed Basin Electric's response to Dakota Energy's resolution (dated February 15, 2019). Basin Electric adopted a formal resolution declaring that "the all-requirements contracts [such as the WPC] of both the Class A Members [such as East River] with the Cooperative and the Class C Members [such as Dakota Energy] with the Class A Members *do not contain any provision permitting the member to buy-out of its all-requirements contract with the Cooperative or the Class A Member ... "* (emphasis added).

30.     East River's contention that the WPC does not provide for any buy-out ignores the Bylaw provision allowing withdrawal from East River "upon compliance with such equitable terms and conditions as the Board of Directors may prescribe," renders the language superfluous in violation of South Dakota precedent, is contrary to § 14 of the WPC, and violates SDCL 47-21-72, which requires that East River be operated for the *"mutual benefit"* of its members.

## COUNT ONE
## ANTICIPATORY BREACH OF CONTRACT

31.     Dakota Energy incorporates ¶¶ 1-30 of the Complaint as if set forth fully herein.

32.     The Bylaws constitute an enforceable contract under South Dakota law.

33.     Dakota Energy has performed all of its obligations under the Bylaws.

Exhibit A - Page 000008

34. East River has anticipatorily breached the Bylaws by refusing to provide terms on which Dakota Energy can withdraw as a member of East River, as required by the Bylaws.

35. The WPC specifically envisions that a member-owner of East River may terminate its obligations under the WPC by paying a pro rata proportion of the indebtedness incurred to supply the member-owner with electric power.

36. By refusing to provide equitable terms and conditions under which Dakota Energy may withdraw from membership, East River has refused to perform its obligations under a contract when performance is due.

37. East River's refusal to provide equitable terms for withdrawal is contrary to the terms of the Bylaws, SDCL 47-21-72, and the voluntary nature of cooperative membership.

38. East River's March 2019 statement that the WPC "does not provide for a buy-out" is incorrect and violates § 14 of the WPC.

39. East River's repudiation of its contractual obligations constitutes an unlawful anticipatory breach of contract.

40. East River's conduct has resulted in damages to Dakota Energy in the form of higher electricity rates, adverse impacts on the consumer-owners of Dakota Energy, and adverse impacts on the economy of the areas served, in an amount to be proven at trial.

Exhibit A - Page 000009

## COUNT TWO (IN THE ALTERNATIVE)
## CLAIM FOR DECLARATORY JUDGMENT

41.     Dakota Energy incorporates ¶¶ 1-40 of the Complaint as if set forth fully herein.

42.     Dakota Energy seeks a declaratory judgment pursuant to Title 21, Chapter 21-24 of the South Dakota Codified Laws.

43.     There is a present justiciable controversy between Dakota Energy and East River on at least two issues: (a) whether the terms of the Bylaws permit Dakota Energy to withdraw from East River on equitable terms and conditions, and if so, (b) what is the amount of an equitable exit charge that Dakota Energy must pay to discharge its contractual obligations to, and withdraw from, East River.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dakota Energy respectfully asks the Court to grant the following relief:

a.     Award Plaintiff damages incurred as a result of Defendant's anticipatory breach of contract, including the recovery of actual and compensatory damages;

b.     In the alternative, to declare the following regarding Plaintiff's rights under the Bylaws:

   i.     The Bylaws allow Plaintiff to withdraw from membership with Defendant upon compliance with "equitable terms and conditions;"

   ii.     "Equitable terms and conditions" for withdrawing from membership include satisfaction of the withdrawing member's "contractual obligations to the Cooperative;"

9

     iii.      Plaintiff can satisfy its contractual obligations to the Cooperative by buying out those obligations;

     iv.      An equitable buy-out of Plaintiff's contractual obligations to Defendant can be calculated by subtracting Plaintiff's patronage capital in Defendant from that portion of the debt incurred to supply Plaintiff with electricity as provided in § 14 of the WPC;

     v.      Upon payment of the exit charge calculated as described in ¶ b(iv), above, Plaintiff shall no longer be a member of Defendant, and the WPC between the parties shall be terminated;

c.      Award Plaintiff allowable costs, disbursements, and penalties in this action as the Court deems proper;

d.      Award Plaintiff all reasonable attorneys' fees to the extent such may be allowable by law or contract;

e.      Award Plaintiff pre- and post-judgment interest; and

f.      Award Plaintiff all further relief in law or equity to which it may show it is justly entitled.

## **DEMAND FOR JURY TRIAL**

Dakota Energy demands a jury trial on all claims so triable.

10

Dated: November 6, 2020

Respectfully submitted,

/s/ Lee Schoenbeck
Lee Schoenbeck
Joseph Erickson
SCHOENBECK LAW, PC
PO Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD 57201
Phone: (605) 886-0010
Fax: (605) 886-0011
E-mail:   lee@schoenbecklaw.com
              joe@schoenbecklaw.com

Peter W. Herzog III (*pro hac vice to be filed*)
Joel S. Neckers (*pro hac vice to be filed*)
Michele O. Choe (*pro hac vice to be filed*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
Fax: (303) 244-1879
E-mail:   pherzog@wtotrial.com
              neckers@wtotrial.com
              choe@wtotrial.com

*Attorneys for Plaintiff Dakota Energy
Cooperative, Inc.*

11

# EXHIBIT 1



**BYLAWS**

Bylaws Amended as of September 9, 2015

## ARTICLE I

## MEMBERSHIP

**SECTION 1.  Requirements for Membership.**  Any firm, association, corporation, business trust, partnership, limited liability company, municipality, or other body politic or subdivision thereof may become a member of the East River Electric Power Cooperative, Inc., (hereinafter called the "Cooperative") by:

    (a)    Executing a written application for membership therein;

    (b)    Agreeing to purchase from the Cooperative electric energy as hereinafter specified;

    (c)    Agreeing to comply with and be bound by the articles of incorporation and bylaws of the Cooperative and any rules and regulations adopted by the Board of Directors; and

    (d)    Paying the membership fee of $100,

provided, however, that no applicant shall become a member unless and until it has been accepted for membership by the Board of Directors or the members.  No member may hold more than one membership in the Cooperative, and no membership in the Cooperative shall be transferable.

At each meeting of the members all applications received more than ninety days prior to such meeting which have not been accepted or which have been rejected by the Board of Directors shall be submitted by the Secretary to such meeting and, subject to compliance by the applicant with the requirements hereinabove set forth, any such application may be accepted by majority vote of the members. The Secretary shall give each such applicant at least ten days written notice of the date of the members' meeting to which its application will be submitted and such applicant shall be entitled to be represented and heard at the meeting.

**SECTION 2.  Classes of Membership.**  The Cooperative shall have no stock, but membership in the Cooperative shall be evidenced by a membership certificate.  Membership in the Cooperative shall be of four Classes as follows:

    (a)    Class "A" membership.  Any incorporated cooperative association organized under state laws governing rural electric cooperatives, for the purposes of constructing, operating and maintaining electric distribution lines or systems may become a Class "A" member upon compliance with the other membership requirements of these bylaws. Each Class "A" member shall be entitled to one (1) Director and one (1) vote at any Cooperative meeting.

    (b)    Class "B" membership.  Any municipality or other body politic may become a Class "B" member upon compliance with the other membership requirements of these

Exhibit A - Page 000014

bylaws. Class "B" members shall collectively be entitled to one (1) Director and one (1) vote at any Cooperative meeting.

(c)    Class "C" membership.  Any firm, association, corporation, business trust, limited liability company or other entity not fitting the requirements of Class "A" or "B" membership may become a Class "C" member upon compliance with the other membership requirements of these bylaws.  Class "C" members shall collectively be entitled to one (1) Director and one (1) vote at any Cooperative meeting.

(d)    Class "D" membership.  Any cooperative, firm, association, corporation, business trust, limited liability company or other entity not fitting the requirements of Class "A", "B", or "C" membership may become a Class "D" member upon compliance with the other membership requirements of these bylaws.  Class "D" members shall collectively be entitled to one (1) Director and one (1) vote at any Cooperative meeting.

**SECTION 3.  Membership Certificates.**  Membership in the Cooperative shall be evidenced by a membership certificate which shall be in such form and shall contain such provisions as shall be determined by the Board of Directors.

**SECTION 4.  Purchase of Electric Power and Energy.**

(a)    Each member shall purchase from the Cooperative all electric power and energy required by the member to serve all its electric loads except as otherwise provided in Subsections (b) or (c) of this section.  Each member shall pay monthly in accordance with the contracts heretofore or hereafter entered into by the member and the Cooperative at rates determined from time to time by the Board of Directors in accordance with the bylaws. It is expressly understood that amounts paid for electric power and energy in excess of the cost of service are furnished by members as capital and each member shall be credited with capital so furnished as provided in these bylaws.  Each member shall pay to the Cooperative all such other amounts per month regardless of the amount of electric power and energy required by the member to serve all its electric loads as shall be fixed by the Board of Directors from time to time.  Each member shall also pay all amounts owed by such member to the Cooperative as and when the same shall become due and payable.  Whenever the member is indebted to the Cooperative and the Cooperative owes to the member monies, credits or property, the Cooperative shall offset against or deduct from such monies, credits or property, the indebtedness owed to the Cooperative by the member.

(b)    A member who intends to merge or consolidate with a non-member whose power supplier is other than this Cooperative or to negotiate for the acquisition of an electric system or any other electric load with any person, firm, partnership, corporation, rural electric cooperative, association, municipality, public corporation or political subdivision (herein called Party) which Party is obligated to purchase, or to be furnished electric power and energy from a power supplier other than this Cooperative, shall promptly notify in writing this Cooperative of its intention to merge or consolidate with such non-member or negotiate for such acquisition. The member shall clearly demonstrate that the merger, consolidation or acquisition shall not negatively impact the existing wholesale power contract between this Cooperative and the member.

A description of the impact of such merger, consolidation or acquisition shall be provided by the member to this Cooperative prior to consideration being made by this Cooperative of the member's plan.

In all instances, whether or not an adequate description of such proposed merger, consolidation or acquisition is provided, this Cooperative will, in a timely manner either approve such proposed merger, consolidation or acquisition, or notify the member of the impact such proposed merger, consolidation or acquisition will have on this Cooperative and the wholesale power contract between this Cooperative and the member.  Upon such notice the member and this Cooperative will initiate good faith negotiations to satisfy the requirements of this Cooperative in relation to the wholesale power contract between the member and this Cooperative.

Approval may be subject to such conditions as the Board of Directors shall determine to be just and equitable to all parties to the transaction.  Provided however, such approval shall not be unreasonably withheld.

(c)     A Class "D" member shall have executed a long term wholesale purchase power contract with the Cooperative for less than all the electric power and energy required by the member to serve its electric load.

**SECTION 5.  Termination of Membership.**

(a)     A member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative.  The Board of Directors may, by the affirmative vote of not less than two-thirds of all the Directors, recommend the expulsion of any member that fails to comply with any of the provisions of the articles of incorporation, bylaws, or rules or regulations adopted by the Board of Directors from time to time, but only if such member shall have been given written notice by the Secretary of the Cooperative that such failure makes it liable to expulsion from membership, and such failure shall have continued for at least ten days after such notice was given.  Within thirty days after the board shall have recommended expulsion of a member, a meeting of the members shall be held at which such member shall be given an opportunity to present its case by counsel or otherwise, and the board shall have the same opportunity, after which a vote shall be taken on the expulsion of such member.  An affirmative vote by two-thirds of the members present at the meeting shall be required in order to expel a member.  The resolution of expulsion shall set forth the reasons for the expulsion and shall state the conditions on which the expelled member may be readmitted to membership.

(b)     Upon the withdrawal, cessation of existence or expulsion of a member, the membership certificate of such member shall be surrendered forthwith to the Cooperative. Termination of membership in any manner shall not release a member from any liability, debts, or other obligations due the Cooperative.

## ARTICLE II

## RIGHTS AND LIABILITIES OF MEMBERS

**SECTION 1.  Property Interest of Members.**  Upon dissolution, after

(a)     All debts and liabilities of the Cooperative shall have been paid, and

     (b)     All capital furnished through patronage shall have been returned, as provided in these bylaws, the remaining property and assets of the Cooperative shall be distributed among the members and former members in the proportion which the aggregate patronage bears to the total patronage of all members during the period of its existence.

**SECTION 2.  Non-Liability for Debts of the Cooperative.**  The property of the members of the Cooperative shall not be subject to the payment of the corporate debts of the Cooperative, and no member shall be individually liable for the corporate debts of the Cooperative except as may otherwise be agreed.

**SECTION 3.  Indemnification.**  Each member shall indemnify the Cooperative for, and hold the Cooperative harmless from, any expenses, costs, liabilities, or damages, including reasonable attorney fees and legal expenses, incurred by the Cooperative, or by any Cooperative Director, Officer, employee, agent, representative, or contractor, because of any property damage, personal injury, or death resulting from the Member's negligence.

**ARTICLE III**

**MEETINGS OF MEMBERS**

**SECTION 1.  Annual Meeting.**  The annual meeting of the members shall be held in the month of September of each year; the exact date and place to be selected by the Board of Directors at their regular June meeting of the same year, and shall be designated in the notice of the meeting.  The annual meeting of the members shall be held for the purposes of electing Directors, passing upon reports for the previous fiscal year and transacting such other business as may come before the meeting.  It shall be the responsibility of the Board of Directors to make adequate plans and preparations for the annual meeting.  Failure to hold the annual meeting at the designated time shall not work a forfeiture or dissolution of the Cooperative.

**SECTION 2.  Special Meetings.**  Special meetings of the members may be called by resolution of the Board of Directors or upon a written request signed by any three Directors, by the President, or by 10 per centum or more of all members, and it shall thereupon be the duty of the Secretary to cause notice of such meeting to be given as hereinafter provided.  Special meetings of the members shall be held at a location in the City of Madison, Lake County, State of South Dakota unless otherwise determined by the Board of Directors and specified in the notice of the special meeting.

**SECTION 3.  Notice of Members' Meetings.**  Written or printed notice stating the place, day and hour of the meeting and, in case of a special meeting or an annual meeting at which business requiring special notice is to be transacted, the purpose or purposes for which the meeting is called, shall be delivered not less than ten days nor more than twenty-five days before the date of the meeting, either personally or by mail, by or at the direction of the Secretary, or upon a default in duty by the Secretary, by the persons calling the meeting, to each member.  If mailed, such notice shall be deemed to be delivered when deposited in the United States mail, addressed to the member of or to the delegate at its or his address as it appears on the records of the Cooperative, with postage thereon prepaid.  The failure of any member or delegate to receive notice of an annual or special meeting of the members shall not invalidate any action which may be taken by the members at any such meeting.

**SECTION 4.  Voting Delegates.** Each Class "A" member shall designate a voting delegate and alternate delegate to represent it at a meeting of the members of the Cooperative.  Class "B", "C" and "D" members shall each within their respective membership classes designate a voting

delegate and alternate delegate to represent them at a meeting of members of the Cooperative. All voting delegates shall be someone other than the Director representing the member on the Cooperative's Board of Directors.  Not later than July 1 of each year, each member shall certify to the Secretary of the Cooperative the name and address of the voting delegate and alternate voting delegate.  Members shall inform the Secretary of the Cooperative in writing of any changes in the designated or alternate voting delegate not less than 24 hours prior to a meeting of the Cooperative.  All voting delegates or alternates shall be currently serving on the governing board of the member.  All voting delegates and alternate delegates shall be appointed for a term of one year or until replaced by the member.

**SECTION 5.  Quorum.**  Delegates representing at least a majority of the members shall constitute a quorum.  If less than a quorum is present at any meeting a majority of those present in person may adjourn the meeting from time to time without further notice.

**SECTION 6.  Voting.**  At all meetings of the members at which a quorum is present all questions shall be decided by a vote of a majority of the members present and voting thereon except as otherwise provided by law, the articles of incorporation and these bylaws.  The vote of each member shall be cast by the designated voting delegate defined in Article III, Section 4 of these bylaws.

**SECTION 7.  Order of Business.**  The order of business at the annual meeting of the members unless otherwise approved by the members at such meeting and, so far as practicable, at all other meetings of the members, shall be essentially as follows:

1. Report upon the members represented and the number of delegates present, for purposes of determining a quorum.

2. Reading of the notice of the meeting and proof of mailing thereof, or the waiver of notice of the meeting.

3. Presentation of unapproved minutes of previous meetings of the members and the taking of necessary action thereon.

4. Presentation and consideration of reports of officers, Directors and committees.

5. Nomination and election of Directors.

6. Unfinished business.

7. New business.

8. Adjournment.

## ARTICLE IV

## BOARD OF DIRECTORS

**SECTION 1.  General Powers.**  The business and affairs of the Cooperative shall be managed by a Board of Directors which shall exercise all of the power of the Cooperative except such as are by law, the articles of incorporation or these bylaws conferred upon or reserved by the members.

**SECTION 2.  Qualifications.**  A Director or Director candidate must:

1.   Be an individual member and a qualified Director of a Class A member cooperative and a bona fide resident and user in the service area of the Cooperative, or

2.   Be a qualified member of the governing body of a Class B member municipality or other body politic and a user of electricity furnished by the municipality or other body politic, or

3.   Be a member of the governing body of a Class C member by virtue of association with a firm, association, corporation, business trust, limited liability company or other entity that purchases its electric power and energy from the Cooperative, or

4.   Be a member of the governing body of a Class "D" member by virtue of association with a cooperative, firm, association, corporation, business trust, limited liability company or other entity that purchases less than all its power and energy from the Cooperative, or

5.   Not be in any way employed by a business purchasing from or selling electric power and energy to the Cooperative except an electric power supplier from which the Cooperative is required by law to purchase or sell electric power and energy.

6.   While a Director, and during the five (5) years immediately prior to becoming a Director, not:

   (a)   Be, nor have been, convicted of a felony; or

   (b)   Plead, nor have pled, guilty to a felony;

7.   Unless excused for good cause by the Board, attend at least two-thirds (2/3) of all Board Meetings during any twelve (12) month period;

8.   While a Director, or during one (1) year immediately prior to becoming a Director, a Director or Director candidate must not be, nor have been:

   (a)   Close Relative of any existing Director, other than an existing Director who will cease being a Director within one (1) year;

   (b)   An existing, or a Close Relative of an existing, non-Director Cooperative Officer, employee, agent, or representative;

   (c)   Employed by, materially affiliated with, or share a material financial interest with, any other Director; or

   (d)   Engaged in, nor employed by, materially affiliated with, or have a material financial interest in, any individual or entity:

      1.   Directly and substantially competing with the Cooperative; or

      2.   Selling goods or services in substantial quantity to the Cooperative, or to a substantial number of Members; or

      3.   Possessing a conflict of interest with the Cooperative.

   (e)   Within three years preceding a Director candidate's nomination was an employee of the Cooperative or any member of the Cooperative.

(f)      Close Relative.  As used in these Bylaws, the term "close relative" means an individual who:

1.      Is, either by blood, law, or marriage, including half, step, foster, and adoptive relations, a spouse, child, grandchild, parent, grandparent, or sibling; or

2.      Principally resides in the same residence.

**SECTION 3.   Director Conduct.**  Unless modified or prohibited by Law:

(a)      Director Standard of Conduct.  A Director shall discharge the Director's duties, including duties as a Board Committee member:

1.      In good faith;

2.      With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

3.      In a manner the Director reasonably believes to be in the Cooperative's best interests.

(b)      Director Reliance on Others.   Unless a Director possesses knowledge concerning a matter making reliance unwarranted, then in discharging a Director's duties, including duties as a Board Committee member, a Director may rely upon information, opinions, reports, or statements, including financial statements and other data, prepared or presented by:

1.      One (1) or more Cooperative Officers or employees whom the Director reasonably believes to be reliable and competent in the matters prepared or presented;

2.      Legal counsel, public accountants, or other individuals regarding matters the Director reasonably believes are within the individual's professional or expert competence.

(c)      Director Liability.  If a Director complies with this Bylaw, then the Director is not liable to the Cooperative, any Member, or any other individual or entity for action taken, or not taken, as a Director.  No Director is deemed a trustee regarding the Cooperative or any property held or administered by the Cooperative, including without limit, property potentially subject to restrictions imposed by the property's donor or transferor.

**SECTION 4.   Director Nominations and Election.**  Except as may be otherwise provided in these bylaws candidates for Directors from members shall be nominated only by the member they will represent.  The name of said nominee shall be forwarded to the Secretary of the Cooperative, prior to the annual or special meeting.  At said annual or special meeting the membership of the Cooperative, shall by majority, vote to accept or reject the nominee for Director.  If rejected, the member will be given the opportunity to make a new nomination within thirty (30) days of the annual or special meeting.  Upon receipt of the new nomination, the Cooperative shall call a special meeting within twenty (20) days to act on the nomination.  If a member fails to forward the name of its nominee prior to the annual or special meeting it shall submit for nomination a qualified nominee from the floor.

**SECTION 5.   Voting for Directors.**   Each member may vote for as many candidates as the number of Directors to be elected.  The vote of each member shall be cast by the designated voting delegate defined in Article III, Section 4 of these bylaws.

**SECTION 6.   Election and Tenure of Office.**   Each Class "A" member shall be entitled to one (1) Director and each Director shall have one (1) vote.  Class "B" members shall be collectively entitled to one (1) Director and one (1) vote.  Class "C" members shall be collectively entitled to one (1) Director and one (1) vote.  Class "D" members shall be collectively entitled to one (1) Director and one (1) vote.  Class "A" Directors shall serve for a term of three (3) years.  One-third (1/3) of the Class "A" Directors shall be elected each year and the Directors of the Cooperative shall be responsible for establishing the appropriate rotation.  All Class "B", "C", and "D" Directors shall be elected annually.

Any Class "A" member that becomes a member or merges or consolidates with a member or non-member after the date of the annual meeting shall be entitled to a Director to be nominated and elected from such member.   Such nomination shall be delivered to the Secretary of the Cooperative who will place it in motion at the next meeting of the Board of Directors of the Cooperative. The nominee shall be seated as a Director by an affirmative vote of a majority of the Directors of this Cooperative.  The initial term of the new Director shall be established by the Board of Directors and may be for a term of up to three (3) years.

**SECTION 7.   Removal of a Director by Members.**   Charges against a Director may be brought by filing with the Secretary of the Cooperative such charges in writing together with a petition signed by an authorized representative of a majority of the respective members requesting the removal of such Director by reason thereof.  Such board member shall be informed in writing of the charges at least thirty (30) days prior to the meeting of the members at which the charges are to be considered and shall have an opportunity at the meeting to be heard in person or by counsel, or both, and to present evidence in respect of the charges; and the members bringing the charges against him then shall have the same opportunity.  The question of the removal of such Director shall be considered and voted upon by secret ballot at a meeting of the members.  A vote of the majority of the respective members present and voting on such question through a voting delegate shall be required to remove a Director. Any vacancy created by such removal shall be filled as provided by Article IV, Section 9 of these bylaws.

 **SECTION 8.   Events Causing Vacancy in the Office of Director.**   Each office of Director shall become vacant on the happening of any one of the following events before the expiration of the term of such office:

1.       Death of the Director.

2.       Resignation.

3.       Removal.

4.       Director's failure to meet the qualifications of office, as provided by Article IV, Section 2.

**SECTION 9.   Filling Vacancies.**   A vacancy occurring in the Board of Directors, as provided by Section 8, shall be filled by the affirmative vote of a majority of the remaining Directors for the unexpired portion of the term.  Such a Director shall be elected from the same member as his predecessor in office and shall be nominated only by that member.  Such nomination shall be placed in motion by the Secretary and acted upon by the Board of Directors at their next meeting.

**SECTION 10.   Compensation.**   Directors shall receive no salary for their services as Directors, provided, however, by resolution of the Board of Directors a fixed sum and expenses of attendance, if any, may be allowed for attendance at each meeting of the Board of Directors and such other meetings as are authorized by the Board of Directors.   No Director shall receive compensation for serving the Cooperative in any other capacity, nor shall any close relative of a Director receive compensation for serving the Cooperative, unless the payment and amount of compensation shall be specifically authorized by a vote of the members or the service by such Director or close relative shall have been certified by the Board of Directors as an emergency measure.

**SECTION 11. Delegation of Authority.**   The Board of Directors may delegate to any officer or officers, agent or agents, chief executive officer, or manager, to any standing or special committee such authority as deemed necessary in the operation of this Cooperative.

**SECTION 12.   Director may Complete Term of Office Upon the Merging or Consolidation.** Notwithstanding anything to the contrary in this Article IV, a Director who represents a member on the Board of Directors at the time such member either consolidates or merges with another East River member or members may continue to serve and complete their term of office with all rights and privileges of a Director, except such Director shall not be entitled to vote unless such Director has been selected and designated to represent the surviving member or the consolidated member.

## ARTICLE V

## MEETINGS OF DIRECTORS

**SECTION 1.   Regular Meetings.**   A regular meeting of the Board of Directors shall be held without notice, as soon as practical after the annual meeting of the members. A regular meeting of the Board of Directors shall also be held at such time and place as the Board of Directors may provide by resolution.   Such regular meetings may be held without notice other than such resolution fixing the time and place thereof.

**SECTION 2.   Special Meetings.**   Special meetings of the Board of Directors may be called by the President or by one-third (1/3) of the total number of Directors, and it shall thereupon be the duty of the Secretary to cause notice of such meeting to be given as hereinafter provided.   Written, telephonic or electronic notice of the time, place and purpose of any special meeting of the Board of Directors shall be delivered to each Director, not less than five (5) days previous thereto, either personally, by mail, or electronically by or at the direction of the Secretary, or upon a default in duty by the Secretary, by the President or the Directors calling the meeting.

**SECTION 3.   Telephonic and Teleconference Meetings.**   Regular and special meetings may also be conducted telephonically or by teleconference, subject to the notice requirements set forth hereafter in Sections 1 and 2.

**SECTION 4.   Quorum.**   A majority of the Board of Directors shall constitute a quorum, provided, that if less than such majority of the Directors is present at said meeting, a majority of the Directors present may adjourn the meeting from time to time; and provided further, that the Secretary shall notify any absent Directors of the time and place of such adjourned meeting.   The act of the majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

**SECTION 5.   Presence of Others.**   Any delegate, manager or Director of a member shall be entitled to be present at any board meeting and shall have a voice in the proceedings, provided, however, that only Directors of the Cooperative shall be entitled to vote.  The Board of Directors by

a two-thirds vote of those present may meet in executive session, and the minutes of that meeting shall reflect any action taken.

## ARTICLE VI

## OFFICERS

**SECTION 1.   Number.**   The required officers of the Cooperative shall be the President, Vice President, Secretary, Treasurer, and such other officers as may be determined by the Board of Directors from time to time.   The offices of Secretary and of Treasurer may be held by the same person.

**SECTION 2.  Election and Term of Office.**   The officers shall be elected by ballot, annually, by and for the Board of Directors at the meeting of the Board of Directors held immediately after the annual meeting of the members.   If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as conveniently may be.   Each officer shall hold office until the first meeting of the Board of Directors following the next succeeding annual meeting of the members or until his successor shall have been elected and shall have qualified.   A vacancy in any office shall be filled by the Board of Directors for the unexpired portion of the term.

**SECTION 3.   Removal of Officers and Agents by Directors.**   Any officer or agent elected or appointed by the Board of Directors may be removed by the Board of Directors whenever in its judgment the best interests of the Cooperative will be served thereby.

**SECTION 4.   President.**   Unless otherwise determined by the Board, and unless otherwise required by Law, the Articles, or these Bylaws, the President:

>   (a)   Shall preside, or designate another individual to preside, at all Board and Member Meetings;
>
>   (b)   On the Cooperative's behalf, may sign any document properly authorized or approved by the Board; and
>
>   (c)   Shall perform all other duties, shall have all other responsibilities, and may exercise all other authority, prescribed by the Board.

**SECTION 5.  Vice President.**   Unless otherwise determined by the Board, and unless otherwise required by Law, the Articles, or these Bylaws, the Vice-President:

>   (a)   Upon the President's death, absence, disability, or inability or refusal to act, shall perform the duties, and have the powers, of the President; and
>
>   (b)   Shall perform all other duties, shall have all other responsibilities, and may exercise all other authority, prescribed by the Board.

**SECTION 6.   Secretary.**   Unless otherwise determined by the Board, and unless otherwise required by Law, the Articles, or these Bylaws, the Secretary:

>   (a)   Shall cause to be prepared the minutes of Board and Member Meetings;
>
>   (b)   Shall be responsible for authenticating the Cooperative's records;
>
>   (c)   May affix the Cooperative's seal to any document authorized or approved by the Board or Members; and

(d)     Shall perform all other duties, shall have all other responsibilities, and may exercise all other authority, prescribed by the Board.

**SECTION 7.   Treasurer.** Unless otherwise determined by the Board, and unless otherwise required by Law, the Articles, or these Bylaws, the Treasurer shall perform all duties, shall have all responsibility, and may exercise all authority, prescribed by the Board.

**SECTION 8. Other Officers.**  The Board may elect or appoint other officers.  Other Officers:

(a)     May   be   Directors,   Cooperative   employees,   or   other   individuals;

(b)     Must be elected or appointed by the affirmative vote of a majority of current Directors;

(c)     May be elected by secret written ballot and without prior nomination;

(d)     May assist Required Officers; and

(e)     Shall perform all duties, shall have all responsibilities, and may exercise all authority, prescribed by the Board.

The same individual may simultaneously hold more than one (1) office.  Unless allowed by Law, however, this individual may not execute, acknowledge, or verify any document in more than one (1) capacity.

**SECTION 9.   Manager.**  The Board of Directors may appoint a general manager or chief executive officer who shall perform such duties and shall exercise such authority as the Board of Directors may from time to time vest in him.  The general manager or chief executive officer shall not be eligible to serve as a Director of the Cooperative.

**SECTION 10.   Bonds of Officers.**   At the Cooperative's expense, the Cooperative may purchase either a bond or comparable insurance covering any Cooperative Director, Officer, employee, agent, or representative charged with the responsibility for the custody of any of its funds or property.

**SECTION 11.   Compensation.**   The compensation of officers shall be fixed by the Board of Directors, subject to the provisions of these bylaws with respect to compensation for Directors.

**SECTION 12.   Reports.**  The officers of the Cooperative shall submit at each annual meeting of the members reports covering the business of the Cooperative for the previous fiscal year.   Such reports shall set forth the condition of the Cooperative at the close of such fiscal year.

**SECTION 13.   Indemnification of Officers, Directors, Employees and Agents; Insurance.**

(a)     The Cooperative shall indemnify any person who was or is a party or is threatened to be made a party to any threatened pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Cooperative) by reason of the fact that he is or was a Director, officer, employee or agent of the Cooperative, or is or was serving at the request of the Cooperative as a Director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if

he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Cooperative and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Cooperative, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(b)     The Cooperative shall indemnify any person who was or is a party or is threatened to be made a party to any threatened pending or completed action or suit by or in the right of the Cooperative to procure a judgment in its favor by reason of the fact that he is or was a Director, officer, employee or agent of the Cooperative or is or was serving at the request of the Cooperative as a Director, officer, employee or agent of another corporation, cooperative, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Cooperative and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Cooperative unless and only to the extent that the court in which such action or suit be brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

(c)     To the extent that a Director, officer, employee or agent of a cooperative has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

(d)     Any indemnification under the foregoing provision of this section (unless ordered by a court) shall be made by the Cooperative only as authorized in the specific case upon a determination that indemnification of the Director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct as set forth in subsections (a) and (b).  Such determinations shall be made (i) by the Board of Directors by a majority vote of a quorum consisting of Directors who were not parties to such action, suit or proceeding, or (ii) if such quorum is not obtainable, or, even if obtainable a quorum of disinterested Directors so directs, by independent legal counsel in a written opinion, or (iii) by the members of the Cooperative.

(e)     Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid by the Cooperative in advance of the final disposition of such action, suit or proceeding as authorized by the Board of Directors in the specific case upon receipt of an undertaking by or on behalf of the Director, officer, employee or agent to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the Cooperative as authorized in this section.

(f)     The indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnity may be entitled under any bylaws,

agreement, vote of members or disinterested Directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a Director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

(g)     The Cooperative may purchase and maintain insurance on behalf of any person who is or was a Director, officer, employee or agent of the Cooperative, or is or was serving at the request of the Cooperative as a Director, officer, employee or agent of another corporation, cooperative, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity or arising out of his status as such whether or not the Cooperative would have the power to indemnify him against such liability under the provisions of this section.

## ARTICLE VII

## NON-PROFIT OPERATION

**SECTION 1.   Interest or Dividends on Capital Prohibited.**  The Cooperative shall at all times be operated on a cooperative non-profit basis for the mutual benefit of its member patrons.   No interest or dividends shall be paid or payable by the Cooperative on any patronage capital furnished by its member patrons.

**SECTION 2.   Patronage Capital in Connection with Furnishing Electric Energy.**   In the furnishing of electric energy the Cooperative's operations shall be so conducted that all member patrons will through their patronage furnish capital for the Cooperative.  In order to induce patronage and to assure that the Cooperative will operate on a non-profit basis the Cooperative is obligated to account on a patronage basis to all its member patrons for all amounts received and receivable from the furnishing of electric energy in excess of the sum of (a) operating costs and expenses properly chargeable against the furnishing of electric energy, (b) amounts required to offset any losses incurred during the current or any prior fiscal year, and (c) a surplus or contingency reserve as required in the judgment of the Board of Directors to provide for reasonable reserves for the payment of the incremental cost of electric power and energy purchased by the Cooperative for resale to its member patrons; provide for the adoption of margin stabilization plans, revenue or expense deferral plans or other plans that provide for the retention of revenues and receipts in excess of those needed to meet current losses and expenses.  All such amounts in excess of operating costs, expenses, losses, and reserves as set forth in  (a)  (b) and (c) above at the moment of receipt by the Cooperative are received with the understanding that they are furnished by the member patrons as capital.  The Cooperative is obligated to pay by credits to a capital account for each member patron all such amounts in excess of operating costs, expenses, losses, and reserves as set forth in (a) (b) and (c) above.   The books and records of the Cooperative shall be set up and kept in such a manner that at the end of each fiscal year the amount of capital, if any, so furnished by each member patron is clearly reflected and credited in an appropriate record to the capital account of each member patron, and the Cooperative shall within a reasonable time after the close of the fiscal year notify each member patron of the amount of capital so credited to his account.  All such amounts credited to the capital account of any member patron shall have the same status as though they had been paid to the member patron in cash in pursuance of a legal obligation to do so and the member patron had then furnished the Cooperative corresponding amounts for capital.

All other amounts received by the Cooperative from its operations in excess of costs and expenses shall, insofar as permitted by law, be (a) used to offset any losses incurred during the current or any prior fiscal year and (b) to the extent not needed for that purpose, allocated to its member

Exhibit A - Page 000026

patrons on a patronage basis and any amount so allocated should be included as part of the capital credited to the accounts of member patrons, as herein provided.

In the event of dissolution or liquidation of the Cooperative, after all outstanding indebtedness of the Cooperative shall have been paid, outstanding capital credits shall be retired without priority on a pro rata basis before any payments are made on account of property rights of members.  If, at any time prior to dissolution or liquidation the Board of Directors shall determine that the financial condition of the Cooperative will not be impaired thereby, the capital credited to member patrons' accounts may be retired in full or in part.

The Board of Directors shall determine the method, basis, priority and order of retirement, if any, for all amounts furnished as capital.  The Board of Directors shall have the power to adopt rules providing for the separate retirement of that portion ("power supply portion") of capital credited to the accounts of member patrons which corresponds to capital credited to the account of the Cooperative by an organization furnishing electric service to the Cooperative.

Capital credited to the account of each member patron shall be assignable only on the books of the Cooperative pursuant to written instruction from the assignor and only to successors in interest in the business or the physical assets of such member patron unless the Board of Directors, acting under policies of general application, shall determine otherwise.

**SECTION 3.  Patronage in Connection with Furnishing Other Services.**  In the event that the Cooperative should engage in the business of furnishing goods or services other than electric energy, all amounts received and receivable therefrom which are in excess of costs and expenses properly chargeable against the furnishing of such goods or services shall, insofar as permitted by law, be allocated to member patrons on a patronage basis.

### ARTICLE VIII

### DISPOSITION OF PROPERTY

**SECTION 1.  Encumbering Cooperative Property.**  The Board of Directors shall have full power to authorize the execution and delivery of a mortgage or mortgages, or a deed or deeds of trust of, or the pledging of encumbering of any or all of the property, assets, rights, privileges, licenses, franchises and permits of the Cooperative, whether acquired, or to be acquired, and wherever situated, as well as the revenues therefrom, all upon such terms and conditions as the Board of Directors shall determine, to secure any indebtedness of the Cooperative to United States of America or any agency or instrumentality thereof, or any other lender.

**SECTION 2.  Other Disposition of Property.**  Except as provided in Section 1 of this Article, the Cooperative may not sell, lease, or otherwise dispose of all or a substantial portion of its property, unless such sale, lease or other disposition is authorized by the affirmative vote of not less than a majority of all members of the Cooperative; members voting thereon must be present and vote in person, provided, however, that notwithstanding any other provision of this Article, or any other provisions of law, the Board of Directors may, upon the authorization of a majority of all members of the Cooperative at a meeting of the members thereof, called for that purpose, sell, lease, or otherwise dispose of all or a substantial portion of its property to another cooperative or to the holder or holders of any notes, bonds or other evidences of indebtedness issued to United States of America, or any agency or instrumentality thereof, or any other lender.

**SECTION 3.  Compacts.**  Notwithstanding the provisions of Article VIII, Sections 1 and 2, the Cooperative and members may enter into a compact or compacts that provide a method to retain in an integrated system, the electric utility assets of the Cooperative or any member that may

propose to transfer its electric utility assets, other than in the normal course of business, while allowing the Cooperative or that member to receive market price for its assets.

## ARTICLE IX

## MISCELLANEOUS

**SECTION 1.   SEAL.**  The Corporate seal of the Cooperative shall be in the form of a circle and shall have inscribed thereon the name of the Cooperative and the words "Corporate Seal."

**SECTION 2.   Fiscal Year.**  The fiscal year of the Cooperative shall begin on the first day of January of each year and shall end on the thirty-first day of December of the same year.

**SECTION 3. Governing Law.**  These Bylaws must be governed by, and interpreted under, the laws of the State of South Dakota.

**SECTION 4.   Membership and Investments in Other Organizations.**  The Cooperative to the extent not prohibited by law, upon the authorization of the Board of Directors may engage in, own and operate any business, become a member of or acquire an ownership or financial interest including the purchase of stock in any other organization including but not limited to a Cooperative, Corporation, Partnership, Limited Partnership, Joint Venture, Limited Liability Company or other legal entity; when the Board of Directors determine that it is to the benefit and advantage of the Cooperative to do so.

**SECTION 5.   Waiver of Notice.**  Any member, delegate or Director may waive in writing any notice of a meeting required to be given by these bylaws, either before or after each meeting. The attendance of a member, delegate or Director at any meeting shall constitute a waiver of notice of such meeting by such member, delegate or Director, except in case a member, delegate or Director shall attend a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting has not been lawfully called or convened.

**SECTION 6.   Audits.**  The Board of Directors shall after the close of each fiscal year cause to be made by a certified public accountant an audit of the accounts, books and financial condition of the Cooperative as of the end of such fiscal year.   A report of such audit shall be submitted to the members at the following annual meeting.

**SECTION 7.   Gender.**  Wherever the masculine gender appears in these bylaws such gender shall include the feminine gender and vice versa.

**SECTION 8.   Rules of Parliamentary Procedure.**  Parliamentary procedure at all meetings of the members, of the Board of Directors, of any committee provided for in these bylaws and of any other committee of the members or Board of Directors which may from time to time be duly established shall be governed as far as practical by the then current Roberts Rules of Order, except to the extent such procedure is otherwise determined by law or by the Cooperative's articles of incorporation or bylaws.

## ARTICLE X

## AMENDMENTS

**SECTION 1.   Standard Amending Procedure.**  These bylaws may be altered, amended or repealed by the members at any regular or special meeting by the affirmative vote of a majority of those members voting thereon, provided the notice of such meeting shall contain a copy of the proposed alteration, amendment or repeal. Any amendment which is germane to the proposed

alteration or amendment specified in the notice and submitted at such meeting may be acted upon at said meeting with the same force and effect as though it had been contained in the notice of the meeting.

**SECTION 2.  Initiated Amendments.**  Proposed alterations, amendments or repeals to the bylaws may be initiated by the members by filing with the Cooperative at least sixty (60) days prior to the date of a special or regular membership meeting, a petition signed by at least one third (1/3) of the members of the Cooperative, setting forth the proposed alterations, amendments or repeals and requesting that same be submitted to the membership for approval or rejection.  Upon receipt of such a petition, the Cooperative shall give notice of said proposed alterations,
amendments or repeals as provided herein and submit same to the membership for rejection or approval at the next regular or special meeting thereof.

## CERTIFICATE OF SECRETARY

I, Ervin Fink, do hereby certify that I am the Secretary of East River Electric Power Cooperative, Inc. (hereinafter called the "Cooperative"); that I am responsible for the official records, minutes and seal of the Cooperative; that the attached document is a true, complete and correct copy of the bylaws of the Cooperative as originally adopted with all alterations and amendments shown thereon to the date hereof; and that the said bylaws and amendments shown thereof have not been rescinded or modified, and are now in effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Cooperative this 9th day of September, 2015.

Secretary
East River Electric Power Cooperative, Inc.

(SEAL)

# EXHIBIT 2

# WHOLESALE POWER CONTRACT

AGREEMENT made as of  January 1, 1995  between East River Electric Power Cooperative, Inc., 121 SE First Street, PO Drawer E, Madison, South Dakota, 57042 (hereinafter called "East River"), a cooperative corporation organized and existing under the laws of the State of South Dakota, and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 38, Huron, South Dakota, 57350 (hereinafter called "Member"), a cooperative corporation organized and existing under the laws of the State of South Dakota, its successors, and assigns.

WHEREAS, East River owns and operates an electric transmission system and purchases or otherwise obtains electric power and energy for the purpose, among others, of supplying electric power and energy to its Members; and

WHEREAS, East River has heretofore entered into agreements for the sale of electric power and energy similar in form to this Agreement with the other members of East River, and may enter into similar contracts with other rural electric cooperatives who may become members; and

WHEREAS, Beadle Electric Cooperative, Inc., and Ree Electric Cooperative, Inc., consolidated on January 1, 1995, to form Dakota Energy Cooperative, Inc.; and

WHEREAS, parties hereto have heretofore entered into agreements providing for the purchase and sale of electric power and energy, the last agreement between the parties prior to consolidation being dated March 3, 1983, and amendment and supplement thereto being dated August 6, 1992; and

WHEREAS, it is the desire of the parties hereto to supersede such Agreement dated March 3, 1983, and amendment thereto by the terms of this Agreement; and

Exhibit A - Page 000031

WHEREAS, the execution of the Power Contract between the Member and East River is subject to the approval of the Administrator under the terms of the loan contracts entered into with the Administrator by East River and the Member respectively; and

WHEREAS, the Government is relying on this Agreement and similar contracts between East River and other borrowers from the Rural Utilities Service to assure that the Notes' are repaid and the purposes of the Rural Electrification Act of 1936, as amended, are carried out and East River and the Member, by executing this contract, acknowledge that reliance; and

WHEREAS, East River has financed and may, in the future, finance such construction in whole or part through loans made or guaranteed by the United States of America (hereinafter called "Government"), acting through the Administrator of the Rural Utilities Service (hereinafter called the "Administrator"); and

WHEREAS, the indebtedness created by such loans and loan guarantees made by the Government is evidenced, and, with respect to future indebtedness, shall be evidenced, by certain notes (hereinafter collectively called the "Notes") secured by that Supplemental Mortgage and Security Agreement made by and between East River, the Government, and the National Rural Utilities Cooperative Finance Corporation (CFC) or other lenders (said Supplemental Mortgage and Security Agreement as it may heretofore or hereafter be amended, supplemented, and/or restated from time to time being hereinafter called the "Mortgage"); and

WHEREAS, this Agreement and payments due to East River under this Agreement shall be pledged and assigned to secure the Notes as provided in the Mortgage.

NOW, THEREFORE, in consideration of the mutual undertakings herein contained the parties hereto agree as follows:

1.   General:  East River shall sell and deliver to Member and Member shall purchase and receive from East River, all electric power and energy which Member shall require to serve

all of Member's electric loads, to the extent that East River shall have such power and energy and facilities available. (It is recognized by the Member and East River that the Parties' obligation hereunder may be affected by the Public Utility Regulatory Policies Act of 1978 and amendments thereto).

2.    <u>Electric Characteristics and Delivery Points</u>:  Electric power and energy to be furnished hereunder shall be alternating current, three phase, sixty cycle. East River shall make and pay for all final connections between the system of East River and Member at the points of delivery, which points of delivery are described in Exhibit A attached hereto and made a part hereof.

3.    <u>Substation</u>:  East River shall install, own, and maintain the necessary substation equipment at the points of connection. Member shall own and maintain switching and protective equipment which may be reasonably necessary to enable Member to take and use the electric power and energy hereunder and to protect the East River system from hazards from Member's system. Such switching and protective equipment located inside the substation's facility shall be approved by East River. Meters and metering equipment necessary to register demand and energy shall be furnished, maintained and read, or caused to be furnished, maintained and read, by East River and shall be located at the point of delivery on Member's side of such transforming equipment.

4.    <u>Rate</u>:  (a)  Member shall pay East River for all electric power and energy furnished hereunder and such other charges included in the rates  adopted by the Board of Directors from time to time and approved by the Administrator of the Rural Utilities Service, all as set forth in Exhibit B attached hereto. The terms, conditions, and rates for the furnishing of electric power and energy and other charges included in the rates are set forth in Exhibit B attached hereto and made a part hereof.

(b)     The Board of Directors of East River at such intervals as it shall deem appropriate, but in any event not less frequently than once in each calendar year, shall review the rate for electric power and energy furnished hereunder and, if necessary, shall revise such rate so that it shall produce revenues which shall be sufficient, but only sufficient, with the revenues of East River from all other sources, to:

(1)     Pay the cost of the operation and maintenance (including but not limited to renewals, replacements, insurance, taxes, and administrative and general overhead expenses) of the transmission system and related facilities of East River.

(2)     To pay the cost of related services deemed advisable by the Board of Directors of East River.

(3)     To pay the cost of any power and energy purchased for resale hereunder by East River.

(4)     To pay the cost of transmission service.

(5)     To pay principal and interest payments on all indebtedness of East River.

(6)     To pay the amounts which must be realized by East River to meet the requirements of any rate covenant or coverage of debt service covenant with respect to any contract between East River and other party or parties.

(7)     To provide for the establishment and maintenance of reasonable margins and reserves.

All contracts and any other security agreements requiring East River to comply with any rate covenant or coverage of debt service covenant shall be approved by the Administrator of the Rural Utilities Service.

East River shall cause a notice in writing to be given to Member and the Administrator of the Rural Utilities Service which shall set out all the proposed revisions of the rate with the

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994                                    Page 4

effective date thereof, which effective date shall be not less than thirty (30) nor more than ninety (90) days after the date of the notice, and shall set forth the basis upon which the rate is proposed to be adjusted and established.  Member agrees that the rate from time to time established by the Board of Directors of East River shall be deemed to be substituted for the rate herein provided (without inclusion of a new Exhibit B, upon the change in rate).

The Member agrees that the rate from time to time established by the Board of Directors of East River shall be deemed to be substituted for the rate herein provided and agrees to pay for electric power and energy furnished by East River to it hereunder after the effective date of any such revision at such revised rates; provided however that no such revision shall be effective unless approved in writing by the Administrator of the Rural Utilities Service.

5.   Meter Readings and Payment of Bills:  East River shall read, or cause to be read, each meter on the fifteenth (15th) day of each month, as far as practical, unless the 15th day of the month falls on Saturday, then the meter will be read on the preceding Friday.  If the 15th day of the month falls on a Sunday, then the meter will be read on the following Monday each month.  East River will mail the Member a bill for electric service furnished hereunder on or before the first day of the following month.  Electric service furnished hereunder shall be paid for at the offices of East River in Madison, South Dakota, monthly within fifteen (15) days after the bill is mailed to the Member.

If the Member disputes any bill or account or any other matter arising out of this Agreement, the Member shall continue to pay such bill or account to East River and East River will deposit the amount in dispute in an escrow account until the dispute is settled.  The interest earned on the escrow account shall accumulate and become a part of said escrow account.  The Party or Parties in whose favor the dispute is settled shall be entitled, as the case may be, to all or a pro rata share of such escrow account.

Exhibit A - Page 000035

Neither party to this Agreement shall be entitled to or liable to pay interest resulting from an error in meter reading or in the computation of the bill.

The remedy given herein to East River shall be in addition to all other remedies available to East River, either at law or in equity, for the breach of any of the provisions of this Agreement. Disputes as to payment of an account or any other dispute shall not relieve the Member from any of its obligations under this Agreement, including the obligation to make payments when due.

6.    <u>Meter Testing and Billing Adjustment</u>:  East River shall test and calibrate, or cause to be tested and calibrated, meters by comparison with accurate standards at least once each year and if inaccurate shall be calibrated to within one fourth of one percent (¼ of 1%) plus or minus. East River shall also make, or cause to be made, special meter tests at any time at the request of Member.  The cost of all tests shall be borne by East River; provided, however, that if any special meter test made at the request of Member shall disclose that the meters are recording accurately, within one percent (1%) plus or minus, Member shall reimburse East River for the cost of such test.  The readings of any meter which shall have been disclosed by test to be inaccurate (exceeding one percent (1%)) shall be corrected for the ninety (90) days previous to such test in accordance with the percentage of inaccuracy found by such test.  If any meter shall fail to register for any period, Member and East River shall agree to an estimated amount of power and energy furnished during such period and East River shall render a bill therefore.

7.    <u>Notice of Meter Reading or Test</u>:  East River shall notify Member in advance of the time of any meter reading or test so that a representative of Member may be present at such meter reading or test.

8.    <u>Right of Access</u>:  Duly authorized representatives of either party hereto shall be permitted to enter the premises of the other party hereto at all reasonable times in order to carry out the provisions hereof.

9.    <u>Continuity of Service</u>:  East River shall use reasonable diligence to provide a constant and uninterrupted supply of electric power and energy hereunder.  If the supply of electric power and energy shall fail or be interrupted, or become defective through an act of God or of the public enemy, or because of accident, labor troubles, or any other cause beyond the control of East River, East River shall not be liable therefore or for damages caused thereby.

10.    <u>Term</u>:  This Agreement shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service and shall remain in effect until December 31, 2038, and thereafter until terminated by either Party giving to the other not less than six months' written notice of its intention to terminate.

11.    <u>Notices</u>:  Any notice, demand, or request required or authorized by this Agreement shall be deemed properly given if mailed, postage prepaid, to the parties at the address designated in this Agreement.

12.    <u>Special Conditions of Service</u>:  Any special conditions of service to this Agreement shall be set forth in Exhibit C attached hereto.

13.    <u>Waivers</u>:  Any waiver at any time by either party hereto of its rights with respect to default or any other matter arising in connection with this Agreement shall not be deemed to be waiver with respect to any subsequent default or matter.

14.    <u>Transfers by the Member</u>:  (a)  The Member agrees that during the term of this Agreement, so long as any of the Notes are outstanding, the Member will not, without the approval in writing of East River and the Administrator, take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation, or to sell, lease, or transfer

Exhibit A - Page 000037

(or make any agreement therefore), all or a substantial portion of its assets, whether now owned or hereafter acquired. Notwithstanding the foregoing, the Member may take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation or to sell, lease, or transfer (or make any agreement therefore) all or a substantial portion of its assets, whether now owned or hereafter acquired, so long as the Member shall pay such portion of the outstanding indebtedness on the Notes as shall be determined by East River with the prior written consent of the Administrator and shall otherwise comply with such reasonable terms and conditions as the Administrator and East River may require.

(b)     The Member and East River agree that the failure or threatened failure of the Member to comply with the terms of the immediately preceding paragraph (14a.) will cause irreparable injury to East River and to the Government which cannot properly or adequately be compensated by the mere payment of money. Member agrees, therefore, that in the event of a breach or threatened breach of paragraph 14a. of this Agreement by the Member, East River, in addition to any other remedies that may be available to it judicially, shall have the right to obtain from any competent court a decree enjoining such breach or threatened breach of said paragraph 14a. or providing that the terms of said paragraph 14a. be specifically enforced.

15.     Governing Laws:  This Agreement, in all respects, shall be governed by and construed according to the laws of the State of South Dakota.

This Wholesale Power Contract and any Amendment thereto shall become effective when approved in writing by the Administrator of the Rural Utilities Service. Upon the approval of

Exhibit A - Page 000038

the Administrator and effectiveness of this contract, the Wholesale Power Contracts as assigned

to Dakota Energy Cooperative, Inc., from Beadle Electric Cooperative, Inc., and Ree Electric

Cooperative, Inc., dated March 3, 1983, and all amendments thereto shall terminate, and this

contract shall be substituted therefore.


EAST   RIVER   ELECTRIC   POWER
COOPERATIVE, INC.


By   _____
         President


ATTEST:

_____
Secretary


DAKOTA ENERGY COOPERATIVE, INC.
Member

By   _____
         President


ATTEST:

_____
Secretary

Exhibit A - Page 000039

## EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

### EXHIBIT A

East River points of delivery to serve the electrical loads of Dakota Energy Cooperative, Inc.

| | |
|---|---|
| Ames | Morningside |
| Bonilla | Polo |
| Cavour | Virgil |
| Highmore | Wolsey |
| Huron | Yale |
| Miller | |

EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

By _____
     President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By _Delbert Bushong_____
     President

ATTEST:
_Daryl Allen_____
Secretary

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994

Exhibit A - Page 000041



## EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

### EXHIBIT B

AVAILABILITY

Available to all cooperative associations which are or shall be members of East River. The electric power and energy furnished hereunder shall be separately metered and billed for each delivery point.

RATE

| | |
|---|---|
| Substation Delivery Point Charge: | $1,000/substation/month |
| Substation Capacity Charge (Non-Coincident Demand): | $3.20/kw/year |
| Coincident Demand Charge: | $6.25/kw/month |
| Energy Charge: | 16.50 mills/kwh |
| Fixed Charge: | $580,268.20/year |

MONTHLY MAXIMUM DEMAND

The monthly maximum demand shall be determined by suitable instruments and shall be the highest average rate at which energy is used during the 30-minute period of the month coincident to East River's system peak.

If the Member fails to pay any such bill or account when due, an interest charge, without prejudice to any rights of East River, including that to immediate payment, be added to the account of the Member in an amount equal to the lower of one percent (1%) per month or fraction thereof or the highest legal rate of interest on the unpaid balance remaining unpaid from the date such bill is due and payable. For the purpose of computing interest under this

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994

Exhibit A - Page 000043

paragraph, a month shall be thirty (30) days.  No interest shall be charged hereunder if the

Member has mailed the amount due and such mail is postmarked on or before the fifteenth (15th)

day of the month.

EAST   RIVER   ELECTRIC   POWER
COOPERATIVE, INC.

By  _____
        President

ATTEST:


_____
Secretary


DAKOTA ENERGY COOPERATIVE, INC.
Member

By  _____
        President

ATTEST:

_____
Secretary



## DAKOTA ENERGY COOPERATIVE, INC.
### HURON, SOUTH DAKOTA

### Resolution No.

"Wholesale Power Contract"

BE IT RESOLVED, that the form, terms, and provisions of the Wholesale Power Contract and Exhibits A and B attached thereto, between Dakota Energy Cooperative, Inc., and East River Electric Power Cooperative, Inc., dated the ___3___ day of __Jan 1995__, presented to this meeting and filed with the minutes thereof is hereby approved. The President and Secretary of the Cooperative are hereby authorized and directed to execute same for, on behalf of and in the name of the Cooperative and cause the aforesaid Wholesale Power Contract and Exhibits A and B attached thereto to be delivered to East River Electric Power Cooperative, Inc., subject to the approval of the Administrator of the Rural Utilities Service.

### CERTIFICATION

I, __David Allen__, do hereby certify that I am the Secretary of Dakota Energy Cooperative, Inc., that the foregoing is a true and correct copy of resolution adopted by the Board of Directors of said Cooperative at the regular meeting of said Board _____, at which meeting a quorum of the Directors was present and acted throughout, and said resolution is in full force and effect and has not been rescinded or modified.

In Witness Whereof, I have hereunto set my hand and affixed the seal of the Cooperative this ___3___ day of __January 1995__.

Secretary

Corporate Seal

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994

Exhibit A - Page 000046



# SUPPLEMENTAL AGREEMENT
## BETWEEN
## EAST RIVER ELECTRIC POWER COOPERATIVE, INC.,
## AND
## RURAL UTILITIES SERVICE
## AND
## DAKOTA ENERGY COOPERATIVE, INC.

AGREEMENT made as of __January 1, 1995__ between East River Electric Power

Cooperative, Inc., 121 SE First Street, PO Drawer E, Madison, South Dakota, 57042 (hereinafter

called the "Seller"), and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 38, Huron,

South Dakota, 57350 (hereinafter called the "Member"), its successors and assigns and the United

States of America (hereinafter called the "Government"), acting through the Administrator of the

Rural Utilities Service (hereinafter called the "Administrator").

WHEREAS, the Seller and the Member have entered into a Wholesale Power Contract

for the purchase and sale of electric power and energy, which contract is attached hereto and is

hereinafter called the "Power Contract"; and

WHEREAS, the execution of the Power Contract between the Member and the Seller is

subject to the approval of the Administrator under the terms of the loan contracts entered into

with the Administrator by the Seller and the Member respectively; and

WHEREAS, the Government is relying on said Power Contract and similar contracts

between the Seller and other borrowers from the Rural Utilities Service to assure that the   Notes'

referred to in the Power Contract are repaid and the purposes of the Rural Electrification act of

Exhibit A - Page 000048

1936, as amended, are carried out and the Seller and Member, by executing this Supplemental Agreement, acknowledge that reliance;

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, and the approval by the Administrator of the Power Contract, the Parties hereto agree as follows:

The Seller, the Member, and the Administrator agree that if the Member shall fail to comply with any provision of the Power Contract, the Seller or the Administrator, if the Administrator so elects, shall have the right to enforce the obligations of the Member under the provisions of the Power Contract by instituting all necessary actions at law or suits in equity, including, without limitation, suits for specific performance.  Such rights of the Administrator to enforce the provisions of the Power Contract are in addition to and shall not limit the rights which the Administrator shall otherwise have as third-party beneficiary of the Power Contract or pursuant to the assignment and pledge of such Power Contract and the payments required to be made thereunder as provided in the "Mortgage" referred to in the Power Contract.  The Government shall not, under any circumstances, assume or be bound by the obligations of the Seller under the Power Contract except to the extent the Government shall agree in writing to accept and be bound by such obligations.

Exhibit A - Page 000049

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the day and year first above mentioned.

EAST    RIVER    ELECTRIC    POWER
COOPERATIVE, INC.

By _____
       President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By _____
       President

ATTEST:

_____
Secretary

UNITED STATES OF AMERICA

By _____
       Administrator of the
       Rural Utilities Service

Exhibit A - Page 000050



## U.S. DEPARTMENT OF AGRICULTURE
## RURAL ELECTRIFICATION ADMINISTRATION

South Dakota 43 Minnehaha

**REA BORROWER DESIGNATION**  South Dakota 50 Dakota

**THE WITHIN** Amendment No. 8 to Wholesale Power Contract between East River

Electric Power Cooperative, Inc., and Dakota Energy Cooperative, Inc., dated

April 4, 1996

**SUBMITTED BY THE ABOVE DESIGNATED BORROWER PURSUANT TO THE
TERMS OF THE LOAN CONTRACT, IS HEREBY APPROVED SOLELY FOR THE
PURPOSES OF SUCH CONTRACT**

*Carl E. Mny—*

**FOR THE ADMINISTRATOR**

**DATED**

2/28/96

Pursuant to the Department of Agriculture Reorganization Act of 1994 (Title II of Public Law No.
103-354), the United States Secretary of Agriculture simultaneously abolished the Rural
Electrification Administration (REA) and established the Rural Utilities Service (RUS) to succeed
REA as the agency for carrying out electric and telephone loan program activities authorized by
law, including the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.).

REA FORM 25a     REV 5-73

AMENDMENT 2
TO
WHOLESALE POWER CONTRACT
BETWEEN
EAST RIVER ELECTRIC POWER COOPERATIVE, INC.
AND
DAKOTA ENERGY COOPERATIVE, INC.

AGREEMENT made as of April 4, 1996, between East River Electric Power Cooperative, Inc., 121 Southeast First Street, P.O. Drawer E, Madison, South Dakota  57042 (hereinafter called "East River") and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 830, Huron, South Dakota  57350 (hereinafter called the "Member"), its successors and assigns.

WHEREAS, the Western Area Power Administration (Western) has requested that East River and all other Western customers convert to a calendar month billing period during 1996; and

WHEREAS, Basin Electric Power Cooperative (Basin) has agreed to said proposed billing change and also desires that its members adopt a calendar month billing period; and

WHEREAS, East River desires to conform its billing procedure to the billing procedure adopted by other Basin members; and

WHEREAS, it is to the advantage and best interest of East River's members that the Wholesale Power Contract between East River and its members be amended to provide the monthly billing procedure as stated herein;

-2-

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, and the approval by the Administrator of the Rural Utilities Service (RUS), the Wholesale Power Contract between East River and the Member dated January 1, 1995 is hereby amended as provided herein and the Parties hereto agree as follows:

1.    That Paragraph 5, Meter Readings and Payment of Bills be amended to substitute the following:

5.    Meter Readings and Payment of Bills.  Appropriate operating procedures shall be established to monthly determine the electric power and energy delivered and to be billed by East River to the Member.  Electric power and energy furnished hereunder shall be paid for at the office of East River in Madison, South Dakota, monthly within fifteen (15) days after the bill therefore is mailed to the Member.

If the Member disputes any bill or account or any other matter arising out of this Agreement, the Member shall continue to pay such bill or account to East River and East River will deposit the amount in dispute in an escrow account until the dispute is settled.  The interest earned on the escrow account shall accumulate and become a part of said escrow account.  The Party or

-3-

Parties in whose favor the dispute is settled shall be entitled, as the case may be, to all or a pro rata share of such escrow account.

Neither Party to this Agreement shall be entitled to or liable to pay interest from an error in meter reading or in the computation of the bill.

The remedy given herein to East River shall be in addition to all other remedies available to East River, either at law or in equity, for the breach of any of the provisions of this Agreement. Disputes as to payment of an account or any other dispute shall not relieve the Member from any of its obligations under this Agreement, including the obligation to make payments when due.

2.   That any provision contrary to this Amendment contained in said Wholesale Power Contract and Exhibits thereto shall be void and of no force and effect.

3.   All provisions of the Wholesale Power Contract between East River and Member shall remain in full force and effect except such provisions as herein amended or modified, and as to those provisions herein amended or modified and the additional provisions contained in this Amendment 2 to Wholesale Power

1

-4-

Contract shall become effective when approved in writing by the
Administrator of the Rural Utilities Service.


EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

By _Wayne Wright_____
                President

ATTEST:

_Keith Kleppin_____
Secretary


DAKOTA ENERGY COOPERATIVE, INC.

By _Delbert Bushong_____
                President

ATTEST:

_Gerald Allen_____
Secretary



| ☑ Bob | ☑ Greg H. |
| ☐ Lynn | ☐ John |
| ☐ Dave | ☐ Greg P. |

*File*

**EAST RIVER**
ELECTRIC POWER COOPERATIVE
121 Southeast First St.          P.O. Box 227
Madison, SD 57042      Telephone (605) 256-4536

May 9, 2006

Mr. Robert Rademacher, Manager
Dakota Energy Cooperative, Inc.
PO Box 830
Huron, SD  57350

Dear Bob:

I am pleased to provide for your permanent record one copy of the approved and executed Amendment 2 to the Wholesale Power Contract between East River and Dakota Energy Cooperative, Inc.

At its regular meeting on May 4, 2006, East River's Board of Directors approved this Amendment which extends the term of the current Wholesale Power Contract from December 31, 2038, to December 31, 2058.  East River highly values and appreciates your support and willingness to extend the term of this contract.  This action secures East River and Basin Electric's ability to obtain financing for future power supply and transmission facilities for the benefit of their members, including Dakota Energy Cooperative, Inc.

Also at its May 4, 2006, meeting, East River's Board approved the extension of the term from December 31, 2039, to December 31, 2050, of East River's supplemental Wholesale Power Contract with Basin Electric.

Last, the East River Board also acted not to accept Sioux Valley Energy's action to extend the term of its all-requirements contract with East River to December 31, 2050, rather than December 31, 2058.  East River will continue discussions with Sioux Valley Energy to determine the outcome of this matter.

Again, thank you for your support.

With best regards,

Jeffrey L. Nelson
General Manager

JLN/sl

Enc.

RECEIVED
MAY 1 0 2006

c:     Delbert Bushong, President (w/o enclosure)

A Touchstone Energy® Cooperative
The power of human connections

Exhibit A - Page 000057

AMENDMENT 2
TO
WHOLESALE POWER CONTRACT
BETWEEN
EAST RIVER ELECTRIC POWER COOPERATIVE, INC.
AND
DAKOTA ENERGY COOPERATIVE, INC.


AGREEMENT made as of February 2, 2006, between East River Electric Power Cooperative, Inc., 121 Southeast First Street, P.O. Box 227, Madison, South Dakota 57042 (hereinafter called "Seller") and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 830, Huron, South Dakota 57350 (hereinafter called the "Member"), its successors and assigns.

WHEREAS, the Seller and the Member have entered into a Wholesale Power Contract for the purchase and sale of electric power and energy, which contract is attached hereto and is hereinafter called the "Power Contract"; and

WHEREAS, the execution of the Power Contract between the Member and the Seller is subject to the approval of the Administrator under the terms of the loan contracts entered into with the Administrator by the Seller and the Member respectively; and

WHEREAS, the indebtedness created by such loans and loan guarantees made by the Government is evidenced, and, with respect to future indebtedness, shall be evidenced, by certain notes (hereinafter collectively called the "Notes") secured by that

-2-

Supplemental Mortgage and Security Agreement made by and between the Seller, the Government, and National Rural Utilities Cooperative Finance Corporation (CFC) or other lenders (said Supplemental Mortgage and Security Agreement as it may heretofore or hereafter be amended, supplemented, and/or restated from time to time being hereinafter called the "Mortgage"); and

WHEREAS, this Agreement and payments due to the Seller under this Agreement shall be pledged and assigned to secure the Notes as provided in the Mortgage; and

WHEREAS, Seller expects to obtain additional loans from the Government and supplemental lenders within the next 8 years, which the due date of such loans will exceed the term of the Power Contract between Seller and the Member, and that it is to the advantage and best interest of the Seller and Member to extend the term of the Power Contract;

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, and the approval by the Administrator of the Power Contract, the Power Contract between the Seller and the Member dated January 1, 1995 is hereby amended as provided herein and the Parties hereto agree as follows:

1.   That paragraph 10 - Term, of the Power Contract between the Seller and Member be amended to substitute the following:

-3-

    <u>Term.</u>  This Agreement shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service and shall remain in effect until December 31, 2058 and thereafter until terminated by either Party giving to the other not less than six month's written notice of its intention to terminate.

    2.  All provisions of the Power Contract between the Seller and Member shall remain in full force and effect except such provisions as herein amended or modified, and as to those provisions herein amended or modified and the additional provisions contained in this Amendment 2 to Wholesale Power Contract shall become effective when approved in writing by the Administrator of the Rural Utilities Service.

    EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

    By _Wayne Wright_____
                President

ATTEST:

_____
Secretary

    DAKOTA ENERGY COOPERATIVE, INC.

    By _Delbert Buskma_____
                President

ATTEST:

_____
Secretary

Exhibit A - Page 000060

## U.S. DEPARTMENT OF AGRICULTURE
### RURAL UTILITIES SERVICE

|  |  |
|---|---|
|  | **SD-50 (Dakota)** |
| **RUS BORROWER DESIGNATION** | **SD-43 (Minnehaha)** |

THE WITHIN    Amendment 4 to the Wholesale Power Contract between

East River Electric Power Cooperative, Inc. and Dakota Energy Cooperative, Inc.

dated August 6, 2015.

SUBMITTED BY THE ABOVE DESIGNATED BORROWER PURSUANT TO THE
TERMS OF THE LOAN CONTRACT, IS HEREBY APPROVED SOLELY FOR THE
PURPOSES OF SUCH CONTRACT.

FOR THE ADMINISTRATOR

DATED

2/26/16

RUS FORM 28a   REV 5-73
(a computer generated facsimile)

Exhibit A - Page 000061

Exhibit A - Page 000062

AMENDMENT 3
TO
WHOLESALE POWER CONTRACT
BETWEEN
EAST RIVER ELECTRIC POWER COOPERATIVE, INC.
AND
DAKOTA ENERGY COOPERATIVE, INC.


AGREEMENT made as of August 6, 2015, 2015, between East River Electric Power Cooperative, Inc., 211 S. Harth Avenue, P.O. Box 227, Madison, South Dakota 57042 (hereinafter called "Seller"), an electric cooperative corporation organized and existing under the laws of the State of South Dakota, and Dakota Energy Cooperative, Inc., 40294 U.S. Hwy 14, PO Box 830, Huron, SD 57350 (hereinafter called "Member"), its successors and assigns, a South Dakota cooperative utility existing under the laws of the State of South Dakota.

WHEREAS, the Seller and the Member entered into a Wholesale Power Contract dated January 1, 1995, as amended (hereinafter called the "Power Contract"); and

WHEREAS, Basin Electric Power Cooperative (hereinafter called "Basin Electric") has requested that the Seller extend the Wholesale Power Contract between Basin Electric and the Seller through December 31, 2075, because Basin Electric is planning for the eventual retirement of existing generation sources and replacement with new sources that will require substantial financing; and

WHEREAS, the Power Contract between the Seller and the Member provides the means for the Seller to meet its financial obligations to Basin Electric and, extending the Power Contract with the Member will enable the Seller to extend its Wholesale Power Contract with Basin Electric; and

WHEREAS, the Seller will continue to have its own on-going financing needs to fund its plant expansion with the term of the financing arrangements soon exceeding the term of the current Power Contract thereby hampering the Seller's ability to raise capital if the Power Contract is not extended;

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual undertakings herein contained, the parties hereby agree as follows:

1.    That Section 10 - Term, of the Power Contract between the Seller and the Member, be amended as follows:  delete "December 31, 2058" and insert "December 31, 2075."

2.    The Effective Date of this Amendment is October 1, 2015.

3.    This Amendment is subject to the approval of the Administrator of the Rural Utilities Services.

East River Electric Power Cooperative, Inc.

President

ATTEST

Secretary

Dakota Energy Cooperative, Inc.

President

ATTEST

Secretary

Excerpt from the Minutes of
East River Electric Power Cooperative, Inc.
Board of Directors Meeting
August 6, 2015

It was moved by Ken Gillaspie, seconded by Isabel Trobaugh, to adopt the following resolution:

RESOLUTION NO.: 82015-2

SUBJECT: WHOLESALE   POWER   CONTRACT   AND   SUPPLEMENTAL
         WHOLESALE   POWER   CONTRACT   AMENDMENT:   17-YEAR
         EXTENSION

WHEREAS, East River Electric Power Cooperative, Inc. (East River) has requested that its membership extend their existing Wholesale Power Contracts and Supplemental Wholesale Power Contracts with East River from December 31, 2058, to December 31, 2075, through contract amendments; and

WHEREAS, the contract amendments with the Class D East River members also address other issues such as transmission and ancillary services; and

WHEREAS, all of East River's twenty-five member systems have agreed to extend and amend their contracts;

NOW, THEREFORE, BE IT RESOLVED, that the East River Board of Directors hereby approves and authorizes the President and Secretary to execute the contract amendments with all of East River's twenty-five member systems to this effect.

Motion carried unanimously.


CERTIFICATION

I, Robert Sahr, Assistant Secretary to the Board of Directors of East River Electric Power Cooperative, Inc., as designated by the Board of Directors to certify cooperative documents pursuant to Resolution No. 122006-1, do hereby certify that the above resolution is a correct copy of the resolution as it appears in the minutes and records of this Cooperative and which resolution was adopted at the meeting of the Board of Directors held on August 6, 2015; at the meeting a quorum of the directors was present and acted throughout; and none of the resolutions contained in the minutes have been rescinded or modified.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Cooperative, this 19th day of October, 2015.

*Robert K. Sahr*

Assistant Secretary to the East
River Electric Board of Directors

Exhibit A - Page 000065

## DAKOTA ENERGY COOPERATIVE, INC.

## RESOLUTION

## WHOLESALE POWER CONTRACT AMENDMENT BY AND BETWEEN EAST RIVER ELECTRIC POWER COOPERATIVE, INC. AND DAKOTA ENERGY COOPERATIVE, INC.

**WHEREAS,** Basin Electric Power Cooperative, Inc., and East River Electric Power Cooperative, Inc., entered into a Wholesale Power Contract on the 5th day of April, 1962, as amended; and

**WHEREAS,** Basin has requested and East River has agreed to amend the Wholesale Power Contract; and

**WHEREAS,** said Amendment to said Wholesale Power Contract extends the term of said Contract from December 31, 2058, to December 31, 2075; and

**WHEREAS,** East River's present Wholesale Power Contract with Dakota Energy Cooperative, Inc. executed on the 1st day of January, 1995, as amended, has an expiration date of December 31, 2058; and

**WHEREAS,** East River has requested and Dakota Energy Cooperative, Inc. has agreed to amend the Wholesale Power Contract by extending the term from December 31, 2058, to December 31, 2075;

**NOW, THEREFORE, BE IT RESOLVED,** by the Board of Directors of Dakota Energy Cooperative, Inc. that proposed Amendment 3 to the Wholesale Power Contract between East River and Dakota Energy Cooperative, Inc. in the form as presented at this meeting is hereby approved.

### CERTIFICATE OF SECRETARY

I, David Allen, Secretary of the Board of Directors of Dakota Energy Cooperative, Inc., certify that the following is a true and correct copy of a resolution adopted by the Board of Directors of said Cooperative at their regular meeting of the Board held on July 28, 2015, at which meeting a quorum of directors were present and the above resolution is attached to the minutes of the meeting and has not been rescinded or modified.

**IN WITNESS WHEREOF,** I have set my hand and affixed the seal of the Cooperative this 28th day of July 2015.

**(Corporate Seal)**                                   David Allen, Secretary

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
|---|---|---|
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
|---|---|
| Plaintiff, | |
| vs. | **AFFIDAVIT OF LEE SCHOENBECK FOR REMOVAL OF JUDGE** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

STATE OF SOUTH DAKOTA ）
                      ss:
COUNTY OF CODINGTON ）

COMES NOW Lee Schoenbeck, and, on his oath, deposes and states as follows:

1. I am the attorney of record for the Plaintiff, Dakota Energy Cooperative, Inc., in the above titled action, case number 39CIV.20-108, Lake County, Third Judicial Circuit Court.

2. That in the ordinary course of litigation, such action or some issue therein is expected to come on for trial before the presiding judge in this case, and I have good reason to believe and do actually believe that the Plaintiff cannot have a fair and impartial trial before the presiding judge in this case.

3. That pursuant to SDCL 15-12-21.1, and on behalf of the Plaintiff, I have informally requested Judge Patrick T. Pardy to disqualify himself.

4. That pursuant to SDCL 15-12-22, on behalf of Plaintiff, we exercise our right to remove the currently assigned judge from this matter.

5. That this Affidavit is being made in good faith and not for the purposes of securing delay.

LEE SCHOENBECK

Subscribed and sworn to before me this 12th day of November, 2020.

JENNIFER X. FREDERICK
SEAL   NOTARY PUBLIC   SEAL
SOUTH DAKOTA

Notary Public – South Dakota
My certificate expires: 11/15/26

Exhibit A - Page 000067

STATE OF SOUTH DAKOTA    )                IN CIRCUIT COURT

                               : SS

COUNTY OF LAKE          )         THIRD JUDICIAL CIRCUIT

---

DAKOTA ENERGY COOPERATIVE, INC.,

        Plaintiff,

      vs.

EAST RIVER ELECTRIC POWER COOPERATIVE, INC.,

        Defendant.

39CIV. 20-108

**CERTIFICATE OF SERVICE**

---

       I hereby certify that I have served a true and correct copy of the *Affidavit of Lee Schoenbeck for Removal of Judge* upon the following:

       East River Electric Power Cooperative, Inc.
       C/o Tom Boyko, CEO
       211 South Harth Ave.
       Madison, SD 57042
       *Defendant*

via first class U.S. Mail, postage prepaid, this 16th day of November, 2020.

                 Respectfully submitted,

                 /s/ Lee Schoenbeck
                 Lee Schoenbeck
                 Joe Erickson
                 SCHOENBECK LAW, PC
                 PO Box 1325
                 Redlin Art Center
                 1200 Mickelson Dr., #310
                 Watertown, SD 57201
                 Phone: (605) 886-0010
                 Fax: (605) 886-0011
                 E-mail:  lee@schoenbecklaw.com
                              joe@schoenbecklaw.com

                 Peter W. Herzog III (*pro hac vice to be filed*)

Joel S. Neckers (*pro hac vice to be filed*)
Michele O. Choe (*pro hac vice to be filed*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
Fax: (303) 244-1879
E-mail:   pherzog@wtotrial.com
            neckers@wtotrial.com
            choe@wtotrial.com

*Attorneys for Plaintiff Dakota Energy
Cooperative, Inc.*

2

STATE OF SOUTH DAKOTA  )
                     :SS

IN CIRCUIT COURT

COUNTY OF LAKE  )

THIRD JUDICIAL CIRCUIT

* * * * * * * * * * * * * * * * * * * *

DAKOTA ENERGY COOPERATIVE, INC.,

39CIV20-108

      Plaintiff,

vs.

ORDER
APPOINTING
JUDGE

EAST RIVER ELECTRIC POWER
COOPERATIVE, INC.,

          Defendant.

* * * * * * * * * * * * * * * * * * * * * *

WHEREAS, an Affidavit for Change of Judge has been filed in the above entitled action pursuant to SDCL 15-12-21; and

WHEREAS, by filing of such document, it has resulted in the disqualification of the Honorable Patrick T. Pardy as judge therein; now, therefore, it is

HEREBY ORDERED that the Honorable Kent A. Shelton, judge of the Third Judicial Circuit or such other circuit judge of the State of South Dakota as may be hereinafter appointed is hereby appointed to hear such action in place of the disqualified circuit court judge.

DATED at Brookings, South Dakota this 17th day of November, 2020.

BY THE COURT:

Gregory J. Stoltenburg
Presiding Judge
Third Judicial Circuit

ATTEST:

Clerk of Courts/Deputy
(SEAL)

STATE OF SOUTH DAKOTA
Third Judicial Circuit Court
I hereby certify that the foregoing instrument is a true and correct copy of the original as the same appears on file in my office on this date:

NOV 17 2020

Linda J. Klosterman
Lake County Clerk of Courts
By: Linda Klosterman

**FILED**

NOV 17 2020

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
3RD CIRCUIT CLERK OF COURT
By ljK

Exhibit A - Page 000070

| STATE OF SOUTH DAKOTA | ) | | IN CIRCUIT COURT |
| COUNTY OF LAKE | : SS ) | | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> EAST RIVER ELECTRIC POWER COOPERATIVE, INC., <br><br> Defendant. | 39CIV20-000108 <br><br> **NOTICE OF APPEARANCE** |

TO:    DAKOTA ENERGY COOPERATIVE, INC., AND ITS RESPECTIVE
        COUNSEL OF RECORD:

        PLEASE TAKE NOTICE that Dana Van Beek Palmer of Lynn, Jackson, Shultz &

Lebrun, P.C., hereby makes an appearance as counsel for Defendant in the above-entitled

matter.  All further notices, correspondence, pleadings, orders and other documents

required or permitted by applicable law shall be served upon the undersigned attorney, in

addition to R. Alan Peterson and Michael L. Luce of Lynn, Jackson, Shultz & Lebrun,

P.C.

        Dated November 19, 2020.

                                        LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

                                        */s/ Dana Van Beek Palmer*
                                        R. Alan Peterson
                                        Michael L. Luce
                                        Dana Van Beek Palmer
                                        110 N. Minnesota Ave., Ste. 400
                                        Sioux Falls, SD 57104

                                        1

Telephone:  (605) 332-5999
E-mails:  rpeterson@lynnjackson.com
          mluce@lynnjackson.com
          dpalmer@lynnjackson.com
*Attorneys for East River Electric Power
Cooperative, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on November 19, 2020, I caused the following document:

- **NOTICE OF APPEARANCE**

to be filed electronically with the Clerk of Court through Odyssey File & Serve, and that Odyssey File & Serve will serve an electronic copy upon the following:

Lee Schoenbeck
Joe Erickson
Schoenbeck Law, PC
PO Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD  57201
Telephone: (605) 886-0010
E-mails: lee@schoenbecklaw.com
         joe@schoenbecklaw.com
*Attorneys for Dakota Energy
Cooperative, Inc.*

*/s/ Dana Van Beek Palmer*
Dana Van Beek Palmer

2

Exhibit A - Page 000072

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| COUNTY OF LAKE | : SS ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV20-000108 |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| vs. | |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

TO:    DAKOTA ENERGY COOPERATIVE, INC., AND ITS RESPECTIVE
       COUNSEL OF RECORD:

       PLEASE TAKE NOTICE that Michael L. Luce of Lynn, Jackson, Shultz &

Lebrun, P.C., hereby makes an appearance as counsel for Defendant in the above-entitled

matter.  All further notices, correspondence, pleadings, orders and other documents

required or permitted by applicable law shall be served upon the undersigned attorney, in

addition to R. Alan Peterson of Lynn, Jackson, Shultz & Lebrun, P.C.

       Dated November 19, 2020.

                          LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

                          /s/ Mic ael  .    ce
                          R. Alan Peterson
                          Michael L. Luce
                          110 N. Minnesota Ave., Ste. 400
                          Sioux Falls, SD 57104
                          Telephone:  (605) 332-5999
                          E-mails:  rpeterson@lynnjackson.com
                                    mluce@lynnjackson.com

1

*Attorneys for East River Electric Power Cooperative, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on November 19, 2020, I caused the following document:

- **NOTICE OF APPEARANCE**

to be filed electronically with the Clerk of Court through Odyssey File & Serve, and that Odyssey File & Serve will serve an electronic copy upon the following:

Lee Schoenbeck
Joe Erickson
Schoenbeck Law, PC
PO Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD  57201
Telephone: (605) 886-0010
E-mails: lee@schoenbecklaw.com
            joe@schoenbecklaw.com
    *Attorneys for Dakota Energy*
    *Cooperative, Inc.*

/s/ Mic ael  .    ce
 Michael L. Luce

2

Exhibit A - Page 000074

| | |
|---|---|
| STATE OF SOUTH DAKOTA ) | IN CIRCUIT COURT |
| : SS | |
| COUNTY OF LAKE ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV20-000108 |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| vs. | |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

TO:   DAKOTA ENERGY COOPERATIVE, INC., AND ITS RESPECTIVE
COUNSEL OF RECORD:

PLEASE TAKE NOTICE that R. Alan Peterson of Lynn, Jackson, Shultz &

Lebrun, P.C., hereby makes an appearance as counsel for Defendant in the above-entitled

matter.  All further notices, correspondence, pleadings, orders and other documents

required or permitted by applicable law shall be served upon the undersigned attorney.

Dated November 19, 2020.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

*/s/ R. Alan Peterson*
R. Alan Peterson
110 N. Minnesota Ave., Ste. 400
Sioux Falls, SD 57104
Telephone:  (605) 332-5999
E-mail:  rpeterson@lynnjackson.com
  *Attorney for East River Electric Power*
  *Cooperative, Inc.*

1

Exhibit A - Page 000075

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on November 19, 2020, I caused the following document:

- **NOTICE OF APPEARANCE**

to be filed electronically with the Clerk of Court through Odyssey File & Serve, and that Odyssey File & Serve will serve an electronic copy upon the following:

> Lee Schoenbeck
> Joe Erickson
> Schoenbeck Law, PC
> PO Box 1325
> Redlin Art Center
> 1200 Mickelson Dr., #310
> Watertown, SD  57201
> Telephone: (605) 886-0010
> E-mails: lee@schoenbecklaw.com
>            joe@schoenbecklaw.com
> *Attorneys for Dakota Energy*
> *Cooperative, Inc.*

*/s/ R. Alan Peterson*
R. Alan Peterson

2

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

---

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
| Plaintiff, | |
| vs. | **MOTION FOR ADMISSION** ***PRO HAC VICE*** **OF PETER W. HERZOG III, JOEL S. NECKERS, AND MICHELE O. CHOE** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

Lee Schoenbeck and Joe Erickson, on behalf of Plaintiff, Dakota Energy Cooperative, Inc., hereby move for the admission of Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe to appear as counsel *Pro Hac Vice* on behalf of Plaintiff, Dakota Energy Cooperative, Inc., in the above-captioned matter. We are residents of South Dakota and members in good standing of the State Bar of South Dakota. We are actually associated with and will personally participate with Mr. Herzog, Mr. Neckers, and Ms. Choe in this action. We find Mr. Herzog, Mr. Neckers, and Ms. Choe to be reputable attorneys and recommend them admission to practice before this Court. This motion is further supported by the Verified Petitions by Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe, for Admission *Pro Hac Vice*.

Dated: November 24, 2020

Respectfully submitted,

Lee Schoenbeck
Joe Erickson
SCHOENBECK LAW, PC
PO Box 1325
Redlin Art Center

1

1200 Mickelson Dr., #310
Watertown, SD 57201
Phone: (605) 886-0010
Fax: (605) 886-0011
E-mail:  lee@schoenbecklaw.com
E-mail: joe@schoenbecklaw.com

Peter W. Herzog III (*pro hac vice to be filed*)
Joel S. Neckers (*pro hac vice to be filed*)
Michele O. Choe (*pro hac vice to be filed*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
Fax: (303) 244-1879
E-mail:  pherzog@wtotrial.com
             neckers@wtotrial.com
             choe@wtotrial.com

*Attorneys for Plaintiff Dakota Energy Cooperative, Inc.*

**FILED**

NOV 3 0 2020

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
3RD CIRCUIT CLERK OF COURT

By_____

Exhibit A - Page 000078

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
| Plaintiff, | |
| vs. | **VERIFIED PETITION BY MICHELE O. CHOE FOR ADMISSION *PRO HAC VICE*** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

I, Michele O. Choe, under oath and penalties of perjury, hereby swear that the following statements are true, correct, and complete:

1.      My name is Michele O. Choe, and I am a practicing partner at the law firm of Wheeler Trigg O'Donnell LLP, 370 Seventeenth Street, Suite 4500, Denver, Colorado 80202.

2.      Plaintiff, Dakota Energy Cooperative, Inc., is and will be represented by South Dakota Counsel, Lee Schoenbeck and Joe Erickson, with the law firm Schoenbeck Law, PC, 1200 Mickelson Drive, Suite 310, Watertown, South Dakota 57201.

3.      Mr. Schoenbeck and Mr. Erickson will be associated with me as required under South Dakota Codified Law 16-18-2.

4.      Colorado is my state of residence, and I was admitted to practice law in the state of Colorado on October 17, 2011, and my attorney registration number is No. 43656.

5.      I am currently a member in good standing of the bar of the state of Colorado.

1

Exhibit A - Page 000079

6.     I have never been subject to disciplinary action by the bar or courts of Colorado, or of any state during the preceding five years.

7.     I have never been denied admission to the courts of Colorado, or any state or federal court in the preceding five years.

8.     Good cause exists for my appearance, as I have extensive expertise and knowledge in the preparation and trial required for this type of matter.

9.     I have read, am familiar with, and will be bound by the Rules of the State Bar of South Dakota.

10.     A South Dakota Sales and Use Tax License number for my law firm, Wheeler Trigg O'Donnell LLP, has been issued by the South Dakota Department of Revenue.

Dated this 19th day of November, 2020.

_____
Michele O. Choe

Subscribed and sworn to before me this 19th day of November, 2020.

(SEAL)

Notary Public, State of Colorado
My commission expires: 11/12/21

JULIE CHRISTMAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20094036936
COMMISSION EXPIRES 11/12/2021

# FILED

NOV 3 0 2020

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
3RD CIRCUIT CLERK OF COURT

By_____

2

Exhibit A - Page 000080

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| COUNTY OF LAKE | : SS ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
| Plaintiff, | |
| vs. | **VERIFIED PETITION BY PETER W. HERZOG III FOR ADMISSION _PRO HAC VICE_** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

I, Peter W. Herzog III, under oath and penalties of perjury, hereby swear that the following statements are true, correct, and complete:

1.     My name is Peter W. Herzog III, and I am a practicing partner at the law firm of Wheeler Trigg O'Donnell LLP, 211 N. Broadway, Suite 2825, St. Louis, Missouri 63102.

2.     Plaintiff, Dakota Energy Cooperative, Inc., is and will be represented by South Dakota Counsel, Lee Schoenbeck and Joe Erickson, with the law firm Schoenbeck Law, PC, 1200 Mickelson Drive, Suite 310, Watertown, South Dakota 57201.

3.     Mr. Schoenbeck and Mr. Erickson will be associated with me as required under South Dakota Codified Law 16-18-2.

4.     Missouri is my state of residence, and I was admitted to practice law in the state of Missouri on April 27, 1987, and my attorney identification number is No. 36429.

5.     I am currently a member in good standing of the bar of the state of Missouri.

1

6.      I have never been subject to disciplinary action by the bar or courts of Missouri, or of any state during the preceding five years.

7.      I have never been denied admission to the courts of Missouri, or any state or federal court in the preceding five years.

8.      Good cause exists for my appearance, as I have extensive expertise and knowledge in the preparation and trial required for this type of matter.

9.      I have read, am familiar with, and will be bound by the Rules of the State Bar of South Dakota.

10.     A South Dakota Sales and Use Tax License number for my law firm, Wheeler Trigg O'Donnell LLP, has been issued by the South Dakota Department of Revenue.

Dated this 18th day of November, 2020.

_____
Peter W. Herzog III

Subscribed and sworn to before me this 18th day of November, 2020.

KECIA LICAUSI
Notary Public, Notary Seal
State of Missouri
St. Louis City
Commission # 04409407
My Commission Expires 09-23-2023
(SEAL)

_____
Notary Public, State of Missouri
My commission expires: 9/23/2023

**FILED**

NOV 3 0 2020

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
3RD CIRCUIT CLERK OF COURT

By_____

2

Exhibit A - Page 000082

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
|---|---|---|
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
| Plaintiff, | |
| vs. | **VERIFIED PETITION BY JOEL S. NECKERS FOR ADMISSION *PRO HAC VICE*** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

I, Joel S. Neckers, under oath and penalties of perjury, hereby swear that the following statements are true, correct, and complete:

1.     My name is Joel S. Neckers, and I am a practicing partner at the law firm of Wheeler Trigg O'Donnell LLP, 370 Seventeenth Street, Suite 4500, Denver, Colorado 80202.

2.     Plaintiff, Dakota Energy Cooperative, Inc., is and will be represented by South Dakota Counsel, Lee Schoenbeck and Joe Erickson, with the law firm Schoenbeck Law, PC, 1200 Mickelson Drive, Suite 310, Watertown, South Dakota 57201.

3.     Mr. Schoenbeck and Mr. Erickson will be associated with me as required under South Dakota Codified Law 16-18-2.

4.     Colorado is my state of residence, and I was admitted to practice law in the state of Colorado on May 18, 2009, and my attorney identification number is No. 40886.

1

5.     I am currently a member in good standing of the bars of the state of Colorado and the state of Illinois (attorney identification number 6283609; admitted November 4, 2004).

6.     I have never been subject to disciplinary action by the bar or courts of Colorado, Illinois, or of any state during the preceding five years.

7.     I have never been denied admission to the courts of Colorado, Illinois, or any state or federal court in the preceding five years.

8.     Good cause exists for my appearance, as I have extensive expertise and knowledge in the preparation and trial required for this type of matter.

9.     I have read, am familiar with, and will be bound by the Rules of the State Bar of South Dakota.

10.    A South Dakota Sales and Use Tax License number for my law firm, Wheeler Trigg O'Donnell LLP, has been issued by the South Dakota Department of Revenue.

Dated this 19th day of November, 2020.

_____

Joel S. Neckers

Subscribed and sworn to before me this 19th day of November, 2020.

_____

Notary Public, State of Colorado
My commission expires: 10/24/2023

(SEAL)
**KELLY HELEN SCHULTE**
NOTARY PUBLIC
STATE OF COLORADO
Notary ID 20064044096
My Commission Expires October 24, 2023

# FILED

NOV 3 0 2020

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
3RD CIRCUIT CLERK OF COURT

By_____

Exhibit A - Page 000084

2

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | : SS | |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
| Plaintiff, | |
| vs. | **CERTIFICATE OF SERVICE** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| Defendant. | |

I hereby certify that I have served a true and correct copy of the following:

- *Motion for Admission Pro Hac Vice of Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe*;

- *Verified Petition by Peter W. Herzog III for Admission Pro Hac Vice*;

- *Verified Petition by Joel S. Neckers for Admission Pro Hac Vice*;

- *Verified Petition by Michele O. Choe for Admission Pro Hac Vice*; and

- proposed *Order Granting Admission Pro Hac Vice of Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe*

upon the following:

    R. Alan Peterson
    Michael L. Luce
    Dana Van Beek Palmer
    Lynn, Jackson, Shultz & Lebrun, P.C.
    110 N. Minnesota Ave., STE. 400
    Sioux Falls, SD 57104

    *Attorneys for Defendant*

via electronic means this 24th day of November, 2020.

Respectfully submitted,

Lee Schoenbeck
Joe Erickson
SCHOENBECK LAW, PC
PO Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD 57201
Phone: (605) 886-0010
Fax: (605) 886-0011
E-mail:   lee@schoenbecklaw.com
          joe@schoenbecklaw.com

Peter W. Herzog III (*pro hac vice to be
filed*)
Joel S. Neckers (*pro hac vice to be filed*)
Michele O. Choe (*pro hac vice to be filed*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
Fax: (303) 244-1879
E-mail:   pherzog@wtotrial.com
          neckers@wtotrial.com
          choe@wtotrial.com

*Attorneys for Plaintiff Dakota Energy
Cooperative, Inc.*

# FILED

NOV 3 0 2020

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
3RD CIRCUIT CLERK OF COURT

By

2

Exhibit A - Page 000086

| STATE OF SOUTH DAKOTA | )  | IN CIRCUIT COURT |
|  | : SS |  |
| COUNTY OF LAKE | ) | THIRD JUDICIAL CIRCUIT |

| DAKOTA ENERGY COOPERATIVE, INC., | 39CIV. 20-108 |
| | |
| Plaintiff, | |
| | **ORDER GRANTING ADMISSION** |
| vs. | ***PRO HAC VICE* OF PETER W.** |
| | **HERZOG III, JOEL S. NECKERS,** |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | **AND MICHELE O. CHOE** |
| | |
| Defendant. | |

Based upon the Motion for Admission *Pro Hac Vice* of Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe, and the accompanying Verified Petitions of Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe in Support of Motion for Admission *Pro Hac Vice*, and good cause appearing, therefore, it is now hereby:

ORDERED that Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe of Wheeler Trigg O'Donnell LLP, shall be admitted *pro hac vice* to practice before this Court, and the Motion to Admit Peter W. Herzog III, Joel S. Neckers, and Michele O. Choe *Pro Hac Vice* is granted.

BY THE COURT:

Signed: 12/1/2020 11:35:31 AM

Attest:
Klosterman, Linda
Clerk/Deputy

Hon. Kent A. Shelton
Circuit Court Judge