IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> EAST RIVER ELECTRIC POWER COOPERATIVE, INC., <br><br> Defendant. | 4:20-cv-04192-LLP <br><br><br> **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM** |

Defendant East River Electric Power Cooperative, Inc. ("East River"), by and through its counsel of record, hereby submits its Answer, Affirmative Defenses, and Counterclaim to the Complaint for Anticipatory Breach of Contract, Declaratory Relief, and Jury Trial Demand filed by Dakota Energy Cooperative, Inc. ("Dakota" or "Dakota Energy") against East River as follows:

## <u>ANSWER</u>

East River responds to the individually-numbered paragraphs of the Complaint as follows:

### Introduction

1.      East River admits that Dakota Energy purports to bring an action pertaining to East River's Bylaws, but East River disputes Dakota Energy's characterization of its claims. East River admits that it is a not-for-profit generation and transmission

1

cooperative. East River admits that its website lists several cooperative principles, the caption to one of which is "Voluntary and Open Membership." Except as admitted, the allegations in Paragraph 1 are denied.

2.      East River admits that one of the requirements of membership set forth in East River's Bylaws is that each member must agree to purchase from East River all power and energy required by the member to serve all its electric loads except as otherwise provided in the Bylaws. East River further admits that Dakota Energy entered into a wholesale power contract ("WPC") with East River in 1995 pursuant to which Dakota agreed to purchase from East River all electric power and energy required by Dakota to serve all its electric loads. East River also admits that the parties have agreed to extend the term of their wholesale power contract twice and that in 2015, the parties agreed to extend the term to December 31, 2075. East River further states that on August 5, 2015, the East River board of directors, including Dakota's board member serving on the East River board (David Allen), voted unanimously to extend all twenty-five of the East River-member system wholesale power contracts to December 31, 2075. Except as admitted, the allegations in Paragraph 2 are denied.

3.      East River denies the allegations in the first sentence of Paragraph 3. East River admits that Dakota Energy sent to East River a Dakota board resolution, which directed the Dakota management to work with East River's management to provide a buy-out dollar amount for Dakota to buy out of its wholesale power contract with East River.

2

4.      East River denies the allegations in Paragraph 4.

5.      East River denies the allegations in the first sentence of Paragraph 5. East River states that the second sentence of Paragraph 5 contains a characterization of Dakota Energy's claims to which no response is required. To the extent a response is required, East River denies the allegations in the second sentence of Paragraph 5. East River denies that Dakota Energy is entitled to any of the relief requested in its Complaint.

**The Parties**

6.      East River admits the allegations in paragraph 6.

7.      East River admits that in general, electric distribution cooperatives in South Dakota are non-profit electric utilities that are owned and governed by their consumer-members, and that as compared with investor-owned utilities, such cooperatives serve in more rural areas. East River lacks information necessary to form a belief as to the truth or accuracy of the remaining allegations in Paragraph 7 and therefore denies them.

8.      East River admits the allegations in paragraph 8.

9.      East River admits that it is a not-for-profit generation and transmission cooperative with its main campus located in Madison, South Dakota. East River admits that it does not have a direct ownership interest in any power generating plants. East River admits that it receives power from Basin Electric Power Cooperative ("Basin"), headquartered in Bismarck, North Dakota, as well as from the Western Area Power Administration ("WAPA"). East River admits that it delivers the power it receives from Basin and WAPA to its members. East River also provides transmission services to its members. Except as admitted, the allegations in Paragraph 9 are denied.

10.     East River admits the allegations in the first sentence of Paragraph 10. East

River admits the allegations in the second sentence of Paragraph 10 on information and

belief.

### Jurisdiction and Venue

11.      East River admits that the United States District Court for the District of

South Dakota, Southern Division, has jurisdiction over this matter. Except as admitted,

the allegations in Paragraph 11 are denied.

12.     East River admits that venue is proper in the United States District Court

for the District of South Dakota, Southern Division. Except as admitted, the allegations in

Paragraph 12 are denied.

13.     East River admits that the United States District Court for the District of

South Dakota, Southern Division, has subject-matter jurisdiction over this matter. Except

as admitted, the allegations in Paragraph 13 are denied.

### Factual Allegations

14.     East River admits the allegations in Paragraph 14.

15.     East River admits the allegations in Paragraph 15.

16.     As to the first sentence of Paragraph 16, East River admits that the Bylaws

of East River provide in Article I, section 4(a) that "[e]ach member shall purchase from

[East River] all electric power and energy required by the member to serve all its electric

loads" except as otherwise provided in the Bylaws. As to the second sentence of

Paragraph 16, East River admits that SDCL 47-21-49 contains the language quoted in

Paragraph 16, along with additional language. Except as admitted, the allegations in Paragraph 16 are denied.

17.     East River admits that in January 1995 Dakota Energy became a member of East River and entered into a long-term WPC with East River for the supply of electricity. East River admits that section 1 of the WPC contains the language quoted in Paragraph 17, along with additional language. Except as admitted, the allegations in Paragraph 17 are denied.

18.     East River admits that in the 1995 WPC, Dakota Energy and East River agreed to a term of 43 years, through December 31, 2038. East River further admits that in 2006, the parties agreed to extend the term to December 31, 2058, and in 2015, to December 31, 2075.

19.     East River admits that the Bylaws of East River provide in Article I, section 4(a) that "[e]ach member shall purchase from [East River] all electric power and energy required by the member to serve all its electric loads" except as otherwise provided in the Bylaws. East River further admits that under the WPC, Dakota Energy agreed to purchase from East River all electric power and energy which Dakota Energy requires to serve its electric loads. Except as admitted, the allegations in Paragraph 19 are denied.

20.     East River denies the allegations in Paragraph 20.

21.     The assertion that East River's Bylaws constitute a membership contract is a legal conclusion to which no response is required. East River admits that Art. I, § 5(a) of the East River Bylaws provides in part that "[a] member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of

Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative." Except as admitted, the allegations in Paragraph 21 are denied.

22.     East River denies the allegations in Paragraph 22.

23.     East River admits that, as stated in the WPC, the WPC and payments owed by Dakota Energy thereunder have been pledged to secure notes evidencing indebtedness created by loans and loan guarantees extended by the federal government to East River. Except as admitted, the allegations in Paragraph 23 are denied.

24.     East River denies the allegations in Paragraph 24.

25.     East River denies the allegations in Paragraph 25.

26.     East River denies the allegations in the first sentence of Paragraph 26. East River lacks information necessary to form a belief as to the truth of the allegations in the second sentence of Paragraph 26, and therefore denies them. East River lacks information necessary to form a belief as to the truth of the allegation in the third sentence of Paragraph 26 that South Dakota has traditionally enjoyed some of the lowest electricity costs in the United States, and therefore denies that allegation. East River denies that the rates East River is currently charging Dakota Energy are nearly two times the rate of what is available on the spot market.

27.     East River denies the allegations in the first sentence of Paragraph 27. East River admits that Dakota Energy sent to East River a copy of Dakota Board Resolution 2018-02, dated September 25, 2018, which resolution, among other things, requests that Dakota's management work with East River's management to provide a buy-out dollar

amount for Dakota to buy out of its long-term WPC with East River, for evaluation by the Dakota Energy board of directors. Except as admitted, the allegations in Paragraph 27 are denied.

28.     East River admits that in response to Dakota's Board Resolution 2018-02, East River's Board President, Jim Ryken, sent a letter to Dakota Energy's president, Garry Dearborn, dated March 7, 2019. The letter speaks for itself, but East River admits that the letter states, in part, that the WPC "between our two cooperatives does not provide for a buyout. As a result, we must decline your request." Except as admitted, the allegations in Paragraph 28 are denied.

29.     East River admits the allegations in the first sentence of Paragraph 29. East River admits that with the March 7, 2019 letter to Mr. Dearborn, Mr. Ryken enclosed a copy of a resolution adopted by Basin in February 2019. East River also admits that the Basin board resolution contains the language quoted in Paragraph 29, along with additional language. The resolution speaks for itself.

30.     East River denies the allegations in Paragraph 30.

**Count One**
**Anticipatory Breach Of Contract**

31.     East River incorporates its responses to the foregoing paragraphs 1-30 as if fully set forth herein.

32.     The allegations in Paragraph 32 constitute a legal conclusion as to which no response is required.

33.     East River denies the allegations in Paragraph 33. East River further states that Dakota Energy's filing of this action demanding the right to withdraw from membership prior to meeting its contractual obligations to East River is in contravention of Art. I, § 5(a) of the Bylaws.

34.     East River denies the allegations in Paragraph 34.

35.     East River denies the allegations in Paragraph 35.

36.     East River denies the allegations in Paragraph 36.

37.     East River denies the allegations in Paragraph 37.

38.     East River denies the allegations in Paragraph 38.

39.     East River denies the allegations in Paragraph 39.

40.     East River denies the allegations in Paragraph 40.

**Count Two (In the Alternative)**
**Claim for Declaratory Judgment**

41.     East River incorporates its responses to the foregoing paragraphs 1-40 as if fully set forth herein.

42.     East River admits that Dakota Energy purports to seek a declaratory judgment under South Dakota law, but denies that Dakota Energy is entitled to the relief requested.

43.     East River denies the allegations in Paragraph 43.

All allegations not herein admitted are denied. East River further denies that Dakota Energy is entitled to any of the relief requested in the Prayer for Relief or any other relief whatsoever from East River.

## <u>AFFIRMATIVE DEFENSES</u>

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### Second Defense

Plaintiff's claims are preempted by federal laws, regulations, policies, and contractual covenants with the U.S. government.

### Third Defense

Plaintiff's claims are barred by the doctrine of official justification.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of ratification.

### Fifth Defense

Plaintiff's claims are barred because they are not yet ripe.

### Sixth Defense

Plaintiff's claims are barred by the terms of East River's Bylaws.

### Seventh Defense

Plaintiff's claims are barred by failure to satisfy a condition precedent.

### Eighth Defense

The wholesale power contract between Plaintiff and Defendant precludes the requested relief.

### Ninth Defense

Plaintiff lacks standing to bring its claims.

### Tenth Defense

Plaintiff's claims are barred by the doctrine of waiver.

9

**Eleventh Defense**

Plaintiff's claims are barred by the doctrine of estoppel.

**Twelfth Defense**

Plaintiff's claims are barred by the doctrine of laches.

**Thirteenth Defense**

Plaintiff's claims are barred by the business judgment rule.

**Fourteenth Defense**

East River reserves the right to assert any additional affirmative defenses and matters in avoidance as may be disclosed during the course of additional investigation and discovery.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

East River Electric Power Cooperative, Inc. ("East River") files this counterclaim for declaratory judgment, respectfully showing the Court as follows:

1.      This is a claim for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, brought for the purpose of determining a question of actual controversy between the parties as described in the following paragraphs.

2.      East River is a not-for-profit generation and transmission cooperative ("G&T") that sells electricity and transmission services to its member systems, 24 rural electric distribution cooperatives and one municipally-owned electric system.

3.      Dakota Energy Cooperative, Inc. ("Dakota Energy" or "Dakota"), which is a member of East River, seeks to terminate its long-term power contract with East River and withdraw from membership in East River.

4.      East River brings this declaratory judgment action to resolve an actual controversy between East River and Dakota Energy regarding whether Dakota Energy may terminate its contract with East River before the contract term expires and withdraw from East River prior to fulfilling its obligations under that contract.

## Parties, Jurisdiction, and Venue

5.      East River is a South Dakota G&T with its principal place of business in Lake County, South Dakota.

6.      Dakota Energy is a South Dakota electric distribution cooperative with its principal place of business in Beadle County, South Dakota.

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1442(a), 28 U.S.C § 1367, and the Court's ancillary jurisdiction.

8.      Venue is proper in this district.

## Factual Allegations

### Rural Electric Cooperatives and the Rural Electrification Act of 1936

9.      In 1936, Congress enacted the Rural Electrification Act of 1936 ("RE Act") to establish a program to provide electric power to rural America.

10.     The RE Act established the Rural Electrification Administration, the predecessor to the Rural Utilities Service ("RUS").

11

11.     RUS was and is authorized to make loans and loan guarantees that enable rural communities to obtain electric power.

12.     In response to the RE Act, communities across America formed non-profit electric distribution cooperatives. Groups of electric distribution cooperatives banded together to form G&Ts.

13.     By forming G&Ts, distribution cooperatives were able to pool their resources and combine their power requirements.

14.     Through their G&Ts, distribution cooperatives were able to achieve greater leverage to invest in generation and transmission assets.

15.     G&Ts enabled distribution cooperatives to obtain more economical sources of long-term power.

16.     Before providing loans and loan guarantees, RUS was required to determine that the security for such loans and loan guarantees is adequate. 7 U.S.C. § 904; 7 C.F.R. § 1710.113.

17.     Before granting loans and loan guarantees to a G&T, RUS has required the members of the G&T (*i.e.*, distribution cooperatives) to enter into all-requirements contracts with the G&T.

18.     Additionally, RUS has required that the term of the G&T-member contracts extend through the term of RUS loans or loan guarantees provided to the G&T.

19.     When extending the term of a loan or loan guarantee to a G&T, RUS has required the G&T's members to extend the terms of their all-requirements contracts to cover the same time period as the loan or loan guarantee.

12

*East River Electric Power Cooperative and Its Member Systems*

20.     East River was formed by its member systems in 1949.

21.     The formation of East River allowed the member systems to combine their power requirements to more economically meet their generation and transmission needs.

22.     The formation of East River also allowed its members to obtain power from a G&T owned by them.

23.     In 1961, Basin Electric Power Cooperative ("Basin") was formed by electric cooperatives to supply their power supply needs.

24.     East River purchases wholesale electric power from Basin under a power supply contract that extends through December 31, 2075. On August 5, 2015, the East River board of directors, including Dakota's board member serving on the East River board (David Allen), voted unanimously to extend the East River-Basin wholesale power contract to December 31, 2075.

25.     East River also purchases power from the Western Area Power Administration. ("WAPA") under a power supply contract that extends through December 31, 2050.

26.     East River provides power, as well as transmission services, to its member systems, including Dakota Energy.

27.     East River's Bylaws require that each of its member systems purchase "all electric power and energy required by the member to serve all its electric loads," with certain exceptions. (Bylaws, Art. I, § 4(a).) A copy of East River's Bylaws is attached hereto as Exhibit A.

13

### *The Wholesale Power Contracts Between East River and Its Member Systems*

28.     Each of East River's member systems has executed a long-term wholesale power contract with East River.

29.     The provisions of the wholesale power contracts between East River and its member systems, as amended, are substantially similar.

30.     Each wholesale power contract between East River and its member systems provides that the member will purchase from East River all electric power and energy required to serve the member's electric loads.

31.     The term of each wholesale power contract between East River and an East River member extends through December 31, 2075. On August 5, 2015, the East River board of directors, including Dakota's board member serving on the East River board (David Allen), voted unanimously to extend all twenty-five of the East River-member system wholesale power contracts to December 31, 2075.

32.     Each wholesale power contract between East River and its member provides the member with a secure source of power.

33.     The wholesale power contracts between East River and its member systems serve as security for RUS loans and loan guarantees.

34.     The wholesale power contracts provide a long-term revenue stream with which East River can repay financial obligations it incurs in order to provide services to its member systems.

35.     Each wholesale power contract between East River and an East River member provides that East River has entered into similar wholesale power contracts with the other members of East River.

### East River's RUS Loans and Loan Guarantees

36.     East River has secured loans and loan guarantees from RUS to build facilities to serve its members.

37.     Under RUS policy and as security for such loans and loan guarantees, each member of East River was required to enter into a long-term, all-requirements contract with East River.

38.     East River has incurred debt, built facilities, and made substantial capital outlays to serve its members.

### Dakota Energy's Wholesale Power Contract with East River

39.     Dakota Energy is an electric distribution cooperative that was formed by the consolidation of two distribution cooperatives, Beadle Electric Cooperative, Inc. and Ree Electric Cooperative, Inc. A copy of the articles of consolidation of Dakota Energy is attached hereto as Exhibit B. A copy of Dakota Energy's bylaws is attached hereto as Exhibit C.

40.     Beadle Electric Cooperative, Inc. and Ree Electric Cooperative, Inc., were both members of East River before the consolidation and each had a long-term wholesale power contract with East River prior to the consolidation.

41.     In January 1995, Dakota Energy became a member of East River.

42.     On January 1, 1995, Dakota Energy entered into a long-term wholesale power contract (the "WPC") with East River. A copy of the Dakota Energy WPC, with amendments, is attached hereto as Exhibit D.

43.     The WPC provides that "East River shall sell and deliver to [Dakota Energy] and [Dakota Energy] shall purchase and receive from East River, all electric power and energy which [Dakota Energy] shall require to serve all of [Dakota Energy's] electric loads, to the extent that East River shall have such power and energy and facilities available." (WPC, Ex. D, § 1.)

44.     In the WPC, Dakota Energy acknowledged that "the Government is relying on this Agreement and similar contracts between East River and other borrowers from the Rural Utilities Service to assure that the Notes [evidencing RUS loans and loan guarantees to East River] are repaid and the purposes of the Rural Electrification Act of 1936, as amended, are carried out and East River and [Dakota Energy], by executing this contract, acknowledge that reliance." (Ex. D at 3.)

45.     Dakota Energy also acknowledged in the WPC that "this Agreement and payments due to East River under this Agreement shall be pledged and assigned to secure the Notes . . . ." (*Id.*)

46.     Section 10 of the 1995 WPC between East River and Dakota Energy provides as follows: "Term. This Agreement shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service and shall remain in effect until December 31, 2038, and thereafter until terminated by either Party giving to the other not less than six months' written notice of its intention to terminate."

16

47.     The WPC does not contain any provision providing for termination of the WPC before the end of the contract term.

48.     In 2006, Dakota Energy and East River agreed to Amendment 2 to the WPC, which extended the term of the WPC to December 31, 2058. (Ex. D at 31.)

49.     In 2015, Dakota Energy and East River agreed to Amendment 3 to the WPC, which extended the term of the WPC to December 31, 2075. (Ex. D at 34.)

50.     The Dakota-East River WPC is similar to wholesale power contracts entered into between East River and its other members. By way of example, the wholesale power contract between Southeastern Electric Cooperative, Inc., and East River, with amendments, is attached hereto as Exhibit E.

### East River's Bylaws

51.     In applying to become a member of East River, Dakota Energy agreed to be bound by East River's Bylaws.

52.     Dakota Energy is bound by East River's Bylaws.

53.     Article I, Section 5(a) of the Bylaws provides in pertinent part that "[a] member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to [East River]." (East River Bylaws, Ex. A at 4.)

### Dakota Energy's Request for a Buy-out Amount

54.     By board resolution dated September 25, 2018 ("Resolution"), Dakota Energy acknowledged that it had "entered into and executed a long-term all-requirements

17

contract with East River through the year 2075." A copy of the Resolution is attached hereto as Exhibit F.

55.     The Resolution further acknowledged that East River had entered into a long-term all-requirements contract with Basin through the year 2075.

56.     The Resolution also acknowledged that "the long-term all-requirements contracts are in place to provide the financial security through guaranteed revenue for Basin and East River."

57.     The Resolution requested that Dakota's management work with East River's management to provide a buyout dollar amount for Dakota Energy to buy out of its WPC.

58.     By letter dated March 7, 2019, a copy of which is attached hereto as Exhibit G, East River informed Dakota Energy that the WPC does not provide for a buyout and declined Dakota Energy's request.

**Count I (Declaratory Judgment)**

59.     East River incorporates by reference each of the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

60.     There exists an actual controversy between East River and Dakota Energy regarding whether Dakota Energy may terminate the WPC before the end of its term.

61.     East River is entitled to a declaration that the WPC does not allow for early termination.

62.     There exists an actual controversy between East River and Dakota Energy regarding whether Dakota Energy may withdraw from East River prior to fulfilling its WPC.

63.     East River is entitled to a declaration that its Bylaws do not permit Dakota Energy to withdraw before fulfilling its obligations under the WPC.

## Prayer for Relief

WHEREFORE, East River Electric Power Cooperative, Inc. prays for the following relief:

A.     That the Court enter judgment decreeing that Plaintiff is entitled to recover nothing by way of the Complaint and that the Complaint be dismissed with prejudice;

B.     That the Court enter a declaratory judgment that the Wholesale Power Contract between East River and Dakota Energy does not allow for early termination;

C.     That the Court enter a declaratory judgment that East River's Bylaws do not permit Dakota Energy to withdraw before fulfilling its obligations under the Wholesale Power Contract;

D.     That the Court award East River all available costs, legal fees, disbursements, and interests; and

E.     That the Court grant such other and further relief as it deems just and equitable.

Dated December 15, 2020.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

*/s/ Dana Van Beek Palmer*
Dana Van Beek Palmer
Michael L. Luce
R. Alan Peterson
110 N. Minnesota Avenue, Suite 400
Sioux Falls, SD 57104
Telephone:  (605) 332-5999
E-mails:  dpalmer@lynnjackson.com
        mluce@lynnjackson.com
        rpeterson@lynnjackson.com

James A. Orr (*pro hac vice* submitted)
Tracey K. Ledbetter (*pro hac vice* submitted)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone:  (404) 853-8000
E-mails:  jamesorr@eversheds-sutherland.com
          traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendant East River Electric Power*
*Cooperative, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on December 15, 2020, a copy of the foregoing document

was filed electronically with the Clerk of Court using the CM/ECF system in the United

States District Court for the District of South Dakota, and copies were provided to all

local counsel of record via CM/ECF, and that a true and correct copy of the same has

been served electronically via e-mail upon the following:

Peter W. Herzog III
Joel S. Neckers
Michele O. Choe

20

Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
Telephone: (303) 244-1800
E-mails:  pherzog@wtotrial.com
             neckers@wtotrial.com
             choe@wtotrial.com
 *Attorneys for Plaintiff, to be admitted PHV*


*/s/ Dana Van Beek Palmer*
Dana Van Beek Palmer