# EXHIBIT C

Exhibit C - Page 000001



**DAKOTA ENERGY**
**COOPERATIVE, INC.**
*"Service for your way of life"*
PO Box 830, Huron, SD 57350
1-800-353-8591
www.dakotaenergy.coop
A Touchstone Energy® Cooperative

# Bylaws

# Approved 2006

Exhibit C - Page 000002

## ARTICLE I
## MEMBERSHIP

**SECTION 1. <u>MEMBERSHIP ELIGIBILITY.</u>** Any (1) natural person, (2) firm, (3) association, (4) corporation, (5) partnership, limited liability company, (6) state, state agency, or state political subdivision, tribal or governmental entity, (7) the United States of America, or any federal agency or federal political subdivision, or (8) other body politic (collectively, "Person") using, receiving, or purchasing any electrical service from or through Dakota Energy Cooperative, Inc, is eligible to become a Member.

No Person may hold more than one (1) Cooperative membership. Unless required by law or otherwise provided in these Bylaws, no Cooperative membership, and no right or privilege associated with Cooperative membership, may be sold, purchased, assigned, or otherwise transferred. Membership eligibility is restricted to Persons using, receiving or purchasing electrical service. Other cooperative services such as mainstreet messenger, internet connection, rural television, and computer support, or other goods or services do not entitle a Person to eligibility for membership. "Cooperative Service" as used herein means electrical and other cooperative services described above.

**SECTION 2. <u>MEMBERSHIP PROCEDURE.</u>** Any Person seeking to become a Member ("Applicant") must complete the following procedures ("Membership Procedures").

1. Before or within a reasonable time of using, receiving, or purchasing any electrical service, Applicant shall complete a written membership application provided by the Cooperative in which the Applicant agrees, in writing, to:

    a. Comply with:

      (i)   All applicable law and legally binding agreements regarding the:

        (1) Cooperative;
        (2) Cooperative's operation;
        (3) Cooperative's Assets;
        (4) Cooperative's Members and Patrons; and

Exhibit C - Page 000003

       (5)   Provision, use, receipt, and purchase of Cooperative Services, including, but not limited to, all applicable;

      (ii)   Legislative, executive, administrative, and judicial statutes, case law, regulations, ordinances, rulings, or orders;

      (iii) Local, state, and federal statutes, case law, regulations, ordinances, rulings, or orders;

      (iv) Contractual provisions legally enforceable by, or against, the Cooperative; and

      (v)  Legally binding contracts between the Cooperative and the Applicant or Member (collectively, "law")

      (vi) The Cooperative's Articles of Consolidation ("Articles");

      (vii) These Bylaws;

      (viii) The Cooperative's service rules and regulations;

      (ix) The Cooperative's rate or price schedules; and

      (x)  Any policy, resolution, action, or amendment adopted by the Cooperative's board of directors ("Board") or membership;

    b.  Be a Member, and

    c.  At prices, rates, or amounts determined by the Board, and in a manner specified by the Cooperative, pay the Cooperative for all;

      (i)  Cooperative Services used, received, or purchased:

        (1)  By the Member; or

        (2)  At, or for, any dwelling or structure owned, controlled, or directly occupied by the Member, and

      (ii) Dues, assessments, fees, deposits, contributions, demand or minimum charges, or other amounts required by these Bylaws or the Board;

  2.  Complete any additional or supplemental document or contract required by the Board for the Cooperative Service which the Applicant is seeking to use, receive, or purchase;

  3.  Unless waived in writing by the Board, or waived pursuant to Board policy generally applicable to all Applicants, pay the Cooperative any outstanding amounts owed the Cooperative by the Applicant.

  **SECTION 3.  AUTOMATIC MEMBERSHIP.**  Unless the Board determines otherwise as provided in these Bylaws, upon;

    1.  Completing the Membership Procedure to the Cooperative's

Exhibit C - Page 000004

satisfaction; and

     2. Using, receiving, or purchasing any electrical service.

An Applicant automatically becomes a member of the Cooperative effective the date the Applicant began using, receiving, or purchasing electrical service.

If the Board determines that any Applicant is unable to comply with the Governing Documents, then the Board may refuse the Applicant membership in the Cooperative. For other good cause determined by the Board, the Board may refuse an Applicant membership in the Cooperative.

If the Board refuses membership to any Applicant, then the Cooperative shall return to the Applicant any amounts paid to the cooperative by the Applicant as part of the Membership Procedure other than:

     1. Amounts paid for using, receiving, or purchasing any Cooperative Service; and

     2. Outstanding amounts previously owed the Cooperative, and any associated interest or late payment charges.

**SECTION 4. MEMBERSHIP AGREEMENT.** Every Member shall follow, abide by, and be legally bound to, the Governing Documents. As provided in these Bylaws, the Cooperative may terminate any Membership or Cooperative Service for the Member's failure to follow, abide by, or be legally bound to, the Governing Documents.

**SECTION 5. JOINT MEMBERSHIP.** As provided in this Bylaw, a husband and wife or any two (2) natural persons joined in a legal relationship and principally residing at the same location may apply for joint membership in the Cooperative ("Joint Membership").

A. Creating Joint Memberships. By jointly signing and executing a membership application, and by jointly completing the Membership Procedures, a husband and wife or any two (2) natural persons joined in a legal relationship and principally residing at the same location may apply for Joint Membership. Any Member may apply to convert the Member's individual membership to a Joint Membership with the Member's spouse or any other natural person with whom the Member is legally joined principally residing at the same location as the Member.

Exhibit C - Page 000005

B. <u>Joint Member Rights and Obligations.</u> Unless denied membership as provided by these Bylaws, and unless otherwise specified by these Bylaws, each natural person comprising a Joint Membership ("Joint Member") has and may enjoy all the rights, benefits, and privileges, and is subject to all the obligations, requirements and liabilities, of being a Member.   As used in these Bylaws, and unless otherwise provided in these Bylaws, Membership includes any Joint Membership and Member includes any Joint Member.

C. <u>Effect of Joint Member Actions.</u>  For each Joint Membership:

1. Notice of any meeting provided to either Joint Member, or waiver of notice of any meeting signed by either Joint Member, constitutes notice or waiver of notice for both Joint Members comprising the Joint Membership:

2. The presence of either, or both, Joint Members at any meeting:

a. Constitutes the presence of one (1) Member at the meeting;

b. Waives notice of meeting for both Joint Members comprising the Joint Membership;

c. May invalidate any Member Mail Ballot previously mailed by the attending Joint Member;

3. If only one (1) Joint Member votes on any matter, then the vote binds the Joint Membership and constitutes one (1) vote;

4. Except upon the death of a Joint Member or divorce, legal separation or other legal termination of the relationship between Joint Members, the suspension or termination of either Joint Member constitutes suspension or termination of both Joint Members; and

5. A Joint Member otherwise qualified is eligible to serve as a member of the Board ("Director"). If both Joint Members are otherwise qualified to serve as Director, then either Joint Member, but not both Joint Members simultaneously, is eligible to serve as a Director.

D. <u>Joint Membership Conversion and Termination.</u> Upon a death, divorce, legal separation, or other legal termination of the relationship between Joint Members:

1. If one (1) Joint Member continues to legally use, receive, or purchase a Cooperative Service at the same location, then the Joint Membership converts to a membership in the name of the Joint Member continuing to legally use, receive, or purchase a Cooperative service at the same location;

Exhibit C - Page 000006

2. If both Joint Members continue to legally use, receive, or purchase a Cooperative Service at the same location, then the Joint Membership converts to a membership in the name of the Joint Member determined by the Cooperative; or

3. If neither Joint Member continues to legally use, receive, or purchase a Cooperative Service at the same location, then the Joint Membership terminates.

**SECTION 6.   PROVISION OF COOPERATIVE SERVICES.**
The Cooperative shall provide Cooperative Services to Members in a reasonable manner, although it cannot and therefore does not guarantee a continuous and uninterrupted supply thereof.  As to each Cooperative Service requested, the Cooperative's responsibility and liability for providing such Cooperative Service terminates upon delivery of such Cooperative Service to a Member or other Person acting for a Member.

After providing the Member reasonable notice and an opportunity to comment orally or in writing, the Cooperative may suspend or terminate a Membership or any Cooperative Services to any Member upon determining that a Member has tampered or interfered with, damaged, or impaired any product, equipment, structure, or facility furnished or used by the Cooperative to provide, monitor, measure, or maintain any Cooperative service ("Cooperative Equipment"); Upon:

1. Discovering the unsafe condition of any Cooperative Equipment; or

2. Discovering any imminent hazard or danger posed by any Cooperative Equipment;

the Cooperative may suspend or terminate Cooperative Services to the Member without notice or opportunity to comment.

**SECTION 7.  PURCHASE OF COOPERATIVE SERVICES.**  As required or allowed by Law, and unless otherwise specified in writing by the Board, each Member shall use, receive, or purchase electrical services from the Cooperative.  Each Member shall comply with, and abide by, any policy, rate, rule, procedure, or other determination promulgated by the Board regarding the provision of Cooperative Services to the Member.

A. Payments to Cooperative.  At prices, rates, or amounts determined

Exhibit C - Page 000007

by the Board and in a manner specified by the Cooperative, each Member shall pay the Cooperative for all:

    1. Cooperative Services used, received, made available, or purchased:

      a. By the Member; or

      b. At, or for, any dwelling or structure owned, controlled, or directly occupied by the Member; and

    2. Dues, assessments, fees, deposits, contributions, demand or minimum charges, or other amounts required by Law, these Bylaws, or the Board.

  B. <u>Interest and Late Payment Fees.</u> As determined by the Board, Members shall pay interest, compounded periodically, and late payment fees for all amounts owed, but not timely paid, to the Cooperative. Notwithstanding the Cooperative's accounting procedures, the Cooperative may apply all amounts paid by any Member to all of the Member's accounts on a pro ratta basis, or as otherwise determined by the Board.

  C. <u>Reduction in Cooperative Services.</u> As required or allowed by Law, and as determined by the Board.

    1. If a Member substantially reduces or terminates the Member's use, receipt, or purchase of Cooperative Services, either singly or in combination; then

    2. The Cooperative may charge the Member, and the Member shall pay the Cooperative, the reasonable costs and expenses incurred by the Cooperative in relying upon the Member's pre-reduction or pre-termination use, receipt, or purchase of Cooperative　　　　　Services.

**SECTION 8. <u>MEMBER GRANT OF PROPERTY RIGHTS.</u>** As determined or required by the Cooperative, each Member shall:

  1. Provide the Cooperative temporary, or permanent, safe and reliable access to, and use of, and

  2. Upon request from, and without charge to, and under reasonable terms and conditions determined by the Cooperative, grant and convey, and execute any document reasonably requested by the Cooperative to grant or convey to the Cooperative any easement, right-of-way, license, or other property interest in any real or personal property in which the Member possesses any legal right and which is reasonably necessary to:

Exhibit C - Page 000008

  a. Purchase, install, construct, inspect, monitor, operate, repair, maintain, remove, or relocate any Cooperative Equipment;

  b. Provide, monitor, measure, or maintain any Cooperative service;

  c. Satisfy or facilitate any obligation incurred, or right granted, by the Cooperative regarding the use of Cooperative Equipment; or

  d. Safely, reliably, and efficiently;

   (1) Operate the Cooperative, or

   (2) Provide any Cooperative Service.

No Member shall tamper or interfere with, damage or impair any Cooperative Equipment.  Unless otherwise determined by the Board, the Cooperative owns all Cooperative Equipment. Each Member shall protect all Cooperative Equipment, and shall install, implement, and maintain any protective device or procedure reasonably required by the Cooperative.

Each Member shall comply with any procedure required by the Cooperative regarding the provision of any Cooperative Service to any Member or Person.

  **SECTION 9.  MEMBER SUSPENSION.** The Cooperative may suspend Members as provided in this Bylaw and allowed by law.

  A. Suspension Reasons. The Cooperative may suspend a Member if the  Member:

   1. Fails to timely pay any amounts due the Cooperative;

   2. Fails to timely comply with the Governing Documents;

   3. Ceases using, receiving, or purchasing any Cooperative Service;

   4. Dies, legally dissolves, or legally ceases to exist;

   5. Voluntarily requests suspension; or

   6. Tampers or interferes with any Cooperative Equipment

or, as otherwise provided in these Bylaws, or for other good cause determined by the Board (collectively "Suspension Reason").

  B. Notice and Comment. Upon a Member's voluntary request for suspension, or, unless otherwise provided in these Bylaws, if the Cooperative, following the occurrence of a Suspension Reason other than a Member's voluntary request for Suspension:

   1. Provides the Member at least fifteen (15) days prior written

Exhibit C - Page 000009

notice of the Member's possible suspension and the underlying Suspension Reason; and

2. Notifies the Member that the Member has, and allows the Member, at least five (5) days after the effective date of the notice to comment upon the Suspension Reason, either orally or in writing;

3. Unless otherwise determined by the Board in good faith;

then, the Member is suspended.

Any written suspension notice provided by mail must be mailed first-class or certified mail to the Member's most current address shown on the Membership List. A partner leaving a partnership-Member remains liable to the Cooperative for any amounts owed to the Cooperative by the partnership-Member at the time of the partner's departure. Unless otherwise determined by the Board, a partnership-Member continuing to use, receive, or purchase a Cooperative service is not automatically suspended upon the death of any partner, or following any other alteration in the partnership.

C. <u>Effect of Member Suspension Upon Cooperative.</u> Upon a member's suspension, and other than the Cooperative's:

1. Obligation to retire and refund Capital Credits and Affiliated Capital Credits, and

2. Cooperative's duties, obligations, and liabilities imposed by these Bylaws for the Member cease; and

3. Cooperative may cease providing any Cooperative Service to the Member.

D. Effect of Member Suspension Upon Member. Other than the right to receive retired and refunded Capital Credits and Affiliated Capital Credits, and other than rights upon the Cooperative's dissolution, a suspended member  forfeits and relinquishes all rights provided in the governing Documents.  In particular, a suspended member forfeits and relinquishes any voting rights provided by these Bylaws.  A suspended Member, however, remains subject to all obligations imposed by the Governing Documents.

E. Lifting of Suspension.  Unless otherwise determined by the Board in good faith, a Member's suspension is automatically lifted upon the Member rectifying, to the Cooperative's reasonable satisfaction, the underlying Suspension Reason within ten (10) days of the suspension. The Board may lift any Member suspension for good cause as

Exhibit C - Page 000010

determined by the Board.

**SECTION 10. <u>MEMBER TERMINATION.</u>** Upon approval by the Board in good faith, and as allowed by Law, a suspended Member is terminated.  Termination of a Member does not release the former Member from any debts, liabilities, or obligations owed the Cooperative.  Upon a Member's termination from the Cooperative, and after deducting any amounts owed the Cooperative, the Cooperative shall return to the Member any amounts authorized by the Board and generally returned to terminated Members.

**SECTION 11. MEMBER LIST.** The Cooperative, or the Cooperative's agent, shall maintain a record of current Members ("Membership List").

Upon five (5) business days' prior written notice or request and:

1. At a reasonable time and location specified by the Cooperative, a Member may inspect and copy the names and addresses included in the Membership List, or

2. If reasonable, as determined by the Cooperative, and upon a Member paying the Cooperative a reasonable charge determined by the Cooperative covering the Cooperative's labor and material cost of preparing and copying the Membership List, the Cooperative shall provide to the Member a copy of the names and addresses included in the Membership List.

if, and to the extent that:

1. The Member's demand is made in good faith and for a proper purpose;

2. The Member describes with reasonable particularity the Member's purpose for inspecting or copying the Membership List; and

3. The Membership List is directly connected with the Member's purpose.

Without the Board's consent, however, a Member may not inspect, copy, or receive a copy of, the names and addresses included in the Membership List for any purpose unrelated to the Member's interest as a Member.  Likewise, without the Board's consent, the names and addresses included in the Membership List may not be:

1. Used to solicit money or property unless the money or property is

Exhibit C - Page 000011

used solely to solicit Member votes;

    2. Used for any commercial purpose; or

    3. Sold to, or purchased by, any person.

## ARTICLE II
## RIGHTS AND LIABILTIES OF MEMBERS

    **SECTION 1. <u>MEMBER LIABILITY.</u>** A Member is not liable to third parties for the Cooperative's acts, debts, liabilities, or obligations. A Member, however, may become liable to the Cooperative as:

    1. Provided in these Bylaws; or

    2. Otherwise agreed to by the Cooperative and Member.

## ARTICLE III
## MEETING OF MEMBERS

    **SECTION 1. <u>ANNUAL MEMBER MEETINGS.</u>** In a county served by the Cooperative, the Cooperative:

    Shall annually hold a meeting of Members ("Annual Member Meeting"); and  The Board shall determine the date, time, and location of any Annual Member Meeting.

    At the Annual Member Meeting, the President and Treasurer shall provide a written report, or oral presentation, regarding the Cooperative's activities and financial condition.  The Cooperative's failure to hold an Annual Member Meeting does not affect any action taken by the Cooperative.

    **SECTION 2. <u>SPECIAL MEMBER MEETINGS.</u>** The Cooperative shall hold a special meeting of Members at a date, time, and location determined by the Board ("Special member Meeting") upon the Cooperative receiving:

    1. A written or oral request from the Board or President;

    2. A written request signed by at least three (3) Directors currently in office; or

    3. One (1) or more written demands signed and dated by at least ten percent (10%) of the Cooperative's total current non-suspended Members ("Total Membership") requesting, and describing the purpose

Exhibit C - Page 000012

of a special meeting of Members ("Member Demand").

If the Cooperative fails to properly notify the members of a Special Member Meeting within Thirty (30) days of receiving any Member Demand, then a Member signing the Member Demand may:

1. Reasonably set the time, place, and location of the special Member Meeting, and

2. Properly notify the Members of the Special Member Meeting.

**SECTON 3. <u>PERMITTED MEMBER ACTION AT MEMBER MEETINGS.</u>** At any Annual Member Meeting, or Special Member Meeting (collectively, "Member Meeting"), Members may consider, vote, or act only upon a matter for which:

1. Unless otherwise provided in these Bylaws, the Board and Members were notified properly; or

2. The Members are authorized to consider, vote, or act.

3. At a Special Member Meeting the Members may consider, vote, or act upon only those matters properly described in the notice.

**SECTION 4. <u>NOTICE OF MEMBER MEETINGS.</u>** As directed by the President, Secretary, or any Officer or Member properly calling a Member Meeting, the Cooperative shall deliver written notice of the Member Meeting;

1. by mail, or by including written notice appearing in the Cooperative newsletter;

2. to all Members entitled to vote at the Member Meeting;

3. Indicating the date, time, and location of the Member Meeting;

4. At least ten (10), but no more than forty-five (45), days prior to the Member Meeting; and

5. For any Annual Member Meeting, describing any matter to be considered, or voted or acted upon, at the Annual Member Meeting; and

6. For any Special Member Meeting, stating the purpose of, and describing any matter to be considered, or voted or acted upon, at the Special Member Meeting.

Notice of a Member Meeting is delivered when deposited in the United States Mail with prepaid postage affixed and addressed to a Member at the Member's address shown on the Membership List.

Exhibit C - Page 000013

The inadvertent and unintended failure of any Member to receive notice of any Member Meeting shall not affect any action taken at the Member Meeting.

**SECTION 5. <u>RECORD DATE.</u>** The Board may fix a date for determining the Total Membership and the Members entitled to:

1. Notice of a Member Meeting; and

2. Vote at a Member Meeting.

No Board determined Record Date may be more than seventy (70) days prior to the date of the Member Meeting.

Unless otherwise fixed by the Board, the Record Date for determining the Total Membership and the Members entitled to:

1. Notice of a Member Meeting is 5:00 p.m. on the business day preceding the day the Cooperative notifies Members of the Member Meeting; and

2. Vote at a Member Meeting is the date of the Member Meeting.

**SECTION 6. <u>MAIL BALLOT.</u>** Except as restricted below, in conjunction with a Member Meeting, members may vote by mail on any matter as provided in these   Bylaws by the Cooperative delivering a written ballot ("Member Mail Ballot")to all Members entitled to vote on the matter and from whom the Cooperative received a written request for a Member Mail Ballot at least fifteen (15) days prior to the Member Meeting.

Members submitting a completed Member Mail Ballot may not vote at the Member Meeting specified in the Member Mail Ballot regarding any matter described in the Member Mail Ballot. Member Mail Ballots received by the Cooperative prior to the Member Meeting will not be counted in determining whether a Member Quorum exists at the member Meeting.

The Cooperative shall count all properly completed Member Mail Ballots received on, or before, the time and date specified in the Member Mail Ballot as the Member's vote.

Each Member Mail Ballot ("Ballot") must:

1. Set forth and describe each proposed action and include the language of any motion, resolution, Bylaw Amendment, or other written statement, upon which a Member is asked to vote;

Exhibit C - Page 000014

2. State the date of any Member Meeting at which Members are scheduled to vote on the matter;

3. Provide an opportunity to vote for or against, or to abstain from voting on, each proposed action;

4. Instruct the Member how to complete and return the completed Ballot; and

5. State the time and date by which the Cooperative must receive the completed Ballot.

Unless otherwise provided by the Board, a Member may not revoke a completed Ballot received by the Cooperative.  A Member's failure to receive a Ballot does not affect any action taken by Member Mail Ballot.

Members may not vote by mail on the matters of election of directors, bylaws, dividing the service territory into districts, property transfers, or other issues expressly prohibited by state law.

**SECTION 7. QUORUM.** A quorum for the transaction of business at all meetings of the Members shall be 50 Members, present in person. If less than a quorum is present at any meeting, a majority of those present in person may adjourn the meeting from time to time without further notice.  The record of the events of such meeting shall contain a list of the members present in person as well as those voting by mail, if any.

**SECTION 8. MEMBER VOTING.** Upon presenting identification or proof of Cooperative membership as reasonably required by the Cooperative, each non-suspended Member may cast one (1) vote on any matter for which the Member is entitled to vote.  A spouse may vote in the absence of the voting Member.  Individuals voting on behalf of non-natural person members must present evidence satisfactory to the Cooperative that the individual is duly authorized to vote for the non-natural person Member.

Unless otherwise provided by law, the Articles, or these Bylaws, Members approve a matter and act if:

1. A Member Quorum is present; and

2. A majority of Members present in person or voting by Member Mail Ballot, entitled to vote on a matter, and voting on the matter, vote

Exhibit C - Page 000015

in favor of the matter.

Any Bylaw Amendment increasing or decreasing the vote required for any Member action must be approved by the Members.

At any Member Meeting, the individual presiding over the Member vote may require the Members to vote by voice. If the individual presiding over the Member vote determines, in good faith, that a written vote is required to determine the vote results, then the Members shall vote by written ballot ("Member Meeting Written Ballot").

Members may not cast cumulate votes. Agreements signed by Members providing the manner in which a Member will vote are not valid.

**SECTION 9. <u>ACCEPTING AND REJECTING MEMBER VOTING DOCUMENTS.</u>** Regarding any Member Mail Ballot or other document allegedly executed by, or on behalf of, a Member (collectively, "Member Voting Document"):

A. <u>Acceptance.</u> The Cooperative may accept, and give effect to, the Member Voting Document if:

1. The name signed on the Member Voting Document corresponds to a Member's name, and the Cooperative acts in good faith; or

2. The Cooperative reasonably believes the Member Voting Document is valid and authorized.

B. <u>Rejection.</u> The Cooperative may reject, and not give effect to, the Member Voting Document if the Cooperative:

1. Acts in good faith; and

2. Has reasonable basis for doubting the validity of:

a. The signature on the Member Voting Document; or

b. The signatory's authority to sign on behalf of the Member.

C. <u>Liability.</u> Neither the Cooperative, nor any Cooperative Member, Director, Officer, employee, or agent, is liable to any Member for accepting or rejecting a Member Voting Document as provided in this Bylaw.

**SECTION 10. <u>CREDENTIALS AND ELECTION COMMITTEE.</u>** When any matter is submitted to a written ballot of the Members, the President of the Board shall, immediately before any Member Meetings, appoint a Credentials and Election Committee

Exhibit C - Page 000016

consisting of an uneven number of Members, not less than three nor more than seven who are not close relatives or Members of the same household of known candidates for directors to be elected at such meeting. In appointing the committee, the President shall have regard for equitable representation of the several areas served by the Cooperative. It shall be the responsibility of the Committee to pass upon all questions that may arise with respect to the registration of members, to count all ballots cast in any election or in any other ballot vote taken, and to rule upon the effect of any ballots irregularly marked. The Committee's decision on all such matters shall be final. Such Committee may utilize such employees as it deems necessary and prudent in discharging its duties as set forth above.

**SECTION 11. <u>MEMBER MEETING ORDER OF BUSINESS.</u>** The Board shall determine the agenda and order of business for Member Meetings.

## ARTICLE IV
## BOARD MEMBERS

**SECTION 1. <u>GENERAL POWERS.</u>** The Business and affairs of the Cooperative shall be managed by a Board of nine members which shall exercise the power of the Cooperative except such as are by Law, the Articles of Incorporation or these Bylaws conferred upon or reserved to the members.

**SECTION 2. <u>ELECTION AND TENURE OF OFFICE.</u>** The affairs of the consolidated Cooperative shall be managed by a Board of Directors, elected from the service area of the Cooperative.

The service areas of the consolidated Cooperative shall be divided into two (2) geographic districts.  One district will consist of what was formerly Beadle Electric Cooperative, Inc. and the second district will consist of what was formerly Ree Electric Cooperative, Inc. A map and description of the geographic districts shall be maintained by the Cooperative and shall be provided to the members upon request.

The affairs of the Cooperative shall be managed by a Board consisting of nine (9) Directors, four (4) from each of the two geographic districts,

Exhibit C - Page 000017

and a ninth Director to be elected, at large, from either of said districts.

At the annual meeting of the members to be held in 2000, and at annual meetings thereafter an election shall be held at the annual membership meeting of the Cooperative, to elect Board members, for three (3) year terms, for the vacancies created, during each ensuing year. Board Members elected at a membership meeting shall take office immediately following such election or re-election.

Vacancies on the Board of Directors which occur after the annual meeting of members in 1999 shall be filled by a majority vote of the remaining Directors. The Director so elected shall serve the remainder of the term of the Director creating the vacancy. Said vacancy shall be filled by selecting a patron from the same district in which the vacancy occurred.

**SECTION 3. QUALIFICATIONS.** Any Director or Director candidate must comply with this Bylaw.

A. General Director Qualifications: A Director or Director candidate must:

1. Be a natural person; and
2. Have the capacity to enter legally binding contracts;

B. Membership Director Qualifications-Individual. While a Director, and during the one (1) year immediately prior to becoming a Director, a Director or Director candidate must:

1. Not be an employee of the cooperative;
2. Be a Member in good standing permanently residing in the Director District from which the Director is elected or chosen; and
3. Use, receive, or purchase electric service from the Cooperative at the Director's primary residence;

C. Eligibility of Former Employee for Board Membership and Former Board Member for Employment. No employee or former employee shall be eligible for election to the Board of Directors until five years has passed since the termination of his or her employment. No Director or former Director shall be eligible for employment by the Cooperative until five years has passed since the expiration of his or her service as a Director.

D. Member Director Qualifications-Corporate Designee. A corporate or other non-natural member may designate no more than

Exhibit C - Page 000018

one representative to be a candidate for election, provided:

1. The entity is a Member in good standing;

2. The entity maintains its principal place of business within the Cooperative service area;

3. The entity continuously and materially uses, receives, or purchases electric services from the Cooperative; and

4. The designee is a permanent, year-round resident in the district to be served.

5. No more than two (2) Directors may be designees of non-natural Members.

E. Conflict of Interest Director Qualifications. While a Director, and during the one (1) year immediately prior to becoming a Director, a Director or Director candidate must not be, nor have been:

1. A Close Relative of any existing Director, other than an existing Director who will cease being a Director within one (1) year;

2. An existing, or a Close Relative of an existing, employee of the Cooperative;

3. Employed by, materially affiliated with, or share a material financial interest with any other Director; or

4. Engaged in, nor employed by, materially affiliated with, or have a material financial interest in, any individual or entity:

a. Directly and substantially competing with the Cooperative; or

b. Selling goods or services in substantial quantity to the Cooperative, or to a substantial number of Members or

c. Possessing a substantial conflict of interest with the Cooperative.

(collectively, "Conflict of Interest Director Qualifications")

F. Continuing Director Qualifications. Only natural persons complying with the General Director Qualifications, Membership Director Qualifications, and Conflict of Interest Director Qualifications (collectively, "Director qualifications") may serve, or continue to serve, as a Director. After being elected or appointed a Director, if any Director fails to comply with any Director Qualification, as reasonably determined by the Board, then the Board is authorized to, and shall, remove the Director. If at least a majority of Directors authorized by these Bylaws comply with the Director Qualifications and approve

Exhibit C - Page 000019

a Board action, then the failure of any Director to comply with all Director Qualifications does not affect the Board Action.

**SECTION 4.   NOMINATIONS.** All nominations for the office of Director of the Board of Directors shall be made by petition signed by 15 or more members of the Cooperative acting together to nominate a Cooperative member as Director. Such petition must be received at Cooperative headquarters at least five (5) days before the members meeting. The petition shall set forth the name of the nominated candidate. In the event only one candidate is nominated for an available position, the chairman protem shall solicit a motion from the floor that a unanimous vote be cast by the membership for such candidate. Upon being duly seconded and an approving voice vote, such sole candidate shall be declared duly elected.

A petition filed on behalf of a non-incumbent candidate shall designate the incumbent candidate against whom the petitioner is a candidate for office.

**SECTION 5.   DIRECTOR RESIGNATION.** A director may resign at any time by delivering written notice of resignation to the Board, President, or Secretary. Unless the written notice of resignation specifies a later effective date, a Director's resignation is effective upon the Board, President, or Secretary receiving the written notice of resignation. If a Director's resignation is effective at a later date, and if the successor Director does not take office until the effective date of the Director's resignation, then the pending Director vacancy may be filled before the effective date of the Director's resignation.

**SECTION 6.   DIRECTOR REMOVAL.**  Regarding any Director:

A. Director Removal Petition. As provided in this Bylaw, Members may request the removal of one or more Directors for committing any grossly negligent, fraudulent, or criminal act or omission significantly and adversely affecting the Cooperative. For each director for whom removal is requested, Members shall deliver to the President or Secretary a dated written petition ("Director Removal Petition"):

1. Identifying the Director;

2. Explaining the basis for requesting the Director's removal and identifying the grossly negligent, fraudulent, or criminal act or

Exhibit C - Page 000020

omission underlying the removal request; and

    3. As Members existed on the Director Removal Petition date, containing the printed names, printed addresses, and original and dated signatures obtained within sixty (60) days of the Director Removal Petition date, of at least ten percent (10%) of the members entitled to elect the Director.

With thirty (30) days following the President or Secretary receiving a Director Removal Petition:

    1. The Cooperative shall forward a copy of the Director Removal Petition to the implicated Director; and

    2. The Board shall meet to review the Director Removal Petition.

B. <u>Member Meeting.</u> If the board determines that the Director Removal Petition complies with this Bylaw, then the Cooperative shall post a notice of and hold a Member Meeting within sixty (60) days following the Board's determination. Notice of the Member Meeting must state that:

    1. The purpose of the Member Meeting is to consider removing a Director;

    2. Evidence may be presented, and a Member vote taken, regarding removing the Director; and

    3. Members may elect a successor Director.

If a Member Quorum is present at the Member Meeting, then for the Director named in each Director Removal Petition:

    1. If a majority of Members present and voting and entitled to vote for the Director vote to remove the Director, then the Director is removed effective to the time and date of the Member vote. At the Member Meeting, the Members entitled to vote for the Director may elect a new Director to succeed the removed Director without complying with the Director Nomination or notice provisions of these Bylaws. Any successor Director elected by the Members must comply with the Director Qualifications.

Neither a Director Removal Petition or Director removal affects any Board action. Members may not vote to remove a Director by Member Mail Ballot. No Director may be removed for lawfully opposing or resisting any Transfer of Cooperative Assets, or any Cooperative dissolution.

Exhibit C - Page 000021

**SECTION 7. <u>VACANCIES.</u>** Subject to the provisions of these Bylaws with respect to the filling of vacancies caused by the removal of Directors by the Members, a vacancy occurring in the Board of Directors shall be filled by the affirmative vote of a majority of the remaining Directors for the unexpired portion of the term. The Member elected as a Director to fill the vacancy must reside in the same district as the Director to whose office he succeeds and comply with all qualifications required of Directors.

**SECTION 8. <u>COMPENSATION.</u>** Board Members shall not receive any salary for their services, as such, except a fixed sum for each day or portion thereof spent on Cooperative business, such as attendance at meetings, conferences and training programs or performing committee assignments when authorized by the Board. If authorized by the Board, Board members may also be reimbursed for expenses actually and necessarily incurred in carrying out such Cooperative business. The compensation of Board Members shall be determined by resolution of the Board, and when so determined shall be continuing until altered or amended in like manner. The Board resolution on compensation change shall accompany meeting notice. No Board Member shall receive compensation for serving the Cooperative in any other capacity, nor shall any close relative of a Board Member receive compensation for serving the Cooperative, unless the payment and amount of compensation shall be specifically authorized by the Board of Directors.

**SECTION 9. <u>DIRECTOR CONDUCT.</u>**
A. <u>Director Standard of Conduct.</u> A Director shall discharge the Director's duties, including duties as a Board Committee member:

1. In good faith;

2. With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

3. In a manner the Director reasonably believes to be in the Cooperative's best interest.

B. <u>Director Reliance on Others.</u> Unless a Director possesses knowledge concerning a matter making reliance unwarranted, then in discharging a Director's duties, including duties as a Board Committee

Exhibit C - Page 000022

Member, a Director may rely upon information, opinion, reports, or statements, including financial statements and other financial data, prepared or presented by:

1. One (1) or more Cooperative Officers or employees whom the Director reasonably believes to be reliable and competent in the matters prepared or presented; or

2. Legal counsel, public accountants, or other individuals regarding matters the Director reasonably believes are within the individual's professional or expert competence.

C. <u>Director Liability.</u> If a Director complies with this Bylaw, the Director is not liable to the Cooperative, any Member, or any other individual or entity for action taken, or not taken, as a Director. No Director is deemed a trustee regarding the Cooperative or any property held or administered by the Cooperative, including without limit, property potentially subject to restrictions imposed by the property's donor or transferor.

SECTION 10. CLOSE RELATIVE. As used in these Bylaws, the term "Close Relative" means an individual who:

1. Is, either by blood, law, or marriage, including half, step, foster, and adoptive relations, a spouse, child, grandchild, parent, grandparent, or sibling; or

2. Principally resides in the same residence.

("Close Relative"). Any individual properly qualified and elected or appointed to any position does not become a Close Relative while serving in the position because of any marriage or legal action to which the individual was not a party.

**ARTICLE V**
**BOARD OF DIRECTORS**

**SECTION 1. <u>REGULAR BOARD MEETINGS.</u>** The Board shall regularly meet at the date, time, and location determined by the Board ("Regular Board Meeting"). Unless otherwise required by these Bylaws, the Board may hold Regular Board Meetings without notice. For good cause, the President may change the date, time, or location of any

Exhibit C - Page 000023

Regular Board Meeting

Any Director not attending any Board Meeting at which the Regular Board Meeting date, time, or location is changed is entitled to receive notice of the Regular Board Meeting change at least five (5) days before the next Regular Board Meeting. All Directors are entitled to receive notice of a President's change in a Regular Board Meeting date, time, or location at least two (2) days before the changed Regular Board Meeting. The President of the Board may postpone a Board Meeting for 24 hours because of inclement weather.

**SECTION 2. <u>SPECIAL BOARD MEETING.</u>** The Board, the President, or at least three (3) Directors may call a special meeting of the Board ("Special Board Meeting") by providing each Director at least two (2) days; prior written or oral notice indicating the date, time and location and purpose of the Special Board Meeting.

**SECTION 3. <u>CONDUCT OF BOARD MEETINGS.</u>** Unless otherwise provided in these Bylaws, any Regular Board Meeting or Special Board Meeting ("Board Meeting") may be:

1. Held anywhere within the Cooperative Service Area: and

2. Conducted with absent Directors participating, and deemed present in person, through any means of communication by which all Directors participating in the Board Meeting may simultaneously hear each other during the Board Meeting.

If a Director Quorum is present at any Board Meeting, then:

1. In descending priority, the following Officers may preside at the Board Meeting: President, Vice-President, Secretary, Treasurer; and

2. If no Officer is present, or desired, to preside over any Board Meeting, then the Directors attending the Board Meeting shall elect a Director to preside over the Board Meeting.

**SECTION 4. <u>WAIVER OF BOARD MEETING NOTICE.</u>** At any time, a Director may waive notice of any Board Meeting by delivering to the Cooperative a written waiver of notice signed by the Director and later filed with the Board Meeting minutes or the Cooperative's records.  Unless a Director:

1. Upon arriving at a Board Meeting or prior to the vote on a

Exhibit C - Page 000024

particular matter, objects to lack of, or defective, notice of the Board Meeting or a matter being considered at the Board Meeting; and

2. Does not vote for, or assent to, an objected matter;

then the Director's attendance at, or participation in, a Board Meeting waives notice of the Board Meeting and any matter considered at the Board Meeting.

**SECTION 5. BOARD ACTION BY WRITTEN CONSENT.** Without A Board Meeting, the Board may take any action required, or permitted, to be taken at a Board Meeting if the action is:

1. Taken by all Directors; and

2. Evidenced by one (1), or more, written consents ("Director Written Consent"):

    a. Describing the action taken;

    b. Signed by each Director; and

    c. Included with the Cooperative's Board Meeting minutes.

Unless the Director Written Consent Specifies a different effective date, action taken by Director Written Consent is effective when the last Director signs the Director Written Consent. A Director Written Consent has the effect of, and may be described as, a Board Meeting vote.

**SECTION 6. DIRECTOR QUORUM AND VOTING.** A quorum of Directors is a majority of the Directors in office immediately before a Board Meeting begins ("Director Quorum"). If a Director Quorum is present at the time a matter is voted or acted upon, and unless the vote of a greater number of Directors is required, then the affirmative vote of a majority of directors present and voting is the act of the Board.

**SECTION 7. COMMITTEES.** The Board may create committees of the Board ("Board Committees") and appoint Directors to serve on the Board Committees. Each Board Committee must consist of two (2) or more Directors, and serves at the Board's discretion. The Board may create committees of the Members ("Member Committees") and appoint Members, including Directors, to serve on the Member Committees.

A. Creation and Appointment of Committees. Except as otherwise

Exhibit C - Page 000025

provided in these Bylaws, at least a majority of Directors currently in office must approve the:

    1. Creation of any Board committee or Member Committee;

    2. Appointment of Directors to any Board Committee; and

    3. Appointment of Members to any Member Committee.

B. Conduct of Committee Meetings. To the same extent as the Board and Directors, the Bylaws addressing Regular Board Meetings, Special Board Meetings, Conduct of Board Meetings, Waiver of Board Meeting Notice, Board Action by Written consent, and Director Quorum and voting apply to Board Committees and Directors serving on Board Committees, and to Member Committees and members serving on Member Committees.

C. Committee Authority. Except as prohibited or limited by Law, the Articles, or this Bylaw, the Board may authorize a Board Committee to exercise Board authority. Although a Board Committee may recommend, a Board Committee may not act, to:

    1. Retire and refund Capital Credits and Affiliated Capital Credits:

    2. Approve the Cooperative's dissolution or merger, or the sale, pledge, or transfer of all, or substantially all, Cooperative Assets;

    3. Elect, appoint, or remove Directors, or fill any Board or Board Committee vacancy; or

    4. Adopt, amend, or repeal these Bylaws.

Member Committees may act as specified by the Board, but may not exercise Board authority.

**SECTION 8. <u>CONFLICT OF INTEREST TRANSACTION.</u>** A conflict of interest transaction is a transaction with the Cooperative in which a Director has a direct or indirect interest ("Conflict of Interest Transaction").

A. Indirect Interest. A Director has an indirect interest in a Conflict of Interest Transaction if at least one (1) party to the transaction is another entity:

    1. In which the Director has a material interest or is a general partner, or

    2. Of which the Director is a director, officer, or trustee.

B. Approval of Conflict of Interest Transaction. Regardless of the

Exhibit C - Page 000026

presence or vote of a Director interested in a Conflict of Interest Transaction, a Conflict of Interest Transaction may be approved, and any Board Quorum or Member Quorum satisfied, if the Conflict of Interest Transaction's material facts, and the Director's interest, are:

1. Disclosed or known to the board or Board Committee, and a majority or more than one (1) Director or Board Committee member with no interest in the Conflict of Interest Transaction votes to approve the conflict of Interest Transaction; or

2. Disclosed or known to the Members, and a majority of votes cast by Members not voting under the control of a Director or entity interested in the Conflict of Interest Transaction approves the Conflict of Interest Transaction.

C. <u>Fair Conflict of Interest Transaction.</u> A Conflict of Interest Transaction that is fair when entered is neither;

1. Voidable; nor

2. The basis for imposing liability on a Director interested in the Conflict of Interest Transaction.

## ARTICLE VI
## OFFICERS

**SECTION 1. <u>REQUIRED OFFICERS.</u>** The cooperative must have the following officers: President, Vice-President, Secretary, Treasurer ("Required Officers"). The Board shall elect Required Officers:

1. At the first (1st) Regular Board Meeting following each Annual Member Meeting, or as soon after each Annual Member Meeting as reasonably possible and convenient;

2. By affirmative vote of a majority of Directors in office; and

3. By secret written ballot without prior nomination.

Only Directors may be elected, and serve, as a Required Officer. One (1) Director may simultaneously be Secretary and Treasurer. Unless allowed by Law, however, this Director may not execute, acknowledge, or verify any document in more than one (1) capacity.

Subject to removal by the Board, each Required Officer shall hold office until the Required Officer's successor is duly elected. The board shall fill any vacant Required Officer's position for the remaining unexpired portion of the Required Officer's term.

Exhibit C - Page 000027

**SECTION 2. <u>PRESIDENT.</u>** Unless otherwise determined by the Board or Members, and unless otherwise required by Law, the Articles, or these Bylaws, the President:

1. Shall preside, or designate another individual to preside, at all Board and Member Meetings;

2. On the Cooperative's behalf, may sign any document properly authorized or approved by the Board or Members; and

3. Shall perform all other duties, shall have all other responsibilities, and may exercise all other authority, prescribed by the Board or Members.

**SECTION 3. <u>VICE-PRESIDENT.</u>** Unless otherwise determined by the Board or Members, and unless otherwise required by Law, the Articles, or these Bylaws, the Vice-President:

1. Upon the President's death, absence, disability, or inability or refusal to act, shall perform the duties, and have the powers, of the President; and

2. Shall perform all other duties, shall have all other responsibilities, and may exercise all other authority, prescribed by the Board or Members.

**SECTION 4. <u>SECRETARY.</u>** Unless otherwise determined by the Board or Members, and unless otherwise required by Law, the Articles, or these Bylaws, the Secretary:

1. Shall be responsible for preparing minutes of Board and Member Meetings;

2. Shall be responsible for authenticating the Cooperative's records;

3. May affix the Cooperative's seal to any document authorized or approved by the Board or Members; and

4. Shall perform all other duties, shall have all other responsibilities, and may exercise all other authority, prescribed by the Board or Members.

**SECTION 5. <u>TREASURER.</u>** Unless otherwise determined by the Board or Members, and unless otherwise required by Law, the Articles, or these Bylaws, the Treasurer shall perform all duties, shall have all

Exhibit C - Page 000028

responsibility, and may exercise all authority, prescribed by the Board or Members.

**SECTION 6. <u>OTHER OFFICERS</u>.** The Board may elect or appoint other officers ("Other Officers"). Other Officers:

1. May be Directors, cooperative employees, or other individuals;

2. Must be elected or appointed by the affirmative vote of a majority of current Directors;

3. May be elected by secret written ballot and without prior nomination;

4. May assist Required Officers; and

5. Shall perform all duties, shall have all responsibilities, and may exercise all authority, prescribed by the Board.

The same individual may simultaneously hold more than one (1) office. Unless allowed by Law; however, this individual may not execute, acknowledge, or verify any document in more than one (1) capacity.

**SECTION 7. <u>OFFICER RESIGNATION AND REMOVAL</u>.** At any time, any Required Officer or Other Officer (collectively, "Officer" or "Cooperative Officer") may resign by delivering to the Board an oral or written resignation. Unless the resignation specifies a later effective date, an Officer resignation is effective when received by the Board. If an Officer resignation is effective at a later date, then the Board may fill the vacant Officer position before the later effective date, but the successor Officer may not take office until the later effective date. At any time, the Board may remove any Officer for any reason with or without cause.

**SECTION 8. <u>OFFICER STANDARD OF CONDUCT</u>.** Every Officer shall discharge the Officer's duties:

1. In good faith;

2. With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

3. In a manner the Officer reasonably believes to be in the Cooperative's best interests.

**SECTION 9. <u>OFFICER CONTRACT RIGHTS</u>.** The election or

Exhibit C - Page 000029

appointment of any officer, by itself, does not create a contract between the Cooperative and the Officer.  An Officer's resignation does not affect the Cooperative's contract rights, if any, with the Officer.

**SECTION 10. <u>AUTHORITY TO EXECUTE DOCUMENTS.</u>** On the Cooperative's behalf, a Required Officer may sign, execute, and acknowledge any document properly authorized or approved by the Board or Members. The Board may authorize additional Cooperative Directors, Officers, employees, agents, or representatives to sign, execute, and acknowledge any document on the Cooperative's behalf.

**SECTION 11. <u>INDEMNIFICATION.</u>** Upon motion duly made and passed by the Board, the Cooperative shall indemnify any person who was or is a party or is threatened to be made a party to any threatened pending or completed action, suit or proceeding, whether civil,  criminal, administrative or investigative other than an action by or in the right of the cooperative by reason of the fact he is or was a director, officer, employee or agent of the cooperative, or is or was serving at the request of the cooperative as a director, officer, employee or agent of another corporation, partner-joint venture, trust, or other enterprise, against expenses including attorney's fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by them in connection with the action, suit or proceedings if he acted in good faith and in a manner he reasonably believed to be in  or not opposed to the best interests of the cooperative and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

**SECTION 12. <u>INSURANCE.</u>** Regardless of any indemnification authority or requirements, the Cooperative may purchase and maintain insurance on behalf of any individual who is, or was, a Cooperative Director, Officer, employee, agent or representative against any:

1. Liability, including judgment, settlement, or otherwise; or

2. Reasonable expenses, including reasonable attorney fees asserted against, or incurred by, the individual in the individual's capacity, or arising from the individual's status, as a Cooperative Director, Officer, employee, agent, or representative.

Exhibit C - Page 000030

## ARTICLE VII
## COOPERATIVE OPERATION

**SECTION 1.     NON-PROFIT AND COOPERATIVE OPERATION.** The Cooperative:

1. Must operate on a non-profit basis;

2. Must operate on a cooperative basis for the mutual benefit of all Members; and

3. May not pay interest or dividends on Capital furnished by patrons.

**SECTION 2. ALLOCATING AND CREDITING CAPITAL.** In operating the Cooperative:

A. Patron. A Cooperative Patron is a:

    1. Member; or

    2. Non-Member Person who:

        a. Uses any Cooperative Service, and

        b. Prior to Using the Cooperative Service, is entitled to an allocation of, and payment by credit to a Capital Account for, Capital Credits and Affiliated Capital Credits regarding the Cooperative Service

B. Capital Credits. Patrons shall furnish, and the Cooperative shall receive, as capital ("Capital") all funds and amounts received by the Cooperative from Patrons for the Cooperative's provision of a Cooperative service that exceed the Cooperative's costs and expenses of providing the Cooperative Service ("Operating margins"). For each Cooperative Service, the Cooperative shall annually allocate to each patron, and pay by credit to a Capital account for each patron, Operating Margins from the Cooperative Service in proportion to the value or quantity of the Cooperative Service used, or received, or purchases by each Patron during the applicable fiscal year ("Capital Credits"). Capital Credits must be treated as though the Cooperative paid the Capital Credit amounts to each Patron in cash pursuant to a legal obligation, and each Patron furnished the Cooperative Capital in the corresponding Capital Credit amounts.

C. Affiliated Capital Credits. The Cooperative shall separately allocate and credit to Patrons capital allocated and credited to the Cooperative by any organization furnishing services, supplies, or products to the Cooperative ("Affiliated Capital Credits"):

Exhibit C - Page 000031

1. In proportion to the value or quantity of each service, supply, or product furnished by the organization that is used, received, or purchased by each Patron; and

2. If the Cooperative determines, and separately identifies, the Affiliated Capital Credits.

D. <u>Non-Operating Margins.</u> Funds and amounts, other than Operating Margins, received by the Cooperative that exceed the Cooperative's costs and expenses ("Non-Operating Margins") may be:

1. Allocated as Capital Credits to patrons in the same manner as the Cooperative allocates Operating Margins to patrons; or

2. Used by the Cooperative as permanent, non-allocated Capital.

E. <u>Assignment and Notification.</u> Unless otherwise determined by the Board or provided in these Bylaws, Capital Credits and Affiliated Capital Credits may be assigned only upon a patron:

1. Delivering a written assignment to the Cooperative; and

2. Complying with any other requirements reasonably determined by the Board.

The Cooperative shall annually notify each Patron of the dollar amount of Capital Credits or Affiliated Capital Credits allocated or credited to the Patrons.


F. <u>Joint Memberships.</u> Upon the termination, conversion, or alteration of a Joint Membership, and upon the Cooperative receiving written notice and adequate proof of the Joint Membership termination, conversion, or alteration:

For any Joint Membership:

1. Terminated or converted through the death of one (1) Joint Member, the Cooperative shall reallocate and re-credit to the surviving Joint Member all Capital Credits and Affiliated Capital Credits previously allocated and credited to the joint Membership; and

2. Otherwise terminated or converted, and unless otherwise instructed by a court or administrative body of competent jurisdiction, the Cooperative shall reallocate and re-credit to each Joint Member his or her fractional share of the Capital Credits and affiliated Capital Credits previously allocated and credited to the Joint Membership.

**SECTION  3.  <u>RETIRING  AND  REFUNDING  CAPITAL</u>**

Exhibit C - Page 000032

**CREDITS.** At any time prior to the Cooperative's dissolution or liquidation:

1. The Board may authorize the Cooperative to, and the Cooperative shall, wholly or partially retire and refund Capital Credits to Patrons and former Patrons; or

2. After an organization furnishing services, supplies, or products to the Cooperative retires and refunds capital to the Cooperative, the Board may authorize the Cooperative to and the Cooperative shall, retire and refund the corresponding Affiliated Capital Credits to Patrons and former Patrons.

The Board shall determine the manner and method of retiring and refunding Capital Credits and Affiliated Capital Credits.

Upon the death of any natural person Patron or former Patron ("Deceased Patron"), and pursuant to a written request from the Deceased patron's legal representative, the Board may retire the Deceased Patron's Capital Credits and Affiliated Capital Credits under terms and conditions agreed upon by the Deceased Patron's legal representative and the Cooperative.

After perfection in a manner allowed by Law, to secure payment of any amounts owed by a member or patron to the Cooperative, including any reasonable compounded interest, and late payment fee, determined by the Board, the Cooperative has a perfected security interest in the Capital Credits and Affiliated Capital Credits of every member or patron. Before retiring and refunding any Capital Credits or Affiliated Capital Credits, the Cooperative may deduct from the Capital Credits or Affiliated Capital Credits any amounts owed to the Cooperative by the Member or Patron, including any reasonable compounded interest, and late payment fee, determined by the Board.

**SECTION 4. NON-MEMBER PATRONS AND NON-MEMBER NON-PATRONS.** As a condition of persons using, receiving, or purchasing any Cooperative Service, and unless otherwise determined by the Board:

1. To the same extent as Members, Patrons who are not Members ("Non-Member Patrons") and Persons using, receiving, or purchasing any Cooperative Service who are neither Members nor Patrons ("Non-Member Non-Patrons") shall abide by, and be bound to, all the duties,

Exhibit C - Page 000033

obligations, liabilities, and responsibilities imposed by the Governing Documents upon Members;

2. Other than the rights to:

a. Be allocated and paid by credit to a Capital account Capital Credits and Affiliated Capital Credits; and

b.Receive retired and refunded Capital Credits and Affiliated Capital Credits.

3. Non-Member Patrons and Non-Member former Patrons shall have none of the rights granted by the Governing Documents to Members; and

4. Non-Member Non-Patrons shall have none of the rights granted by the governing Documents to Members.

## ARTICLE VIII
## DISPOSITION OF PROPERTY

**SECTION 1.** The cooperative may not sell, mortgage, lease or otherwise dispose of or encumber all or any substantial portion of its property unless such sale, mortgage, lease or other disposition or encumbrance is authorized at a meeting of the members thereof by the affirmative vote of not less than a two-third (2/3) majority of all members of the Cooperative, and unless the notice of such proposed sale, mortgage, lease or other disposition or encumbrance shall have been contained in the notice of the meeting; provided, however, that notwithstanding anything herein contained, the Board of Directors of the Cooperative, without authorization by the members thereof, shall have full power and authority to authorize the execution and delivery of a mortgage or mortgages or a deed or deeds of trust upon, or the pledging or encumbering of, any or all of the property, assets, rights, privileges, licenses, franchises and permits of the Cooperative, whether acquired or to be acquired, and wherever situated, as well as the revenues and incomes therefrom, all upon such terms and conditions as the Board of Directors shall determine, to secure any indebtedness of the Cooperative to the United States of America or any agency or instrumentality thereof, or to secure any indebtedness of the Cooperative to the National Rural Utilities Cooperative Finance Corporation, or any other lending agency.  Provided further, that the

Exhibit C - Page 000034

Board of Directors may, upon the authorization of three-fourths of those members of the Cooperative present at a meeting of members thereof, sell, lease, or otherwise dispose of all or a substantial portion of its property to another Cooperative or foreign Corporation doing business in this State pursuant to the act under which this Cooperative is incorporated, or to a municipality or other body politic or subdivision thereof.

**SECTION 2. <u>MERGER OR CONSOLIDATION.</u>** In a manner determined by the Board that is consistent with this Bylaw, the Cooperative may consolidate or merge with any other consumer-owned cooperative that provides electric power or provides any Cooperative Service ("Consolidate or Merge").

A. <u>Board Approval.</u> The Board must approve an agreement or plan to Consolidate or Merge ("Consolidation or Merger Agreement") stating the:

1. Terms and conditions of the Consolidation or Merger;

2. Name of each entity Consolidating or Merging with the Cooperative;

3. Name of the new or surviving Consolidated or Merged Entity ("New Entity");

4. Manner and basis, if any, of converting memberships, or ownership rights, of each Consolidating or Merging entity into memberships or ownership rights of, or payments from the New Entity;

5. Number of Directors of the New Entity, which must equal or exceed seven (7);

6. Date of the New Entity's annual meeting;

7. Names of New Entity Directors who will serve until the New Entity's first annual meeting; and

8. Any other information required by Law.

B. <u>Member Approval.</u> After the Board approves a Consolidation or Merger Agreement, a majority of the Members present and voting in person must approve the Consolidation or Merger Agreement. Members may not approve the Consolidation or Merger Agreement by Mail Ballot.

C. <u>Notice.</u> The Cooperative shall notify Directors of any Board

Exhibit C - Page 000035

Meeting, and Members of any Member Meeting, at which Directors or Members may consider a Consolidation or Merger Agreement. This notice must contain, or be accompanied by, a summary or copy of the Consolidation or Merger Agreement.

D. Other Requirements. The New Entity Directors named in the Consolidation or Merger Agreement must sign and file Articles of Consolidation or Merger in a manner, and stating the information, required by Law. The Cooperative shall comply with all other requirements for Consolidation or Merger specified by Law.

**SECTION 3.  DISTRIBUTION OF COOPERATIVE ASSETS UPON DISSOLUTION.** Upon the Cooperative's dissolution:

1. The Cooperative shall pay, satisfy, or discharge all Cooperative debts, obligations, and liabilities, including retiring and refunding without priority all Capital Credits and Affiliated Capital Credits to all Patrons and former Patrons in proportion to the value or quantity of Cooperative Services used, received, or purchased by each Patron or former Patron; and

2. After paying, satisfying, or discharging all Cooperative debts, obligations, and liabilities:

a. To the extent practical, the Cooperative shall first distribute gains from selling any appreciated Cooperative Asset to Members who used, received, or purchased Cooperative Services during the period in which the Cooperative owned the Cooperative Asset in proportion to the value or quantity of Cooperative Services used, received, or purchased by the Member during the period the Cooperative owned the Cooperative Asset; and

b. The Cooperative shall then pay or distribute any remaining Cooperative Assets, and any amounts received from selling any remaining Cooperative Assets, to:

(1) The Members who were using, receiving, or purchasing Cooperative Services at the time of the Cooperative's dissolution in proportion to the value or quantity of Cooperative Services used, received, or purchased by each Member prior to the Cooperative's dissolution; or

(2) Any nonprofit charitable or educational entity or organization exempt from paying Federal income tax.

Exhibit C - Page 000036

## ARTICLE IX
## MISCELLANEOUS

**SECTION 1.   CHANGE IN RATES.** The Board shall have full authority to adopt, modify, and amend rates to be charged to the Patrons and duly notify such Patrons from time to time.

**SECTION 2.   RULES OF ORDER.** Unless the Board determines otherwise, and to the extent consistent with Law, the Articles, and these Bylaws, all:
1. Member Meetings;
2. Board Meetings;
3. Member Committee Meetings; and
4. Board Committee Meetings

shall be governed by the latest edition of Robert's Rules of Order.

**SECTION 3. POLICIES, RULES, AND REGULATIONS.** The Board shall have the power to make and adopt such policies, rules and regulations, not inconsistent with law, the Articles of Incorporation or these Bylaws, as it may deem advisable for the Management of the business and affairs of the Cooperative.

**SECTION 4. FISCAL YEAR.** The Board shall determine, and may modify, the Cooperative's fiscal year.

**SECTION 5. NOTICE.** In these Bylaws:

A. Notice Type. Unless otherwise provided in these Bylaws, notice may be:
1. Oral or written; and
2. Communicated:
   a. In person;
   b. By telephone, telegraph, teletype, facsimile, electronic communication, or other form of wire or wireless communication;
   c. By mail or private carrier, or
   d. If the above-listed forms of communicating notice are impractical, then by:
      (1) Newspaper of general circulation in the area where published; or

Exhibit C - Page 000037

(2) Radio, television, or other form of public broadcast communication.

If addressed, or delivered, to an address shown in the Membership list, then a written notice or report delivered as part of a cooperative newsletter, magazine, or other publication regularly sent to Members constitutes a written notice or report to all Members:

1. Residing at the address; or

2. Having the same address shown in the Membership List.

B. <u>Notice Effective Date.</u> If communicated in a comprehensible manner, then unless otherwise provided in these Bylaws:

1. Oral notice is effective when communicated; and

2. Written notice is effective on the earliest of;

a. When received;

b. With the postmark evidencing deposit in the United States Mail, if correctly addressed and:

(i) Mailed with first class postage affixed, then three (3) days after deposit in the United States Mail; or

(ii) Mailed with other than first class, registered, or certified postage affixed, then five (5) days after deposit in the United States Mail; or

c. If sent by registered or certified mail, return receipt requested, and if the return receipt is signed by, or on behalf of, the addressee, then on the date indicated on the return receipt.

**SECTION 6. <u>GOVERNING LAW.</u>** These Bylaws must be governed by, and interpreted under, the Laws of the state in which the Cooperative is incorporated.

**SECTON 7. <u>TITLES AND HEADINGS.</u>** All titles and headings of Bylaw Articles, sections, and sub-sections are for convenience and reference only, and do not affect the interpretation of any Bylaw Article, section, or sub-section.

**SECTION 8. <u>PARTIAL INVALIDITY.</u>** When reasonably possible, every Bylaw article, section, sub-section, paragraph, sentence, clause, or provision (collectively, "Bylaw Provision") must be interpreted in a manner by which the Bylaw Provision is valid. The invalidation

Exhibit C - Page 000038

of any Bylaw Provision by any entity possessing proper jurisdiction and authority, which does not alter the fundamental rights, duties, and relationship between the Cooperative and Members, does not invalidate the remaining Bylaw Provisions.

**SECTION 9. CUMULATIVE REMEDIES.** The rights and remedies provided in these Bylaws are cumulative. The Cooperative or any Member asserting any right or remedy provided in these Bylaws does not preclude the Cooperative or Member from asserting other rights or remedies provided in these Bylaws.

S**ECTION 10. ENTIRE AGREEMENT.** Between the Cooperative and any Member, the Governing Documents:

1. Constitute the entire agreement; and

2. Supersede and replace any prior or contemporaneous oral or written communication or representation.

**SECTION 11. SUCCESSORS AND ASSIGNS.** To the extent allowed by Law:

1. The duties, obligations, and liabilities imposed upon the Cooperative or any Member by these Bylaws are binding upon the successors and assigns of the Cooperative or Member; and

2. The rights granted to the Cooperative by these Bylaws inure to the benefit of the Cooperative's successors and assigns.

The binding nature of the duties, obligations, and liabilities imposed by these Bylaws upon the successors and assigns of the Cooperative and any Member does not relieve the Cooperative or Member of the duties, obligations, and liabilities imposed by these bylaws upon the Cooperative or Member.

**SECTION 12. WAIVER.** The failure of the Cooperative or any Member to assert any right or remedy provided in these Bylaws does not waive the right or remedy provided in these Bylaws.

**SECTION 13. LACK OF NOTICE.** To the extent allowed by Law and the Articles, the failure of any Member or Director to receive notice of any Meeting, action, or vote does not affect, or invalidate, any

Exhibit C - Page 000039

action or vote taken by the Members or Board.

**SECTION 14. <u>SUBSCRIPTION FEE FOR PUBLICATIONS.</u>** The Board of Directors is hereby authorized to subscribe from the revenues from each member each year the amount necessary to pay the subscription fee for the Cooperative's official publication or other publications as selected by the Board of Directors.

**SECTION 15. <u>AREA COVERAGE.</u>** The Board of Directors shall make diligent effort to see that electric service is extended to all unserved persons within the Cooperative service area who (a) desire such service and (b) meet all reasonable requirements established by the Cooperative as a condition of such service.

### ARTICLE X
### AMENDEMENTS

These bylaws may be altered, amended or repealed by the members at any regular or special meeting, provided the notice of such meeting shall have contained a copy of the proposed alteration, amendment or repeal, and an accurate summary explanation thereof.

Exhibit C - Page 000040