# EXHIBIT D

# WHOLESALE POWER CONTRACT

AGREEMENT made as of __January 1, 1995__ between East River Electric Power Cooperative, Inc., 121 SE First Street, PO Drawer E, Madison, South Dakota, 57042 (hereinafter called "East River"), a cooperative corporation organized and existing under the laws of the State of South Dakota, and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 38, Huron, South Dakota, 57350 (hereinafter called "Member"), a cooperative corporation organized and existing under the laws of the State of South Dakota, its successors, and assigns.

WHEREAS, East River owns and operates an electric transmission system and purchases or otherwise obtains electric power and energy for the purpose, among others, of supplying electric power and energy to its Members; and

WHEREAS, East River has heretofore entered into agreements for the sale of electric power and energy similar in form to this Agreement with the other members of East River, and may enter into similar contracts with other rural electric cooperatives who may become members; and

WHEREAS, Beadle Electric Cooperative, Inc., and Ree Electric Cooperative, Inc., consolidated on January 1, 1995, to form Dakota Energy Cooperative, Inc.; and

WHEREAS, parties hereto have heretofore entered into agreements providing for the purchase and sale of electric power and energy, the last agreement between the parties prior to consolidation being dated March 3, 1983, and amendment and supplement thereto being dated August 6, 1992; and

WHEREAS, it is the desire of the parties hereto to supersede such Agreement dated March 3, 1983, and amendment thereto by the terms of this Agreement; and

Exhibit D - Page 000002

WHEREAS, the execution of the Power Contract between the Member and East River is subject to the approval of the Administrator under the terms of the loan contracts entered into with the Administrator by East River and the Member respectively; and

WHEREAS, the Government is relying on this Agreement and similar contracts between East River and other borrowers from the Rural Utilities Service to assure that the  Notes' are repaid and the purposes of the Rural Electrification Act of 1936, as amended, are carried out and East River and the Member, by executing this contract, acknowledge that reliance; and

WHEREAS, East River has financed and may, in the future, finance such construction in whole or part through loans made or guaranteed by the United States of America (hereinafter called "Government"), acting through the Administrator of the Rural Utilities Service (hereinafter called the "Administrator"); and

WHEREAS, the indebtedness created by such loans and loan guarantees made by the Government is evidenced, and, with respect to future indebtedness, shall be evidenced, by certain notes (hereinafter collectively called the "Notes") secured by that Supplemental Mortgage and Security Agreement made by and between East River, the Government, and the National Rural Utilities Cooperative Finance Corporation (CFC) or other lenders (said Supplemental Mortgage and Security Agreement as it may heretofore or hereafter be amended, supplemented, and/or restated from time to time being hereinafter called the "Mortgage"); and

WHEREAS, this Agreement and payments due to East River under this Agreement shall be pledged and assigned to secure the Notes as provided in the Mortgage.

NOW, THEREFORE, in consideration of the mutual undertakings herein contained the parties hereto agree as follows:

1.    <u>General</u>:  East River shall sell and deliver to Member and Member shall purchase and receive from East River, all electric power and energy which Member shall require to serve

all of Member's electric loads, to the extent that East River shall have such power and energy and facilities available.   (It is recognized by the Member and East River that the Parties' obligation hereunder may be affected by the Public Utility Regulatory Policies Act of 1978 and amendments thereto).

2.   <u>Electric Characteristics and Delivery Points</u>:   Electric power and energy to be furnished hereunder shall be alternating current, three phase, sixty cycle.  East River shall make and pay for all final connections between the system of East River and Member at the points of delivery, which points of delivery are described in Exhibit A attached hereto and made a part hereof.

3.   <u>Substation</u>:   East River shall install, own, and maintain the necessary substation equipment at the points of connection.  Member shall own and maintain switching and protective equipment which may be reasonably necessary to enable Member to take and use the electric power and energy hereunder and to protect the East River system from hazards from Member's system.  Such switching and protective equipment located inside the substation's facility shall be approved by East River.  Meters and metering equipment necessary to register demand and energy shall be furnished, maintained and read, or caused to be furnished, maintained and read, by East River and shall be located at the point of delivery on Member's side of such transforming equipment.

4.   <u>Rate</u>:   (a)   Member shall pay East River for all electric power and energy furnished hereunder and such other charges included in the rates  adopted by the Board of Directors from time to time and approved by the Administrator of the Rural Utilities Service, all as set forth in Exhibit B attached hereto.  The terms, conditions, and rates for the furnishing of electric power and energy and other charges included in the rates are set forth in Exhibit B attached hereto and made a part hereof.

(b)      The Board of Directors of East River at such intervals as it shall deem appropriate, but in any event not less frequently than once in each calendar year, shall review the rate for electric power and energy furnished hereunder and, if necessary, shall revise such rate so that it shall produce revenues which shall be sufficient, but only sufficient, with the revenues of East River from all other sources, to:

(1)      Pay the cost of the operation and maintenance (including but not limited to renewals, replacements, insurance, taxes, and administrative and general overhead expenses) of the transmission system and related facilities of East River.

(2)      To pay the cost of related services deemed advisable by the Board of Directors of East River.

(3)      To pay the cost of any power and energy purchased for resale hereunder by East River.

(4)      To pay the cost of transmission service.

(5)      To pay principal and interest payments on all indebtedness of East River.

(6)      To pay the amounts which must be realized by East River to meet the requirements of any rate covenant or coverage of debt service covenant with respect to any contract between East River and other party or parties.

(7)      To provide for the establishment and maintenance of reasonable margins and reserves.

All contracts and any other security agreements requiring East River to comply with any rate covenant or coverage of debt service covenant shall be approved by the Administrator of the Rural Utilities Service.

East River shall cause a notice in writing to be given to Member and the Administrator of the Rural Utilities Service which shall set out all the proposed revisions of the rate with the

effective date thereof, which effective date shall be not less than thirty (30) nor more than ninety (90) days after the date of the notice, and shall set forth the basis upon which the rate is proposed to be adjusted and established. Member agrees that the rate from time to time established by the Board of Directors of East River shall be deemed to be substituted for the rate herein provided (without inclusion of a new Exhibit B, upon the change in rate).

The Member agrees that the rate from time to time established by the Board of Directors of East River shall be deemed to be substituted for the rate herein provided and agrees to pay for electric power and energy furnished by East River to it hereunder after the effective date of any such revision at such revised rates; provided however that no such revision shall be effective unless approved in writing by the Administrator of the Rural Utilities Service.

5.     Meter Readings and Payment of Bills: East River shall read, or cause to be read, each meter on the fifteenth (15th) day of each month, as far as practical, unless the 15th day of the month falls on Saturday, then the meter will be read on the preceding Friday. If the 15th day of the month falls on a Sunday, then the meter will be read on the following Monday each month. East River will mail the Member a bill for electric service furnished hereunder on or before the first day of the following month. Electric service furnished hereunder shall be paid for at the offices of East River in Madison, South Dakota, monthly within fifteen (15) days after the bill is mailed to the Member.

If the Member disputes any bill or account or any other matter arising out of this Agreement, the Member shall continue to pay such bill or account to East River and East River will deposit the amount in dispute in an escrow account until the dispute is settled. The interest earned on the escrow account shall accumulate and become a part of said escrow account. The Party or Parties in whose favor the dispute is settled shall be entitled, as the case may be, to all or a pro rata share of such escrow account.

Neither party to this Agreement shall be entitled to or liable to pay interest resulting from an error in meter reading or in the computation of the bill.

The remedy given herein to East River shall be in addition to all other remedies available to East River, either at law or in equity, for the breach of any of the provisions of this Agreement. Disputes as to payment of an account or any other dispute shall not relieve the Member from any of its obligations under this Agreement, including the obligation to make payments when due.

6.   <u>Meter Testing and Billing Adjustment</u>: East River shall test and calibrate, or cause to be tested and calibrated, meters by comparison with accurate standards at least once each year and if inaccurate shall be calibrated to within one fourth of one percent (¼ of 1%) plus or minus. East River shall also make, or cause to be made, special meter tests at any time at the request of Member. The cost of all tests shall be borne by East River; provided, however, that if any special meter test made at the request of Member shall disclose that the meters are recording accurately, within one percent (1%) plus or minus, Member shall reimburse East River for the cost of such test. The readings of any meter which shall have been disclosed by test to be inaccurate (exceeding one percent (1%)) shall be corrected for the ninety (90) days previous to such test in accordance with the percentage of inaccuracy found by such test. If any meter shall fail to register for any period, Member and East River shall agree to an estimated amount of power and energy furnished during such period and East River shall render a bill therefore.

7.   <u>Notice of Meter Reading or Test</u>: East River shall notify Member in advance of the time of any meter reading or test so that a representative of Member may be present at such meter reading or test.

8.   <u>Right of Access</u>:  Duly authorized representatives of either party hereto shall be permitted to enter the premises of the other party hereto at all reasonable times in order to carry out the provisions hereof.

9.   <u>Continuity of Service</u>:  East River shall use reasonable diligence to provide a constant and uninterrupted supply of electric power and energy hereunder.  If the supply of electric power and energy shall fail or be interrupted, or become defective through an act of God or of the public enemy, or because of accident, labor troubles, or any other cause beyond the control of East River, East River shall not be liable therefore or for damages caused thereby.

10.   <u>Term</u>:  This Agreement shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service and shall remain in effect until December 31, 2038, and thereafter until terminated by either Party giving to the other not less than six months' written notice of its intention to terminate.

11.   <u>Notices</u>:  Any notice, demand, or request required or authorized by this Agreement shall be deemed properly given if mailed, postage prepaid, to the parties at the address designated in this Agreement.

12.   <u>Special Conditions of Service</u>:  Any special conditions of service to this Agreement shall be set forth in Exhibit C attached hereto.

13.   <u>Waivers</u>:  Any waiver at any time by either party hereto of its rights with respect to default or any other matter arising in connection with this Agreement shall not be deemed to be waiver with respect to any subsequent default or matter.

14.   <u>Transfers by the Member</u>:  (a)  The Member agrees that during the term of this Agreement, so long as any of the Notes are outstanding, the Member will not, without the approval in writing of East River and the Administrator, take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation, or to sell, lease, or transfer

Exhibit D - Page 000008

(or make any agreement therefore), all or a substantial portion of its assets, whether now owned or hereafter acquired. Notwithstanding the foregoing, the Member may take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation or to sell, lease, or transfer (or make any agreement therefore) all or a substantial portion of its assets, whether now owned or hereafter acquired, so long as the Member shall pay such portion of the outstanding indebtedness on the Notes as shall be determined by East River with the prior written consent of the Administrator and shall otherwise comply with such reasonable terms and conditions as the Administrator and East River may require.

(b)     The Member and East River agree that the failure or threatened failure of the Member to comply with the terms of the immediately preceding paragraph (14a.) will cause irreparable injury to East River and to the Government which cannot properly or adequately be compensated by the mere payment of money. Member agrees, therefore, that in the event of a breach or threatened breach of paragraph 14a. of this Agreement by the Member, East River, in addition to any other remedies that may be available to it judicially, shall have the right to obtain from any competent court a decree enjoining such breach or threatened breach of said paragraph 14a. or providing that the terms of said paragraph 14a. be specifically enforced.

15.     Governing Laws:  This Agreement, in all respects, shall be governed by and construed according to the laws of the State of South Dakota.

This Wholesale Power Contract and any Amendment thereto shall become effective when approved in writing by the Administrator of the Rural Utilities Service. Upon the approval of

the Administrator and effectiveness of this contract, the Wholesale Power Contracts as assigned to Dakota Energy Cooperative, Inc., from Beadle Electric Cooperative, Inc., and Ree Electric Cooperative, Inc., dated March 3, 1983, and all amendments thereto shall terminate, and this contract shall be substituted therefore.

EAST   RIVER   ELECTRIC   POWER COOPERATIVE, INC.

By _____
      President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By _Delbert Bushong_____
      President

ATTEST:

_____
Secretary



## EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

### EXHIBIT A

East River points of delivery to serve the electrical loads of Dakota Energy Cooperative, Inc.

| | |
|---|---|
| Ames | Morningside |
| Bonilla | Polo |
| Cavour | Virgil |
| Highmore | Wolsey |
| Huron | Yale |
| Miller | |

EAST   RIVER   ELECTRIC   POWER COOPERATIVE, INC.

By _____
          President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By _____
          President

ATTEST:

_____
Secretary

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994



# EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

## EXHIBIT B

## AVAILABILITY

Available to all cooperative associations which are or shall be members of East River. The electric power and energy furnished hereunder shall be separately metered and billed for each delivery point.

## RATE

| | |
|---|---|
| Substation Delivery Point Charge: | $1,000/substation/month |
| Substation Capacity Charge (Non-Coincident Demand): | $3.20/kw/year |
| Coincident Demand Charge: | $6.25/kw/month |
| Energy Charge: | 16.50 mills/kwh |
| Fixed Charge: | $580,268.20/year |

## MONTHLY MAXIMUM DEMAND

The monthly maximum demand shall be determined by suitable instruments and shall be the highest average rate at which energy is used during the 30-minute period of the month coincident to East River's system peak.

If the Member fails to pay any such bill or account when due, an interest charge, without prejudice to any rights of East River, including that to immediate payment, be added to the account of the Member in an amount equal to the lower of one percent (1%) per month or fraction thereof or the highest legal rate of interest on the unpaid balance remaining unpaid from the date such bill is due and payable. For the purpose of computing interest under this

paragraph, a month shall be thirty (30) days.  No interest shall be charged hereunder if the Member has mailed the amount due and such mail is postmarked on or before the fifteenth (15th) day of the month.

EAST   RIVER   ELECTRIC   POWER
COOPERATIVE, INC.

By _____
       President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By _____
       President

ATTEST:

_____
Secretary



## DAKOTA ENERGY COOPERATIVE, INC.
### HURON, SOUTH DAKOTA

**Resolution No.**

"Wholesale Power Contract"

BE IT RESOLVED, that the form, terms, and provisions of the Wholesale Power Contract and Exhibits A and B attached thereto, between Dakota Energy Cooperative, Inc., and East River Electric Power Cooperative, Inc., dated the ___3___ day of __Jan 1995__, presented to this meeting and filed with the minutes thereof is hereby approved. The President and Secretary of the Cooperative are hereby authorized and directed to execute same for, on behalf of and in the name of the Cooperative and cause the aforesaid Wholesale Power Contract and Exhibits A and B attached thereto to be delivered to East River Electric Power Cooperative, Inc., subject to the approval of the Administrator of the Rural Utilities Service.

### CERTIFICATION

I, __David Allen__, do hereby certify that I am the Secretary of Dakota Energy Cooperative, Inc., that the foregoing is a true and correct copy of resolution adopted by the Board of Directors of said Cooperative at the regular meeting of said Board _____, at which meeting a quorum of the Directors was present and acted throughout, and said resolution is in full force and effect and has not been rescinded or modified.

In Witness Whereof, I have hereunto set my hand and affixed the seal of the Cooperative this ___3___ day of ___January 1995___.

_____
Secretary

Corporate Seal

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994

Exhibit D - Page 000017



## SUPPLEMENTAL AGREEMENT
## BETWEEN
## EAST RIVER ELECTRIC POWER COOPERATIVE, INC.,
## AND
## RURAL UTILITIES SERVICE
## AND
## DAKOTA ENERGY COOPERATIVE, INC.

AGREEMENT made as of __January 1, 1995__ between East River Electric Power Cooperative, Inc., 121 SE First Street, PO Drawer E, Madison, South Dakota, 57042 (hereinafter called the "Seller"), and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 38, Huron, South Dakota, 57350 (hereinafter called the "Member"), its successors and assigns and the United States of America (hereinafter called the "Government"), acting through the Administrator of the Rural Utilities Service (hereinafter called the "Administrator").

WHEREAS, the Seller and the Member have entered into a Wholesale Power Contract for the purchase and sale of electric power and energy, which contract is attached hereto and is hereinafter called the "Power Contract"; and

WHEREAS, the execution of the Power Contract between the Member and the Seller is subject to the approval of the Administrator under the terms of the loan contracts entered into with the Administrator by the Seller and the Member respectively; and

WHEREAS, the Government is relying on said Power Contract and similar contracts between the Seller and other borrowers from the Rural Utilities Service to assure that the  Notes' referred to in the Power Contract are repaid and the purposes of the Rural Electrification act of

Exhibit D - Page 000019

1936, as amended, are carried out and the Seller and Member, by executing this Supplemental Agreement, acknowledge that reliance;

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, and the approval by the Administrator of the Power Contract, the Parties hereto agree as follows:

The Seller, the Member, and the Administrator agree that if the Member shall fail to comply with any provision of the Power Contract, the Seller or the Administrator, if the Administrator so elects, shall have the right to enforce the obligations of the Member under the provisions of the Power Contract by instituting all necessary actions at law or suits in equity, including, without limitation, suits for specific performance.  Such rights of the Administrator to enforce the provisions of the Power Contract are in addition to and shall not limit the rights which the Administrator shall otherwise have as third-party beneficiary of the Power Contract or pursuant to the assignment and pledge of such Power Contract and the payments required to be made thereunder as provided in the "Mortgage" referred to in the Power Contract.  The Government shall not, under any circumstances, assume or be bound by the obligations of the Seller under the Power Contract except to the extent the Government shall agree in writing to accept and be bound by such obligations.

Exhibit D - Page 000020

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the day and year first above mentioned.

EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

By _____
President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By _____
President

ATTEST:

_____
Secretary

UNITED STATES OF AMERICA

By _____
Administrator of the
Rural Utilities Service

Exhibit D - Page 000021



## U.S. DEPARTMENT OF AGRICULTURE
## RURAL ELECTRIFICATION ADMINISTRATION

South Dakota 43 Minnehaha
**REA BORROWER DESIGNATION**  South Dakota 50 Dakota

**THE WITHIN** Amendment No. 4 to Wholesale Power Contract between East River

Electric Power Cooperative, Inc., and Dakota Energy Cooperative, Inc., dated

April 4, 1996.

**SUBMITTED BY THE ABOVE DESIGNATED BORROWER PURSUANT TO THE
TERMS OF THE LOAN CONTRACT, IS HEREBY APPROVED SOLELY FOR THE
PURPOSES OF SUCH CONTRACT.**

_____
**FOR THE ADMINISTRATOR**

**DATED**

8/28/96

Pursuant to the Department of Agriculture Reorganization Act of 1994 (Title II of Public Law No.
103-354), the United States Secretary of Agriculture simultaneously abolished the Rural
Electrification Administration (REA) and established the Rural Utilities Service (RUS) to succeed
REA as the agency for carrying out electric and telephone loan program activities authorized by
law, including the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.).

REA FORM 25a.     REV 5-73

AMENDMENT 2
TO
WHOLESALE POWER CONTRACT
BETWEEN
EAST RIVER ELECTRIC POWER COOPERATIVE, INC.
AND
DAKOTA ENERGY COOPERATIVE, INC.

AGREEMENT made as of April 4, 1996, between East River
Electric Power Cooperative, Inc., 121 Southeast First Street,
P.O. Drawer E, Madison, South Dakota 57042 (hereinafter called
"East River") and Dakota Energy Cooperative, Inc., Highway 14
East, PO Box 830, Huron, South Dakota 57350 (hereinafter called
the "Member"), its successors and assigns.

WHEREAS, the Western Area Power Administration (Western) has
requested that East River and all other Western customers convert
to a calendar month billing period during 1996; and

WHEREAS, Basin Electric Power Cooperative (Basin) has agreed
to said proposed billing change and also desires that its members
adopt a calendar month billing period; and

WHEREAS, East River desires to conform its billing procedure
to the billing procedure adopted by other Basin members; and

WHEREAS, it is to the advantage and best interest of East
River's members that the Wholesale Power Contract between East
River and its members be amended to provide the monthly billing
procedure as stated herein;

-2-

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, and the approval by the Administrator of the Rural Utilities Service (RUS), the Wholesale Power Contract between East River and the Member dated January 1, 1995 is hereby amended as provided herein and the Parties hereto agree as follows:

1.    That Paragraph 5, Meter Readings and Payment of Bills be amended to substitute the following:

> 5.    <u>Meter Readings and Payment of Bills</u>.  Appropriate operating procedures shall be established to monthly determine the electric power and energy delivered and to be billed by East River to the Member.  Electric power and energy furnished hereunder shall be paid for at the office of East River in Madison, South Dakota, monthly within fifteen (15) days after the bill therefore is mailed to the Member.
>
> If the Member disputes any bill or account or any other matter arising out of this Agreement, the Member shall continue to pay such bill or account to East River and East River will deposit the amount in dispute in an escrow account until the dispute is settled.  The interest earned on the escrow account shall accumulate and become a part of said escrow account.  The Party or

-3-

Parties in whose favor the dispute is settled shall be entitled, as the case may be, to all or a pro rata share of such escrow account.

Neither Party to this Agreement shall be entitled to or liable to pay interest from an error in meter reading or in the computation of the bill.

The remedy given herein to East River shall be in addition to all other remedies available to East River, either at law or in equity, for the breach of any of the provisions of this Agreement.  Disputes as to payment of an account or any other dispute shall not relieve the Member from any of its obligations under this Agreement, including the obligation to make payments when due.

2.    That any provision contrary to this Amendment contained in said Wholesale Power Contract and Exhibits thereto shall be void and of no force and effect.

3.    All provisions of the Wholesale Power Contract between East River and Member shall remain in full force and effect except such provisions as herein amended or modified, and as to those provisions herein amended or modified and the additional provisions contained in this Amendment 2 to Wholesale Power

1

Exhibit D - Page 000026

–4–

Contract shall become effective when approved in writing by the Administrator of the Rural Utilities Service.

EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

By _Wayne Wright_
President

ATTEST:

_Keith Kleppin_
Secretary

DAKOTA ENERGY COOPERATIVE, INC.

By _Delbert Bushong_
President

ATTEST:

_Gerald Allen_
Secretary



EAST RIVER
ELECTRIC POWER COOPERATIVE
121 Southeast First St.
Madison, SD 57042
P.O. Box 227
Telephone (605) 256-4536

☒ Bob *BB*   ☒ Greg H. _____
☐ Lynn _____   ☐ John _____
☐ Dave _____   ☒ Greg P. _____

*File*

May 9, 2006

Mr. Robert Rademacher, Manager
Dakota Energy Cooperative, Inc.
PO Box 830
Huron, SD  57350

Dear Bob:

I am pleased to provide for your permanent record one copy of the approved and executed Amendment 2 to the Wholesale Power Contract between East River and Dakota Energy Cooperative, Inc.

At its regular meeting on May 4, 2006, East River's Board of Directors approved this Amendment which extends the term of the current Wholesale Power Contract from December 31, 2038, to December 31, 2058.  East River highly values and appreciates your support and willingness to extend the term of this contract.  This action secures East River and Basin Electric's ability to obtain financing for future power supply and transmission facilities for the benefit of their members, including Dakota Energy Cooperative, Inc.

Also at its May 4, 2006, meeting, East River's Board approved the extension of the term from December 31, 2039, to December 31, 2050, of East River's supplemental Wholesale Power Contract with Basin Electric.

Last, the East River Board also acted not to accept Sioux Valley Energy's action to extend the term of its all-requirements contract with East River to December 31, 2050, rather than December 31, 2058.  East River will continue discussions with Sioux Valley Energy to determine the outcome of this matter.

Again, thank you for your support.

With best regards,

Jeffrey L. Nelson
General Manager

JLN/sl

Enc.

RECEIVED
MAY 1 0 2006

c:     Delbert Bushong, President (w/o enclosure)

A Touchstone Energy™ Cooperative
The power of human connections

Exhibit D - Page 000028

AMENDMENT 2
TO
WHOLESALE POWER CONTRACT
BETWEEN
EAST RIVER ELECTRIC POWER COOPERATIVE, INC.
AND
DAKOTA ENERGY COOPERATIVE, INC.


AGREEMENT made as of February 2, 2006, between East River Electric Power Cooperative, Inc., 121 Southeast First Street, P.O. Box 227, Madison, South Dakota  57042 (hereinafter called "Seller") and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 830, Huron, South Dakota  57350 (hereinafter called the "Member"), its successors and assigns.

WHEREAS, the Seller and the Member have entered into a Wholesale Power Contract for the purchase and sale of electric power and energy, which contract is attached hereto and is hereinafter called the "Power Contract"; and

WHEREAS, the execution of the Power Contract between the Member and the Seller is subject to the approval of the Administrator under the terms of the loan contracts entered into with the Administrator by the Seller and the Member respectively; and

WHEREAS, the indebtedness created by such loans and loan guarantees made by the Government is evidenced, and, with respect to future indebtedness, shall be evidenced, by certain notes (hereinafter collectively called the "Notes") secured by that

Supplemental Mortgage and Security Agreement made by and between the Seller, the Government, and National Rural Utilities Cooperative Finance Corporation (CFC) or other lenders (said Supplemental Mortgage and Security Agreement as it may heretofore or hereafter be amended, supplemented, and/or restated from time to time being hereinafter called the "Mortgage"); and

WHEREAS, this Agreement and payments due to the Seller under this Agreement shall be pledged and assigned to secure the Notes as provided in the Mortgage; and

WHEREAS, Seller expects to obtain additional loans from the Government and supplemental lenders within the next 8 years, which the due date of such loans will exceed the term of the Power Contract between Seller and the Member, and that it is to the advantage and best interest of the Seller and Member to extend the term of the Power Contract;

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, and the approval by the Administrator of the Power Contract, the Power Contract between the Seller and the Member dated January 1, 1995 is hereby amended as provided herein and the Parties hereto agree as follows:

1.  That paragraph 10 - Term, of the Power Contract between the Seller and Member be amended to substitute the following:

-3-

   <u>Term.</u> This Agreement shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service and shall remain in effect until December 31, 2058 and thereafter until terminated by either Party giving to the other not less than six month's written notice of its intention to terminate.

  2. All provisions of the Power Contract between the Seller and Member shall remain in full force and effect except such provisions as herein amended or modified, and as to those provisions herein amended or modified and the additional provisions contained in this Amendment 2 to Wholesale Power Contract shall become effective when approved in writing by the Administrator of the Rural Utilities Service.

      EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

      By _Wayne Wright_____
          President

ATTEST:

_____
Secretary

      DAKOTA ENERGY COOPERATIVE, INC.

      By _Delbert Buskin_____
          President

ATTEST:

_____
Secretary

# U.S. DEPARTMENT OF AGRICULTURE
## RURAL UTILITIES SERVICE

**RUS BORROWER DESIGNATION**     SD-50 (Dakota)
SD-43 (Minnehaha)

**THE WITHIN**   Amendment 4 to the Wholesale Power Contract between

East River Electric Power Cooperative, Inc. and Dakota Energy Cooperative, Inc.

dated August 6, 2015.

SUBMITTED BY THE ABOVE DESIGNATED BORROWER PURSUANT TO THE
TERMS OF THE LOAN CONTRACT, IS HEREBY APPROVED SOLELY FOR THE
PURPOSES OF SUCH CONTRACT.

FOR THE ADMINISTRATOR

DATED

2/26/16

RUS FORM 28a   REV 5-73
(a computer generated facsimile)

AMENDMENT 3
TO
WHOLESALE POWER CONTRACT
BETWEEN
EAST RIVER ELECTRIC POWER COOPERATIVE, INC.
AND
DAKOTA ENERGY COOPERATIVE, INC.

AGREEMENT made as of August 6, 2015, 2015, between East River Electric Power Cooperative, Inc., 211 S. Harth Avenue, P.O. Box 227, Madison, South Dakota 57042 (hereinafter called "Seller"), an electric cooperative corporation organized and existing under the laws of the State of South Dakota, and Dakota Energy Cooperative, Inc., 40294 U.S. Hwy 14, PO Box 830, Huron, SD 57350 (hereinafter called "Member"), its successors and assigns, a South Dakota cooperative utility existing under the laws of the State of South Dakota.

WHEREAS, the Seller and the Member entered into a Wholesale Power Contract dated January 1, 1995, as amended (hereinafter called the "Power Contract"); and

WHEREAS, Basin Electric Power Cooperative (hereinafter called "Basin Electric") has requested that the Seller extend the Wholesale Power Contract between Basin Electric and the Seller through December 31, 2075, because Basin Electric is planning for the eventual retirement of existing generation sources and replacement with new sources that will require substantial financing; and

WHEREAS, the Power Contract between the Seller and the Member provides the means for the Seller to meet its financial obligations to Basin Electric and, extending the Power Contract with the Member will enable the Seller to extend its Wholesale Power Contract with Basin Electric; and

WHEREAS, the Seller will continue to have its own on-going financing needs to fund its plant expansion with the term of the financing arrangements soon exceeding the term of the current Power Contract thereby hampering the Seller's ability to raise capital if the Power Contract is not extended;

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual undertakings herein contained, the parties hereby agree as follows:

1. That Section 10 - Term, of the Power Contract between the Seller and the Member, be amended as follows: delete "December 31, 2058" and insert "December 31, 2075."

2. The Effective Date of this Amendment is October 1, 2015.

3. This Amendment is subject to the approval of the Administrator of the Rural Utilities Services.

Exhibit D - Page 000034

East River Electric Power Cooperative, Inc.

By _____
                                President

ATTEST

_____
          Secretary

Dakota Energy Cooperative, Inc.

By _____
                                President

ATTEST

_____
          Secretary

Excerpt from the Minutes of
East River Electric Power Cooperative, Inc.
Board of Directors Meeting
August 6, 2015

It was moved by Ken Gillaspie, seconded by Isabel Trobaugh, to adopt the following resolution:

RESOLUTION NO.: 82015-2

SUBJECT:   WHOLESALE   POWER   CONTRACT   AND   SUPPLEMENTAL
WHOLESALE   POWER   CONTRACT   AMENDMENT:   17-YEAR
EXTENSION

WHEREAS, East River Electric Power Cooperative, Inc. (East River) has requested that its membership extend their existing Wholesale Power Contracts and Supplemental Wholesale Power Contracts with East River from December 31, 2058, to December 31, 2075, through contract amendments; and

WHEREAS, the contract amendments with the Class D East River members also address other issues such as transmission and ancillary services; and

WHEREAS, all of East River's twenty-five member systems have agreed to extend and amend their contracts;

NOW, THEREFORE, BE IT RESOLVED, that the East River Board of Directors hereby approves and authorizes the President and Secretary to execute the contract amendments with all of East River's twenty-five member systems to this effect.

Motion carried unanimously.


## CERTIFICATION

I, Robert Sahr, Assistant Secretary to the Board of Directors of East River Electric Power Cooperative, Inc., as designated by the Board of Directors to certify cooperative documents pursuant to Resolution No. 122006-1, do hereby certify that the above resolution is a correct copy of the resolution as it appears in the minutes and records of this Cooperative and which resolution was adopted at the meeting of the Board of Directors held on August 6, 2015; at the meeting a quorum of the directors was present and acted throughout; and none of the resolutions contained in the minutes have been rescinded or modified.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Cooperative, this 19th day of October, 2015.

_Robert K. Sahr_

Assistant Secretary to the East
River Electric Board of Directors


Exhibit D - Page 000036

## DAKOTA ENERGY COOPERATIVE, INC.

## RESOLUTION

## WHOLESALE POWER CONTRACT AMENDMENT BY AND BETWEEN EAST RIVER ELECTRIC POWER COOPERATIVE, INC. AND DAKOTA ENERGY COOPERATIVE, INC.

**WHEREAS,** Basin Electric Power Cooperative, Inc., and East River Electric Power Cooperative, Inc., entered into a Wholesale Power Contract on the 5th day of April, 1962, as amended; and

**WHEREAS,** Basin has requested and East River has agreed to amend the Wholesale Power Contract; and

**WHEREAS,** said Amendment to said Wholesale Power Contract extends the term of said Contract from December 31, 2058, to December 31, 2075; and

**WHEREAS,** East River's present Wholesale Power Contract with Dakota Energy Cooperative, Inc. executed on the 1st day of January, 1995, as amended, has an expiration date of December 31, 2058; and

**WHEREAS,** East River has requested and Dakota Energy Cooperative, Inc. has agreed to amend the Wholesale Power Contract by extending the term from December 31, 2058, to December 31, 2075;

**NOW, THEREFORE, BE IT RESOLVED,** by the Board of Directors of Dakota Energy Cooperative, Inc. that proposed Amendment 3 to the Wholesale Power Contract between East River and Dakota Energy Cooperative, Inc. in the form as presented at this meeting is hereby approved.

### CERTIFICATE OF SECRETARY

I, David Allen, Secretary of the Board of Directors of Dakota Energy Cooperative, Inc., certify that the following is a true and correct copy of a resolution adopted by the Board of Directors of said Cooperative at their regular meeting of the Board held on July 28, 2015, at which meeting a quorum of directors were present and the above resolution is attached to the minutes of the meeting and has not been rescinded or modified.

**IN WITNESS WHEREOF,** I have set my hand and affixed the seal of the Cooperative this 28th day of July 2015.

**(Corporate Seal)**

David Allen, Secretary

Exhibit D - Page 000037