# EXHIBIT H

# WHOLESALE POWER CONTRACT

AGREEMENT made as of <u>January 1, 1995</u> between East River Electric Power Cooperative, Inc., 121 SE First Street, PO Drawer E, Madison, South Dakota, 57042 (hereinafter called "East River"), a cooperative corporation organized and existing under the laws of the State of South Dakota, and Dakota Energy Cooperative, Inc., Highway 14 East, PO Box 38, Huron, South Dakota, 57350 (hereinafter called "Member"), a cooperative corporation organized and existing under the laws of the State of South Dakota, its successors, and assigns.

WHEREAS, East River owns and operates an electric transmission system and purchases or otherwise obtains electric power and energy for the purpose, among others, of supplying electric power and energy to its Members; and

WHEREAS, East River has heretofore entered into agreements for the sale of electric power and energy similar in form to this Agreement with the other members of East River, and may enter into similar contracts with other rural electric cooperatives who may become members; and

WHEREAS, Beadle Electric Cooperative, Inc., and Ree Electric Cooperative, Inc., consolidated on January 1, 1995, to form Dakota Energy Cooperative, Inc.; and

WHEREAS, parties hereto have heretofore entered into agreements providing for the purchase and sale of electric power and energy, the last agreement between the parties prior to consolidation being dated March 3, 1983, and amendment and supplement thereto being dated August 6, 1992; and

WHEREAS, it is the desire of the parties hereto to supersede such Agreement dated March 3, 1983, and amendment thereto by the terms of this Agreement; and

WHEREAS, the execution of the Power Contract between the Member and East River is subject to the approval of the Administrator under the terms of the loan contracts entered into with the Administrator by East River and the Member respectively; and

WHEREAS, the Government is relying on this Agreement and similar contracts between East River and other borrowers from the Rural Utilities Service to assure that the Notes' are repaid and the purposes of the Rural Electrification Act of 1936, as amended, are carried out and East River and the Member, by executing this contract, acknowledge that reliance; and

WHEREAS, East River has financed and may, in the future, finance such construction in whole or part through loans made or guaranteed by the United States of America (hereinafter called "Government"), acting through the Administrator of the Rural Utilities Service (hereinafter called the "Administrator"); and

WHEREAS, the indebtedness created by such loans and loan guarantees made by the Government is evidenced, and, with respect to future indebtedness, shall be evidenced, by certain notes (hereinafter collectively called the "Notes") secured by that Supplemental Mortgage and Security Agreement made by and between East River, the Government, and the National Rural Utilities Cooperative Finance Corporation (CFC) or other lenders (said Supplemental Mortgage and Security Agreement as it may heretofore or hereafter be amended, supplemented, and/or restated from time to time being hereinafter called the "Mortgage"); and

WHEREAS, this Agreement and payments due to East River under this Agreement shall be pledged and assigned to secure the Notes as provided in the Mortgage.

NOW, THEREFORE, in consideration of the mutual undertakings herein contained the parties hereto agree as follows:

1. <u>General</u>: East River shall sell and deliver to Member and Member shall purchase and receive from East River, all electric power and energy which Member shall require to serve

all of Member's electric loads, to the extent that East River shall have such power and energy and facilities available. (It is recognized by the Member and East River that the Parties' obligation hereunder may be affected by the Public Utility Regulatory Policies Act of 1978 and amendments thereto).

2. <u>Electric Characteristics and Delivery Points</u>: Electric power and energy to be furnished hereunder shall be alternating current, three phase, sixty cycle. East River shall make and pay for all final connections between the system of East River and Member at the points of delivery, which points of delivery are described in Exhibit A attached hereto and made a part hereof.

3. <u>Substation</u>: East River shall install, own, and maintain the necessary substation equipment at the points of connection. Member shall own and maintain switching and protective equipment which may be reasonably necessary to enable Member to take and use the electric power and energy hereunder and to protect the East River system from hazards from Member's system. Such switching and protective equipment located inside the substation's facility shall be approved by East River. Meters and metering equipment necessary to register demand and energy shall be furnished, maintained and read, or caused to be furnished, maintained and read, by East River and shall be located at the point of delivery on Member's side of such transforming equipment.

4. <u>Rate</u>: (a) Member shall pay East River for all electric power and energy furnished hereunder and such other charges included in the rates adopted by the Board of Directors from time to time and approved by the Administrator of the Rural Utilities Service, all as set forth in Exhibit B attached hereto. The terms, conditions, and rates for the furnishing of electric power and energy and other charges included in the rates are set forth in Exhibit B attached hereto and made a part hereof.

(b)     The Board of Directors of East River at such intervals as it shall deem appropriate, but in any event not less frequently than once in each calendar year, shall review the rate for electric power and energy furnished hereunder and, if necessary, shall revise such rate so that it shall produce revenues which shall be sufficient, but only sufficient, with the revenues of East River from all other sources, to:

(1)     Pay the cost of the operation and maintenance (including but not limited to renewals, replacements, insurance, taxes, and administrative and general overhead expenses) of the transmission system and related facilities of East River.

(2)     To pay the cost of related services deemed advisable by the Board of Directors of East River.

(3)     To pay the cost of any power and energy purchased for resale hereunder by East River.

(4)     To pay the cost of transmission service.

(5)     To pay principal and interest payments on all indebtedness of East River.

(6)     To pay the amounts which must be realized by East River to meet the requirements of any rate covenant or coverage of debt service covenant with respect to any contract between East River and other party or parties.

(7)     To provide for the establishment and maintenance of reasonable margins and reserves.

All contracts and any other security agreements requiring East River to comply with any rate covenant or coverage of debt service covenant shall be approved by the Administrator of the Rural Utilities Service.

East River shall cause a notice in writing to be given to Member and the Administrator of the Rural Utilities Service which shall set out all the proposed revisions of the rate with the

effective date thereof, which effective date shall be not less than thirty (30) nor more than ninety (90) days after the date of the notice, and shall set forth the basis upon which the rate is proposed to be adjusted and established. Member agrees that the rate from time to time established by the Board of Directors of East River shall be deemed to be substituted for the rate herein provided (without inclusion of a new Exhibit B, upon the change in rate).

The Member agrees that the rate from time to time established by the Board of Directors of East River shall be deemed to be substituted for the rate herein provided and agrees to pay for electric power and energy furnished by East River to it hereunder after the effective date of any such revision at such revised rates; provided however that no such revision shall be effective unless approved in writing by the Administrator of the Rural Utilities Service.

5.    <u>Meter Readings and Payment of Bills</u>: East River shall read, or cause to be read, each meter on the fifteenth (15th) day of each month, as far as practical, unless the 15th day of the month falls on Saturday, then the meter will be read on the preceding Friday. If the 15th day of the month falls on a Sunday, then the meter will be read on the following Monday each month. East River will mail the Member a bill for electric service furnished hereunder on or before the first day of the following month. Electric service furnished hereunder shall be paid for at the offices of East River in Madison, South Dakota, monthly within fifteen (15) days after the bill is mailed to the Member.

If the Member disputes any bill or account or any other matter arising out of this Agreement, the Member shall continue to pay such bill or account to East River and East River will deposit the amount in dispute in an escrow account until the dispute is settled. The interest earned on the escrow account shall accumulate and become a part of said escrow account. The Party or Parties in whose favor the dispute is settled shall be entitled, as the case may be, to all or a pro rata share of such escrow account.

Neither party to this Agreement shall be entitled to or liable to pay interest resulting from an error in meter reading or in the computation of the bill.

The remedy given herein to East River shall be in addition to all other remedies available to East River, either at law or in equity, for the breach of any of the provisions of this Agreement. Disputes as to payment of an account or any other dispute shall not relieve the Member from any of its obligations under this Agreement, including the obligation to make payments when due.

6.  <u>Meter Testing and Billing Adjustment</u>: East River shall test and calibrate, or cause to be tested and calibrated, meters by comparison with accurate standards at least once each year and if inaccurate shall be calibrated to within one fourth of one percent (¼ of 1%) plus or minus. East River shall also make, or cause to be made, special meter tests at any time at the request of Member. The cost of all tests shall be borne by East River; provided, however, that if any special meter test made at the request of Member shall disclose that the meters are recording accurately, within one percent (1%) plus or minus, Member shall reimburse East River for the cost of such test. The readings of any meter which shall have been disclosed by test to be inaccurate (exceeding one percent (1%)) shall be corrected for the ninety (90) days previous to such test in accordance with the percentage of inaccuracy found by such test. If any meter shall fail to register for any period, Member and East River shall agree to an estimated amount of power and energy furnished during such period and East River shall render a bill therefore.

7.  <u>Notice of Meter Reading or Test</u>: East River shall notify Member in advance of the time of any meter reading or test so that a representative of Member may be present at such meter reading or test.

8. <u>Right of Access</u>: Duly authorized representatives of either party hereto shall be permitted to enter the premises of the other party hereto at all reasonable times in order to carry out the provisions hereof.

9. <u>Continuity of Service</u>: East River shall use reasonable diligence to provide a constant and uninterrupted supply of electric power and energy hereunder. If the supply of electric power and energy shall fail or be interrupted, or become defective through an act of God or of the public enemy, or because of accident, labor troubles, or any other cause beyond the control of East River, East River shall not be liable therefore or for damages caused thereby.

10. <u>Term</u>: This Agreement shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service and shall remain in effect until December 31, 2038, and thereafter until terminated by either Party giving to the other not less than six months' written notice of its intention to terminate.

11. <u>Notices</u>: Any notice, demand, or request required or authorized by this Agreement shall be deemed properly given if mailed, postage prepaid, to the parties at the address designated in this Agreement.

12. <u>Special Conditions of Service</u>: Any special conditions of service to this Agreement shall be set forth in Exhibit C attached hereto.

13. <u>Waivers</u>: Any waiver at any time by either party hereto of its rights with respect to default or any other matter arising in connection with this Agreement shall not be deemed to be waiver with respect to any subsequent default or matter.

14. <u>Transfers by the Member</u>: (a) The Member agrees that during the term of this Agreement, so long as any of the Notes are outstanding, the Member will not, without the approval in writing of East River and the Administrator, take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation, or to sell, lease, or transfer

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994  Page 7

(or make any agreement therefore), all or a substantial portion of its assets, whether now owned or hereafter acquired. Notwithstanding the foregoing, the Member may take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation or to sell, lease, or transfer (or make any agreement therefore) all or a substantial portion of its assets, whether now owned or hereafter acquired, so long as the Member shall pay such portion of the outstanding indebtedness on the Notes as shall be determined by East River with the prior written consent of the Administrator and shall otherwise comply with such reasonable terms and conditions as the Administrator and East River may require.

(b) The Member and East River agree that the failure or threatened failure of the Member to comply with the terms of the immediately preceding paragraph (14a.) will cause irreparable injury to East River and to the Government which cannot properly or adequately be compensated by the mere payment of money. Member agrees, therefore, that in the event of a breach or threatened breach of paragraph 14a. of this Agreement by the Member, East River, in addition to any other remedies that may be available to it judicially, shall have the right to obtain from any competent court a decree enjoining such breach or threatened breach of said paragraph 14a. or providing that the terms of said paragraph 14a. be specifically enforced.

15. <u>Governing Laws</u>: This Agreement, in all respects, shall be governed by and construed according to the laws of the State of South Dakota.

This Wholesale Power Contract and any Amendment thereto shall become effective when approved in writing by the Administrator of the Rural Utilities Service. Upon the approval of

Wholesale Power Contract (East River Electric/Dakota Energy Cooperative) - December 7, 1994    Page 8

Exhibit D - Page 000008

the Administrator and effectiveness of this contract, the Wholesale Power Contracts as assigned to Dakota Energy Cooperative, Inc., from Beadle Electric Cooperative, Inc., and Ree Electric Cooperative, Inc., dated March 3, 1983, and all amendments thereto shall terminate, and this contract shall be substituted therefore.

EAST RIVER ELECTRIC POWER COOPERATIVE, INC.

By _____
President

ATTEST:

_____
Secretary

DAKOTA ENERGY COOPERATIVE, INC.
Member

By *Delbert Bushong*
President

ATTEST:

*[signature]*
Secretary