# EXHIBIT P

172 FERC ¶ 61,173
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Neil Chatterjee, Chairman;
Richard Glick, Bernard L. McNamee,
and James P. Danly.

Tri-State Generation and Transmission Association, Inc.        Docket No.  EL20-16-001

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING, AND SETTING
ASIDE PRIOR ORDER, IN PART

(Issued August 28, 2020)

1.      On March 20, 2020, the Commission granted in part, and denied in part, Tri-State
Generation and Transmission Association, Inc.'s (Tri-State) petition for declaratory order
(Petition).[1]  On April 14, 17, and 20, 2020, Tri-State, Wheat Belt Public Power District
(Wheat Belt), and United Power, Inc. (United Power), respectively, sought rehearing of
the Declaratory Order.[2]

---

[1] *Tri-State Generation & Transmission Ass'n*, 170 FERC ¶ 61,224 (2020)
(Declaratory Order).

[2] Although Wheat Belt has styled its pleading as a request for rehearing or
reconsideration, we treat its pleading as a request for rehearing.  Similarly, although
United Power has styled its pleading as a request for rehearing and clarification,
United Power does not specify a statement in the Declaratory Order for which it seeks
clarification, and accordingly, we consider its pleading to be a request for rehearing.

Sierra Club also filed a request for rehearing that included Docket No. EL20-16
in the caption.  However, Sierra Club's request for rehearing does not address the
Declaratory Order and instead pertains to two other Commission orders concerning
Tri-State issued on March 20, 2020:  (1) *Tri-State Generation & Transmission Ass'n*,
170 FERC ¶ 61,223 (2020), and (2) *Tri-State Generation & Transmission Ass'n*,
170 FERC ¶ 61,221 (2020).  Accordingly, we do not address Sierra Club's request for
rehearing in this order.

2.        Pursuant to *Allegheny Defense Project v. FERC*,[3] the rehearing requests filed in this proceeding may be deemed denied by operation of law.  As permitted by section 313(a) of the Federal Power Act (FPA),[4] however, we are modifying the discussion in the Declaratory Order and setting aside the order, in part, as discussed below.[5]

## I.        **Background**

3.        Tri-State is a generation and transmission cooperative that provides wholesale electricity to its 42 member electric distribution cooperatives and public power districts (Utility Members) in Colorado, Nebraska, New Mexico, and Wyoming at cost-based rates pursuant to long-term contracts (Wholesale Service Contracts).[6]  A Board of Directors (Board) controls Tri-State, with each of Tri-State's Utility Members occupying one seat on the Board.  Tri-State supplies power to its Utility Members through a portfolio of ownership interests in generation, tolling agreements, power purchase agreements, and open market purchases.  Tri-State provides transmission service to its Utility Members via Tri-State's approximately 5,665 miles of high-voltage transmission lines, the majority of which operate as part of the Western Interconnection.

4.        In July 2019, Tri-State submitted a set of filings to the Commission in anticipation of becoming a public utility subject to the Commission's jurisdiction.  Tri-State explained that, under FPA section 201(f), it had been exempt from the Commission's jurisdiction under Part II of the FPA because it was wholly owned by entities that were

---

[3] 964 F.3d 1 (D.C. Cir. 2020) (en banc) (*Allegheny*).

[4] 16 U.S.C. § 825*l*(a) (2018) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[5] *Allegheny*, 964 F.3d at 16-17.

[6] At the time of the Declaratory Order, Tri-State had 43 Utility Members.  However, the Commission has since accepted Tri-State's filing of a membership withdrawal agreement with Tri-State Utility Member Delta-Montrose Electric Association. *Tri-State Generation & Transmission Ass'n*, 171 FERC ¶ 61,202 (2020).  Tri-State has represented that on June 30, 2020, Tri-State and Delta-Montrose Electric Association closed the withdrawal transaction and consummated the closing of Delta-Montrose Electric Association's withdrawal from membership in Tri-State.  Tri-State, Informational Notice Tariff Filing, Docket No. ER20-1541-000, et al. (filed July 2, 2020).  As a result of Delta-Montrose Electric Association's withdrawal, Tri-State now has 42 Utility Members.

Docket No. EL20-16-001                                                                   - 3 -

themselves exempt from the Commission's jurisdiction under FPA section 201(f).[7]  On September 3, 2019, Tri-State filed an amendment to the July 2019 filings notifying the Commission that, on that day, Tri-State had admitted Mieco, Inc. (Mieco), a wholesale energy services company and subsidiary of Marubeni America Corporation, as a new member/owner (Non-Utility Member) that was not an electric cooperative or a governmental entity.  Tri-State also stated that because Mieco was not an electric cooperative or governmental entity, and not owned by electric cooperatives or governmental entities in the United States, as of September 3, 2019, Tri-State became a public utility subject to the Commission's jurisdiction.  On October 4, 2019, the Commission rejected without prejudice Tri-State's filings, finding that Tri-State provided insufficient cost support for its proposed rates and had failed to comply with the Commission's rate schedule filing requirements.[8]  In late December 2019 and early January 2020, Tri-State resubmitted its filings, including an Open Access Transmission Tariff (OATT), a stated rate tariff and associated Wholesale Service Contracts, an application for market-based rate authority, and a variety of other transmission and service agreements.[9]

---

[7] FPA section 201(f) provides:

> No provision in this subchapter [i.e., part II of the FPA] shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State, an electric cooperative that receives financing under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.) or that sells less than 4,000,000 megawatt hours of electricity per year, or any agency, authority, or instrumentality of any one or more of the foregoing, or any corporation which is wholly owned, directly or indirectly, by any one of more of the foregoing, or any officer, agent, or employee of any of the foregoing acting as such in the course of his official duty, unless such provision makes specific reference thereto.

16 U.S.C. § 824(f) (2018).

[8] *Tri-State Generation & Transmission Ass'n,* 169 FERC ¶ 61,012, at P 22 (2019).

[9] On March 20, 2020, the Commission issued the following orders addressing Tri-State's filings made under FPA section 205:  (1) an order accepting Tri-State's stated rate tariff and Wholesale Service Contracts and establishing hearing and settlement judge procedures (*Tri-State Generation & Transmission Ass'n*, 170 FERC ¶ 61,221); (2) an order accepting Tri-State's OATT and transmission service agreements and establishing hearing and settlement judge procedures (*Tri-State Generation & Transmission Ass'n*, 170

Docket No. EL20-16-001                                                          - 4 -

5.    On December 23, 2019, Tri-State filed the Petition.  Tri-State sought an order from the Commission declaring that:

(1)    Tri-State is now, and since September 3, 2019, has been, a non-exempt jurisdictional "public utility" for purposes of Part II of the [FPA];

(2)    the Commission has (and has had, since September 3) exclusive jurisdiction under sections 205 and 206 of the FPA[10] over the terms, including exit charges, on which a Tri-State [Utility] Member can terminate its full requirements [Wholesale Service Contract] with Tri-State; and

(3)    therefore, any state [public utility commission] jurisdiction over complaints by Tri-State [Utility] Members concerning such exit charges is preempted.[11]

6.    Tri-State claimed that the requested relief was necessary to terminate controversy and remove uncertainty due to pending complaints filed in November 2019 before the Colorado Public Utilities Commission (Colorado PUC) by two Tri-State Utility Members, La Plata Electric Association, Inc. (La Plata) and United Power.  Tri-State explained that these complaints asked the Colorado PUC to "establish[] an exit charge [for the Utility Member to be relieved of its obligations under its Wholesale Service Contract and exit Tri-State] that is just, reasonable, and nondiscriminatory."[12]

7.    On March 20, 2020, the Commission issued the Declaratory Order, which granted in part and denied in part Tri-State's Petition.  First, the Commission concluded that Tri-State became a jurisdictional public utility under Part II of the FPA upon its

---

FERC ¶ 61,222 (2020)); (3) an order rejecting Rate Schedule No. 260 (Tri-State Board Policy No. 115, which sets forth the percentage of load a Utility Member can meet with distributed or renewable generation) and associated generation contracts, and accepting numerous rate schedules (*Tri-State Generation & Transmission Ass'n*, 170 FERC ¶ 61,223 (2020)); and (4) an order granting Tri-State's market-based rate application (*Tri-State Generation & Transmission Ass'n*, 170 FERC ¶ 61,220 (2020)).

[10] 16 U.S.C. §§ 824d, 824e.

[11] Petition at 1.

[12] *Id.* at 2 (quoting Ex. A at 20; Ex. B at 24).

Docket No. EL20-16-001                                                              - 5 -

admission of Mieco as a Non-Utility Member on September 3, 2019.[13]  The Commission stated that it has interpreted the language of FPA section 201(f) to determine whether an entity is wholly owned by exempt entities.  The Commission found that, "based on our consideration of the record before us, we conclude that Tri-State has demonstrated that Mieco's membership created an ownership interest in Tri-State, and that Mieco is not an entity exempt from FPA section 201(f)."[14]  However, the Commission "[took] no position on the question of whether Mieco's membership in Tri-State required state regulatory approval or otherwise violated Colorado statutes and regulation."[15]

8.      The Commission then considered whether the Commission has exclusive jurisdiction over Tri-State's assessment of exit charges.  First, the Commission found that "Tri-State's exit charges are not a rate or charge for a jurisdictional service itself, i.e., for Tri-State's wholesale services."[16]  The Commission reasoned that a Utility Member's exit from a cooperative is not a wholesale sale of electric energy or the transmission of electric energy.  Second, the Commission found that Tri-State's assessment of exit charges falls within its jurisdiction as a rule or practice directly affecting Tri-State's jurisdictional wholesale rates.[17]  However, "recognizing that no federal court has stated that the Commission has exclusive jurisdiction over rules or practices that directly affect a jurisdictional rate," the Commission declined to find that it has exclusive jurisdiction over Tri-State's exit charges.[18]  The Commission explained that although the Supreme Court has stated that the Commission "has the authority—and, indeed, the duty—to ensure that rules or practices 'affecting' wholesale rates are just and reasonable,"[19] "neither the Supreme Court nor the appellate courts have expressly found that the

---

[13] Declaratory Order, 170 FERC ¶ 61,224 at P 82.

[14] *Id.* P 84.

[15] *Id.* P 76.  The Commission noted that "the resolution of the pending Colorado PUC proceedings, or other litigation concerning Colorado law issues, could be relevant to Commission proceedings in the future, and [the Commission] would consider relevant findings at that time."  *Id.*

[16] *Id.* P 118.

[17] *Id.* PP 119-120.

[18] *Id.* P 121; *see also id.* PP 116-117.

[19] *Id.* P 117 (quoting *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 774 (2016) (*EPSA*)).

Docket No. EL20-16-001                                                                    - 6 -

Commission has *exclusive* jurisdiction over rules or practices that directly affect jurisdictional rates."[20]

9.      Finally, the Commission found that the Colorado PUC's jurisdiction over pending complaints before the Colorado PUC regarding exit charges was not preempted at that time.  The Commission explained that "a ruling by the Colorado PUC on those complaints would not be preempted unless and until such ruling conflicts with a Commission-approved tariff or agreement that establishes how Tri-State's exit charges will be calculated," and it noted that Tri-State had not yet filed, and the Commission had not yet approved, a method for determining Tri-State's exit charges.[21]

## II.     Procedural Matters

### A.      Answer to Tri-State's Request for Rehearing

10.     La Plata, the Colorado PUC, Sierra Club, and United Power each filed motions for leave to answer and answers to Tri-State's request for rehearing.  Rule 713(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.713(d) (2019), prohibits answers to requests for rehearing.  Accordingly, we reject the answers filed by La Plata, the Colorado PUC, Sierra Club, and United Power.[22]

### B.      Motions to Lodge and Answers

11.     On July 10, 2020, Wheat Belt filed a motion to lodge the July 10, 2020 opinion of the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit) in *National Association of Regulatory Utility Commissioners v. FERC*.[23]  Wheat Belt argues that, consistent with the arguments raised in its request for rehearing, the D.C. Circuit's holding in *NARUC* demonstrates that the Commission erred when it held that:  (1) "neither

---

[20] *Id.* (emphasis in original).

[21] *Id.* P 121.  After the Commission issued the Declaratory Order, in Docket No. ER20-1559-000, on April 13, 2020, Tri-State filed a Contract Termination Payment (CTP) Methodology designed to calculate the exit charge a Tri-State Utility Member must make to terminate its Wholesale Service Contract with Tri-State.  The Commission accepted the filing, subject to hearing and settlement judge procedures.  *Tri-State Generation & Transmission Ass'n*, 171 FERC ¶ 61,207 (2020).

[22] On May 8, 2020, United Power also filed a conditional motion to allow briefing or oral argument on the issue of preemption pursuant to Rule 713(d)(2).  As discussed below, we deny United Power's conditional motion as moot.

[23] 964 F.3d 1177 (D.C. Cir. 2020) (*NARUC*).

the Supreme Court nor the appellate courts have expressly found that the Commission has exclusive jurisdiction over the rules or practices that directly affect jurisdictional rates," and (2) "no federal court has stated that the Commission has exclusive jurisdiction over rules or practices that directly affect a jurisdictional rate."[24]

12.     On July 13, 2020, Tri-State filed an answer supporting Wheat Belt's motion to lodge, or in the alternative, Tri-State itself moved to lodge the D.C. Circuit's decision in *NARUC*. Tri-State argues that *NARUC* provides a compelling basis for the Commission to modify the Declaratory Order and grant Tri-State a declaration that the Commission's jurisdiction over Tri-State's Wholesale Service Contract exit charges is exclusive, such that the Colorado PUC complaint proceeding was preempted *ab initio*.[25]

13.     In addition, Tri-State moved to lodge the July 10, 2020 Recommended Decision of Colorado PUC Administrative Law Judge (ALJ) Robert I. Garvey issued in the Colorado PUC complaint proceeding.[26] Tri-State asserts that the need for Commission action is all the more urgent in light of the Recommended Decision and requests that the Commission promptly grant Tri-State's request for rehearing on the issue of preemption.[27] Tri-State also moved to lodge the D.C. Circuit's June 20, 2020 decision in *Allegheny*.[28] Tri-State states that, applying *Allegheny* to the instant proceeding, Tri-State's request for rehearing is deemed denied as of May 14, 2020, which made July 13, 2020, the deadline for Tri-State to petition for judicial review of the Declaratory Order.[29] Tri-State states that in order to protect its rights, it concurrently filed a petition for judicial review in the D.C. Circuit.

---

[24] Wheat Belt Motion to Lodge at 1-2 (quoting Declaratory Order, 170 FERC ¶ 61,224 at PP 117, 121).

[25] Tri-State Motion to Lodge and Answer at 5.

[26] *La Plata Elec. Ass'n v. Tri-State Generation & Transmission Ass'n*, CoPUC Proceeding No. 19F-0620E, and *United Power, Inc. v. Tri-State Generation & Transmission Ass'n*, CoPUC Proceeding No. 19F-0621E, Decision No. R20-0502, Recommended Decision of Administrative Law Judge Robert I. Garvey Granting Relief Requested and Setting Exit Charge Methodology (issued July 10, 2020) (Recommended Decision).

[27] Tri-State Motion to Lodge and Answer at 5, 8.

[28] 964 F.3d 1.

[29] Tri-State Motion to Lodge and Answer at 9.

14.    On July 28, 2020, the Colorado PUC filed an answer to Tri-State's motion to lodge. The Colorado PUC urges the Commission to appropriately consider the procedural status of the Recommended Decision as a non-final decision that is subject to review by the full Colorado PUC.[30]

15.    Motions to lodge decisions from other proceedings may be appropriate in some instances to supplement the Commission's record.[31]  Here, we find that the D.C. Circuit's decisions in *NARUC* and *Allegheny* and the Recommended Decision by the Colorado PUC ALJ have assisted us in our decision-making process, and we therefore grant Tri-State and Wheat Belt's motions to lodge.

### III.    Substantive Matters

16.    The requests for rehearing by Tri-State, United Power, and Wheat Belt raise three main issues:  (1) whether Tri-State is subject to the Commission's jurisdiction; (2) whether the Commission has exclusive jurisdiction over Tri-State's assessment of exit charges, and in light of the answer to that question, whether the Colorado PUC's jurisdiction over complaints by Tri-State Utility Members concerning such exit charges is preempted; and (3) whether the agreement that Mieco executed as a Non-Utility Member (Mieco Membership Agreement) needs to be filed under the "rule of reason."  As discussed below, in response to the requests for rehearing, we are modifying the discussion in the Declaratory Order and setting aside the order, in part.

### A.    Tri-State's Jurisdictional Status

#### 1.    Rehearing Request

17.    United Power argues that the Commission erred in its interpretation of Tri-State's Articles of Incorporation and Bylaws, which United Power asserts do not permit Mieco's membership arrangement.  Specifically, United Power argues that the amendment to the Bylaws created to allow the Tri-State Board to establish new classes of membership does not allow Tri-State to do so in contravention of the fundamental attributes of membership established by the Articles of Incorporation, Bylaws, and the requirements of state law.[32] United Power claims that the violations of Tri-State's Articles of Incorporation and Bylaws render Mieco's admission as a Non-Utility Member a corporate nullity, and that

---

[30] Colorado PUC July 28, 2020 Answer at 3.

[31] *See, e.g., Cal. Indep. Sys. Operator, Inc.*, 139 FERC ¶ 61,072, at P 8 (2012).

[32] United Power Rehearing Request at 8-9.

Tri-State remains wholly owned by non-jurisdictional cooperatives and consequently exempt from the Commission's jurisdiction under FPA section 201(f).[33]

18.     United Power argues that reading the amendment to the Bylaws in conjunction with Article I, section 1 (Membership) makes it clear that any new membership class must take service from Tri-State as specified in Article I, section 3, which sets forth eligibility criteria for membership, including agreeing to purchase power and energy from Tri-State.[34]  In addition, United Power asserts, this section establishes the requirement that members' patronage capital be accrued through patronage.  United Power contends that Mieco's below-index sales of gas to Tri-State do not provide revenue to Tri-State, as they cannot be used to secure debt-financing.  According to United Power, Tri-State's attempt to allocate patronage capital to Mieco is in clear breach of this section of the Articles of Incorporation, as Mieco is not a patron of Tri-State and does not contribute capital to Tri-State.[35]  United Power also argues that the Declaratory Order fails to account for Tri-State's admission that Mieco's membership is a "technical deviation" from the Articles of Incorporation because Mieco does not have a seat on Tri-State's Board.[36]  United Power asserts that the Commission's reliance on the Mieco Membership Agreement to the exclusion of the Bylaws diminishes the Bylaws and blunts their effectiveness going forward.[37]

19.     Next, United Power argues that the Commission erred in its rejection of applicable precedent regarding whether the Mieco Membership Agreement constitutes a "sham transaction" to escape Colorado PUC jurisdiction and its acceptance of unsupported justifications for Mieco's addition as a Non-Utility Member.  For instance, United Power claims that in the Declaratory Order the Commission dismissed the applicability of *County of Marin v. United States*,[38] because the Interstate Commerce Act guided the Supreme Court's analysis in that case rather than the FPA.  United Power asserts that *Marin* is instructive in the force of its holding that federal jurisdiction would not attach where "[t]he transfer in question admittedly was designed to escape, upon approval of the

---

[33] *Id.* at 15.

[34] *Id.* at 9.

[35] *Id.* at 10.

[36] *Id.* at 13 (citation omitted).

[37] *Id.* at 12-13.

[38] 356 U.S. 412 (1958) (*Marin*).

Docket No. EL20-16-001                                                              - 10 -

Interstate Commerce Commission, the practices and policies of the State Commission."[39]
According to United Power, *Marin* bars the exact type of arrangement Tri-State has
attempted in order to evade state jurisdiction.  United Power alleges that Tri-State has
admitted to its Utility Members that Mieco's addition was designed to cause Tri-State
to lose its FPA section 201(f) exemption.[40]  Furthermore, United Power asserts that in
*KN Wattenberg Transmission, LLC v. Pub. Serv. Co. of Colorado,* the Commission
recognized that transactions like Mieco's membership arrangement become unwarranted
"when they are contrary to the public interest and inconsistent with the underlying
purpose of statutes effecting a federal scheme of regulation."[41]

20.     United Power also argues that the Commission discounted the applicability of
*Delta-Montrose Elec. Ass'n*,[42] which United Power claims provides certain indicia of
ownership.  According to United Power, in distinguishing *DMEA* as inapplicable to this
proceeding, in the Declaratory Order the Commission applied a "fact-specific approach"
that gave inordinate weight to Tri-State's unsubstantiated assertions in finding that Mieco
is an owner of Tri-State based on "similar considerations of patronage capital rights,

equitable rights at dissolution, and voting rights."[43]  United Power reiterates that Mieco's
patronage capital rights are counterintuitive from a basic accounting perspective and are
not reflective of the Bylaws' conception of ownership and that Mieco lacks a vote on
Tri-State's Board, which the Articles of Incorporation requires for all members.  As such,
United Power claims Mieco's ownership cannot stand up to "fact-specific" scrutiny.[44]

### 2.     Determination

21.     We are not persuaded by United Power's arguments that Tri-State's revision of its
Bylaws violated Tri-State's Articles of Incorporation and Bylaws.  As we noted in the
Declaratory Order, "Article I, section 2 [of the Bylaws] specifies that the Board may

---

[39] United Power Rehearing Request at 16 (citing *Marin*, 356 U.S. at 415).

[40] *Id.* at 17 (citations omitted).

[41] *Id.* at 18 (citing *KN Wattenberg Transmission, LLC v. Pub. Serv. Co. of Colo.*,
83 FERC ¶ 61,285, at 62,184 n.25 (1998) (*KN Wattenberg*)).

[42] 151 FERC ¶ 61,238 (2015) (*DMEA*).

[43] United Power Rehearing Request at 20 (citing Declaratory Order, 170 FERC
¶ 61,224 at P 88).

[44] *Id.*

establish new classes of membership with different rights and preferences."[45]
Specifically, Article I, section 2 provides:

> Notwithstanding any other provision of these Bylaws to the contrary, the
> [Board] may establish one or more classes of membership in addition to the
> existing all requirements class of membership. . . .   Members may choose
> their class of membership subject to any terms and conditions of
> membership and rights and preferences and limitations on the rights and
> preferences of the members of each additional class of membership as the
> [Board] establishes from time to time.  Such rights and preferences and
> limitations on the rights and preferences may differ between membership
> classes and may be different for individual members within an additional
> class of membership.

22.     We continue to read this provision to allow the Tri-State Board to create new
classes of membership "subject to any terms and conditions of membership and rights
and preferences and limitations on the rights and preferences" which "may differ between
membership classes," notwithstanding any other provision of the Bylaws to the contrary.
Although United Power attempts to expand the scope of the proceeding into the
advisability and justness and reasonableness of the Bylaws, we find that, for the limited
purposes of addressing the jurisdictional questions raised in Tri-State's petition, the
Commission correctly limited its review to the question of whether Tri-State's Bylaws
allowed the creation of a Non-Utility member class.  We interpret Tri-State's Bylaws to
allow it to create new membership classes that are not subject to the other restrictions of
the Bylaws.  To the extent United Power's arguments allege a violation of state law or
regulatory issue, we continue to "take no position on the question of whether Mieco's
membership in Tri-State required state regulatory approval or otherwise violated
Colorado statutes and regulations."[46]

23.     For the same reasons, we believe that the Declaratory Order also addressed
adequately United Power's argument that Mieco must have a seat on the Board, and that
any new membership class must take service from Tri-State as specified in Article I,
section 3 of the Bylaws.

24.     Finally, we disagree with United Power's request for the Commission to modify
its holding regarding whether Mieco's membership was a sham transaction.  In the
Declaratory Order, the Commission found that, unlike the statute at issue in *Marin*, FPA
section 201(f) presented the Commission with a binary choice:  "Tri-State is either

---

[45] Declaratory Order, 170 FERC ¶ 61,224 at P 79.

[46] *Id.* P 76 & n.130.

wholly owned by exempt entities, or it is not."[47]  The transaction in *Marin* was ultimately overruled, because the Interstate Commerce Commission approved a transaction by a "carrier" that was ultimately found not to qualify as a "carrier" for purposes of the Interstate Commerce Act.  In contrast, as the Commission discussed at length in section B.1.c.ii of the Declaratory Order, the statutory requirements to end Tri-State's FPA section 201(f) exemption were met because Mieco is a private company with a partial ownership interest in Tri-State.[48]  Based on these facts, Tri-State ceased to be "wholly owned by exempt entities," and, therefore, was no longer eligible for the FPA section 201(f) exemption.

25.      United Power also cites to other cases, such as *KN Wattenberg*, to bolster its argument that the Commission should view Mieco's membership as a sham that does not render Tri-State's FPA section 201(f) inapplicable.  However, *KN Wattenberg* stands for the opposite proposition.  In that case, KN Wattenberg filed a complaint alleging that multiple separate proposals to build new pipeline facilities were "improperly bifurcated to place one segment under the Commission's jurisdiction and the other segment outside the Commission's jurisdiction."[49]  The Commission disagreed, finding that although there "was coordination between the . . . projects' development and ownership," this coordination between jurisdictional and non-jurisdictional projects was not improper, because the Commission disagreed that "the two expansions will work to frustrate our jurisdiction and regulatory oversight, or permit the project sponsors to engage in discriminatory practices . . . ."[50]  The Commission noted that it is "not unusual, much less unlawful, for persons to structure transactions either to qualify for regulation by one entity or to avoid regulation by another."[51]  Similarly here, we acknowledge that there was coordination between Mieco and Tri-State that led to Mieco's membership in Tri-State, and that it was designed, at least in part, to create Commission jurisdiction by rendering Tri-State no longer exempt under FPA section 201(f).  Nonetheless, this transaction has not frustrated the Commission's ability to ensure just and reasonable rates or protect against discriminatory treatment.  To the extent necessary, we affirm the finding that, for purposes of our review of Tri-State's continued eligibility for FPA section 201(f) exemption, Mieco's membership in Tri-State was not a sham, because it had genuine value to Mieco in the form of patronage capital, and to Tri-State in the form

---

[47] *Id.* P 81 (citing 16 U.S.C. § 824(f)).

[48] *E.g.*, *id.* PP 84, 86, 91.

[49] *KN Wattenberg*, 83 FERC ¶ 61,285 at 62,181.

[50] *Id.* at 62,184.

[51] *Id.* n.25.

Docket No. EL20-16-001                                                                                   - 13 -

of discounted natural gas.[52]  Consequently, we decline to modify the finding that
Tri-State is no longer subject to the FPA section 201(f) exemption.

### B.        Exclusive Jurisdiction and Preemption

#### 1.        Rehearing Requests

26.      Both Tri-State and Wheat Belt argue that the Commission erred in declining to
find that it has exclusive jurisdiction over Tri-State's exit charges and therefore that the
Colorado PUC is not currently preempted from asserting jurisdiction over complaints
regarding Tri-State's exit charges.[53]

27.      Tri-State and Wheat Belt set forth two main arguments to support their contention
that the Commission has exclusive jurisdiction over Tri-State's exit charges.  First, they
argue that, contrary to the Commission's findings in the Declaratory Order, the exit
charges are in fact wholesale rates—i.e., under FPA section 205(a), Tri-State exit charges
are "charges made, demanded, or received by [Tri-State] . . . in connection with"
interstate wholesale sales.[54]  Wheat Belt contends that FPA section 205 establishes the
Commission's jurisdiction over the justness and reasonableness of "[a]ll rates and
charges made, demanded, or received by any public utility *for or in connection with*"
Commission-jurisdictional service.[55]  Wheat Belt argues that the Commission is correct
that Tri-State's exit charges directly affect wholesale rates, but only for the wholesale
rates of remaining Utility Members.  Wheat Belt contends that for departing Utility
Members, "the [FPA's] plain language compels a finding that exit charges are, in fact,
wholesale rates."[56]  Tri-State contends that the statute itself makes no jurisdictional
distinction between rates, charges, and "directly affecting" practices.[57]

28.      Second, Tri-State and Wheat Belt disagree with the Commission's finding that no
federal court has found that the Commission has exclusive jurisdiction over rules and

---

[52] Declaratory Order, 170 FERC ¶ 61,224 at P 81.

[53] Tri-State Rehearing Request at 10; Wheat Belt Rehearing Request at 7-8.

[54] Tri-State Rehearing Request at 16-17 (citing 16 U.S.C. § 824(a)); Wheat Belt
Rehearing Request at 13-15 (citing 16 U.S.C. § 824(a)).

[55] Wheat Belt Rehearing Request at 13 (quoting 16 U.S.C. § 824d(a)) (emphasis in
Wheat Belt Rehearing Request).

[56] *Id*. at 14.

[57] Tri-State Rehearing Request at 16.

Docket No. EL20-16-001                                                          - 14 -

practices that directly affect wholesale rates.[58]  They cite to Supreme Court and federal
Circuit Court of Appeals decisions that they contend are contrary to the Commission's
finding.[59]  In addition, Wheat Belt argues that the Commission has submitted numerous
briefs to federal courts explaining that the FPA does not distinguish the Commission's
exclusive jurisdiction over wholesale rates from its jurisdiction over rules or practices
that directly affect wholesale rates.[60]

29.     Tri-State and Wheat Belt also argue that the Commission's finding that the
Commission and the Colorado PUC have temporary, concurrent jurisdiction over exit
charges is unsupported.[61]  Tri-State argues that for any given issue at any given time, the
Commission either has or does not have jurisdiction under both sections 205 and 206.[62]
Tri-State also cites to numerous Supreme Court and federal circuit court cases to support
its argument that concurrent jurisdiction is not permitted over disputes between La Plata,
United Power, and Tri-State as to whether Tri-State's exit charge methodology and
practices are just and reasonable.[63]  Wheat Belt contends that the issue before the
Commission is not conflict preemption, because the Commission has exclusive
jurisdiction over exit charges.  Further, Wheat Belt claims the Commission misapplied the
FPA to the extent the Commission suggests a section 205 filing is needed to trigger the
Commission's exclusive jurisdiction over exit charges.[64]  In addition, Wheat Belt argues
that, given that Tri-State's federal jurisdiction was triggered on September 3, 2019,
Tri-State was required to file its exit fee methodology 60 days prior to September 3, 2019.
According to Wheat Belt, although Tri-State did not comply with these statutory
requirements, its failure to comply does not strip the Commission of its exclusive
jurisdiction over exit charges.[65]  Tri-State argues that its Petition discussed precedent

---

[58] *Id*. at 16-17; Wheat Belt Rehearing Request at 16.

[59] Tri-State Rehearing Request at 16-17; Wheat Belt Rehearing Request at 18
(citations omitted).

[60] Wheat Belt Rehearing Request at 16-17 (citation omitted).

[61] Tri-State Rehearing Request at 14, 20-21; Wheat Belt Rehearing Request at 20.

[62] Tri-State Rehearing Request at 10.

[63] *Id.* at 4, 20-21 (citations omitted).

[64] Wheat Belt Rehearing Request at 19-20.

[65] *Id.* at 22.

Docket No. EL20-16-001                                                      - 15 -

supporting its position that since September 3, 2019, La Plata and United Power could have filed FPA section 206 complaints with the Commission regarding Tri-State's exit charges.  Tri-State adds that given the filing requirement under FPA section 205, tariff filings typically precede FPA section 206 complaints but argues that a tariff filing is not a jurisdictional prerequisite for an FPA section 206 complaint, and that the Commission has addressed complaints on matters even where no tariff has been filed.[66]

30.     Alternatively, Tri-State and Wheat Belt argue that the Colorado PUC should be preempted from addressing Tri-State's exit charges due to Tri-State's April 13, 2020 filing in Docket No. ER20-1559-000 of a CTP methodology to determine exit charges.[67] Tri-State and Wheat Belt argue that Tri-State's CTP filing places the issue of exit charges squarely before the Commission and should remove all doubt that the Colorado PUC is preempted, noting that the Declaratory Order suggested that the Colorado PUC would be preempted if Tri-State were "to place matters regarding its exit charges before the Commission" by making an FPA section 205 filing that proposed "a methodology for determining such charges."[68]  Tri-State further asserts that if the Colorado PUC were to order Tri-State to permit La Plata and United Power to exit Tri-State on more favorable terms than permitted under the CTP Methodology Tri-State filed with the Commission, remaining Tri-State Utility Members could claim that Tri-State's compliance with such Colorado PUC order violated Tri-State's obligations under the FPA.[69]  Tri-State thus argues that the Commission should amend and clarify the Declaratory Order to declare that its preemption is effective as of Tri-State's April 13, 2020 filing, if not earlier.[70]

### 2.     Determination

31.     As discussed below, after further consideration we are modifying the discussion of the Declaratory Order to find that Tri-State's assessment of an exit charge constitutes a Commission-jurisdictional rate subject to our exclusive jurisdiction.  As a result, we also conclude that the Colorado PUC's jurisdiction over the complaints regarding Tri-State's exit charges is preempted as of September 3, 2019, the date that Tri-State became a public utility subject to the Commission's ratemaking jurisdiction.

---

[66] Tri-State Rehearing Request at 11 (citation omitted).

[67] *Id.* at 21; Wheat Belt Rehearing Request at 23.

[68] Tri-State Rehearing Request at 5-6, 10; Wheat Belt Rehearing Request at 7, 10 (both quoting Declaratory Order, 170 FERC ¶ 61,224 at P 121).

[69] Tri-State Rehearing Request at 23.

[70] *Id.*

Docket No. EL20-16-001                                                                        - 16 -

32.     In providing long-term full requirements service under the Wholesale Service
Contracts, Tri-State is obligated to plan its system and acquire the resources necessary to
serve the wholesale requirements of each of its members over the full term of the
contracts.  The purpose of the exit charge is to compensate Tri-State for the costs that it
has incurred or has an obligation to incur in the future to satisfy its service obligations
under the Wholesale Service Contract with the departing member.  These costs would
have been recovered by Tri-State through its jurisdictional rate over the term of the
contract if the member had not terminated its contract.  The payment of an exit charge
upon termination of the contract affects the timing of Tri-State's recovery of the costs,
but does not change the nature of the charge as a jurisdictional rate paid by the member to
Tri-State to cover the costs that Tri-State incurred to provide full requirements service to
the member.  Thus, we set aside the finding in the Declaratory Order that Tri-State's exit
charge is not a rate or charge for a jurisdictional service.[71]

33.     It is well established that the Commission has exclusive jurisdiction over
wholesale sales of electricity in interstate commerce.[72]  As the Supreme Court held, in
enacting the FPA, Congress "displace[d state regulation] with comprehensive federal
regulation."[73]  As a consequence, the FPA made "FPC jurisdiction plenary and
extend[ed] it to all wholesale sales in interstate commerce except those which Congress
has made explicitly subject to regulation by the States."[74]

34.     Accordingly, in light of our finding that Tri-State's exit charge is a jurisdictional
rate, the Colorado PUC's jurisdiction over Tri-State's exit charge is preempted as of the
date that Tri-State became a public utility.  We therefore set aside the Declaratory Order,
in part, and grant Tri-State's Petition in its entirety.[75]  We deny as moot United Power's
conditional motion for the filing of briefs or oral argument.

---

[71] *See* Declaratory Order, 170 FERC ¶ 61,224 at P 118.

[72] *FPC v. S. Cal. Edison Co.*, 376 U.S. 205 (1964).

[73] *Id.* at 220.

[74] *Id.* at 216.

[75] In light of this ruling, we need not address either Tri-State's and Wheat Belt's
argument that the Commission has exclusive jurisdiction over Tri-State's assessment of
exit charges as a practice directly affecting wholesale rates or their alternative argument
that the Colorado PUC's jurisdiction over the assessment of Tri-State's exit charges is
now preempted due to Tri-State's filing of the CTP Methodology with the Commission.

35.    However, as stated in the Declaratory Order, we take "no position on the question of whether Mieco's membership in Tri-State required state regulatory approval or otherwise violated Colorado statutes and regulations" and we decline "to resolve the Colorado law issues . . . which . . . are more appropriately handled in state fora."[76]  We reiterate that our finding of jurisdiction over Tri-State under the FPA—including our exclusive jurisdiction over Tri-State's assessment of exit charges—is based on the record before us and that any future Colorado PUC and state court rulings regarding the validity of Mieco's membership in Tri-State could be relevant to this determination.

### C.     The Mieco Membership Agreement

#### 1.     Rehearing Request

36.    United Power argues that the Commission erred by misapplying the "rule of reason" to the Mieco Membership Agreement, which United Power claims remains an unfiled jurisdictional agreement that directly affects rates and services that Tri-State provides to its Utility Members.  United Power asserts that the Mieco Membership Agreement either (1) alters the methodology by which patronage capital is allocated to Tri-State's members, which significantly affects wholesale rates offered to full-requirements customers; or (2) the arrangement is a corporate nullity because the patronage capital method is unapproved.  Assuming, for the sake of argument, that the former is true, United Power asserts that fuel is a generation cost that affects Tri-State's cost-justified stated rate.[77]

37.    Further, United Power argues that the Commission has recently found that membership in an organization, to the extent it permits the member to affect rate filings before the Commission, is a Commission-jurisdictional practice that directly affects jurisdictional rates.[78]  United Power claims that if the Commission believes that "Mieco has a vote in Tri-State's operations," then it would have some agency over whether a Commission-jurisdictional rate update, term, or condition is filed with the Commission.[79]  Therefore, United Power argues, the Mieco Membership Agreement must be filed with

---

[76] Declaratory Order, 170 FERC ¶ 61,224 at P 76.

[77] United Power Rehearing Request at 21.

[78] Id. (citing New England Power Pool Participants Comm., 166 FERC ¶ 61,062, at P 48 (2019) (NEPOOL)).

[79] Id. (citing Declaratory Order, 170 FERC ¶ 61,224 at P 86).

the Commission under a properly applied "rule of reason," as it significantly affects jurisdictional rates and services.[80]

### 2.      **Determination**

38.      We are unpersuaded by United Power's argument that the "rule of reason" requires Tri-State to file the Mieco Membership Agreement.  As the Commission stated in the Declaratory Order, the Mieco Membership Agreement "simply provides the method for creating, allocating, and distributing patronage capital between Tri-State and Mieco."[81]  These arrangements relate to ownership, not to jurisdictional rates and service. A Utility Member's wholesale rates are described by the terms of that Utility Member's Wholesale Service Contract and by the Stated Rate Tariff, which are now on file, not the patronage capital arrangements of other Tri-State Non-Utility Members.  Additionally, *NEPOOL* is inapposite.  There, the Commission found that New England Power Pool's rules with respect to membership fall within the Commission's jurisdiction because they directly affect Commission-jurisdictional rates.[82]  The "rule of reason" analysis, by contrast, is concerned with delineating "the minimum specificity that the Commission could reasonably require" from a utility's filings.[83]  Thus, we continue to find that the Mieco Membership Agreement does not describe practices that "affect rates and service significantly"[84] and we therefore continue to find that it need not be filed.

The Commission orders:

      (A)      In response to the requests for rehearing by Tri-State, United Power, and Wheat Belt, the Declaratory Order is hereby modified and set aside, in part, as discussed in the body of this order.

      (B)      Tri-State's Petition is hereby granted in its entirety, as discussed in the body of this order.

---

[80] *Id.*

[81] Declaratory Order, 170 FERC ¶ 61,224 at P 78.

[82] *NEPOOL*, 166 FERC ¶ 61,062 at P 48 (citing *EPSA*, 136 S. Ct. at 774).

[83] *City of Cleveland v. FERC*, 773 F.2d 1368, 1376 (D.C. Cir. 1985).

[84] *Id.*

Docket No. EL20-16-001                                                              - 19 -

      (C)    United Power's conditional motion for the filing of briefs or oral argument is hereby denied, as discussed in the body of this order.

By the Commission.

( S E A L )

Nathaniel J. Davis, Sr.,<br>
Deputy Secretary.