IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | Case No. 4:20-cv-04192-LLP |
| *Plaintiff,* | |
| *v.* | |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| *Defendant.* | **Basin Electric Power Cooperative's Memorandum of Law in Support of its Motion for Intervention Pursuant to Fed. R. Civ. P. 24** |
| *v.* | |
| BASIN ELECTRIC POWER COOPERATIVE, | |
| *Intervenor.* | |

## BASIN ELECTRIC POWER COOPERATIVE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR INTERVENTION

Pursuant to Federal Rule of Civil Procedure 24, Basin Electric Power Cooperative ("Basin") respectfully submits this Memorandum of Law in support of its Motion for Intervention in the above-captioned action ("Action").

## INTRODUCTION

Basin is a non-profit North Dakota electric generation and transmission cooperative with its principal place of business in Bismarck, North Dakota. The parties to this Action are both members of Basin. Plaintiff Dakota Energy Cooperative, Inc. ("Dakota"), is a non-profit Class C Member of Basin, and Defendant East River Power Cooperative, Inc. ("East River"), is a non-profit Class A Member of Basin. Basin generates electric power, and, via its Class A Members

and Class C Members, that electric power is transmitted and distributed in nine states to over three million residential and commercial users.[1]

Each of Basin's Class A Members has a long-term wholesale power contract ("WPC") with Basin pursuant to which Basin sells and transmits power to the Class A Members for resale and re-transmission to the Class C Members.  Each Class C Member, in turn, has a long-term WPC with a Class A Member.  Basin's long-term WPCs are the backbone of the cooperative generation, transmission, and distribution system established by the federal government during the Great Depression and are regulated by the Federal Energy Regulatory Administration ("FERC").

Plaintiff in this Action seeks to destroy the critical component of the cooperative system—the long-term WPC.  As discussed in more detail below, the long-term WPCs have terms that extend for years and have no provision to allow for early termination.  Despite the absence of an early termination provision, Plaintiff asks this Court to find such a provision and create the "buy-out" amount that would allow Dakota to escape its long-term contractual obligations with East River.  But in paragraph 29 of the Complaint, Plaintiff drags Basin into the dispute and quotes Basin's formal resolution that explicitly states the terms of the respective WPCs of both Class A and Class C members "do not contain any provision permitting the member to buy-out of its all-requirements contract[s]."

This electric generation system, however, is dependent upon and supported by the performance of these long-term WPCs and the system would become financially vulnerable if members could abandon WPC obligations at their own option, years before the end of the WPCs' terms.  Moreover, if such contracts are allowed to be terminated early, the costs incurred by East

---

[1] Basin generates and transmits wholesale power to Colorado, Iowa, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South, Dakota, and Wyoming.

River and Basin would have to be borne by other members (including both Class A and Class C members) of the Basin cooperative system.  Plaintiff has attacked the Basin system and Basin should be permitted to protect it.

Basin has a paramount interest in defending its electrical system.  Its interest is broader and thus greater than that of any of its Class A or Class C Members.  Basin, as the hub of the system, is uniquely positioned and should be allowed to protect the spokes of the system from the baseless and irresponsible claims of Dakota.  *See* Fed. R. Civ. P 24(a)(2); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 999 (8th Cir. 1993) ("[P]ersons seeking intervention need only carry a minimal burden of showing that their interests are inadequately represented by the existing parties.").

## ARGUMENT

### I.      Dakota's Request for an "Exit Charge" to Escape Its Long-Term All-Requirements Wholesale Power Contracts Seeks to Undermine the Foundation of the Rural Electric System.

In 1936, Congress enacted the Rural Electrification Act ("RE Act") to establish a program to provide electric power to rural America.  *See generally*, 7 U.S.C. §§ 901-950b. Following the enactment of the RE Act, rural communities across the United States formed non-profit electric distribution cooperatives (like Dakota) to deliver power to consumers. Distribution cooperatives then banded together to create central electric generation and transmission ("G & T") cooperatives (like East River) to provide a secure and economical long-term source of power.  Then, in the 1950s and 1960s, these cooperatives began to band together to form upper-tier G & Ts that would build generation facilities to provide power for multi-state regional systems.

Basin was founded as such an upper-tier G & T cooperative in 1961 by sixty-seven G & T and distribution cooperatives, including East River. Basin subsequently entered into WPCs with its Class A G & T cooperatives to generate and transmit wholesale power. In turn, the Class A G & T cooperatives (such as East River) entered into WPCs with their member rural electric cooperatives (such as Dakota) to sell them electricity that is then sold to consumers.

Like other non-profit G & T cooperatives, Basin does not have the high levels of equity required to support its long-term debt, which it has incurred in order to maintain and improve its system. Accordingly, Basin (like other G & Ts) has its Class A Members, like East River, enter into long-term WPCs with Basin that require the Class A Member to purchase all the energy it requires for its distribution cooperative members. Similarly, these Class A Members have their member rural electric cooperatives enter into similar "all-requirements" WPCs. These all-requirements WPCs assure a stable market for the power produced by Basin and provide a long-term revenue stream, allowing Basin to service its debt obligations, which have been incurred by it on behalf of its members.[2] As a result, Basin has created a stable network for its rural distribution cooperatives by building central generation facilities upon favorable financing terms and by providing power at reasonable wholesale prices.

In 2015, Basin refinanced its debt and negotiated with East River and its other Class A Members to extend their WPCs to 2075. This refinancing allowed Basin to retire and replace certain energy-generating resources. East River agreed, and its board voted unanimously on

---

[2] Basin's members consist of 18 Class A Members, 1 Class B Member, 120 Class C Members, and 1 Class D Member. Class A Members (like East River) are cooperative associations that enter into long-term all-requirements WPCs with Basin. Exhibit G, Basin Bylaws § 2(a) (Class A Members must "execute a contract to purchase electric service… as soon as electric service is needed to meet such Member's electric requirements."). Class C Members (like Dakota) are cooperative associations that enter into long-term all-requirements WPCs with Basin's Class A Members. *Id*. § 2(c). Basin's Class B Member is a municipality, which, like Class C Members, has a WPC with a Class A Member. *Id*. §2(b). Class D Members are any other cooperative or municipality that purchases electricity from Basin. *Id*. §2(d).

August 6, 2015 to amend and extend its WPC with Basin through December 31, 2075.  East River likewise amended and extended its own WPCs with its members for the same period.[3] Neither Basin's WPC with East River nor East River's WPC with Dakota contains the right to terminate the WPC early.

In providing long-term all-requirements service under WPCs, Basin is obligated to plan and invest in its system and acquire the facilities necessary to serve the wholesale power requirements of each of its Class A Members over the full term of the WPCs.  In reliance on its WPCs with its Class A Members, Basin has invested 7.2 billion dollars in order to be in a position to generate power to supply its Class A Members through 2075, knowing that it will recoup those investment costs over the life of the WPCs.  And Basin's Class A Members, like East River, have similarly made substantial, long-term investments in transmission infrastructure in order to serve its members.  In reliance on its long term all requirements WPCs, East River has promised to Basin to purchase from Basin all the energy it requires, and Dakota has made this same commitment in its WPC to East River.   Thus, a balance is struck—Basin makes investments to support a nine-state electrical power system relying on the long-term WPCs to service its generation and transmission costs, and Dakota's consumer end users get electricity at reasonable rates from a long-term, stable source of power.

Should Dakota be allowed to break its WPC with East River—despite the lack of any provision providing for termination of the WPC before the end of the contract term—the generation & transmission system would begin to unravel:  Basin would have unmet costs from

---

[3] East River, like Basin, has low levels of equity and it too relies on its WPCs with its members (like Dakota) as the foundation of its credit and financial strength.  And, East River has outstanding RUS loans, the terms of which require East River to ensure its distribution cooperative members, like Dakota, enter into all-requirements WPC extending the full term of the loan.  *See* East River Counterclaim for Declaratory Judgment ¶¶ 31, 37, 39 (ECF No. 9).

Dakota's withdrawal, costs which would be forced upon its remaining members, thereby increasing the cost of electricity for every other member of the cooperative. This upending of the cooperative G & T balance would threaten Basin's ability to meet the electricity needs of all three million of its end users.

To protect its interest in the cooperative electric system it heads, Basin seeks intervention in this Action. Basin is not a stranger to this Action,[4] as is obvious from paragraph 29 of the Complaint in which Dakota alleges that Basin is complicit in East River's refusal to allow Dakota to ignore its contractual obligations and terminate its WPC early. Basin seeks to preserve a system based upon express contractual provisions and should be permitted to intervene to do so. *See Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule [24] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *Planned Parenthood Minn. v. Daugaard*, 836 F. Supp. 2d 933, 940 (D.S.D. 2011) (internal citations omitted) ("While the applicant cannot base its intervention on an injury or interest that is remote or speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation. This prong of the test is construed broadly, and parties that are affected by the cause of action should be included if it is practicable.").

## II.   The Federal Energy Regulatory Commission Has Found that The Lack of Early Termination Rights in Long-Term All-Requirements WPCs is Just and Reasonable.

FERC recently concluded—in a proceeding in which Basin, East River, and Dakota were all parties—that the fact that a cooperative WPC did not include "withdrawal and termination procedures" did not render the WPC unjust or unreasonable. Exhibit M, FERC Decision, ¶ 86.

---

[4] Indeed, Plaintiff served a subpoena duces tecum on Basin before this Action was removed from state court.

FERC recently considered a Protest by Dakota challenging the lack of such early termination provision between Basin and another of its Class A Members.[5]  Exhibit M, FERC Decision, ¶ 58. In the fall of 2019, Basin filed wholesale power rates with FERC for its approval.  The FERC approval process included the submission of Basin's WPCs with its Class A Members.   In response to Basin's submission, McKenzie Electric Cooperative, Inc. ("McKenzie"), a Class C Member of Basin, filed a Protest alleging that the lack of early termination and withdrawal rights in the WPC between Basin and Upper Missouri G. & T. Electric Cooperative, Inc., ("Upper Missouri") rendered the WPC unjust and unreasonable.  Exhibit N, McKenzie Protest at 5. Though the McKenzie Protest targeted the WPC between Basin and Upper Missouri, that WPC is the same as the WPC between Basin and East River.  So, Dakota filed its own Protest "adopt[ing] and incorporate[ing]" McKenzie's Protest and stating that the "issues and concerns that McKenzie identified apply equally to [Dakota's] relationship with Basin."  Exhibit L, Dakota Protest at 5.  Both Protests (McKenzie's and Dakota's) claimed that the lack of early termination provisions in their Class A Members' respective WPCs with Basin made the WPCs unjust and unreasonable.  Exhibit M, FERC Decision ¶ 58 (citing Exhibit L, Dakota Protest at 5).

FERC, however, expressly "disagree[d] with the arguments of McKenzie, Dakota Energy, and [others] that Basin's purported lack of withdrawal and termination procedures renders the [WPC] unjust and unreasonable."  Exhibit M, FERC Decision ¶ 86.  FERC concluded that Dakota's argument that "Basin's [WPCs with its Class A Members] are not just and reasonable because they do not contemplate *early* termination—and the associated withdrawal from the cooperative—prior to the expiration of their respective terms" was without merit.  *Id*. ¶ 87 (emphasis added).  Although neither McKenzie nor Dakota, as Class C Members,

---

[5] Basin became subject to FERC jurisdiction in the fall of 2019 because it no longer fell into any of the exceptions to FERC jurisdiction set forth in the section 201(f) of the FPA.

have WPCs with Basin, there is nothing to suggest that FERC's conclusions with respect to Basin's WPCs with its Class A Members would not equally apply to Basin's Class A Members' WPCs with Class C Members or the East River/Dakota WPC.  Indeed, the termination provisions in both WPCs are materially identical.[6][7]   Because FERC has exclusive jurisdiction to regulate termination, withdrawal, and exit charge procedures, this FERC decision controls this dispute: State law may not construe or regulate contracts that will affect the rates of the sale of interstate wholesale electric power.  *See* Section 824(3) of the FPA (16 U.S.C.A. § 792 *et seq*.) (vesting exclusive authority to regulate the interstate sale of wholesale electricity in FERC); *Federal Power Comm'n v. Southern California Edison Co*., 376 U.S. 205, 215-16 (1964) (the FPA "prohibit[s] state control of wholesale rates in interstate commerce" for electricity) (internal quotation marks and citation omitted); *Pac. Gas & Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1033 (N.D. Cal. 2002) (holding that pursuant to its exclusive jurisdiction, FERC has the sole authority "to regulate the rates, terms and conditions of interstate transmission, transportation, and wholesale sales" of electricity in interstate commerce).

---

[6] The Basin/Upper Missouri WPC termination provision (as amended) states (in relevant part) "This Agreement shall remain in effect until December 31, 2075.  If either Party desires to terminate the Agreement on December 31, 2075, it shall provide written notice of intent to terminate by December 31, 2070.  If notice of termination is not received by either party prior to December 31, 2070, this Agreement shall remain in effect unless terminated by either party giving to the other not less the five (5) years prior written notice of its intention to terminate."  Exhibit O, WPC by and between Basin Electric Power Cooperative and Upper Missouri G. & T. Electric Cooperative, Inc., §10 (as amended).

The East River/Dakota WPC termination provision (as amended) states "This Agreement shall… remain in effect until December 31, 2075 and thereafter until terminated by either Party giving to the other not less than six month's written notice of its intention to terminate."  Exhibit F, WPC by and between East River Electric Power Cooperative, Inc. and Dakota Energy Cooperative, Inc., § 10 (as amended).

[7] Though Basin seeks the right to intervene under Rule 24(a)(2)—intervention of right—intervention pursuant to Rule 24(b)(1)(b)—permissive intervention—is also proper, as the WPCs present common questions of law regarding the contractual provision of the WPCs.  Basin's participation will not confuse or unduly complicate the proceedings, nor will intervention delay this proceeding which has only recently commenced.  *See First Midwest Bank - Deerfield Branches v. Metabank*, No. CIV 06-4114, 2007 WL 1813207, at *1 (D.S.D. June 18, 2007).

## CONCLUSION

Basin should be allowed to intervene pursuant to Rule 24(a)(2) and be granted full status in this Action in order to protect its unique, direct, and substantial interests. Basin is charged— by regulators, its members, and its consumers—with generating the electricity for residential and commercial users across the Rocky Mountains and Upper Midwest. In order to support the financial burden imposed upon it by this massive energy producing responsibility, Basin relies on the stability of the rural electric cooperative system as designed by Congress in the RE Act: Basin's financial security is derived from WPCs with its Class A Members whose financial security, in turn, is derived from WPCs with its own members. Dakota's efforts to upend this 60-year balance will directly harm Basin, and disposing of this Action without Basin will impair Basin's ability to protect its interests.

WHEREFORE, for the reasons set forth above, Basin respectfully requests that the Court grant its Motion to Intervene.

Dated January 20, 2021.

Respectfully submitted,

*/s/ Meredith A. Moore*
Meredith A. Moore

CUTLER LAW FIRM, LLP

MEREDITH A. MOORE
140 N. Phillips Ave., 4th Floor
PO Box 1400
Sioux Falls, SD 57101-1400
T: +1 605 335 4995
F: +1 605 335 4961
meredithm@cutlerlawfirm.com

ORRICK, HERRINGTON & SUTCLIFFE LLP

J. PETER COLL, JR. (*pro hac vice pending*)
51 West 52nd Street
New York, NY 10019-6142
T:  +1 212 506 5000
F:  +1 212 506 5151
pcoll@orrick.com

JONATHAN A. DIRENFELD (*pro hac vice pending*)
1152 15th St NW
Washington, D.C. 20005-1706
T:  +1 202 339 8400
F:  +1 202 339 8500
jdirenfeld@orrick.com

MATTHEW D. LABRIE (*pro hac vice pending*)
222 Berkeley Street, Ste. 200
Boston, MA 02116
T:  +1 617 880 1800
F:  +1 617 880 1801
mlabrie@orrick.com

*Counsel for Basin Electric Power Cooperative*