```
 1                    UNITED STATES DISTRICT COURT

 2                      DISTRICT OF SOUTH DAKOTA

 3                         SOUTHERN DIVISION

 4      * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                      *
 5      DAKOTA ENERGY COOPERATIVE, INC.,  *     4:20-cv-4192-LLP
                                      *
 6                      Plaintiff,    *     STATUS CONFERENCE
        v.                            *
 7                                    *
        EAST RIVER ELECTRIC POWER     *
 8      COOPERATIVE, INC.,            *
                                      *
 9                      Defendant,    *
        v.                            *
10                                    *
        BASIN ELECTRIC POWER          *
11      COOPERATIVE,                  *
                                      *
12                      Intervenor.   *
                                      *
13      * * * * * * * * * * * * * * * * * * * * * * * * * * *
        TIME AND PLACE:      May 24, 2021
14                           U.S. District Court
                             400 S. Phillips
15                           Sioux Falls, SD  57104

16      BEFORE:              HON. LAWRENCE L. PIERSOL (in person)
                             U.S. District Court
17                           400 S. Phillips Ave., Ste. 202
                             Sioux Falls, SD  57104
18
        APPEARANCES:         MR. LEE A. Schoenbeck (in person)
19                             Schoenbeck Law
                               P.O. Box 1325
20                             Watertown, SD 57201
                               (605) 886-0010
21                           ATTORNEY FOR PLAINTIFF
                             Email: lee@schoenbecklaw.com
22
                             MR. PETER W. HERZOG (in person)
23                             Wheeler Trigg O'Donnell LLP
                               211 N. Broadway, Suite 2825
24                             St. Louis, MO 63102
                               (314) 326-4129
25                             Email: pherzog@wtotrial.com
                             ATTORNEY FOR PLAINTIFF
```

```
1   APPEARANCES:          MR. MICHAEL L. LUCE (in person)
    (continued)             Lynn, Jackson, Shultz & Lebrun, P.C.
2                           110 N. Minnesota Ave., Ste. 400
                            Sioux Falls, SD 57104
3                           (605) 332-5999
                            Email: mluce@lynnjackson.com
4                         ATTORNEY FOR DEFENDANT

5                         MR. JAMES A. ORR (by phone)
                            Eversheds Sutherland (US) LLP
6                           999 Peachtree Street, NE, Suite 2300
                            Atlanta, GA 30309-3996
7                           (404) 853-8578
                            Email: jamesorr@eversheds-sutherland.com
8                         ATTORNEY FOR DEFENDANT

9                         MS. MEREDITH A. MOORE (in person)
                            Cutler Law Firm, LLP
10                          140 North Phillips Avenue, Fourth Floor
                            P.O. Box 1400
11                          Sioux Falls, SD 57101
                            (605) 335-4950
12                          Email: meredithm@cutlerlawfirm.com
                          ATTORNEY FOR INTERVENOR
13
                          MR. J. Peter Coll, Jr. (by phone)
14                          Orrick, Herrington & Sutcliffe LLP
                            51 West 52nd Street
15                          New York, NY 10019
                            (212) 506-3790
16                          Email: pcoll@orrick.com
                          ATTORNEY FOR INTERVENOR
17
                          MR. JONATHAN A. DIRENFELD (by phone)
18                          Orrick, Herrington & Sutcliffe LLP
                            1152 15th Street, N.W.
19                          Washington, DC 20005
                            (202) 339-8614
20                          Email: jdirenfeld@orrick.com
                          ATTORNEY FOR INTERVENOR
21
    ALSO PRESENT:         MS. DEANNA PARKER - SUMMER INTERN
22
    COURT REPORTER:       MS. CHERYL A. HOOK, RMR, CRR (phone/video)
23                        U.S. District Court
                          225 S. Pierre St. #420
24                        Pierre, SD  57501

25
```

```
1              (Proceedings at 2:06 p.m.:)
2                   THE COURT:  I'm going to take roll.  For the
3       plaintiff Dakota Energy Cooperative, who is appearing for them?
4                   MR. HERZOG:  Peter Herzog, Your Honor.
5                   THE COURT:  Just a moment.
6                   MR. SCHOENBECK:  And, Your Honor, Lee Schoenbeck.
7       I'm local counsel.
8                   MR. LUCE:  For defendant --
9                   THE COURT:  Just a moment.
10                  MR. LUCE:  Oh.  I'm sorry.
11                  THE COURT:  So the court reporter can have it, that's
12      Peter Herzog, isn't it?
13                  MR. HERZOG:  Yes, sir.  H-E-R-Z-O-G.
14                  THE COURT:  All right.  Because the court reporter --
15      because I have realtime.  And I'm just doing that for the court
16      reporter because she had "Herz."  So H-E-R-Z-O-G?
17                  MR. HERZOG:  Yes, sir.
18                  THE COURT:  Just a moment.  Then for Defendant East
19      River Electric Power Cooperative?
20                  MR. LUCE:  Mike Luce appearing personally as local
21      counsel.  Also with me today -- and I want to introduce her to
22      the Court -- is Deanna Parker, who is a summer intern between
23      her second and third year of law school, and she will be
24      observing today with your permission.
25                  THE COURT:  All right.  Thank you.
```

 1          **MR. LUCE:**  And also appearing -- and he can introduce

 2   himself is our other counsel.

 3          **MR. ORR:**  Yes.  This is James Orr by telephone, Your

 4   Honor.

 5          **THE COURT:**  All right, Mr. Orr.  Just a moment.  I'm

 6   making my own list too.  Mr. Orr, you're from Atlanta; is that

 7   right?

 8          **MR. ORR:**  That's correct.

 9          **THE COURT:**  Mr. Herzog, you're from St. Louis; is

10   that correct?

11          **MR. HERZOG:**  Yes, sir.

12          **THE COURT:**  Okay.  And then for Basin Electric?

13          **MS. MOORE:**  Meredith Moore appearing as local counsel

14   for Basin Electric, Your Honor.  Additional counsel are on the

15   phone, and I will have them introduce themselves.

16          **MR. COLL:**  Your Honor, this is Peter Coll of Orrick.

17   I'm on -- as Ms. Moore indicated, I'm on the phone, obviously.

18          **THE COURT:**  All right.  And for the court reporter,

19   "Coll" is C-O-L-L?

20          **MR. COLL:**  That's correct, Your Honor.

21          **THE COURT:**  All right.  And you're from New York

22   City; is that correct?

23          **MR. COLL:**  I'm in New York, that's correct.

24          **MR. DIRENFELD:**  And, Your Honor, this is Jonathan

25   Direnfeld also from Orrick for Basin on the phone.

```
 1              THE COURT:  And, sir, also appearing for East River
 2    Electric -- or no.  Excuse me.  Basin Electric?
 3              MR. DIRENFELD:  For Basin Electric, Your Honor,
 4    that's correct.
 5              THE COURT:  All right.  And Jonathan Direnfeld,
 6    correct?
 7              MR. DIRENFELD:  That's correct, Your Honor.
 8              THE COURT:  And for the court reporter,
 9    D-I-R-E-N-F-E-L-D?
10              MR. DIRENFELD:  That's correct, Your Honor.
11              THE COURT:  All right.  Well, as I often do on
12    hearings, I tell you a little bit about what I'm thinking and
13    how I hope to get some help.
14              And first of all, I want to apologize for this being
15    so late for a scheduling order.  Because normally, you know, I
16    get a Rule 16 suggestion from the parties, and it goes to
17    staff, and they put one together then for my approval, and we
18    go over it, and maybe talk about some things.  I might move
19    something a little bit.
20              Well, this one, as I indicated, in my order in
21    setting this hearing is so different.  And, frankly, it didn't
22    come to my attention that it was as tardy as it was until
23    Mr. Schoenbeck called.  And I said, "Woo."  And then I can see
24    that we -- it isn't something that I could even expect staff to
25    handle.  That's something that we have to meet and deal with,
```

1   as far as I'm concerned.

2          So anyway, it's my responsibility for being late.

3   Normally, these things come out right away.  This one didn't.

4   But we'll take care of that now.

5          And one of the reasons I wanted, as I indicated in my

6   order setting this, the parties are somewhere around light

7   years apart with regard to their position on this.  And to

8   begin with, generally speaking, I disfavor bifurcation of

9   discovery because it winds up with the case dragging along

10  longer usually and so on.  But this one I thought, hmm.  I

11  recognize that the plaintiff resists and various defendants

12  have supported having bifurcation.

13         But a little bit about, you know, my just very, very

14  preliminary views on this case, recognizing at this point the

15  lawyers know a lot more about this case than I do.  But it

16  seems to me, looking at it, that the initial question as to

17  whether Dakota Energy Cooperative can withdraw or terminate --

18  both terms have been used -- and you can explain the difference

19  for me at some point.  But that's a pretty straightforward

20  question -- law question, it seems to me.  And I always stand

21  ready to be educated on that.  But if that is the fact and it's

22  a law question that I have no idea what's going to come out,

23  one way or the other, but if it comes out one way, then you

24  don't have any right to withdraw or terminate, that's the end

25  of the ball game.  And that seems to me to be a fairly

1    straightforward question that isn't subject to much discovery.

2              On the other hand, if they are entitled to withdraw

3    or to terminate, then it becomes, it seems to me, a very

4    complicated question as to how do you figure that out in terms

5    of the result and how soon -- knowing how soon but what kind of

6    compensation might there be that would have to be paid; and if

7    so, how do you figure out what that amount is.

8              And I will say, just so that I'm not a complete babe

9    in the woods, if we get into those areas, back many years ago,

10   when I was doing primarily business-oriented trial work -- but

11   other kinds of trial work too -- I represented what was then

12   Northern States Power Company --

13            **THE COURT REPORTER:**  Okay.  I'm sorry, Judge.  This

14   is the court reporter.  Somebody is shuffling papers, and I

15   missed what you said.

16            **THE COURT:**  Shame on anybody that shuffles papers.

17            **THE COURT REPORTER:**  Okay.

18            **THE COURT:**  I didn't.  I'm fully capable of it, of

19   course.

20            **THE COURT REPORTER:**  Okay.  I have "I represented

21   what was then Northern States Power Company."

22            **THE COURT:**  Okay.  Well, okay. I represented Northern

23   States Power Company in rate cases.  And as I say, not the most

24   simulating cases but very important cases.  So I have some

25   passing knowledge of electrical transmission and pricing

1    issues, dated as it is.

2           So with that, I'm going to turn first to Dakota

3    Energy Cooperative.  Just, you know, whatever you have to say

4    with regard to my leaning, so to speak, towards bifurcating

5    this, even though I don't favor bifurcation.

6           **MR. HERZOG:**  Your Honor, I'm not accustomed to

7    staying seated while addressing the Court, but I understand

8    that, because of the microphone, it's easier for the court

9    reporter to pick it up.  So that was my intention, if that's

10   acceptable to you.

11          **THE COURT:**  Yes.  Preferable.

12          **MR. HERZOG:**  Your Honor, we would, as you know,

13   resist the bifurcation for a variety of reasons.  First of

14   all -- and I understand we are discussing this not in the

15   context of a motion that's been made or anything, but the

16   Court's leanings.

17          Your Honor, our position on this is that we're not

18   asking for the Court for what would be a ruling in the

19   abstract, a ruling on whether or not Dakota has the right to

20   withdraw in the abstract.

21          **THE COURT:**  And I have no intention of such a ruling.

22   It's just that it seems to me -- and by the way, everybody get

23   used to the fact that I interrupt counsel, so we can go back

24   and forth.  That's one of the advantages of having a hearing

25   instead of everything on paper.

1    No, I have no intention of that.  And even if I order

2    bifurcation, that doesn't mean in any way, shape, or form that

3    anybody has the right to terminate or withdraw.

4         **MR. HERZOG:**  No, I understand, Your Honor.  But the

5    position is slightly different than that.  I don't think it can

6    be analyzed in the abstract.  We are not asking to withdraw and

7    simply leave the contract behind.

8         We are -- our position is, Your Honor, that under the

9    bylaws and under the wholesale power contract itself, there is

10   a right to withdraw on equitable terms.  And the contract

11   itself, the wholesale power contract, in Section 14 contains

12   the kind of terms on which a party can terminate the contract

13   early.

14        Section 14 provides for a variety of transactions in

15   which Dakota could, for example, engage in a corporate

16   transaction to sell its assets to reorganize or otherwise to

17   change its corporate structure.  And that Section 14 of the

18   contract specifically provides the kind of circumstances that

19   are expressly permitted by the contract and that result in the

20   early termination of the contract by a payment that is -- that

21   consists of Dakota's agency pro rata portion of the debt.

22        The reason for that, Your Honor, is -- and the

23   evidence would show -- that these contracts are not typical

24   contracts.  They are financing instruments.  And --

25        **THE COURT:**  You're saying they're not contracts?

1   **MR. HERZOG:**  No, they are contracts, Your Honor.  But

2   they are construed, according to industry custom and practice,

3   which includes the fact, Your Honor, that these are financing

4   instruments, and they permit the generation and transmission --

5           **THE COURT:**  It's not usual to have a contract that's

6   a financing instrument.

7           **MR. HERZOG:**  No, I understand, Your Honor.  But the

8   point is that, as a financing instrument, the contract itself

9   contemplates that that instrument may be paid off early, and

10  therefore --

11          **THE COURT:**  Does it say so?

12          **MR. HERZOG:**  I'm sorry.  I didn't hear you.

13          **THE COURT:**  Does it say so?

14          **THE COURT REPORTER:**  Yeah.  I'm sorry, Judge.  You

15  cut out.

16          **MR. HERZOG:**  Yes.  Yes, it does.  Yes, it does, Your

17  Honor.

18          **THE COURT:**  All right.

19          **MR. HERZOG:**  In Section 14.

20          **THE COURT REPORTER:**  Okay.  The judge cut out.  So

21  the last part I have in there is the "instrument may be paid

22  off early."

23          **THE COURT:**  And then the judge said, "Does it say

24  so?"

25          **MR. HERZOG:**  And Herzog said, "Yes, it does, in

1    Section 14."

2              And so our position -- our position is, Your Honor,

3    that these kinds of transactions are specifically contemplated

4    by both the bylaws and by the -- and by the contract itself,

5    and that the analysis of whether there is a right to withdraw

6    and a concurrent right to buy out of the contract and to

7    withdraw on equitable terms as the bylaw provides necessarily

8    includes an analysis of those terms that I assume, Your Honor,

9    that there are terms -- there are circumstances under which

10   East River and Basin would not object to the withdrawal of the

11   agency.

12             For example, if the agency were to come to East River

13   and to Basin and say, "Well, here's what we propose to do.

14   We're going to prepay for all of the power that you predict

15   that we would purchase under the contract."  And --

16             **THE COURT:**  That's not -- that's not realistic.

17             **MR. HERZOG:**  Well, no, it's not realistic.  But it's

18   only to illustrate, Your Honor, that the terms are part of the

19   analysis of whether there is an equitable right to terminate.

20   And there are circumstances, I think we could posit, where

21   there would be no objection to the exercise of that right, and

22   similarly there would be an objection, and we are not asking to

23   withdraw or to terminate on terms that don't include a payment

24   of our contractual obligations.

25             And the Court will recall that the language of the

1   bylaws is that you have an equitable right to -- to withdraw.

2   You may withdraw on equitable terms, provided you have

3   satisfied your contractual obligations to the corporation.

4          And our position is, Your Honor, of course we're not

5   arguing a motion to dismiss or, you know, a dispositive motion

6   here, but our position is that the evidence will show that we

7   have a right to withdraw on equitable terms that involves the

8   payment of the pro rata portion of the debt and other equitable

9   terms and conditions that East River may reasonably impose and

10  consistent with the bylaw and with the wholesale power contract

11  as those contracts are interpreted both literally and according

12  to industry custom and practice.

13         And so our position is, Your Honor, that this -- this

14  is not something that can be and should be analyzed in the

15  abstract because we're not taking the position that we have a

16  wholesale right to withdraw but only that we have a right to

17  withdraw on equitable terms, and those equitable terms we

18  require discovery and a fact finder to determine what those

19  equitable terms are.

20         **THE COURT:**  Well, your discovery seems to me to be

21  quite a wish list.  That was one of the things that drove me to

22  think, hmm, I can't imagine that some of this discovery has

23  anything to do with that initial question.  So that is one of

24  the reasons I think about, you know, parsing this.

25         **MR. HERZOG:**  Well, there are a number of questions

1    that are necessary for us to discover, Your Honor.  First of

2    all, the question -- we would seek discovery of East River and

3    have sought discovery of East River, and we would seek

4    deposition testimony on how East River and its board has

5    interpreted the bylaw provision regarding withdraw and how

6    it's interpreted Section 14 of the whole power contract.  We

7    would --

8              **THE COURT:**  What difference does it make to me as to

9    how they interpret it if I'm going to interpret it?

10             **MR. HERZOG:**  Well, you would have to -- you would

11   have to conclude, Your Honor, that it's not -- that it is --

12   that parol evidence is not necessary to interpret it and that

13   it's clear as a matter of law.  And, Your Honor, I would submit

14   to you that, if it were clear as a matter of law, then East

15   River would have filed a motion to dismiss, but they didn't.

16   They filed an answer and now are resisting discovery after

17   having filed an answer and a counterclaim on which we are

18   seeking discovery.  Even their proposal in the Rule 26

19   conference of counsel report that was provided to you,

20   Your Honor, envisions a period of time for discovery on the

21   meaning of the bylaw provision that permits an equitable

22   withdrawal.

23             If it's a legal question, you don't get discovery on

24   a legal question.  That's a question for the Court to decide

25   initially.  But they have proposed that there be discovery on

14

1  the question of what the bylaw means, and we believe that that
2  is appropriate because we believe that we're entitled to
3  conduct discovery of East River, of its board, and to present
4  to the Court interpretations of the bylaw that are very
5  consistent with the allegation with our interpretation as
6  alleged in our complaint, Your Honor.
7       **THE COURT:**  So you're saying is what some board,
8  compromised of a bunch of laypersons, did would be something
9  that the Court should consider in determine what the bylaw
10  says?
11      **MR. HERZOG:**  Well, the Court could certainly consider
12  that testimony in determining whether or not the bylaw is
13  ambiguous.  I believe that the -- that the case law is fairly
14  settled, that an individual cannot admit a legal interpretation
15  of the document.  But I do believe that the fact that -- that
16  members of the board of directors, as they may, may interpret
17  that provision, particularly in the course of dealing, and
18  whether that course of dealing would, therefore, contribute to
19  the -- to the evidence on how that bylaw should be construed.
20      I do think in that circumstance, yes, Your Honor,
21  that would be admissible as a course of dealing.  It wouldn't
22  be admissible as an admission against interest as to the legal
23  interpretation of a contract.  Of course, that would be your
24  job, Your Honor.
25      **THE COURT:**  All right.  I'll hear from --

1    **UNIDENTIFIED SPEAKER:**  Hello.

2        **THE COURT:**  -- next East River Electric Power.  And

3    the speakers always should identify themselves for the Court as

4    well as the court reporter.

5        **MR. LUCE:**  Thank you, Your Honor.  This is Mike Luce.

6    And if it please the Court, I will just briefly summarize our

7    position and let my co-counsel, Mr. Orr, add anything

8    additional, if you don't mind breaking it up that way.

9        Mr. Herzog has several times mentioned that this

10   should not be decided in the abstract.  Frankly, I don't know

11   what that means.  All I know is that all of the parties agreed

12   that this should be a declaratory judgment for the Court to

13   interpret and enforce a contract, a contract between East River

14   and Dakota.  That contract is what's before this Court as the

15   initial issue.

16       As Mr. Herzog recognized, the idea of withdrawal and

17   the bylaws with respect to withdrawal only come into play when

18   the contractual obligations are met.  So the issue initially

19   for this Court, which may or may not resolve everything, is the

20   interpretation of that contract.

21       When we submitted our response to the scheduling

22   order, we indicated there may be some discovery that may be

23   necessary, but we were concerned about the breadth, because

24   they were asking for 10 years before, 10 years in the future,

25   all correspondence, contacts, things between parties that have

1    dealt with each other for all of these years.  It was clear

2    from the breadth of that discovery that we were going far

3    afield from the interpretation of that contract.

4           And so we indicated maybe there should be some

5    limited discovery because, frankly, we want to make sure the

6    contract and its terms were before the Court.  There is no

7    question at this point that is before the Court.  It may

8    well -- and that can be addressed by Basin -- it probably is in

9    the position now for a motion to dismiss under Rule 12.

10          This additional discovery is not needed.  It's an

11   action on the contract, the interpretation of that contract.

12   That's not in the abstract.  It's settled principle that the

13   contract speaks for itself.

14          Several depositions and thousands of pages of written

15   discovery are not going to speak for that contract.  The Court

16   can look at the four corners of that contract, and that's not

17   looking at it in the abstract.  It's looking at the full and

18   complete contract as to the contractual obligations which are

19   the prerequisite, a precondition to any discussion which will

20   never need to take place in terms of how to withdraw and what

21   to pay for withdrawal.  You can't talk about that until you

22   have honored your contract.

23          And I'll let Mr. Orr either correct me if I've

24   mistaken anything in my presentation to the Court or further

25   enhance the position of East River.

17

```
1            THE COURT:  Mr. Orr, do you have anything to add?
2            MR. ORR:  Just briefly, Your Honor.  And I would echo
3    what Mr. Luce said, that in this case all three parties in
4    their pleadings seek a declaratory ruling from the Court
5    regarding Dakota's rights under the wholesale power contract
6    and the bylaws.
7            THE COURT REPORTER:  Okay.  Oops.  You cut out.  You
8    cut out.
9            MR. ORR:  I'm sorry?
10           THE COURT REPORTER:  "Dakota's rights under the
11   wholesale --"
12           MR. ORR:  -- power contract and the bylaws.  Those
13   are pure -- those are threshold issues that all of the parties
14   agree need to be decided by the Court.  They are pure contract
15   interpretation issues for the Court.
16           And, you know, we'll -- Mr. Herzog's argument as to
17   paragraph 14 of the wholesale power contract deals with a
18   possible merger or consolidation of Dakota with another entity.
19   That's not what we have here.  That provision says nothing
20   about terminating the wholesale power contract.
21           The wholesale power contract does contain a provision
22   regarding term and termination.  And we believe it's clear on
23   its face the bylaws do not supplant that provision or even
24   address termination.
25           So we believe that these are pure contract
```

1   interpretation issues for the Court and discovery is not

2   needed.  And we would be ready to file our Rule 12(c) motion I

3   think we said in our papers by June 30th, and we're -- we would

4   still be ready to do that.

5            **THE COURT:**  All right.  Let me hear from Basin

6   Electric.

7            **MS. MOORE:**  Thank you, Your Honor.  Meredith Moore --

8            **MR. ORR:**  Ah --

9            **THE COURT:**  Oh.  I'm sorry, Mr. Orr.  Did you have

10  something else you wanted to say?

11           **MR. ORR:**  No, Your Honor.  Thank you.

12           **THE COURT:**  All right.  Go ahead.

13           **MS. MOORE:**  Excuse me.  Thank you, Your Honor.

14  Meredith Moore appearing for Basin Electric, and I will defer

15  to counsel Mr. Jonathan Direnfeld, who is present

16  telephonically, for further comment.  But at this time Basin

17  would concur with the comments that have been made and offered

18  by Mr. Luce and Mr. Orr.

19           Basin previously submitted a very brief statement

20  commenting on the parties' scheduling proposals in which

21  statement it indicated that discovery would not be necessary.

22  And we agree with the comments that discovery would do nothing

23  to further the Court's interpretation of this contract, which

24  is the critical issue for decision.  And we also indicated that

25  we would be prepared to file a motion for judgment on the

1    pleadings in very short order in order to further the

2    discussion of that very critical issue.

3            And I will refer to Mr. Direnfeld for any further

4    comments.  Thank you.

5            **THE COURT:**  Mr. Direnfeld.

6            **MR. DIRENFELD:**  I believe that Peter Coll wanted to

7    make a comment first.

8            **MR. COLL:**  Your Honor, this is Peter Coll.  I really

9    have nothing to add to what Mr. Orr and Mr. Luce have already

10   stated.  The fact of the matter is all of the parties to this

11   action agree as to what the governing documents are.  The

12   governing documents are -- have express language that

13   delineates the rights of the parties, the obligations of the

14   parties, and there is no parol evidence necessary to interpret

15   that express language.

16           So we would ask the Court to do as you are -- have

17   indicated you may be leaning, and that is let us file 12(c)

18   motions on the pleadings for judgment.  And we can -- as

19   Ms. Moore indicated, we can do that in short order because

20   there's nothing necessary that you don't already have when you

21   have those governing documents in front of you.

22           **THE COURT:**  All right.  I'll go back -- thank you.

23           I'll go back to Dakota Energy.  Anything further that

24   you would like to say?

25           **MR. HERZOG:**  Yes, Your Honor, there is.  I do believe

1    that counsel for East River mistakenly described the provision

2    Section 14 of the contract, which specifically provides, Your

3    Honor, that notwithstanding the foregoing, a member make take

4    or suffer to be taken -- a member referring to Dakota Energy --

5    any steps for reorganization or to consolidate with or merge

6    into any corporation, or to sell, lease, or transfer, or make

7    any agreement, therefore, all or a substantial portion of its

8    assets whether now owned or hereafter acquired, so long as the

9    members shall pay such portion of the outstanding indebtedness

10   on the notes as shall be determined by East River with the

11   prior consent of the administrator.

12          Your Honor, these lending agreements are additional

13   documents that, in my experience, specifically envision an

14   early termination.  We, I believe, Your Honor, have alleged a

15   sufficient basis to conduct discovery, to obtain from the

16   defendants those documents that would support our

17   interpretation of the -- of the bylaw and the wholesale power

18   contract.

19          And the one thing -- there are two things I should

20   say, Your Honor, that are highly unusual here in terms of your

21   discussion of bifurcation.  And the first is that East River

22   has filed a counterclaim, and that counterclaim remains

23   pending.  Basin has filed a complaint in intervention.

24          It's hard -- I think it would be highly unusual, Your

25   Honor, for there to be no discovery permitted of Dakota Energy

1    to defend itself against a complaint in intervention, to defend

2    itself against the counterclaim that was pleaded by East River.

3         Your Honor, if there -- if there were a motion to

4    dismiss -- they're talking about a motion for judgment on the

5    pleadings under Rule 12(c).  What they really want, Your Honor,

6    is having answered and now having filed a complaint in

7    intervention, they now want you to give them the opportunity to

8    file a late Rule 12(b)(6) motion for failure to state a claim

9    on the grounds that no discovery is needed, notwithstanding the

10   fact that East River has said that discovery is needed, and

11   they're asking you to grant them leave to file a 12(b)(6)

12   motion on the grounds that the contract is not ambiguous, that

13   the Court can simply construe it on the basis of the materials

14   that it has before it.  But, Your Honor, if that were the case,

15   that motion could have been filed long ago.  That motion could

16   have been filed as a Rule 12(b)(6) motion.

17        And, Judge, I know this is not binding on the Court,

18   of course, Your Honor, but I do want to make you aware of the

19   fact that there are other cases --

20        **THE COURT:**  I was going to ask about that.

21        **MR. HERZOG:**  Yes.  Yes, Your Honor.  There is another

22   case involving Mr. Orr and his firm in very similar

23   circumstances in South Carolina.  They made an identical motion

24   in that case, Your Honor.  And Judge Lydon denied that motion

25   to bifurcate for the very reasons that we suggest you should

1    deny it here.

2             In addition, Your Honor, there's -- there's no basis

3    I don't think -- I shouldn't say no -- but I think it would be

4    very unusual for us to be denied any discovery, Your Honor.

5             **THE COURT:**  Well, it's two different things, being

6    denied any discovery versus the wish list that you have for

7    discovery.

8             **MR. HERZOG:**  Well, but we -- Your Honor, let me --

9    let me explain just a little bit on that, okay?  So you don't

10   think that, you know, we're just trying to create discovery

11   issues.  There have been a couple -- I think this case can be

12   discovered and ready for trial in seven months.

13            We did that, Your Honor, in the case in Colorado

14   where I represented -- we represented -- my firm did -- United

15   Power in its litigation with Tri-State Generation and

16   Transmission.  Tri-State is also a member of Basin.  Now that

17   was in front of the Public Utility Commission, Your Honor,

18   because that's the way it works in Colorado.  But we filed that

19   case in early November.

20            **THE COURT:**  What was it about?

21            **MR. HERZOG:**  Same thing, Your Honor.  It was about a

22   withdrawal from Tri-State Generation and Transmission by United

23   Power, and Tri-State never took the position that you weren't

24   permitted -- that the bylaws precluded you from withdrawing,

25   but they took the position that the board gets to decide on

23

1   what terms you can withdraw.  We went through motions; we went

2   through expert discovery; we went through fact discovery.  And

3   we tried that case in seven months in the middle of May.  It

4   was filed in November of 2019, and it was tried to an

5   administrative law judge in mid May of 2020.  And, Your Honor,

6   we are pursuing a similarly aggressive schedule in South

7   Carolina.

8          These are not hard cases.  I think -- I think counsel

9   for East River and Basin have alluded to the fact that people

10  know what the relevant documents are.

11         **THE COURT:**  Well, I told you what I thought was the

12  hard part would be if we get to what is the appropriate

13  withdrawal.  Because then you're talking about the Court's

14  equity, and it seems to me that's the one that's the hard part.

15         **MR. HERZOG:**  Well, Your Honor --

16         **THE COURT:**  Are you there in either one of those

17  cases?

18         **MR. HERZOG:**  Well, we just tried that.  Yes.  It's an

19  expert -- we just tried that one through trial.  And the

20  experts gave the administrative law judge their opinions on

21  what would be a fair and equitable withdrawal fee.

22         **THE COURT:**  Do you have a result?

23         **MR. HERZOG:**  Yes.

24         **THE COURT:**  Okay.  What about South Carolina?

25         **MR. HERZOG:**  No.  It's on a similar path, Your Honor.

1   It's on a similar path to this one.  We just -- Judge Lydon

2   just issued the order denying the request to bifurcate

3   discovery that was made by the Generation and Transmission

4   Cooperative there.

5       **THE COURT:**  Okay.  That's in Federal District Court

6   in South Carolina?

7       **MR. HERZOG:**  Yes.  In the District of South Carolina.

8   Sherri Lydon, L-Y-D-O-N, is the judge that has that case,

9   Your Honor.

10      **THE COURT:**  Where is that in South Carolina?

11      **MR. HERZOG:**  That -- she sits in Florence, Your

12  Honor.

13      **THE COURT:**  Okay.

14      **MR. HERZOG:**  It was -- there was another judge that

15  had it for a cup of coffee, but then it -- then it got

16  transferred back to Judge Lydon.

17      **THE COURT:**  Okay.  All right.

18      **MR. HERZOG:**  Yeah, I do have a copy of the decision,

19  if you would like me to hand it up to you, Your Honor.

20      **THE COURT:**  I would be interested in it.

21      **MR. HERZOG:**  All right.  I can -- let me just say the

22  name of the case, and I'll hand it up.

23      **THE COURT:**  All right.

24      **MR. HERZOG:**  So the name of the case, Your Honor, is

25  *Marlboro Electric Cooperative, Inc., versus Central Electric*

1    *Power Cooperative.*  It's in the United States District Court

2    for the District of South Carolina, Florence Division, and the

3    case number is 4:20-cv-4386.  And if you're looking for it on

4    Pacer, it's entry number 55.  But I do have a copy if you would

5    like it, Your Honor.

6             **THE COURT:**  I do.  Let me see it, please.

7             **MR. HERZOG:**  All right.  May I approach, Your Honor?

8             **THE COURT:**  Sure.  Do you have the good parts marked?

9             **MR. HERZOG:**  No, but I can --

10            **THE COURT:**  I'm kidding.  Sometimes when counsel

11   hasn't necessarily planned to hand something to the Court,

12   they've got their marks on the good parts.  Everybody sit tight

13   for a minute.  I'm going to look at this.

14            **MR. HERZOG:**  And Mr. Schoenbeck just reminded me,

15   Your Honor, I think I mentioned it, but if I wasn't clear,

16   these contracts -- these bylaws they may very slightly in the

17   industry.  Not much.  And there have been interpretations in

18   other cases involving very, very similar provisions that --

19   that I -- that I think are important to part of the industry

20   custom and practice on whether or not this contract can be

21   construed as, you know, in its four corners as somehow

22   precluding or allowing withdrawal.

23            **THE COURT:**  I assumed that there would be ones that

24   were similar but not identical.

25            **MR. HERZOG:**  Very, very similar, Your Honor, yes.

1    **THE COURT:**  All right.  Everybody hold on for a

2  little bit.

3    (Pause.)

4    (Court reporter stepped out to talk to IT.)

5    (Counsel did not realize the court reporter had

6    stepped out.)

7    **THE COURT REPORTER:**  Okay.  The court reporter had to

8  step out.  I don't know if anybody noticed.  But I had to see

9  if IT was here.  So when the judge said, "Everybody hold on a

10  bit," I stepped out and now I'm back.

11    **MR. HERZOG:**  Okay.  This is Peter Herzog speaking on

12  behalf of Dakota Energy.  I was just directing the Court to

13  page 3 of Judge Lydon's decision where she goes through some of

14  the legal principles, which include the Court's own --

15    **THE COURT:**  I read pretty fast.  I'm just going to

16  read it.

17    **MR. HERZOG:**  Okay.  The second part of the opinion

18  doesn't address this issue.

19    **THE COURT REPORTER:**  I can't hear you.

20    **MR. HERZOG:**  The second part of the opinion does not

21  address this issue.  So you have even less to read, Your Honor.

22    **THE COURT:**  We'll see.

23    (Pause.)

24    **THE COURT:**  I agree that page 4 on doesn't have

25  anything to do with it.  It's a confidentiality question.

1          All right.  I've heard back from the plaintiff.

2          Anything from either the defendant or the intervenor,

3    or anything further on this?

4          **MR. LUCE:**  Mike Luce on behalf of East River.  I'll

5    let Mr. Orr respond to anything on that *Marlboro* decision

6    because I'm one of the few in here that had --

7          **THE COURT REPORTER:**  Okay.

8          **THE COURT:**  She can't hear you.

9          **MR. LUCE:**  Excuse me.  I'm sorry.  Mike Luce on

10   behalf of East River.  I'll defer to James Orr on any comment

11   he wants to make on the *Marlboro Electric* case, since that is

12   not something I'm familiar with.

13         I will -- I am familiar with Rule 12, and I do not

14   agree with counsel's suggestion that a motion for judgment on

15   the pleadings in this case would be untimely.  Rule --

16   subsection (c) says after the pleadings are closed but early

17   enough to delay -- to not delay trial, a party may move for

18   judgment on the pleadings.  I don't believe any such motion at

19   this time would be untimely.

20         **THE COURT:**  All right.

21         **MR. ORR:**  This is James Orr.  Just a couple of

22   comments.  I agree with Mr. Luce on that, obviously.

23         The Colorado case that Mr. Herzog mentioned was

24   decided under -- it was a rate-making case, as I understand it,

25   decided under a different standard than would be -- than apply

1    here.

2           As to his contention that it would be unusual not to

3    permit Dakota to defend itself against the counterclaim and the

4    complaint in intervention and Dakota's on opposition to Basin's

5    motion to intervene, Dakota stated that East River's request

6    was a mirror image declaration of what Dakota seeks and that

7    Basin's request was redundant of the declaration requested by

8    East River.

9           So, again, all three parties agree that a threshold

10   issue before the Court is the construction of these governing

11   documents, which is a matter for -- based on the language of

12   those contracts before the Court.

13          As to the South Carolina case, as I'm sure that the

14   Court read, the judge there said that a dispositive motion was

15   not pending before the Court and so denied the motion based on

16   the posture of the case.

17          But as both Basin and East River have indicated

18   today, you know, we are prepared to file that dispositive

19   motion.  And, again, we'll stick with the date we put in our

20   papers.  June 30th.  So that the posture of the case obviously

21   will be different from that in South Carolina.

22          Thank you, Your Honor.

23          **THE COURT:**  Well, it isn't right now and you've had

24   plenty of time to file a motion to dismiss, you know.  What's

25   your response to that?

1          **MR. ORR:**  Well, you know, Basin moved to intervene,

2     and that was pending before the Court that -- the Court has

3     ruled on that.  We've had the scheduling order papers out

4     there.  So, you know, the case has shaped up now, and we'll --

5     you know, we'll be prepared.  But, again, we don't think it's

6     untimely because under -- as Mr. Luce indicated, under the rule

7     on motion for judgment on the pleadings, it's certainly timely.

8     So we're -- we're prepared to move forward with that.

9          **THE COURT:**  Well, you know, exploring all of this, I

10    can just hear the plaintiffs, you know, once a motion for

11    judgment on the pleadings comes in, given their theory of the

12    case saying "Oh, we have to get into all of this other matter

13    with regard to industry practices and so on.  And so, Judge,

14    don't -- don't pull the trigger one way or the other on the

15    basis of the motion for judgment on the pleadings."

16         Hmm.  I'm not saying that the motion for judgment on

17    the pleadings would be untimely.  I'm just -- I'm thinking out

18    loud since I've got everybody here, you know.  Hmm.  I really

19    have a motion for summary judgment.  Then whatever the

20    plaintiff's theories are, they can be full-blown.  If I say

21    whatever they think should be considered, I don't think should

22    be considered.  At least everybody gets their theories before

23    the Court.  And I'm not saying you couldn't make the motion for

24    judgment on the pleadings, but that doesn't -- doesn't allow

25    the plaintiff's theory really to get presented to the Court,

1    which I might not agree with; but, nonetheless -- Let's just

2    explore a little bit while we're all here.

3            Let's say that -- that I bifurcated and that -- with

4    regard to the -- what I call the contract issue, "Can you

5    withdraw or terminate?"  Now with regard to, if you can, what

6    the equitable remedy is.  Okay.  Let's just say it was limited

7    to "Can you withdraw or terminate?"  Then what I'm hearing from

8    the defense and the intervenor side, you really don't have any

9    discovery that you need, basically.  And on the other hand from

10   the plaintiff, it would be less than the wish list that was in

11   the 26(b), but it would be something more than nothing, right?

12           **MR. HERZOG:**  Yes.  Yes, sir.

13           **THE COURT:**  So it seems to me that -- well, first of

14   all, let me go back to the defendant and the intervenor.  Would

15   you want any discovery?  Let me ask East River.

16           **MS. MOORE:**  Your Honor, this is Meredith Moore, and

17   I'll defer to Peter Coll for comment.

18           **MR. COLL:**  Oh.  I thought he was -- the judge was

19   asking East River's position on that.  But this is Basin's

20   position.  No, we don't need discovery on these interpretations

21   of the governing documents.  We're prepared to make a motion --

22   12(c) motion because the issue has been joined and the four

23   governing documents -- or whatever number of governing

24   documents there are -- have all been acknowledged by the

25   parties to be just that, governing documents and they are

1   unambiguous.

2          **THE COURT:**  You're right, Mr. Coll.  I was -- East

3   River I was calling for, but that's the response from you and

4   Ms. Moore for Basin Electric.

5          What about East River?  What does it say?

6          **MR. LUCE:**  As we previously indicated in our response

7   to the scheduling request, we don't believe there is any

8   discovery beyond the issue of the contract.  And now that the

9   contract is before the Court, the Court can interpret that, we

10  don't anticipate the need for any additional discovery.  And

11  our concern that we expressed initially was that, as the Court

12  has noted and we have discussed, that they had an extensive

13  wish list, and we were concerned that it was either none or

14  this extensive wish list, which is the same thing that the

15  Court is postulating about, and how do we draw lines where

16  we're not fighting about, well, this has some potential

17  relevance to this or that.  And I guess that summarizes our

18  concern.

19         And, James, you can again, let the Court know if I

20  have not accurately summarized that.

21         **MR. ORR:**  No, I concur.  We don't believe that

22  these -- that there will be any parol evidence needed to

23  interpret these contracts.

24         **THE COURT:**  All right.  Then assuming that we're

25  talking about a summary judgment, rather than a motion on the

1    pleadings, although I'm not precluding anybody from filing a

2    motion on the pleadings, but it might be better after some

3    discovery to have a motion for summary judgment.

4            So let me ask the plaintiff, because you are the one

5    that wants discovery on this -- what I call the "Can you

6    withdraw or terminate issue."  So if I bifurcated it and

7    limited to that, then would you have any expert testimony on

8    that point?

9            **MR. HERZOG:**  Yes, Your Honor.

10           **THE COURT:**  What would it be?

11           **MR. HERZOG:**  There would be expert testimony on

12   the -- on the custom and practice in the industry, and there

13   would be expert testimony regarding the seven cooperative

14   principles, Your Honor.  One of the corporative principles, as

15   I think you know, is voluntary and open membership and how that

16   has been interpreted.

17           We would have expert discovery -- we would have

18   experts prepared to address similar instances in which bylaws

19   and wholesale power contracts containing very similar

20   provisions had not been interpreted to preclude a withdrawal,

21   provided that the withdrawing entity satisfies its contractual

22   obligations through a buyout.

23           We would also want to conduct discovery into the

24   lending arrangements of East River and Basin to determine

25   whether those lending agreements -- and that's my experience,

1    Your Honor -- that those lending agreements specifically

2    contemplate the departure and withdrawal of members, and that

3    they provide a mechanism for the calculation of the amount

4    that's required to be paid by the member in order to preclude a

5    prepayment from being required under the lending arrangement.

6            So we would -- we could certainly pare down the list

7    because I understand what the Court is saying, but, Your Honor,

8    we will need discovery in order to --

9            **THE COURT:**  I'm not suggesting -- I'm not suggesting

10   you don't need discovery, given now what I see is the theory of

11   your case.

12           **MR. HERZOG:**  Yes, sir.

13           **THE COURT:**  What I'm saying is, okay, that discovery

14   is going to be more limited than if we were talking about

15   remedy.  And so I want to know, you know, number one, you've

16   told me you're going to have experts.  And number two, then,

17   how long would you -- you know, this is self-generated.

18   Probably the other side might want to take the experts'

19   testimony.  I don't know.  Let me find out about that.

20           What about -- what about that?  Are you going to want

21   to take their testimony or just get their reports or what?

22           **MR. LUCE:**  My guess is deposition testimony, but I

23   would defer to Mr. Orr.

24           **THE COURT:**  All right.  Mr. Orr.

25           **MR. ORR:**  Yes.  I mean, if they're going to proffer

1    experts on these topics that somehow go to the threshold issue

2    of how to interpret the contract then, yes, we would want -- I

3    expect we would want their reports and probably their

4    depositions and -- but this is getting pretty far afield of the

5    plain language of the contract.

6            **THE COURT:**  Well, I didn't say that it was going to

7    be admissible.  I'm just finding out about discovery.

8            **MR. ORR:**  Right, right.

9            **THE COURT:**  So don't anybody misunderstand that, you

10   know.  I haven't -- I'm not ruling on that.  I don't have this

11   before me at that point.  So it's a question of what people get

12   to do for discovery.

13           So, okay, you're going to have experts.  And then the

14   other side is going to want to do discovery of the experts,

15   naturally enough.  And the experts have to have reports.

16           And so I think we've identified now the shape of

17   this.  I'm going to bifurcate it.  And then I want the

18   parties -- now that you understand I'm going to bifurcate it,

19   and it's going to be with regard with the issue of termination

20   or withdrawal to get presented to the Court on a summary

21   judgment motion.  I'm not precluding anybody from making any

22   motion for a directed -- for judgment on the pleadings.  But I

23   think everybody can see now, it can kind of be a lot smarter,

24   maybe, to wait and make a motion for summary judgment and

25   present it to the Court.

1           Any questions?

2           **MR. HERZOG:**  No, sir.

3           **MR. LUCE:**  No, Your Honor.

4           **MR. ORR:**  No, Your Honor.

5           **MR. COLL:**  No, Your Honor.

6           **THE COURT:**  All right.  So what I want the parties to

7    do -- now that we understand the shape of things -- then get

8    together with me -- and you will get an order back quickly this

9    time with regard to what you agree to, not with regard to the

10   scope, because you're probably -- we're probably going to have

11   some issues that will come back to either me or my magistrate,

12   where one side is saying "We want this," and the other side is

13   saying "That doesn't have anything to do with anything."

14   You'll get rulings on that too, but I hope you can work them

15   out so you don't need rulings on that.

16           And so anyway, get back to me with your expert and

17   your nonexpert discovery, document-wise, as well as any

18   admissions and so on, and I'll enter an order.  And then we'll

19   also then have a schedule.  The parties always have a schedule

20   that's long for them with regard to their briefing and short

21   for the Court to decide it.  I'll take care of that when you

22   give me your schedule, and so that I've got enough time to

23   decide it.  But anyway, so let's do that.

24           And I gather, by the way, that nobody thinks that we

25   need a trial, that this is -- with regard to this issue, that

1 we can submit it on summary judgment.

2        Now, it could be, maybe once I get the summary

3 judgment that I think, you know, for whatever reason, I can't

4 rule as a matter of summary judgment, then I'll decide if we

5 need a trial.

6        **MR. HERZOG:**  Your Honor, this is Peter Herzog.  So

7 the record is clear, I am not agreeing on behalf of Dakota

8 Energy that this is properly resolved on cross motions for

9 summary judgment.  I believe -- just so the record is clear and

10 not to belabor the point -- I believe that we ought -- we

11 should be entitled to full discovery so that we can present our

12 case and the defendants can move for summary judgment at any

13 point that they desire.

14        Our position is, Your Honor, that if the contract is

15 ambiguous -- and we believe there will be sufficient evidence

16 of ambiguity -- that that is a question for the jury, not for

17 the Court.  The meaning of the contract is a fact question for

18 the jury, and we have demanded a jury trial on this.

19        **THE COURT:**  Yes, I understand that.  And we'll see.

20        **MR. LUCE:**  Your Honor, procedurally, so I know what

21 you are asking --

22        **THE COURT:**  Get to your microphone.

23        **MR. LUCE:**  Okay.  You are asking --

24        **THE COURT:**  No.  Get to the microphone.

25        **MR. LUCE:**  The problem is I can't see you.  I'm

1    sorry.  Procedurally, you would like basically the attorneys to

2    get together, sort of like an initial planning meeting, come --

3    to address discovery, including any discussion of experts and

4    address the timing of that discovery and submit something

5    either jointly if we agree or separately if we disagree.  Am I

6    understanding that?

7              **THE COURT:**  That's correct.  I want -- the parties

8    have until such time to be -- you know, with regard to

9    disclosing experts and the normal business with regard to how

10   many interrogatories, how many requests for admissions.  And,

11   you know, your timing for getting depositions done, the length

12   of time for each deposition, so if there is a time limit on the

13   deposition, the number of depositions, both of experts as well

14   as otherwise.  And then if there is going to be a motion for

15   summary judgment, which I -- it sounds like is going to be,

16   then when it has to be filed and your suggestion as to the

17   briefing schedule.  I usually go 20, 20, and 10.

18              And then at that point when I get that, I'm also --

19   I'll also set a trial date, because I like to have the parties

20   know, that in the event that I find that I can't rule on this

21   in summary judgment that you know when you're looking at a

22   trial.  And at that point, if we do have a trial, then we'll

23   have to consider whether we have -- whether we allow additional

24   discovery at that point, so that, if we have a trial, we have a

25   trial for everything.  That's something I'll have to think

1    about a little bit more, but it seems to me -- I'll have to

2    think about that.

3         **MR. LUCE:**  When would you like that supplemental

4    report of the parties?

5         **THE COURT:**  Well, as soon as you can reasonably get

6    it.

7         **MR. LUCE:**  Okay.

8         **THE COURT:**  Then I'll get one -- and I'll get an

9    order out as soon as I can reasonably do it too, which will be

10   a lot quicker than before.  But I'm not setting any deadline.

11        **MR. COLL:**  Excuse me, Your Honor.  This is Peter

12   Coll.  You may lose me in a minute.  I'm on a cordless phone,

13   and I think my battery has just went out.  So Mr. Direnfeld

14   will be there in my place.

15        **THE COURT REPORTER:**  Okay.  You cut out.  Mr. who

16   will be in your place?

17        **MR. COLL:**  Mr. Direnfeld.  I'm sorry.

18        (Mr. Coll's phone connection was breaking up.)

19        **THE COURT REPORTER:**  I can't understand.

20        **MR. COLL:**  Maybe my phone is going out already.  I

21   said I would hang on until my charge disappears entirely.

22        **THE COURT:**  Let the record reflect that Mr. Orr's

23   battery ran out, I think.  Wasn't it Mr. Orr?

24        **MR. HERZOG:**  No, I don't think so.

25        **MR. ORR:**  No.  Mr. Coll.

1          **THE COURT:**  All right.  Anything further from the

2   plaintiff Dakota Energy?

3          **MR. HERZOG:**  No, Your Honor.

4          **THE COURT:**  Anything further from the defendant East

5   River?

6          **MR. LUCE:**  No, Your Honor.

7          **THE COURT:**  Anything further from Basin Electric?

8          **MR. ORR:**  No, Your Honor.

9          **THE COURT:**  All right.  Well, this is an interesting

10  case.  Thank you.  We're in recess.

11       (End of proceedings at 3:08 p.m.)

12                          # # # #

```
1   UNITED STATES DISTRICT COURT
    DISTRICT OF SOUTH DAKOTA        SS      CERTIFICATE OF REPORTER
2   CENTRAL DIVISION
    * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
3            I, Cheryl A. Hook, Official United States District
    Court Reporter, Registered Merit Reporter, Certified Realtime
4   Reporter and Notary Public, hereby certify that the above and
    foregoing is the true, full, and complete transcript as
5   reported telephonically/video conference, consisting of pages 1
    through 39.
6            I further certify that I am not a relative or
    employee or attorney or counsel of any of the parties hereto,
7   nor a relative or employee of such attorney or counsel; nor do
    I have any interest in the outcome or events of the action.
8            Dated this 27th day of May, 2021, at Pierre,
    South Dakota.
9                              /s/ Cheryl A. Hook
                       _____
10                             CHERYL A. HOOK, RMR, CRR
                               Court Reporter and Notary Public
11                             225 S. Pierre St. #420
                               Pierre, SD  57501
12                             Phone: (605) 945-4626
                               Email: cheryl_hook@sdd.uscourts.gov
13                             My Commission Expires: 04-01-2026

14

15

16

17

18

19

20

21

22

23

24

25
```

MR. COLL: [9] 4/16 4/20
4/23 19/8 30/18 35/5 38/11
38/17 38/20
MR. DIRENFELD: [5] 4/24
5/3 5/7 5/10 19/6
MR. HERZOG: [46]
MR. LUCE: [16] 3/8 3/10
3/20 4/1 15/5 27/4 27/9 31/6
33/22 35/3 36/20 36/23
36/25 38/3 38/7 39/6
MR. ORR: [15] 4/3 4/8 17/2
17/9 17/12 18/8 18/11 27/21
29/1 31/21 33/25 34/8 35/4
38/25 39/8
MR. SCHOENBECK: [1]
3/6
MS. MOORE: [4] 4/13 18/7
18/13 30/16
THE COURT REPORTER:
[12] 7/12 17/20 10/14
10/20 17/7 17/10 26/7 26/19
27/7 38/15 38/19
THE COURT: [85]
UNIDENTIFIED SPEAKER:
[1] 15/1

0
0010 [1] 1/20
04-01-2026 [1] 40/13

1
10 [3] 15/24 15/24 37/17
10019 [1] 2/15
110 [1] 2/2
1152 [1] 2/18
12 [9] 16/9 18/2 19/7 21/5
21/8 21/11 21/16 27/13
30/22
1325 [1] 1/19
14 [8] 9/11 9/14 9/17 10/19
11/1 13/6 17/17 20/2
140 [1] 2/10
1400 [1] 2/2
15th [1] 2/18
16 [1] 5/16

2
20 [2] 37/17 37/17
20005 [1] 2/19
2019 [1] 23/4
202 [2] 1/17 2/19
2020 [1] 23/5
2021 [2] 1/13 40/8
2026 [1] 40/13
211 [1] 1/23
212 [1] 2/15
225 [2] 2/23 40/11
2300 [1] 2/6
24 [1] 1/13
26 [2] 13/18 30/11
27th [1] 40/8
2825 [1] 1/23
2:06 [1] 3/1

3
30309-3996 [1] 2/6
30th [2] 18/3 28/20
314 [1] 1/24
326-4129 [1] 1/24
332-5999 [1] 2/3
335-4950 [1] 2/11
339-8614 [1] 2/19
3790 [1] 2/15
39 [1] 40/5
3996 [1] 2/6
3:08 [1] 39/11

4
400 [3] 1/14 1/17 2/2
404 [1] 2/7
4129 [1] 1/24
420 [2] 2/23 40/11
4386 [1] 25/3
4626 [1] 40/12
4950 [1] 2/11
4:20-cv-4192-LLP [1] 1/5
4:20-cv-4386 [1] 25/3

5
506-3790 [1] 2/15
51 [1] 2/14
52nd [1] 2/14
55 [1] 25/4
57101 [1] 2/11
57104 [3] 1/15 1/17 2/2
57201 [1] 1/20
57501 [2] 2/24 40/11
5999 [1] 2/3

6
605 [4] 1/20 2/3 2/11 40/12
63102 [1] 1/24

8
853-8578 [1] 2/7
8578 [1] 2/7
8614 [1] 2/19
886-0010 [1] 1/20

9
999 [1] 2/6

A
abstract [7] 8/19 8/20 9/6
12/15 15/10 16/12 16/17
acceptable [1] 8/10
according [2] 10/2 12/11
accurately [1] 31/20
accustomed [1] 8/6
acknowledged [1] 30/24
acquired [1] 20/8
action [3] 16/11 19/11 40/7
add [3] 15/7 17/1 19/9
addition [1] 22/2
additional [6] 4/14 15/8
16/10 20/12 31/10 37/23
address [6] 17/24 26/18
26/21 32/18 37/3 37/4
addressed [1] 16/8
addressing [1] 8/7
administrative [1] 23/5
23/20
administrator [1] 20/11
admissible [3] 14/21 14/22
34/7
admission [1] 14/22
admissions [2] 35/18 37/10
admit [1] 14/14
advantages [1] 8/24
afield [2] 16/3 34/4
after [3] 13/16 27/16 32/2
again [4] 28/9 28/19 29/5
31/19
against [4] 14/22 21/1 21/2
28/3
agency [3] 9/21 11/11
11/12
aggressive [1] 23/6
ago [2] 7/9 21/15
agree [10] 17/14 18/22
19/11 26/24 27/14 27/22
28/9 30/1 35/9 37/5
agreed [1] 15/11
agreeing [1] 36/7
agreement [1] 20/7

agreements [3] 20/12
32/25 33/1
Ah [1] 18/8
ahead [1] 18/12
allegation [1] 14/5
alleged [2] 14/6 20/14
allow [2] 39/24 37/23
allowing [1] 25/22
alluded [1] 23/9
along [1] 6/9
already [3] 19/9 19/20
38/20
although [1] 32/1
always [3] 6/20 15/3 35/19
ambiguity [1] 36/16
ambiguous [3] 14/13 21/12
36/15
amount [2] 7/7 33/3
analysis [3] 11/5 11/8
11/19
analyzed [2] 9/6 12/14
another [3] 17/18 21/21
24/14
answer [2] 13/16 13/17
answered [1] 21/6
anticipate [1] 31/10
anyway [3] 6/2 35/16 35/23
apart [1] 6/7
apologize [1] 5/14
APPEARANCES [2] 1/18
2/1
appearing [6] 3/3 3/20 4/1
4/13 5/1 18/14
apply [1] 27/25
approach [1] 25/7
appropriate [2] 14/2 23/12
approval [1] 5/17
areas [1] 7/9
arguing [1] 12/5
argument [1] 17/16
around [1] 6/4
arrangement [1] 33/5
arrangements [1] 32/2
asking [8] 8/18 9/6 11/22
15/24 21/11 30/19 36/21
36/23
assets [2] 9/16 20/8
assume [1] 11/8
assumed [1] 25/23
assuming [1] 31/24
Atlanta [2] 2/6 4/6
attention [1] 5/22
Ave [2] 1/17 2/2
Avenue [1] 2/10
aware [1] 21/18
away [1] 6/3

B
babe [1] 7/8
back [11] 7/9 8/23 19/22
19/23 24/16 26/10 27/1
30/14 35/8 35/11 35/16
ball [1] 6/25
based [2] 28/11 28/15
basically [2] 30/9 37/1
BASIN [2] 1/10 4/12 4/14
4/25 5/2 5/3 11/10 11/13
16/8 18/5 18/14 18/16 18/19
20/23 22/16 23/9 28/17 29/1
31/4 32/24 39/7
Basin's [3] 28/4 28/7 30/19
basis [4] 20/15 21/13 22/2
29/15
battery [2] 38/13 38/23
becomes [1] 7/3
before [14] 1/16 15/5
15/24 16/6 16/7 21/14 28/10
28/12 28/15 29/2 29/22 31/9

30/1 36/10
begin [1] 6/8
behalf [4] 26/12 27/4 27/10
36/7
behind [1] 9/7
belabor [1] 36/10
believe [15] 14/1 14/2
14/13 14/15 17/22 17/25
19/6 19/25 20/14 27/18 31/7
31/21 36/9 36/10 36/15
better [1] 32/2
between [3] 3/22 15/13
15/25
beyond [1] 31/8
bifurcate [4] 21/25 24/2
34/17 34/18
bifurcated [2] 30/3 32/6
bifurcating [1] 8/4
bifurcation [6] 6/8 6/12 8/5
8/13 9/2 20/21
binding [1] 21/17
bit [8] 5/12 5/19 6/13 22/9
26/2 26/10 30/2 38/1
blown [1] 29/20
board [5] 13/4 14/3 14/7
14/16 22/25
both [5] 6/18 11/4 12/11
28/17 37/13
Box [2] 1/19 2/10
breadth [2] 15/23 16/2
breaking [2] 15/8 38/18
brief [1] 18/19
briefing [2] 35/20 37/17
briefly [2] 15/6 17/2
Broadway [1] 1/23
bunch [1] 14/8
business [2] 7/10 37/9
business-oriented [1] 7/10
buy [1] 11/6
buyout [1] 32/22
bylaw [10] 11/7 12/10 13/5
13/21 14/1 14/4 14/9 14/12
14/19 20/17
bylaws [10] 9/9 11/4 12/1
15/17 17/6 17/12 17/23
22/24 25/16 32/18

C
C-O-L-L [1] 4/19
calculation [1] 33/3
call [2] 30/4 32/5
called [1] 5/23
calling [1] 31/3
capable [1] 7/18
care [2] 6/4 35/21
Carolina [5] 21/23 23/7
23/24 24/6 24/7 24/10 25/2
28/13 28/21
cases [7] 7/23 7/24 7/24
21/19 23/8 23/17 25/18
Central [2] 24/25 40/2
certainly [3] 14/11 29/7
33/6
CERTIFICATE [1] 40/1
Certified [1] 40/3
certify [2] 40/4 40/6
change [1] 9/17
charge [1] 38/21
cheryl [5] 2/22 40/3 40/9
40/10 40/12
circumstance [1] 14/20
circumstances [4] 9/18
11/9 11/20 21/23
City [1] 4/22
claim [1] 21/8
clear [5] 13/13 13/14 16/1
17/22 25/15 36/7 36/9
closed [1] 27/16

counsel [1] 13/16
co-counsel [1] 15/7
coffee [1] 24/15
Coll [9] 2/13 4/16 4/19 19/6
19/8 30/17 31/2 38/12 38/25
Coll's [1] 38/18
Colorado [3] 22/13 22/18
27/23
comes [2] 6/23 29/11
comment [4] 18/16 19/7
27/10 30/17
commenting [1] 18/20
comments [4] 18/17 18/22
19/4 27/22
Commission [2] 22/17
40/13
Company [3] 7/12 7/21
7/23
compensation [1] 7/6
complaint [5] 14/6 20/23
21/1 21/6 28/4
complete [3] 7/8 16/18 40/4
complicated [1] 7/4
compromised [1] 14/8
concern [2] 31/11 31/18
concerned [3] 6/1 15/23
31/13
conclude [1] 13/11
concur [2] 18/17 31/21
concurrent [1] 11/6
conditions [1] 12/9
conduct [3] 14/3 20/15
32/23
conference [3] 1/6 13/19
40/5
confidentiality [1] 26/25
connection [1] 38/18
consent [1] 20/11
consider [3] 14/9 14/11
37/23
considered [2] 29/21 29/22
consistent [2] 12/10 14/5
consisting [1] 40/5
consists [1] 9/21
consolidate [1] 20/5
consolidation [1] 17/18
construction [1] 28/10
construe [1] 21/13
construed [3] 10/2 14/19
25/21
contacts [1] 15/25
contain [1] 17/21
containing [1] 32/19
contains [1] 9/11
contemplate [1] 33/2
contemplated [1] 11/3
contemplates [1] 10/9
contention [1] 28/2
context [1] 8/15
continued [2] 2/1
contract [48]
contracts [9] 9/23 9/24
9/25 10/1 12/11 25/16 28/12
31/23 32/19
contractual [1] 11/24 12/3
15/18 16/18 32/21
contribute [1] 14/18
cooperative [1] 1/5 1/8
1/11 3/3 3/19 6/17 8/3 24/4
24/25 25/1 32/13
copy [2] 24/18 25/4
cordless [1] 38/12
corners [1] 16/16 25/21
corporate [2] 9/15 9/17
corporation [2] 12/3 20/6
corporative [1] 32/14
correspondence [1] 15/25
counsel [15] 3/7 3/21 4/2

**C**

counsel... [12] 4/13 4/14 8/23 13/19 15/7 18/15 20/1 23/8 25/10 26/5 40/6 40/7
counsel's [1] 27/14
counterclaim [3] 13/17 20/22 20/22 21/2 28/3
couple [2] 22/11 27/21
course [7] 7/19 12/4 14/17 14/18 14/21 14/23 21/18
Court's [4] 8/16 18/23 23/13 26/14
create [1] 22/10
critical [1] 18/24 19/2
cross [1] 36/8
cup [1] 24/15
custom [4] 10/2 12/12 25/20 32/12
cut [5] 10/15 10/20 17/7 17/8 38/15
Cutler [1] 2/9
cutlerlawfirm.com [1] 2/12
cv [1] 1/5 25/3

**D**

D-I-R-E-N-F-E-L-D [1] 5/9
DAKOTA [20] 1/2 1/5 3/3 6/17 8/2 8/19 9/15 15/14 17/18 19/23 20/4 20/25 26/12 28/3 28/5 28/6 36/7 39/2 40/1 40/8
Dakota's [4] 9/21 17/5 17/10 28/4
date [2] 28/19 37/19
dated [2] 8/1 40/8
day [1] 40/8
DC [1] 2/19
deadline [1] 38/10
deal [1] 5/25
dealing [3] 14/7 14/18 14/21
deals [1] 17/17
dealt [1] 16/1
DEANNA [2] 2/21 3/22
debt [2] 9/21 12/8
decide [5] 13/24 22/25 35/21 35/23 36/4
decided [5] 15/10 17/14 27/24 27/25
decision [4] 18/24 24/18 26/13 27/5
declaration [2] 28/6 28/7
declaratory [2] 15/12 17/4
defend [3] 21/1 21/1 28/3
defendant [1] 1/9 2/4 2/8 3/8 3/18 27/2 30/14 39/4
defendants [6] 6/11 20/16 36/12
defense [1] 30/8
defer [4] 18/14 27/10 30/17 33/23
delay [2] 27/17 27/17
delineates [1] 19/13
demanded [1] 36/13
denied [4] 21/24 22/4 22/6 28/15
deny [1] 22/1
denying [1] 24/2
departure [1] 33/2
deposition [4] 13/4 33/22 37/12 37/13
depositions [4] 16/14 34/4 37/11 37/13
described [1] 20/1
desire [1] 36/13
determine [3] 12/18 14/9 32/24
determined [1] 20/10

**D** (continued)

determining [1] 14/12
difference [2] 6/18 13/8
different [5] 5/21 9/5 22/5 27/25 28/21
directed [1] 34/22
directing [1] 26/12
directors [1] 14/16
DIRENFELD [8] 2/17 4/25 5/5 18/15 19/3 19/5 38/13 38/17
disagree [1] 37/5
disappears [1] 38/21
disclosing [1] 37/9
discover [1] 13/1
discovered [1] 22/12
discovery [52]
discussed [1] 31/12
discussing [1] 8/14
discussion [4] 16/19 19/2 20/21 37/3
disfavor [1] 6/8
dismiss [5] 12/5 13/15 16/9 21/4 28/24
dispositive [3] 12/5 28/14 28/18
DISTRICT [12] 1/1 1/2 1/14 1/16 2/23 24/5 24/7 25/1 25/2 40/1 40/1 40/3
DIVISION [3] 1/3 25/2 40/2
document [2] 14/15 35/17
document-wise [1] 35/17
documents [11] 19/11 19/12 19/21 20/13 20/16 23/10 28/11 30/21 30/23 30/24 30/25
down [1] 33/6
dragging [1] 6/9
draw [1] 31/15
drove [1] 12/21

**E**

each [2] 16/1 37/12
early [7] 9/13 9/20 10/9 10/22 20/14 22/19 27/16
easier [1] 8/8
EAST [31] 1/7 3/18 5/1 11/10 11/12 12/9 13/2 13/3 13/4 13/14 14/3 15/2 15/13 16/25 20/1 20/10 20/21 21/2 21/10 23/9 27/4 27/10 28/5 28/8 28/17 30/15 30/19 31/2 31/5 32/24 39/4
echo [1] 17/2
educated [1] 6/21
either [6] 16/23 23/16 27/2 31/13 35/11 37/5
ELECTRIC [16] 1/7 1/10 3/19 4/12 4/14 5/2 5/2 5/3 15/2 18/6 18/14 24/25 24/25 27/11 31/4 39/7
electrical [1] 7/25
Email [8] 1/21 1/25 2/3 2/7 2/12 2/16 2/20 40/12
employee [2] 40/6 40/7
end [2] 6/24 39/11
ENERGY [10] 1/5 3/3 6/17 8/3 19/23 20/4 20/25 36/8 39/2
enforce [1] 15/13
engage [1] 9/15
enhance [1] 16/25
enough [3] 27/17 34/15 35/22
enter [1] 35/18
entirely [1] 38/21
entitled [3] 7/2 14/2 36/11
entity [2] 17/18 32/21
entry [1] 25/4

**E** (continued)

envision [1] 20/13
envisions [1] 13/20
equitable [13] 9/10 11/7 11/19 12/11 12/2 12/7 12/8 12/17 12/17 12/19 13/21 23/21 30/6
equity [1] 23/14
even [6] 5/24 8/5 9/1 13/18 17/23 26/21
event [1] 37/20
events [1] 40/7
eversheds [2] 2/5 2/7
eversheds-sutherland.com [1] 2/7
everybody [7] 8/22 25/12 26/1 26/9 29/18 29/22 34/23
evidence [9] 9/23 12/6 13/12 14/19 19/14 31/22 36/15
example [2] 9/15 11/12
Excuse [4] 5/2 18/13 27/9 38/11
exercise [1] 11/21
expect [2] 5/24 34/3
experience [2] 20/13 32/25
expert [7] 23/2 23/19 32/7 32/11 32/13 32/17 35/16
experts [10] 23/20 32/18 33/16 34/1 34/13 34/14 34/15 37/3 37/9 37/13
experts' [1] 33/18
Expires [1] 40/13
explain [2] 6/18 22/9
explore [1] 30/2
exploring [1] 29/9
express [2] 19/12 19/15
expressed [1] 31/11
expressly [1] 9/19
extensive [2] 31/12 31/14

**F**

face [1] 17/23
fact [11] 6/21 8/23 10/3 12/18 14/15 19/10 21/10 21/19 23/2 23/9 36/17
failure [1] 21/8
fair [1] 23/21
fairly [2] 6/25 14/13
Falls [4] 1/15 1/17 2/2 2/11
familiar [2] 27/12 27/13
far [3] 9/1 16/2 34/4
fast [1] 26/15
favor [1] 8/5
Federal [1] 24/5
fee [1] 23/21
few [1] 27/6
fighting [1] 31/16
figure [2] 7/4 7/7
filed [11] 13/15 13/16 13/17 20/22 20/23 21/6 21/15 21/16 22/18 23/4 37/16
filing [1] 32/1
financing [4] 9/24 10/3 10/6 10/8
find [2] 33/19 37/20
finder [1] 12/18
finding [1] 34/7
firm [3] 2/9 21/22 22/14
first [5] 5/14 8/2 8/13 13/1 19/7 20/21 30/13
Floor [1] 2/10
Florence [2] 24/11 25/2
foregoing [2] 20/3 40/4
form [1] 9/2
forth [1] 8/24
forward [1] 29/8
four [3] 16/16 25/21 30/22
Fourth [1] 2/10

**F** (continued)

frankly [3] 9/21 13/10 37
front [2] 19/21 22/17
full [4] 16/17 29/20 36/11 40/4
full-blown [1] 29/20
fully [1] 7/18
further [11] 16/24 18/16 18/23 19/1 19/3 19/23 27/3 39/1 39/4 39/7 40/6
future [1] 15/24

**G**

GA [1] 2/6
game [1] 6/25
gather [1] 35/24
gave [1] 23/20
generally [1] 6/8
generated [1] 33/17
generation [4] 10/4 22/15 22/22 24/3
gets [2] 22/25 29/22
getting [3] 34/4 37/11
give [2] 21/7 35/22
given [2] 29/11 33/10
goes [2] 5/16 26/13
good [2] 25/8 25/12
governing [8] 19/11 19/12 19/21 28/10 30/21 30/23 30/23 30/25
grant [1] 21/11
grounds [2] 21/9 21/12
guess [2] 31/17 33/22

**H**

H-E-R-Z-O-G [3] 3/13 3/16
hand [5] 7/24 24/19 24/22 25/11 30/9
handle [1] 5/25
hang [1] 38/21
hard [4] 20/24 23/8 23/12 23/14
having [5] 6/12 8/24 13/17 21/6 21/6
hear [6] 10/12 14/25 18/5 26/19 27/8 29/10
heard [1] 27/1
hearing [3] 5/21 8/24 30/7
hearings [1] 5/12
Hello [1] 15/1
help [1] 5/13
here's [1] 11/13
hereafter [1] 20/8
hereby [1] 40/4
hereto [1] 40/6
Herrington [2] 2/14 2/18
Herz [1] 3/16
HERZOG [10] 1/22 3/4 3/12 4/9 10/25 15/9 15/16 26/11 27/23 36/6
Herzog's [1] 17/16
highly [2] 20/20 20/24
himself [1] 4/2
hmm [4] 6/10 12/22 29/16 29/18
hold [2] 26/1 26/9
HON [1] 1/16
honored [1] 16/22
hook [5] 2/22 40/3 40/9 40/10 40/12
hope [2] 5/13 35/14

**I**

idea [2] 6/22 15/16
identical [2] 21/23 25/24
identified [1] 34/16
identify [1] 15/3
illustrate [1] 11/18
image [1] 28/6

**I** (continued)

imagine [1] 12/22
important [2] 7/24 25/19
impose [1] 12/9
INC [3] 1/5 1/8 24/25
include [2] 11/23 26/14
includes [2] 10/3 11/8
including [1] 37/3
indebtedness [1] 20/9
indicated [12] 4/17 5/20 6/5 15/22 16/4 18/21 18/24 19/17 19/19 28/17 29/6 31/6
individual [1] 14/14
industry [6] 10/2 12/12 25/17 25/19 29/13 32/12
initial [4] 6/16 12/23 15/15 37/2
initially [3] 13/25 15/18 31/11
instances [1] 32/18
instead [1] 8/25
instrument [1] 10/6 10/8 10/9 10/21
instruments [1] 9/24 10/4
intention [3] 8/9 8/21 9/1
interest [1] 14/22 40/7
interested [1] 24/20
interesting [1] 39/9
intern [2] 2/21 3/22
interpret [1] 13/9 13/9 13/12 14/16 15/13 19/14 31/9 31/23 34/2
interpretation [10] 14/5 14/14 14/23 15/20 16/3 16/11 17/15 18/1 18/23 20/17
interpretations [3] 14/4 25/17 30/20
interpreted [5] 12/11 13/5 13/6 32/16 32/20
interrogatories [1] 37/10
interrupt [1] 8/23
intervene [2] 28/5 29/1
intervenor [7] 1/12 2/12 2/16 2/20 27/2 30/8 30/14
intervention [2] 20/23 21/1 21/7 28/4
introduce [3] 3/21 4/1 4/15
involves [1] 12/7
involving [2] 21/10 26/21
issue [14] 15/15 15/18 18/24 19/2 26/18 26/21 28/10 30/4 30/22 31/8 32/6 34/1 34/19 35/25
issued [1] 24/2
issues [6] 8/1 17/13 17/15 18/1 22/11 35/11
itself [8] 9/9 9/11 10/8 11/4 16/13 21/1 21/2 28/3

**J**

Jackson [1] 2/1
JAMES [5] 2/5 4/3 27/10 27/21 31/19
jamesorr [1] 2/7
jdirenfeld [1] 2/20
job [1] 14/24
joined [1] 30/22
jointly [1] 37/5
JONATHAN [4] 2/17 4/24 5/5 18/15
Jr [1] 2/13
judge [24] 7/13 10/14 10/20 10/23 21/7 21/24 23/5 23/20 24/1 24/8 24/14 24/16 26/9 26/13 28/14 29/13 30/18
judgment [24] 15/12 18/25 19/18 21/4 27/14 27/18 29/7

**counsel... - judgment**

**J**

judgment... **[17]** 29/11
29/15 29/16 29/19 29/24
31/25 32/3 34/21 34/22
34/24 36/1 36/3 36/4 36/9
36/12 37/15 37/21
June **[2]** 18/3 28/20
June 30th **[2]** 18/3 28/20

**K**

kidding **[1]** 25/10
kind **[4]** 7/5 9/12 9/18 34/23
kinds **[2]** 7/11 11/3
knowing **[1]** 7/5
knowledge **[1]** 7/25

**L**

L-Y-D-O-N **[1]** 24/8
language **[5]** 11/25 19/12
19/15 28/11 34/5
last **[1]** 10/21
late **[3]** 5/15 6/2 21/8
law **[10]** 1/19 2/9 3/23 6/20
6/22 13/13 13/14 14/13 23/5
23/20
LAWRENCE **[1]** 1/16
lawyers **[1]** 6/15
laypersons **[1]** 14/8
leaning **[2]** 8/4 19/17
leanings **[1]** 8/16
lease **[1]** 20/6
least **[1]** 29/22
leave **[2]** 9/7 21/11
Lebrun **[1]** 2/1
lee **[3]** 1/18 1/21 3/6
legal **[5]** 13/23 13/24 14/14
14/22 26/14
lending **[5]** 20/12 32/24
32/25 33/1 33/5
length **[1]** 37/11
less **[2]** 26/21 30/10
let **[15]** 15/7 16/23 18/5
19/17 22/8 22/9 24/21 25/6
27/5 30/14 30/15 31/19 32/4
33/19 38/22
light **[1]** 6/6
like **[8]** 19/24 24/19 25/5
37/1 37/2 37/15 37/19 38/3
limit **[1]** 37/12
limited **[4]** 16/5 30/6 32/7
33/14
lines **[1]** 31/15
list **[7]** 4/6 12/21 22/6 30/10
31/13 31/14 33/6
literally **[1]** 12/11
litigation **[1]** 2/17
little **[7]** 5/12 5/19 6/13 22/9
26/2 30/2 38/1
LLP **[6]** 1/5 1/23 2/5 2/9
2/14 2/18
local **[3]** 3/7 3/20 4/13
long **[4]** 20/8 21/15 33/17
35/20
longer **[1]** 6/10
look **[2]** 16/16 25/13
looking **[5]** 6/16 16/17
16/17 25/3 37/21
lose **[1]** 38/12
lot **[3]** 6/15 34/23 38/10
loud **[1]** 29/18
Louis **[2]** 1/24 4/9
LUCE **[10]** 2/1 3/20 15/5
17/3 18/18 19/9 27/4 27/9
27/22 29/6
Lydon **[4]** 21/24 24/1 24/8
24/16
Lydon's **[1]** 26/13
Lynn **[1]** 2/1

**M**

made **[4]** 8/15 18/17 21/23
24/3
magistrate **[1]** 35/11
make **[13]** 18/8 16/5 19/7
20/3 20/6 21/18 27/11 29/23
30/21 34/24
making **[3]** 4/6 27/24 34/21
many **[3]** 7/9 37/10 37/10
marked **[1]** 25/8
marks **[1]** 25/12
Marlboro **[3]** 24/25 27/5
27/11
materials **[1]** 21/13
matter **[6]** 13/13 13/14
19/10 28/11 29/12 36/4
maybe **[5]** 5/18 16/4 34/24
36/2 38/20
mean **[2]** 9/2 33/25
meaning **[2]** 13/21 36/17
means **[2]** 14/1 15/11
mechanism **[1]** 33/3
meet **[1]** 5/25
meeting **[1]** 37/2
member **[4]** 20/3 20/4
22/16 33/4
members **[3]** 14/16 20/9
33/2
membership **[1]** 32/15
mentioned **[3]** 15/9 25/15
27/23
MEREDITH **[5]** 2/9 4/13
18/7 18/14 30/16
meredithm **[1]** 2/12
merge **[1]** 20/5
merger **[1]** 17/18
Merit **[1]** 40/3
met **[1]** 15/18
MICHAEL **[1]** 2/1
microphone **[3]** 8/8 36/22
36/24
mid **[1]** 23/5
middle **[1]** 23/3
might **[5]** 5/18 7/6 30/1 32/2
33/18
Mike **[4]** 3/20 15/5 27/4
27/9
mind **[1]** 15/8
Minnesota **[1]** 2/2
minute **[2]** 25/13 38/12
mirror **[1]** 28/6
missed **[1]** 7/15
mistaken **[1]** 16/24
mistakenly **[1]** 20/1
misunderstand **[1]** 34/9
mluce **[1]** 2/3
MO **[1]** 1/24
moment **[3]** 3/5 3/9 3/18
4/5
months **[2]** 22/12 23/3
MOORE **[8]** 2/9 4/13 4/17
18/7 18/14 19/19 30/16 31/4
more **[4]** 6/15 30/11 33/14
38/1
most **[1]** 7/23
motion **[38]** 8/15 12/5 12/5
13/15 16/9 18/2 18/25 21/3
21/4 21/8 21/12 21/15 21/16
21/16 21/23 21/24 27/14
27/18 28/5 28/14 28/15
28/19 28/24 29/7 29/10
29/15 29/16 29/19 29/23
30/21 30/22 31/25 32/2 32/3
34/21 34/22 34/24 37/14
motions **[3]** 37/17 38/6
38/8

move **[4]** 5/18 27/17 29/8
36/12
moved **[1]** 21/3
Mr. Direnfeld **[3]** 19/3 19/5
38/13
Mr. Herzog **[4]** 4/9 15/9
15/16 27/23
Mr. Herzog's **[1]** 17/16
Mr. Jonathan **[1]** 18/15
Mr. Luce **[5]** 17/3 18/18
19/9 27/22 29/6
Mr. Orr **[11]** 4/6 15/7 16/23
17/1 18/9 18/18 19/9 21/22
27/5 33/23 33/24
Mr. Orr's **[1]** 38/22
Mr. Schoenbeck **[2]** 5/23
25/14
Ms. Moore **[2]** 19/19 31/4
much **[2]** 7/1 25/17

**N**

N.W **[1]** 2/18
name **[4]** 24/22 24/24
naturally **[1]** 34/15
NE **[1]** 2/6
necessarily **[2]** 11/7 25/11
necessary **[6]** 13/1 13/12
15/23 18/21 19/14 19/20
need **[10]** 16/20 17/14 30/9
30/20 31/10 33/8 33/10
33/15 35/25 36/5
needed **[6]** 16/10 18/2 21/9
21/10 31/22
never **[2]** 16/20 22/23
New **[3]** 2/15 4/21 4/23
New York **[1]** 4/21
next **[1]** 15/2
nobody **[1]** 35/24
none **[1]** 31/13
nonetheless **[1]** 30/1
nonexpert **[1]** 35/17
normal **[1]** 37/9
normally **[2]** 5/15 6/3
North **[1]** 2/10
Northern **[3]** 7/12 7/21 7/22
Notary **[2]** 40/4 40/10
noted **[1]** 31/12
notes **[1]** 20/10
nothing **[5]** 17/19 18/22
19/9 19/20 30/11
noticed **[1]** 26/8
notwithstanding **[2]** 20/3
21/9
November **[2]** 22/19 23/4
number **[7]** 12/25 25/3 25/4
30/23 33/15 33/16 37/13
NY **[1]** 2/15

**O**

O'Donnell **[1]** 1/23
object **[1]** 11/10
objection **[1]** 11/21 11/22
obligations **[6]** 11/24 12/3
15/18 16/18 19/13 32/22
observing **[1]** 3/24
obtain **[1]** 20/15
obviously **[4]** 4/17 27/22
28/20
off **[2]** 10/9 10/22
offered **[1]** 18/17
Official **[1]** 40/3
often **[1]** 5/11
Oh **[4]** 3/10 18/9 29/12
32/10
once **[2]** 29/10 36/2
one **[22]** 5/17 5/20 6/3 6/5
6/10 6/23 6/23 8/24 12/21
12/23 20/19 23/14 23/16

26/16 24/1 6/28 14/24/4
32/14 33/15 35/12 38/8
ones **[1]** 25/23
only **[3]** 11/18 12/16 15/17
Oops **[1]** 17/7
open **[2]** 32/15
opinion **[2]** 26/17 26/20
opinions **[1]** 23/20
opportunity **[1]** 21/7
opposition **[1]** 28/4
order **[15]** 5/15 5/20 6/6 9/7
15/22 19/1 19/19 24/2
29/3 33/4 33/8 35/8 35/18
38/9
oriented **[1]** 7/10
ORR **[17]** 2/5 4/3 4/5 4/6
15/7 16/23 17/1 18/9 18/18
19/9 21/22 27/5 27/10 27/21
33/23 33/24 38/23
Orr's **[1]** 38/22
Orrick **[4]** 2/14 2/18 4/16
4/25
orrick.com **[2]** 2/16 2/20
otherwise **[2]** 9/16 37/14
ought **[1]** 36/10
out **[24]** 6/3 6/22 6/23 7/4
7/7 10/15 10/20 11/6 17/7
17/8 26/4 26/6 26/8 26/10
29/3 29/17 33/19 34/7 35/15
38/9 38/13 38/15 38/20
38/23
outcome **[1]** 40/7
outstanding **[1]** 20/9
over **[1]** 5/19
own **[2]** 4/6 26/14
owned **[1]** 20/8

**P**

P.C **[1]** 2/1
P.O **[2]** 1/19 2/10
Pacer **[1]** 25/4
page **[2]** 26/13 26/24
page 3 **[1]** 26/13
page 4 **[1]** 26/24
pages **[2]** 16/14 40/5
paid **[4]** 7/6 10/9 10/21 33/4
paper **[1]** 8/25
papers **[5]** 7/14 7/16 18/3
28/20 29/3
paragraph **[1]** 17/17
pare **[1]** 33/6
PARKER **[2]** 2/21 3/22
parol **[3]** 13/12 19/14 31/22
parsing **[1]** 12/24
part **[7]** 10/21 11/18 23/12
23/14 25/19 26/17 26/20
particularly **[1]** 14/17
parties **[18]** 5/16 6/6 15/11
15/25 17/3 17/13 19/10
19/13 19/14 28/9 30/25
34/18 35/6 35/19 37/7 37/19
38/4 40/6
parties' **[1]** 20/20
parts **[2]** 25/8 25/12
party **[2]** 9/12 27/17
passing **[1]** 7/25
path **[2]** 23/25 24/1
Pause **[2]** 26/3 26/23
pay **[2]** 16/21 20/9
payment **[3]** 9/20 11/23
12/8
pcoll **[1]** 2/16
Peachtree **[1]** 2/6
pending **[3]** 20/23 28/15
29/2
people **[2]** 23/9 34/11
period **[1]** 13/20
permission **[1]** 3/24

permit **[2]** 10/4 28/3
permits **[1]** 13/21
permitted **[3]** 9/19 20/25
22/24
person **[4]** 1/16 1/18 1/22
2/1 2/9
personally **[1]** 2/9
PETER **[11]** 1/22 2/13 3/4
3/12 4/16 19/6 19/8 26/11
30/17 36/6 38/11
pherzog **[1]** 2/15
Phillips **[3]** 1/14 1/17 2/10
phone **[11]** 2/5 2/13 2/17
2/22 4/15 4/17 8/1 38/12
38/18 38/20 40/12
phone/video **[1]** 2/22
pick **[1]** 8/9
Pierre **[5]** 2/23 2/24 40/8
40/11 40/11
PIERSOL **[1]** 1/16
place **[4]** 1/13 16/20 38/14
38/16
plain **[1]** 34/5
plaintiff **[9]** 1/6 1/21 1/25
3/3 6/11 27/1 30/10 32/4
39/2
plaintiff's **[2]** 29/20 29/25
plaintiffs **[1]** 27/10
planned **[1]** 25/11
planning **[1]** 37/2
play **[1]** 15/17
pleaded **[1]** 21/2
pleadings **[15]** 17/4 19/1
19/18 21/5 27/15 27/16
27/18 29/7 29/11 29/15
29/17 29/24 32/1 32/2 34/22
please **[2]** 15/6 25/6
plenty **[1]** 28/24
point **[16]** 6/14 6/19 10/8
16/7 32/8 34/11 36/10 36/13
37/18 37/22 37/24
portion **[4]** 9/21 12/8 20/7
20/9
posit **[1]** 11/20
position **[18]** 6/7 8/17 9/5
9/8 11/2 11/12 12/4 12/6
12/13 12/15 15/7 16/9 16/25
22/23 22/25 30/19 30/20
36/14
possible **[1]** 17/18
postulating **[1]** 31/15
posture **[2]** 28/16 28/20
potential **[1]** 31/16
power **[22]** 1/7 1/10 3/19
7/12 7/21 7/23 9/9 9/11
11/14 12/10 13/6 15/2 17/5
17/12 17/17 17/20 17/21
20/17 22/15 22/23 25/1
32/19
practice **[4]** 10/2 12/12
25/20 32/12
practices **[1]** 29/13
preclude **[2]** 32/20 33/4
precluded **[1]** 22/24
precluding **[3]** 25/22 32/1
34/21
precondition **[1]** 16/19
predict **[1]** 11/14
Preferable **[1]** 8/11
preliminary **[1]** 6/14
prepared **[6]** 18/25 28/18
29/5 29/8 30/21 32/18
prepay **[1]** 11/14
prepayment **[1]** 33/5
prerequisite **[1]** 16/19
present **[5]** 2/21 14/3 18/15
34/25 36/11
presentation **[1]** 16/24

**P**

presented [2] 29/25 34/20
pretty [3] 6/19 26/15 34/4
previously [2] 18/19 31/6
pricing [1] 7/25
primarily [1] 7/10
principle [1] 16/12
principles [3] 26/14 32/14 32/14
prior [1] 20/11
pro [2] 9/21 12/8
probably [5] 16/8 33/18 34/3 35/10 35/10
problem [1] 36/25
procedurally [2] 36/20 37/1
proceedings [2] 3/1 39/11
proffer [1] 33/25
properly [1] 36/8
proposal [1] 13/18
proposals [1] 18/20
propose [1] 11/13
proposed [1] 13/25
provide [1] 33/3
provided [3] 12/2 13/19 32/21
provides [4] 9/14 9/18 11/7 20/2
provision [7] 13/5 13/21 14/17 17/19 17/21 17/23 20/1
provisions [2] 25/18 32/20
Public [3] 22/17 40/4 40/10
pull [1] 29/14
purchase [1] 11/15
pure [2] 17/13 17/14 17/25
pursuing [1] 23/6

**Q**

question [17] 6/16 6/20 6/20 6/22 7/1 7/4 12/23 13/2 13/23 13/24 14/3 14/4 14/1 16/7 26/25 34/11 36/16 36/17
questions [2] 12/25 35/1
quicker [1] 38/10
quickly [1] 35/8
quite [1] 12/21

**R**

ran [1] 38/23
rata [2] 9/21 12/8
rate [2] 7/23 27/24
rate-making [1] 27/24
rather [1] 31/25
read [4] 26/15 26/16 26/21 28/14
ready [4] 6/21 18/2 18/4 22/12
realistic [2] 11/16 11/17
realize [1] 26/5
really [5] 19/8 21/5 29/18 29/25 30/8
realtime [2] 3/15 40/3
reason [2] 9/22 36/3
reasonably [3] 12/9 38/5 38/9
reasons [4] 6/5 8/13 12/24 21/25
recall [1] 11/25
recess [1] 39/10
recognize [1] 6/11
recognized [1] 15/16
recognizing [1] 6/14
record [3] 36/7 36/9 38/22
redundant [1] 28/7
refer [1] 19/3
referring [1] 20/4
reflect [1] 38/22
regard [12] 6/7 8/4 29/13

30/4 30/5 34/19 35/9 35/9
35/20 35/25 37/8 37/9
regarding [4] 13/5 17/5
17/22 32/13
Registered [1] 40/3
relative [2] 40/6 40/7
relevance [1] 31/17
relevant [1] 23/10
remains [1] 20/22
remedy [2] 30/6 33/15
reminded [1] 25/14
reorganization [1] 20/5
reorganize [1] 9/16
reported [1] 40/5
reporter [7] 2/22 3/11 3/14
3/16 4/18 5/8 7/14 15/4
26/4 26/5 26/7 40/1 40/3
40/3 40/4 40/10
reports [3] 33/21 34/3
34/15
represented [5] 7/11 7/20
7/22 22/14 22/14
request [4] 24/2 28/5 28/7
31/7
requested [1] 28/7
requests [1] 37/10
require [1] 12/18
required [2] 33/4 33/5
resist [1] 8/13
resisting [1] 13/16
resists [1] 6/11
resolve [1] 15/19
resolved [1] 36/8
respect [1] 15/17
respond [1] 27/5
response [4] 15/21 28/25
31/3 31/6
responsibility [1] 6/2
result [3] 7/5 9/19 23/22
right [43]
rights [3] 17/5 17/10 19/13
RIVER [29] 1/7 3/19 5/1
11/10 11/12 12/9 13/2 13/3
13/4 13/15 14/3 15/2 15/13
16/25 20/1 20/10 20/21 21/2
21/10 23/9 27/4 27/10 28/8
28/17 30/15 31/3 31/5 32/24
39/5
River's [2] 28/5 30/19
roll [1] 3/2
rule [12] 5/16 18/18 16/9
18/2 21/5 21/8 21/16 27/13
27/15 29/6 36/4 37/20
ruled [1] 29/3
ruling [5] 8/18 8/19 8/21
17/4 34/10
rulings [2] 35/14 35/15

**S**

same [2] 22/21 31/14
satisfied [1] 12/3
satisfies [1] 32/21
saying [9] 9/25 14/7 29/12
29/16 29/23 33/7 33/13
35/12 35/13
schedule [5] 23/6 35/19
35/19 35/22 37/17
scheduling [5] 5/15 15/21
18/20 29/3 31/7
Schoenbeck [5] 1/18 1/19
3/6 5/23 25/14
schoenbecklaw.com [1]
1/21
school [1] 3/23
scope [1] 35/10
sdd.uscourts.gov [1] 40/12
seated [1] 8/7
second [3] 3/23 26/17

**statement** [2] 16/19 18/9
STATES [7] 1/1 7/12 7/21
7/23 25/1 40/1 40/3
STATUS [1] 1/6
staying [1] 8/7
step [1] 26/8
stepped [3] 26/4 26/6 26/10
steps [1] 20/5
stick [1] 28/19
straightforward [2] 6/19
7/1
Street [3] 2/6 2/14 2/18
structure [1] 9/17
subject [1] 7/1
submit [3] 13/13 36/1 37/4
submitted [2] 15/21 18/19
subsection [1] 27/16
substantial [1] 20/7
such [5] 8/21 20/9 27/18
37/8 40/7
suffer [1] 20/4
sufficient [2] 20/15 36/15
suggest [1] 21/25
suggesting [2] 33/9 33/9
suggestion [5] 5/16 27/14
37/16
Suite [2] 1/23 2/6
summarize [1] 15/6
summarized [1] 31/20
summarizes [1] 31/17
summary [12] 29/19 31/25
32/3 34/20 34/24 36/1 36/2
36/4 36/9 36/12 37/15 37/21
summer [2] 2/21 3/22
supplant [1] 17/23
supplemental [1] 38/3
support [1] 20/16
supported [1] 6/12
sure [3] 16/5 25/8 28/13
Sutcliffe [2] 2/14 2/18
Sutherland [1] 2/5
sutherland.com [1] 2/7

**T**

take [1] 3/2 6/4 16/20 20/3
33/18 33/21 35/21
taken [1] 20/4
taking [1] 12/15
talk [3] 5/18 16/21 24/6
talking [4] 21/4 23/13 31/25
33/14
tardy [1] 5/22
telephone [1] 4/3
telephonically [2] 18/16
40/5
telephonically/video [1]
40/5
term [1] 17/22
terminate [10] 6/17 6/24
7/3 9/3 9/12 11/9 11/23
30/5 30/7 32/6
terminating [1] 17/20
termination [5] 9/20 17/22
17/24 20/14 34/19
terms [19] 6/18 7/4 9/10
9/12 11/7 11/8 11/9 11/18
11/23 12/2 12/7 12/9 12/17
12/17 12/19 16/6 16/20
20/20 23/1
testimony [8] 13/4 14/12
32/7 32/11 32/13 33/19
33/21 33/22
thank [9] 3/25 15/5 18/7
18/11 18/13 19/4 19/22
28/22 39/10
them [6] 3/3 4/15 21/7
21/11 35/14 35/20
themselves [2] 4/15 15/3

**theories [2]** 29/20 29/22
theory [3] 29/11 29/25
33/10
there's [4] 19/20 22/2 22/2
therefore [3] 10/10 14/18
20/7
thing [3] 20/19 22/21 31/14
things [5] 5/18 6/3 12/21
15/25 20/19 22/5 35/7
think [27] 9/5 11/20 12/22
12/24 14/20 18/3 20/24 22/2
22/3 22/10 22/11 23/8 23/8
25/15 25/19 29/5 29/21
29/21 32/15 34/16 34/23
36/3 37/25 38/2 38/13 38/23
38/24
thinking [2] 5/12 29/17
thinks [1] 35/24
third [1] 3/23
though [1] 8/5
thought [3] 6/10 23/11
30/18
thousands [1] 16/14
three [2] 17/3 28/9
threshold [3] 17/13 28/9
34/1
tight [1] 25/12
timely [1] 29/7
timing [2] 37/4 37/11
today [3] 3/21 3/24 28/18
together [5] 5/17 35/8 37/2
37/4 37/5
told [2] 23/13 11/23
too [4] 4/6 7/11 35/14 38/9
took [2] 22/23 22/25
topics [1] 34/1
towards [1] 8/4
transaction [1] 9/16
transactions [2] 9/14 11/3
transcript [1] 40/6
transfer [1] 20/6
transferred [1] 24/16
transmission [5] 7/25 10/4
22/16 22/22 22/23
Tri [2] 22/15 22/16 22/22
22/23
Tri-State [4] 22/15 22/16
22/22 22/23
trial [13] 7/10 7/11 22/12
23/19 27/17 35/25 36/5
36/18 37/19 37/22 37/22
37/24 37/25
tried [4] 23/3 23/4 23/18
23/19
Trigg [1] 1/23
trigger [1] 29/14
true [1] 40/4
trying [1] 22/10
turn [1] 8/2
two [3] 20/19 22/5 33/16
typical [1] 9/23

**U**

unambiguous [1] 31/1
under [13] 9/8 9/9 11/9
11/15 16/9 17/5 17/10 21/5
27/24 27/25 29/6 29/6 35/14
understand [10] 8/7 8/14
9/4 10/7 27/24 33/7 34/18
35/7 36/19 38/19
understanding [1] 7/7
UNITED [6] 1/1 22/14 22/22
25/1 39/13 40/3
until [4] 5/22 16/21 37/8
38/21
untimely [4] 27/15 27/19
29/6 29/17
unusual [4] 20/20 20/24
22/4 28/2

**up [7]**  6/9 8/9 15/8 24/19
24/22 29/4 38/18
**us [4]**  2/5 13/1 19/17 22/4
**used [2]**  6/18 8/23
**usual [1]**  10/5
**usually [2]**  6/10 37/17
**Utility [1]**  22/17

**V**

**variety [2]**  8/13 9/14
**various [1]**  6/11
**versus [2]**  22/6 24/25
**video [2]**  2/22 40/5
**views [1]**  6/14
**voluntary [1]**  32/15

**W**

**wait [1]**  34/24
**wanted [3]**  6/5 18/10 19/6
**wants [2]**  27/11 32/5
**Washington [1]**  2/19
**Watertown [1]**  1/20
**went [4]**  23/1 23/1 23/2
38/13
**West [1]**  2/14
**Wheeler [1]**  1/23
**whole [1]**  13/6
**wholesale [11]**  9/9 9/11
12/10 12/16 17/5 17/11
17/17 17/20 17/21 20/17
32/19
**winds [1]**  6/9
**wise [1]**  35/17
**wish [5]**  12/21 22/6 30/10
31/13 31/14
**withdraw [21]**  6/17 6/24 7/2
8/20 9/3 9/6 9/10 11/5 11/7
11/23 12/1 12/2 12/7 12/16
12/17 13/5 16/20 23/1 30/5
30/7 32/6
**withdrawal [12]**  11/10
13/22 15/16 15/17 16/21
22/22 23/13 23/21 25/22
32/20 33/2 34/20
**withdrawing [2]**  22/24
32/21
**Woo [1]**  5/23
**woods [1]**  7/9
**work [3]**  7/10 7/11 35/14
**works [1]**  22/18
**written [1]**  16/14
**wtotrial.com [1]**  1/25

**Y**

**year [1]**  3/23
**years [5]**  6/7 7/9 15/24
15/24 16/1
**York [3]**  2/15 4/21 4/23
**Your Honor [12]**  5/3 5/7
13/20 14/24 17/2 22/17 24/9
24/24 25/7 30/16 36/6 36/20