IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., <br><br> *Plaintiff/ Counter-Claim Defendant,* <br><br> v. <br><br> EAST RIVER ELECTRIC POWER COOPERATIVE, INC., <br><br> *Defendant/ Counter-Claim Plaintiff/ Cross-Claim Defendant,* <br><br> and <br><br> BASIN ELECTRIC POWER COOPERATIVE, <br><br> *Intervenor-Defendant/ Counter-Claim Plaintiff/ Cross-Claim Plaintiff.* | Case 4:20-cv-04192-LLP <br><br> **PLAINTIFF'S MOTION TO CLARIFY AND/OR RECONSIDER** |

## INTRODUCTION

Dakota Energy respectfully requests that the Court clarify and/or reconsider a portion of its Orders (Docket Nos. 70 & 72) denying in part Dakota Energy's motions to compel. It is unclear to Dakota Energy what Basin and East River have been ordered to produce with respect to loan documentation. It is possible that the Court has ordered both to produce the very documents that Dakota Energy seeks. And if that is the case, the Court need order nothing additional produced. If not, however, Dakota Energy believes the Court erred by limiting production of loan documents that specifically envision member withdrawals, as such documents would constitute evidence that

Dakota Energy contends is relevant to show industry or trade custom and usage, which the district court specifically authorized.

## BACKGROUND

In the 1930s, as part of the New Deal, Congress gave the Rural Utilities Service ("RUS") the authority to issue and guaranty loans for the creation of rural electric distribution cooperatives like Dakota Energy, in order to facilitate electric service to rural homes that lacked access to electricity.[1] Cooperatives in then-rural areas eventually began pooling their resources and forming or joining Generation and Transmission ("G&T") cooperatives like East River. This increased the cooperatives' borrowing power and optimized economies of scale, allowing rural communities to finance projects in areas of the country that investor-owned utilities did not find profitable enough to serve.[2] To protect its loan program from defaults, the RUS required that G&T borrowers enter into contracts—like Dakota Energy's WPC—with each of the G&T member-owners to prevent distribution cooperatives from abandoning their share of debt service obligations which the G&T had undertaken to serve the member. As such, Dakota Energy's WPC was designed as a financing instrument that East River could pledge as debt security for RUS loans. Indeed, the United States Court of Appeals for the D.C. Circuit has recognized that G&T cooperatives need to maintain the long-term requirements contracts with their members *only* so long as RUS debt is outstanding. *Sw. Elec. Co-op., Inc. v. F.E.R.C.*, 347 F.3d 975, 977 (D.C. Cir. 2003).

---

[1] National Rural Electric Cooperative Ass'n, *History*, https://www.electric.coop/our-organization/history.

[2] Joe Smyth, Rural America Could Power a Renewable Economy—but First We Need to Solve Coal Debt, Energy & Policy Institute (July 2, 2019), https://energyandpolicy.org/co-op-coal-debt-relief/.

This explains the provisions in both the WPC and the Bylaws requiring that members pay their pro-rata share of East River's indebtedness before transferring and/or extinguishing their obligations under the WPC.

It's this background that led Dakota Energy to ask for loan documents from both Basin and East River. Those loan documents likely anticipate and provide for the possibility of member withdrawals and constitute parole or extrinsic evidence of industry or trade custom and usage that Dakota Energy contends demonstrates a right to withdraw from East River. If Dakota Energy was precluded from withdrawing until its WPC expired, the lender would have no reason to provide for and protect against a withdrawal prior to that time. The fact that the RUS (and other lenders) do is, in Dakota Energy's view, powerful evidence that the industry as a whole recognizes these WPCs are terminable so long as the distribution cooperative pays its pro rata portion of the G&T's outstanding indebtedness.

## ARGUMENT

In Docket No. 70, the Court ordered Basin to produce "loan documents that are related to withdrawal or termination of a member." And in Docket No. 72, the Court imposed the same obligation on East River. Dakota Energy understands that to mean that both Basin and East River must produce any loan documents that address, whether by covenant or otherwise, the departure of a member cooperative. Most or all of these loan documents specifically contemplate the possibility of member departures and contain a provision requiring the debtor G&T to prepay that portion of the indebtedness attributable to the withdrawing member. If this was the Court's intention, and we believe it was, those are the documents that Dakota Energy seeks. We are not asking

either East River or Basin to produce loan documents that do not address the issue of departing members.

If the Court's Order is narrower than we understand, Dakota Energy respectfully requests that the Court reconsider. For the reasons explained above, loan (or other) documents that envision member withdrawals are evidence of trade or industry custom and usage and, as such, are discoverable under the Scheduling Order and admissible under the Federal Rules. To that end, Dakota Energy requests the Court clarify or reconsider the statement in both Orders that discoverable parole or extrinsic evidence is limited to "*the contractual parties' own statements and course of dealing with each other*." That's because that construction of ¶ 5 of the Scheduling Order omits extrinsic evidence of industry custom and usage specifically authorized by the district court.

Trade or industry evidence is different than course of dealing, the other category of extrinsic evidence specifically mentioned by the district court. South Dakota case law, the South Dakota U.C.C., and the Restatement of Contracts all permit evidence of industry custom and practice to explain and provide context to contract terms.

- South Dakota courts allow evidence of custom and trade usage to interpret contract ambiguities. *LaMore Rest. Grp., LLC v. Akers*, 748 N.W.2d 756, 764-66 (S.D. 2008); *Mash v. Cutler*, 488 N.W.2d 642, 647 (S.D. 1992); *Atmosphere Hosp. Mgmt., LLC v. Shiba Invs., Inc.*, 2016 WL 379639, at *3 (D.S.D. Jan. 29, 2016).

- The South Dakota U.C.C. allows usage of trade evidence so long as it is not inconsistent with the contract language. *See* S.D.C.L. § 57A-1-303(d) (course of performance or course of dealing between the parties or *usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware* is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement); *see also* Comment 3 to U.C.C. Article 2, § 1-303 ("[t]he language used is to be interpreted as meaning what it may fairly be expected to mean to parties involved in the particular commercial transaction in a given locality or in a given vocation or trade … Part of the agreement of the parties to which such rules yield is to be sought for in the usages of trade which

furnish the background and give particular meaning to the language used, and are the framework of common understanding controlling any general rules of law which hold only when there is no such understanding).

- The Restatement (Second) of Contracts allows evidence of trade usage to supplement or qualify an agreement and even to demonstrate the existence of an ambiguity. See Restatement §§ 220 & 222 (1981 & June 2021 Update). As explained in Comment d to § 220, "[l]anguage and conduct are in general given meaning by usage rather than by the law, and ambiguity and contradiction likewise depend upon usage. *Hence usage relevant to interpretation is treated as part of the context of an agreement in determining whether there is ambiguity or contradiction as well as in resolving ambiguity or contradiction.* There is no requirement that an ambiguity be shown before usage can be shown, and no prohibition against showing that language or conduct have a different meaning in the light of usage from the meaning they might have apart from the usage."

The district court specifically authorized Dakota Energy to discover parole or extrinsic evidence of industry or trade custom and usage. The loan agreements and other information sought from Basin in RFP No. 4 and from East River in RFP No. 3 is precisely such information. We believe the Court has ordered Basin and East River to produce loan agreements and other responsive information that address withdrawal or termination of a member. If it has not, Dakota Energy requests that it do so now. Dakota Energy also asks the Court to clarify that discovery in the case specifically extends to industry or trade custom, practice, and usage and is ***not*** limited to the contracting parties' own statements and course of dealing.

## CONCLUSION

For the reasons explained, Dakota Energy respectfully requests that its motion to clarify and reconsider be granted.

Dated:  August 31, 2021.

Respectfully submitted,

WHEELER TRIGG O'DONNELL LLP

Peter W. Herzog III (*pro hac vice*)
Joel S. Neckers (*pro hac vice*)
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email:  pherzog@wtotrial.com
         neckers@wtotrial.com
         choe@wtotrial.com

and

SCHOENBECK LAW, PC

_/s/ Lee Schoenbeck_____
Lee Schoenbeck
Joseph Erickson
P.O. Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD 57201
Telephone: 605.886.0010
Facsimile: 605.886.0011
Email:  lee@schoenbecklaw.com
         joe@schoenbecklaw.com

Attorneys for Plaintiff/Counter-Claim Defendant Dakota Energy Cooperative, Inc.

### **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on August 31, 2021, I electronically filed the foregoing **PLAINTIFF'S MOTION TO CLARIFY AND/OR RECONSIDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michele O. Choe**
  choe@wtotrial.com, licausi@wtotrial.com

- **J. Peter Coll , Jr**
  pcoll@orrick.com, nymao@orrick.com

- **Jonathan A. Direnfeld**
  jdirenfeld@orrick.com, nymao@orrick.com

- **Joseph B. Erickson**
  joe@schoenbecklaw.com, jerickson14417@gmail.com

- **Peter W. Herzog**
  pherzog@wtotrial.com, licausi@wtotrial.com

- **Matthew D. LaBrie**
  mlabrie@orrick.com, nymao@orrick.com, casestream@ecf.courtdrive.com

- **Tracey K. Ledbetter**
  traceyledbetter@eversheds-sutherland.com, betzhandmaker@eversheds-sutherland.com

- **Michael L. Luce**
  mluce@lynnjackson.com, mschmitt@lynnjackson.com

- **Meredith A. Moore**
  meredithm@cutlerlawfirm.com, deanneu@cutlerlawfirm.com

- **Joel S. Neckers**
  neckers@wtotrial.com, licausi@wtotrial.com

- **James A. Orr**
  jamesorr@eversheds-sutherland.com

- **Dana Van Beek Palmer**
  dpalmer@lynnjackson.com, alangerock@lynnjackson.com

- **R. Alan Peterson**
  rpeterson@lynnjackson.com, alangerock@lynnjackson.com, akneip@lynnjackson.com

- **Lee A. Schoenbeck**
  lee@schoenbecklaw.com, joe@schoenbecklaw.com, jen@schoenbecklaw.com, karen@schoenbecklaw.com

                                    /s/ Lee Schoenbeck
                                    LEE SCHOENBECK