# ATTACHMENT B

## EAST RIVER'S RESPONSIVE POSITION STATEMENT

There was no interference with the examination of East River's representatives. Instead, Dakota's counsel repeatedly sought to invade the attorney-client privilege and ignored the Phase One limitations imposed by Judge Piersol. The deposition transcripts show that East River's counsel's conduct throughout the depositions was entirely proper.[1]

### A.    Dakota's Examination into Attorney-Client Communications

Dakota argues that, by truthfully answering deposition questions, East River's witness has somehow given Dakota the right to know—as to the issue of Dakota's right to terminate the parties' contract—"Did [East River's] attorney suggest it was a close call or say a court might conclude otherwise?" (Pos. Stmt. at 2.) This is the paradigm of privileged information.

Dakota attempts to claim that East River waived privilege because East River has "offer[ed] its attorneys' advice as support for its position." (*Id.*) This is patently untrue. Mr. Ryken was asked if his interpretation of contract provisions was based solely on his own reading. He responded that he also relied on advice of counsel. This answer does not put advice of counsel at issue. *See Unitedhealth Grp. Inc. v. Columbia Cas. Co.*, No. 05-1289, 2010 U.S. Dist. LEXIS 153035, at *66 (D. Minn. Aug. 10, 2010) ("[I]n order for the privilege to be impliedly waived, a party must rely on privileged advice of counsel in support of a claim or defense."); *Baker v. GMC*, 209 F.3d 1051, 1055 (8th Cir. 2000); *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely … because the attorney's advice

---

[1] Exhibit A to Dakota's submission shows that Dakota's counsel did not engage in a good faith meet-and-confer before bringing yet another discovery matter to the Court. Instead, (1) just before noon on Friday, Oct. 1, he sent an email stating that the email was a "conferral" and that if East River did not, by 5 PM CT the same day, accede to his demand to re-produce Messrs. Boyko and Ryken, he would declare an impasse and take the matter to the Court; (2) East River responded, pointing out that this was not a good faith conferral; (3) Dakota's counsel responded at 5:21 ET the same day, expressing no interest in having a meet-and-confer, reiterating the proposed "conferral" that East River re-produce the witnesses for cross-examination, and stating he was willing to consider a proposal from East River, with no indication that an impasse would be declared if East River did not respond by a certain date/time; (4) at 4:32 ET on Monday, Oct. 4 (not even a full business day later), Dakota declared an impasse.

might affect the client's state of mind in a relevant manner.").

And East River has never relied on advice of counsel to Messrs. Ryken or Boyko in support of its claim or defense. In fact, East River objected to producing a Rule 30(b)(6) witness as to interpretation of contract issues, as that is a matter for the Court. (Exs. A & B, responses 1, 5, 6, 9, 10, 17.) And Judge Piersol has indicated that board members' interpretations of the contracts are not relevant. (Ex. C, Hr'g Tr. at 13–14.) The three other instances cited by Dakota involved mere objections to the extent the question potentially invaded privilege. Contrary to Dakota's assertion, *there was no instruction not to answer*:

- As to Mr. Boyko's notes, East River's counsel (who could not see the document) objected "to the extent" any of the notes reflected attorney communications. This was explained on the record. (Ex. D, Boyko at 46:20–22, 49:12–50:25.)

- As to Mr. Ryken, Dakota's counsel specifically stated that he was not asking what came out of the board's executive session. (Ex. E, Ryken at 108:18–109:13.)

- Finally, Dakota's counsel asked Mr. Boyko about the basis for his interpretation of a document, he truthfully stated it was based on the advice of his counsel, and Dakota's counsel moved on. (Ex. D, Boyko at 214:21–215:9.)

Thus, Dakota has no basis for seeking a "re-do" as to these areas of inquiry.

**B.    Dakota's Examination into Matters Outside the Scope of Phase One.**

Dakota's counsel made repeated efforts to go beyond Judge Piersol's explicit limitations on Phase One discovery. East River's counsel objected but gave leeway, allowing Mr. Boyko to answer numerous questions. (Ex. D, Boyko at 52:1–61:1, 111:18–112:22.) Counsel instructed the witness not to answer only a few times, after it became obvious that Dakota's counsel was making no effort to stay within the Court-imposed limits. The first two instructions not to answer were limited to questions about a post-complaint member petition. (*Id*. at 61:21–63:5, 112:25–113:22.) And the third was about potential terms of withdrawal *if* Dakota has the right to do so, which is clearly beyond Phase One. (*Id*. at 119:5–120:11.) East River's counsel repeatedly

offered to "discuss the matter offline" (*i.e.*, off the record),[2] but Mr. Herzog refused. (*Id.* at 55:11–19, 62:1–63:4.) None of these areas of inquiry are anywhere close to being within the six limited topics ordered for Phase One. (Doc. 57 at 2–3.) Because counsel "may instruct a deponent not to answer … when necessary to … enforce a limitation ordered by the court," Fed. R. Civ. P. 30(c)(2), East River's objections and instructions were proper.

Dakota seeks to muddy the waters with unfounded assertions having no bearing on the limited scope of Phase One—Dakota's contractual termination right or right to withdraw.[3] Dakota has never gone back to the Court to seek an expansion of Phase One. And contrary to Dakota's position, Phase One does not include any and all matters contained in documents produced by other parties, which could expand discovery exponentially.

### C.    Dakota's Baseless Assertions of Improper Coaching.

Counsel and a witness have the right to confer while a question is pending if there is a concern that, in answering the question, the witness might reveal an attorney-client communication. *See, e.g.*, *Hall v. Clifton Precision*, 150 F.R.D. 525, 529 (E.D. Pa. 1993) ("[T]he majority of federal courts which have issued deposition guidelines have held that a private conference between witness and attorney is permissible if the purpose of the conference is to decide whether to assert a privilege.").[4] Counsel have an obligation to vigilantly protect the

---

[2] In footnote 1 of its position statement, Dakota dismisses Mr. Orr's offer to talk offline with a flippant, "whatever that means," even though Dakota's counsel had used this exact phrase earlier, telling East River's counsel, "Yeah. Mike, we can talk about this offline." (Ex. B., Boyko at 49:19–20.)

[3] For example, Dakota accuses East River of colluding with Dakota members (Pos. Stmt. at 2), but fails to inform the Court that East River is itself a member of Dakota and that the petition was drafted by the members' counsel, not by East River or its attorneys. (Ex. D, Boyko at 139:22–140:22.) Nor were documents "withheld by East River" as Dakota claims. (Pos. Stmt. at 2.) Under the agreed protocol, parties are not required to produce ESI generated after the complaint was filed, November 6, 2020. (Doc. 56 at 4.) The emails in Dakota's Exhibit D start November 23.

[4] Contrary to Dakota's assertion, a communication between East River and RUS could (among other things) fall within the common-interest privilege, as RUS was East River's lender and required the wholesale power contracts as security. (Doc. 71-1 at 4 ("Indeed, one of the WPC's express purposes is to ensure the repayment of loans East River has with the Rural Utilities Service.").) *See In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 922 (8th Cir. 1997).

attorney-client privilege, particularly where, as here, opposing counsel repeatedly argue waiver.

That is what happened here. In response to questions, Mr. Boyko began describing a phone call with RUS and was asked about the subject of that conversation. East River's counsel stated on the record the need to confer with the witness and/or inside counsel to make sure that Mr. Boyko would not inadvertently disclose an attorney-client communication. (Ex. D., Boyko at 154:1–155:3.) After a brief pause in the deposition, counsel for East River returned to the deposition and stated, "I apologize for the interruption. Please proceed." (*Id*. at 155:12–13.) The deposition then resumed, and Mr. Boyko testified at length about the subject of the conversation, although he was uncertain about specifics. After numerous questions, and after being asked three times about the name of the RUS representative who was on the call, Mr. Boyko stated that he could not remember the person's name and could not even recall if he was actually on the call or just heard about it afterwards. (*Id*. at 159:10–24.) That was the only change in his testimony.[5]

Dakota's accusation that Mr. Luce coached Mr. Boyko into changing his testimony is groundless. When asked about any conversations with counsel on the break, Mr. Boyko stated that he "saw them in the hallway … but they did not direct me to do anything, no." (*Id*. at 160:5–7.) East River's counsel tried to explain the basis for taking the break, but Mr. Herzog cut him off, saying, "No, no, no. You can tell it to the Magistrate …." (*Id*. at 163:22–164:7.) Mr. Herzog then moved on to another topic, so there would be no reason to recall the witness in any event.

For all these reasons, Dakota's request to reconvene these depositions should be denied.

---

[5] Dakota's assertion that there was reason to believe the witness was previously coached is baseless. The witness had testified that he had not spoken with a certain individual, and then, hours of examination later, recalled that he had spoken with that person as to one topic. There was absolutely no indication of coaching. (Ex. D, Boyko at 90:15–91:17.)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 4:20-cv-04192-LLP |
| *Plaintiff/ Counter-Claim Defendant,* | **EAST RIVER ELECTRIC POWER COOPERATIVE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF VIDEOTAPED RULE 30(B)(6) DEPOSITION OF EAST RIVER ELECTRIC POWER COOPERATIVE, INC. AND 30(B)(1) DEPOSITON OF TOM BOYKO** |
| v. | |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| *Defendant/ Counter-Claim Plaintiff/ Cross-Claim Defendant,* | **[DISCOVERY PHASE ONE]** |
| and | |
| BASIN ELECTRIC POWER COOPERATIVE, | |
| *Intervenor-Defendant/ Counter-Claim Plaintiff/ Cross-Claim Plaintiff.* | |

Defendant / Counter-Claim Plaintiff / Cross-Claim Defendant East River Electric

Power Cooperative, Inc. ("East River"), pursuant to Fed. R. Civ. P. 26, objects and

responds to Dakota Energy Cooperative, Inc.'s ("Dakota" or "Dakota Energy") Notice of

Videotaped Rule 30(b)(6) Deposition of East River and 30(b)(1) Deposition of Tom

Boyko (the "Notice") and to the topics set forth in Exhibit A to the Notice as follows:

1

## GENERAL OBJECTIONS TO THE NOTICE

1.       East River objects to the location of the deposition set forth in the Notice. East River also objects to the date and time of the deposition set forth in the Notice, as it conflicts with the date and time set forth in Dakota's deposition notice to James Ryken. East River will meet and confer with Dakota to discuss the location, date/time, and format (*i.e.*, virtual or in person) of the deposition.

2.       East River objects to the Notice to the extent Dakota seeks information or seeks to impose requirements beyond the scope of Phase One discovery ordered in this action.  (*See* Dkt. No. 57.)

3.       East River objects to the Notice to the extent Dakota seeks information that is not known or reasonably available to East River or seeks to impose a requirement upon East River to search for information beyond that which is required by the Federal Rules of Civil Procedure.

4.       East River objects to the Notice to the extent Dakota seeks information already in Dakota's possession, custody, or control, or information available to Dakota from a public, third party, or other source that Dakota could obtain as easily as East River.

5.       East River's discovery, review, and investigation of the claims made in this litigation is ongoing.  East River reserves the right to supplement, revise, amend, and/or correct its objections and responses to the Notice and to the specific topics if and when additional, different, or more accurate information becomes available.

6.       East River will respond to the specific topics as it interprets and

2

understands them.  East River reserves the right to supplement its objections and responses if Dakota subsequently asserts an interpretation of any topic that differs from East River's understanding.

## RESPONSES AND OBJECTIONS TO 30(b)(6) TOPICS

1.      East River's knowledge, understanding, or interpretation of the documents that East River contends governs the relationship between Dakota Energy and East River, including the reasons or bases for East River's position or contention.

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  (*See, e.g.*, Transcript of May 21, 2021 Hearing at 13:8-9, 14:7-10 (Judge Piersol's comments).) East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge or understanding of the documents that East River contends governs the relationship between Dakota Energy and East River, including the reasons or bases for East River's position or contention.

2.      Any discussion, whether oral or in writing, involving East River and any lender regarding any actual, potential, or proposed withdrawal or the terms of any actual, potential, or proposed withdrawal of any member from East River or Basin Electric.

**Response:**  East River objects to this Topic to the extent it seeks information that was expressly found by both Judge Piersol (Dkt. No. 57 § 5) and Magistrate Judge Duffy (Dkt. Nos. 70 § A, 72 § A) to be outside the scope of Phase One discovery.  East River further objects to this Topic on the grounds that East River's communications with lenders are not relevant to the claims and defenses asserted in this case.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 2 to the extent such communications "are relevant and . . . are related to withdrawal or termination of a member," consistent with Magistrate Judge Duffy's August 27, 2021 Order (the "August 27 Order").

3.      East River's loan agreements or covenants between East River and any lender, including but not limited to the Notes, as defined in the Wholesale Power Contract ("WPC") between East River and Dakota Energy.

**Response:**  East River objects to this Topic to the extent it seeks information that was expressly found by both Judge Piersol (Dkt. No. 57 § 5) and Magistrate Judge Duffy (Dkt. Nos. 70 § A, 72 § A) to be outside the scope of Phase One discovery.  East River further objects to this Topic on the grounds that East River's agreements with third parties are not relevant to the claims and defenses asserted in this case.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 3 to the extent such loan documents "are relevant and . . . are related to withdrawal or termination of a member," consistent with the August 27 Order.

4.      East River's position or contention regarding whether East River's members are permitted to withdraw from membership in East River or Basin Electric and on what terms, including the reasons or bases for East River's position or contention.

**Response:**  East River objects to this Topic to the extent it seeks information regarding "on what terms" an East River member might be permitted to withdraw from membership on the grounds that (1) it is beyond the scope of Phase One discovery and not relevant to the claims and defenses asserted in this case; (2) it seeks information regarding hypothetical terms that might in the future be prescribed by an East River

4

Board of Directors should a member meet all its contractual obligations to East River and seek to withdraw; and (3) such hypothetical terms are not known or reasonably available within East River.  As to a potential withdrawal of a member from Basin Electric Power Cooperative ("Basin"), East River objects that this Topic seeks information that is not known or reasonably available within East River.  East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's position or contention regarding whether East River's members are permitted to withdraw from membership in East River, including the reasons or bases for East River's position or contention.

5.      East River's knowledge, understanding, or interpretation of Section 14 of the Wholesale Power Contract ("WPC") between East River and Dakota Energy.

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects to this Topic on the grounds that Section 14 of the WPC is not relevant to the claims and defenses asserted in this case.  East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge or understanding of Section 14 of the WPC between East River and Dakota.

6.     East River's knowledge, understanding, or interpretation of its Bylaws pertaining to member withdrawal, including but not limited to Article I, Section 5(a) which states that a "member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative."

**Response:** East River objects to this Topic on the grounds that contract

interpretation is a question of law and solely within the province of the Court.  East River

further objects to this Topic to the extent it seeks information protected by the attorney-

client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to East River's knowledge or understanding of its

Bylaws pertaining to member withdrawal, including but not limited to Article I, Section

5(a), which states that a "member may withdraw from membership upon compliance with

such equitable terms and conditions as the Board of Directors may prescribe, provided,

however, that no member shall be permitted to withdraw until it has met all contractual

obligations to the Cooperative."

7.     East River's position or contention regarding the specific equitable terms and conditions, if any, that East River can or may prescribe in connection with Dakota Energy's actual or potential withdrawal from East River.

**Response:** East River objects to this Topic on the grounds that it is beyond the

scope of Phase One discovery and not relevant to the claims or defenses asserted in this

case.  East River further objects to this Topic on the grounds that it concerns hypothetical

terms that might in the future be prescribed by an East River Board of Directors should

Dakota meet all its contractual obligations to East River and seek to withdraw, and such

hypothetical terms are not currently known or reasonably available within East River. East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 7.

8.    East River's knowledge, understanding, or interpretation of the seven cooperative principles and how these principles apply to any actual, potential, or proposed request from an East River member to withdraw from membership in East River or Basin Electric.

**Response:**  East River objects to this Topic to the extent it seeks information that was expressly found by both Judge Piersol (Dkt. No. 57 § 5) and Magistrate Judge Duffy (Dkt. Nos. 70 § B, 72 § B) to be outside the scope of Phase One discovery.  East River further objects that the seven cooperative principles are not relevant to the claims and defenses asserted in this case.  East River further objects that this Topic is vague, uncertain, ambiguous, speculative, and fails to state with reasonable particularity the matters for examination, thereby preventing East River from being able to adequately prepare a witness to respond to the Topic.  East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 8.

9.    East River's knowledge, understanding, or interpretation of any early termination rights or options under Dakota Energy's WPC with East River or any similar agreement East River has with any other East River member. This includes, but is not limited to, the statement in the Supplemental Report of the Parties' Planning Meeting that

7

"East River's position is that the Wholesale Power Contract does not provide for early termination …"

**Response:** East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court. East River further objects that the phrase "or any similar agreement" is vague, uncertain, ambiguous, and fails to state with reasonable particularity the matters for examination. East River interprets this phrase to mean a WPC between East River and an East River member that is substantially similar to the East River-Dakota WPC. East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge or understanding of any early termination rights or options under Dakota's WPC with East River, including but not limited to, the statement in the Supplemental Report of the Parties' Planning Meeting that "East River's position is that the Wholesale Power Contract does not provide for early termination and Dakota Energy is not permitted to withdraw from East River prior to fulfilling its obligations under the Wholesale Power Contract."

10. East River's understanding or interpretation of any early termination rights or options under the WPC (or similar contract for the sale and purchase of electricity) between East River and Basin Electric.

**Response:** East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court. East River further objects to this Topic on the grounds that the WPC between East River and Basin

8

is not relevant to the claims and defenses asserted in this case.  East River also objects to the Topic as the phrase "or similar contract for the sale and purchase of electricity" is vague, uncertain, ambiguous, and fails to state with reasonable particularity the matters for examination, thereby preventing East River from being able to adequately prepare a witness to respond to the Topic.  East River interprets this to mean the WPC between East River and Basin.  East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states it will produce Tom Boyko to testify as to East River's understanding of any early termination rights or options under the WPC between East River and Basin.

11.   East River's knowledge of Basin Electric's Board Policy No. 15, including but not limited to, the reasoning for distinguishing between Basin Electric Class C members purchasing power from Basin Electric Class A members that have a Contract Rate of Delivery with Basin and Basin Electric Class C members purchasing power from Basin Electric Class A members that have an all-requirements contract with Basin.

**Response:**  East River objects to this Topic on the grounds that Basin's Board Policy No. 15 is not relevant to the claims and defenses asserted in this case, as that is a board policy of a separate entity, not of East River.  East River further objects that it cannot and will not testify as to the "reasoning" behind Basin's decision to distinguish between its Class A and Class C members with respect to Basin's Board Policy No. 15.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge of Board Policy No. 15.

9

12.     Whether any member of East River has requested to withdraw from membership in East River and/or obtain equitable terms and conditions (including especially any buyout number) for exit, and if so, whether and how equitable terms and conditions (including especially any buyout number) for exit were determined for that member.

**Response:**  East River objects to this Topic to the extent it exceeds the scope of

Phase One discovery and is not relevant to the claims and defenses asserted in this case.

East River also objects to this Topic to the extent it seeks information protected by the

attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to Topic No. 12.

13.     East River's response to Dakota Energy's Board Resolution No. 2018-02. This topic includes, but is not limited to, the reasoning underlying Jim Ryken's letter dated March 7, 2019, on behalf of East River, responding to Dakota Energy's Board Resolution No. 2018-02, and stating that the Wholesale Power Contract "between our two cooperatives does not provide for a buy-out. As a result, we must decline your request."

**Response:**  East River objects to this Topic to the extent it seeks information

protected by the attorney-client privilege, the work product doctrine, or any other

applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce James Ryken to testify as to Topic No. 13.

14.     East River's understanding of the Board Resolution adopted by Basin at a meeting on February 13, 2019 that was circulated to all Basin Class A members under cover letter signed by Paul Sukut on February 15, 2019.

**Response:**  East River objects to this Topic to the extent it exceeds the scope of

Phase One discovery and is not relevant to the claims and defenses asserted in this case.

East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 14.

15.    East River's knowledge of, response to, or understanding of the withdrawal or requested withdrawal of any member of Tri-State Generation & Transmission Association, Inc., including Kit Carson Electric Cooperative, Delta-Montrose Electric Association, United Power, Inc., and La Plata Electric Association, Inc.

**Response:** East River objects to this Topic to the extent it exceeds the scope of Phase One discovery and is not relevant to the claims and defenses asserted in this case. East River further objects to this Topic to the extent it seeks information that is not known or reasonably available within East River.  East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 15.

16.    East River's communications with any third parties regarding Dakota Energy's actual or potential withdrawal from East River.

**Response:** East River objects to this Topic to the extent it exceeds the scope of Phase One discovery and is not relevant to the claims and defenses asserted in this case. East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 16.

17.     East River's understanding of any duties (express or implied) that it owes to Dakota Energy under the terms of the WPC, as well as the bases for that understanding.

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 17.

18.     The factual support or bases for East River's Affirmative Defenses to the Complaint.

**Response:**  East River states that it will produce Tom Boyko to testify as to Topic No. 18.

19.     Actions, if any, by the East River Board of Directors to evaluate its rights and obligations under East River's WPC with Basin, including opportunities for pursuing power supply options that would reduce or stabilize the cost of purchasing power supplied to the members of East River.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.  East River further objects that this Topic is overly broad and not limited in time or scope, and not proportional to the needs of the action as required by Rule 26.  East River also objects to this Topic to the extent it seeks

information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 19.

20.      The systems, databases, data repositories, processes, and methods that have been or are being used by East River to record, store, analyze, retrieve, retain or keep track of information relating to Dakota's Discovery Requests or any of Your discovery obligations in this matter.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.  East River further objects to this Topic to the extent it seeks information protected by the work product doctrine or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 20.

21.      The location of all data repositories containing information relating to Dakota's Discovery Requests or any of Your discovery obligations in this matter.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 21.

22.      East River's email management system, including but not limited to its policies and procedures regarding the preservation, monitoring, and privacy protections

for any email communications stored on its system or that are stored by third parties on its behalf.

**Response:**  East River objects to this Topic on the grounds that it seeks

information that is beyond the scope of Phase One discovery and is not relevant to the

claims or defenses asserted in this case.

Based on the foregoing objections, East River states that it will not produce a

witness to testify as to Topic No. 22.

Dated September 8, 2021.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

*/s/ Michael L. Luce*
Michael L. Luce
Dana Van Beek Palmer
R. Alan Peterson
Cheri S. Raymond
110 N. Minnesota Avenue, Suite 400
Sioux Falls, SD 57104
Telephone:  (605) 332-5999
E-mails: mluce@lynnjackson.com
            dpalmer@lynnjackson.com
            rpeterson@lynnjackson.com
            craymond@lynnjackson.com
and

James A. Orr (*pro hac vice*)
Tracey K. Ledbetter (pro hac vice)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: (404) 853-8000
E-mails: jamesorr@eversheds-sutherland.com
            traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendant East River Electric
Power Cooperative, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2021, a true and correct

copy of the foregoing document:

- **EAST RIVER ELECTRIC POWER COOPERATIVE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF VIDEOTAPED RULE 30(B)(6) DEPOSITION OF EAST RIVER ELECTRIC POWER COOPERATIVE, INC. AND 30(B)(1) DEPOSITON OF TOM BOYKO – [DISCOVERY PHASE ONE]**

has been served electronically via e-mail upon the following:

Lee Schoenbeck
Joseph Erickson
Schoenbeck Law, PC
P.O. Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD  57201
Telephone: (605) 886-0010
E-mails: lee@schoenbecklaw.com
     joe@schoenbecklaw.com
*Attorneys for Dakota Energy*

Joel S. Neckers
Peter W. Herzog III
Webster C. Cash, III
Matthew H. Jasilli
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
Telephone: (303) 244-1800
E-mails: neckers@wtotrial.com
     pherzog@wtotrial.com
     cash@wtotrial.com
     jasilli@wtotrial.com
*Attorneys for Dakota Energy (PHV)*

Meredith A. Moore
Cutler Law Firm, LLP
140 N. Phillips Ave., 4th Floor
P.O. Box 1400
Sioux Falls, SD  57101-1400
Telephone: (605) 335-4995
E-mail: meredithm@cutlerlawfirm.com
*Attorney for Basin Electric*

J. Peter Coll, Jr.
Orrick Herrington & Sutcliffe
51 West 52nd Street
New York, NY  10019-6142
Telephone: (212) 506-5000
E-mail: pcoll@orrick.com
*Attorney for Basin Electric (PHV)*

Jonathan A. Direnfeld
Orrick Herrington & Sutcliffe
1152 15th Street, NW
Washington, D.C.  20005-1706
Telephone: (202) 339-8400

Matthew D. LaBrie
Orrick Herrington & Sutcliffe
222 Berkeley Street, Ste. 2000
Boston, MA  02116
Telephone: (617) 880-1800

15

E-mail: jdirenfeld@orrick.com          E-mail: mlabrie@orrick.com
*Attorney for Basin Electric (PHV)*          *Attorney for Basin Electric (PHV)*


*/s/ Michael L. Luce*
Michael L. Luce

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., | 4:20-cv-04192-LLP |
| *Plaintiff/*<br>*Counter-Claim Defendant,* | **EAST RIVER ELECTRIC POWER COOPERATIVE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF VIDEOTAPED RULE 30(B)(6) DEPOSITION OF EAST RIVER ELECTRIC POWER COOPERATIVE, INC. AND 30(B)(1) DEPOSITON OF JAMES RYKEN** |
| v. | |
| EAST RIVER ELECTRIC POWER COOPERATIVE, INC., | |
| *Defendant/*<br>*Counter-Claim Plaintiff/*<br>*Cross-Claim Defendant,* | **[DISCOVERY PHASE ONE]** |
| and | |
| BASIN ELECTRIC POWER COOPERATIVE, | |
| *Intervenor-Defendant/*<br>*Counter-Claim Plaintiff/*<br>*Cross-Claim Plaintiff.* | |

Defendant / Counter-Claim Plaintiff / Cross-Claim Defendant East River Electric

Power Cooperative, Inc. ("East River"), pursuant to Fed. R. Civ. P. 26, objects and

responds to Dakota Energy Cooperative, Inc.'s ("Dakota" or "Dakota Energy") Notice of

Videotaped Rule 30(b)(6) Deposition of East River and 30(b)(1) Deposition of James

Ryken (the "Notice") and to the topics set forth in Exhibit A to the Notice as follows:

## <u>GENERAL OBJECTIONS TO THE NOTICE</u>

1.      East River objects to the location of the deposition set forth in the Notice. East River also objects to the date and time of the deposition set forth in the Notice, as it conflicts with the date and time set forth in Dakota's deposition notice to Tom Boyko. East River will meet and confer with Dakota to discuss the location, date/time, and format (*i.e.*, virtual or in person) of the deposition.

2.      East River objects to the Notice to the extent Dakota seeks information or seeks to impose requirements beyond the scope of Phase One discovery ordered in this action.  (*See* Dkt. No. 57.)

3.      East River objects to the Notice to the extent Dakota seeks information that is not known or reasonably available to East River or seeks to impose a requirement upon East River to search for information beyond that which is required by the Federal Rules of Civil Procedure.

4.      East River objects to the Notice to the extent Dakota seeks information already in Dakota's possession, custody, or control, or information available to Dakota from a public, third party, or other source that Dakota could obtain as easily as East River.

5.      East River's discovery, review, and investigation of the claims made in this litigation is ongoing.  East River reserves the right to supplement, revise, amend, and/or correct its objections and responses to the Notice and to the specific topics if and when additional, different, or more accurate information becomes available.

6.      East River will respond to the specific topics as it interprets and

understands them.  East River reserves the right to supplement its objections and

responses if Dakota subsequently asserts an interpretation of any topic that differs from

East River's understanding.

## RESPONSES AND OBJECTIONS TO 30(b)(6) TOPICS

1.     East River's knowledge, understanding, or interpretation of the documents that East River contends governs the relationship between Dakota Energy and East River, including the reasons or bases for East River's position or contention.

**Response:**  East River objects to this Topic on the grounds that contract

interpretation is a question of law and solely within the province of the Court.  (*See, e.g.*,

Transcript of May 21, 2021 Hearing at 13:8-9, 14:7-10 (Judge Piersol's comments).)

East River further objects to this Topic to the extent it seeks information protected by the

attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to East River's knowledge or understanding of the

documents that East River contends governs the relationship between Dakota Energy and

East River, including the reasons or bases for East River's position or contention.

2.     Any discussion, whether oral or in writing, involving East River and any lender regarding any actual, potential, or proposed withdrawal or the terms of any actual, potential, or proposed withdrawal of any member from East River or Basin Electric.

**Response:**  East River objects to this Topic to the extent it seeks information that

was expressly found by both Judge Piersol (Dkt. No. 57 § 5) and Magistrate Judge Duffy

(Dkt. Nos. 70 § A, 72 § A) to be outside the scope of Phase One discovery.  East River

further objects to this Topic on the grounds that East River's communications with

lenders are not relevant to the claims and defenses asserted in this case.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 2 to the extent such communications "are relevant and . . . are related to withdrawal or termination of a member," consistent with Magistrate Judge Duffy's August 27, 2021 Order (the "August 27 Order").

3.      East River's loan agreements or covenants between East River and any lender, including but not limited to the Notes, as defined in the Wholesale Power Contract ("WPC") between East River and Dakota Energy.

**Response:**  East River objects to this Topic to the extent it seeks information that was expressly found by both Judge Piersol (Dkt. No. 57 § 5) and Magistrate Judge Duffy (Dkt. Nos. 70 § A, 72 § A) to be outside the scope of Phase One discovery.  East River further objects to this Topic on the grounds that East River's agreements with third parties are not relevant to the claims and defenses asserted in this case.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 3 to the extent such loan documents "are relevant and . . . are related to withdrawal or termination of a member," consistent with the August 27 Order.

4.      East River's position or contention regarding whether East River's members are permitted to withdraw from membership in East River or Basin Electric and on what terms, including the reasons or bases for East River's position or contention.

**Response:**  East River objects to this Topic to the extent it seeks information regarding "on what terms" an East River member might be permitted to withdraw from membership on the grounds that (1) it is beyond the scope of Phase One discovery and not relevant to the claims and defenses asserted in this case; (2) it seeks information regarding hypothetical terms that might in the future be prescribed by an East River

4

Board of Directors should a member meet all its contractual obligations to East River and seek to withdraw; and (3) such hypothetical terms are not known or reasonably available within East River.  As to a potential withdrawal of a member from Basin Electric Power Cooperative ("Basin"), East River objects that this Topic seeks information that is not known or reasonably available within East River.  East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's position or contention regarding whether East River's members are permitted to withdraw from membership in East River, including the reasons or bases for East River's position or contention.

5.      East River's knowledge, understanding, or interpretation of Section 14 of the Wholesale Power Contract ("WPC") between East River and Dakota Energy.

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects to this Topic on the grounds that Section 14 of the WPC is not relevant to the claims and defenses asserted in this case.  East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge or understanding of Section 14 of the WPC between East River and Dakota.

6.     East River's knowledge, understanding, or interpretation of its Bylaws pertaining to member withdrawal, including but not limited to Article I, Section 5(a) which states that a "member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative."

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge or understanding of its Bylaws pertaining to member withdrawal, including but not limited to Article I, Section 5(a), which states that a "member may withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative."

7.     East River's position or contention regarding the specific equitable terms and conditions, if any, that East River can or may prescribe in connection with Dakota Energy's actual or potential withdrawal from East River.

**Response:**  East River objects to this Topic on the grounds that it is beyond the scope of Phase One discovery and not relevant to the claims or defenses asserted in this case.  East River further objects to this Topic on the grounds that it concerns hypothetical terms that might in the future be prescribed by an East River Board of Directors should Dakota meet all its contractual obligations to East River and seek to withdraw, and such

hypothetical terms are not currently known or reasonably available within East River. East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 7.

8.     East River's knowledge, understanding, or interpretation of the seven cooperative principles and how these principles apply to any actual, potential, or proposed request from an East River member to withdraw from membership in East River or Basin Electric.

**Response:**  East River objects to this Topic to the extent it seeks information that was expressly found by both Judge Piersol (Dkt. No. 57 § 5) and Magistrate Judge Duffy (Dkt. Nos. 70 § B, 72 § B) to be outside the scope of Phase One discovery.  East River further objects that the seven cooperative principles are not relevant to the claims and defenses asserted in this case.  East River further objects that this Topic is vague, uncertain, ambiguous, speculative, and fails to state with reasonable particularity the matters for examination, thereby preventing East River from being able to adequately prepare a witness to respond to the Topic.  East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 8.

9.     East River's knowledge, understanding, or interpretation of any early termination rights or options under Dakota Energy's WPC with East River or any similar agreement East River has with any other East River member. This includes, but is not limited to, the statement in the Supplemental Report of the Parties' Planning Meeting that

"East River's position is that the Wholesale Power Contract does not provide for early termination …"

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects that the phrase "or any similar agreement" is vague, uncertain, ambiguous, and fails to state with reasonable particularity the matters for examination.  East River interprets this phrase to mean a WPC between East River and an East River member that is substantially similar to the East River-Dakota WPC.  East River also objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to East River's knowledge or understanding of any early termination rights or options under Dakota's WPC with East River, including but not limited to, the statement in the Supplemental Report of the Parties' Planning Meeting that "East River's position is that the Wholesale Power Contract does not provide for early termination and Dakota Energy is not permitted to withdraw from East River prior to fulfilling its obligations under the Wholesale Power Contract."

10.    East River's understanding or interpretation of any early termination rights or options under the WPC (or similar contract for the sale and purchase of electricity) between East River and Basin Electric.

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects to this Topic on the grounds that the WPC between East River and Basin

8

is not relevant to the claims and defenses asserted in this case.  East River also objects to

the Topic as the phrase "or similar contract for the sale and purchase of electricity" is

vague, uncertain, ambiguous, and fails to state with reasonable particularity the matters

for examination, thereby preventing East River from being able to adequately prepare a

witness to respond to the Topic.  East River interprets this to mean the WPC between

East River and Basin.  East River further objects to this Topic to the extent it seeks

information protected by the attorney-client privilege, the work product doctrine, or any

other applicable privilege.

Subject to and without waiving the foregoing objections, East River states it will

produce Tom Boyko to testify as to East River's understanding of any early termination

rights or options under the WPC between East River and Basin.

11.    East River's knowledge of Basin Electric's Board Policy No. 15, including
but not limited to, the reasoning for distinguishing between Basin Electric Class C
members purchasing power from Basin Electric Class A members that have a Contract
Rate of Delivery with Basin and Basin Electric Class C members purchasing power from
Basin Electric Class A members that have an all-requirements contract with Basin.

**Response:**  East River objects to this Topic on the grounds that Basin's Board

Policy No. 15 is not relevant to the claims and defenses asserted in this case, as that is a

board policy of a separate entity, not of East River.  East River further objects that it

cannot and will not testify as to the "reasoning" behind Basin's decision to distinguish

between its Class A and Class C members with respect to Basin's Board Policy No. 15.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to East River's knowledge of Board Policy No. 15.

12.    Whether any member of East River has requested to withdraw from membership in East River and/or obtain equitable terms and conditions (including especially any buyout number) for exit, and if so, whether and how equitable terms and conditions (including especially any buyout number) for exit were determined for that member.

**Response:**  East River objects to this Topic to the extent it exceeds the scope of

Phase One discovery and is not relevant to the claims and defenses asserted in this case.

East River also objects to this Topic to the extent it seeks information protected by the

attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to Topic No. 12.

13.    East River's response to Dakota Energy's Board Resolution No. 2018-02. This topic includes, but is not limited to, the reasoning underlying Jim Ryken's letter dated March 7, 2019, on behalf of East River, responding to Dakota Energy's Board Resolution No. 2018-02, and stating that the Wholesale Power Contract "between our two cooperatives does not provide for a buy-out. As a result, we must decline your request."

**Response:**  East River objects to this Topic to the extent it seeks information

protected by the attorney-client privilege, the work product doctrine, or any other

applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce James Ryken to testify as to Topic No. 13.

14.    East River's understanding of the Board Resolution adopted by Basin at a meeting on February 13, 2019 that was circulated to all Basin Class A members under cover letter signed by Paul Sukut on February 15, 2019.

**Response:**  East River objects to this Topic to the extent it exceeds the scope of

Phase One discovery and is not relevant to the claims and defenses asserted in this case.

East River further objects to this Topic to the extent it seeks information protected by the

attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to Topic No. 14.

15.     East River's knowledge of, response to, or understanding of the withdrawal
or requested withdrawal of any member of Tri-State Generation & Transmission
Association, Inc., including Kit Carson Electric Cooperative, Delta-Montrose Electric
Association, United Power, Inc., and La Plata Electric Association, Inc.

**Response:**  East River objects to this Topic to the extent it exceeds the scope of

Phase One discovery and is not relevant to the claims and defenses asserted in this case.

East River further objects to this Topic to the extent it seeks information that is not

known or reasonably available within East River.  East River also objects to this Topic to

the extent it seeks information protected by the attorney-client privilege, the work

product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it

will produce Tom Boyko to testify as to Topic No. 15.

16.     East River's communications with any third parties regarding Dakota
Energy's actual or potential withdrawal from East River.

**Response:**  East River objects to this Topic to the extent it exceeds the scope of

Phase One discovery and is not relevant to the claims and defenses asserted in this case.

East River further objects to this Topic to the extent it seeks information protected by the

attorney-client privilege, the work product doctrine, the joint defense or common interest

privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 16.

17.     East River's understanding of any duties (express or implied) that it owes to Dakota Energy under the terms of the WPC, as well as the bases for that understanding.

**Response:**  East River objects to this Topic on the grounds that contract interpretation is a question of law and solely within the province of the Court.  East River further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, East River states that it will produce Tom Boyko to testify as to Topic No. 17.

18.     The factual support or bases for East River's Affirmative Defenses to the Complaint.

**Response:**  East River states that it will produce Tom Boyko to testify as to Topic No. 18.

19.     Actions, if any, by the East River Board of Directors to evaluate its rights and obligations under East River's WPC with Basin, including opportunities for pursuing power supply options that would reduce or stabilize the cost of purchasing power supplied to the members of East River.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.  East River further objects that this Topic is overly broad and not limited in time or scope, and not proportional to the needs of the action as required by Rule 26.  East River also objects to this Topic to the extent it seeks

information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 19.

20.    The systems, databases, data repositories, processes, and methods that have been or are being used by East River to record, store, analyze, retrieve, retain or keep track of information relating to Dakota's Discovery Requests or any of Your discovery obligations in this matter.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.  East River further objects to this Topic to the extent it seeks information protected by the work product doctrine or any other applicable privilege.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 20.

21.    The location of all data repositories containing information relating to Dakota's Discovery Requests or any of Your discovery obligations in this matter.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 21.

22.    East River's email management system, including but not limited to its policies and procedures regarding the preservation, monitoring, and privacy protections

13

for any email communications stored on its system or that are stored by third parties on its behalf.

**Response:**  East River objects to this Topic on the grounds that it seeks information that is beyond the scope of Phase One discovery and is not relevant to the claims or defenses asserted in this case.

Based on the foregoing objections, East River states that it will not produce a witness to testify as to Topic No. 22.

Dated September 8, 2021.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

*/s/ Michael L. Luce*
Michael L. Luce
Dana Van Beek Palmer
R. Alan Peterson
Cheri S. Raymond
110 N. Minnesota Avenue, Suite 400
Sioux Falls, SD 57104
Telephone:  (605) 332-5999
E-mails: mluce@lynnjackson.com
          dpalmer@lynnjackson.com
          rpeterson@lynnjackson.com
          craymond@lynnjackson.com
and

James A. Orr (*pro hac vice*)
Tracey K. Ledbetter (pro hac vice)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: (404) 853-8000
E-mails: jamesorr@eversheds-sutherland.com
          traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendant East River Electric Power Cooperative, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 8, 2021, a true and correct

copy of the foregoing document:

- **EAST RIVER ELECTRIC POWER COOPERATIVE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF VIDEOTAPED RULE 30(B)(6) DEPOSITION OF EAST RIVER ELECTRIC POWER COOPERATIVE, INC. AND 30(B)(1) DEPOSITON OF JAMES RYKEN – [DISCOVERY PHASE ONE]**

has been served electronically via e-mail upon the following:

Lee Schoenbeck
Joseph Erickson
Schoenbeck Law, PC
P.O. Box 1325
Redlin Art Center
1200 Mickelson Dr., #310
Watertown, SD  57201
Telephone: (605) 886-0010
E-mails: lee@schoenbecklaw.com
             joe@schoenbecklaw.com
*Attorneys for Dakota Energy*

Joel S. Neckers
Peter W. Herzog III
Webster C. Cash, III
Matthew H. Jasilli
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
Telephone: (303) 244-1800
E-mails: neckers@wtotrial.com
             pherzog@wtotrial.com
             cash@wtotrial.com
             jasilli@wtotrial.com
*Attorneys for Dakota Energy (PHV)*

Meredith A. Moore
Cutler Law Firm, LLP
140 N. Phillips Ave., 4th Floor
P.O. Box 1400
Sioux Falls, SD  57101-1400
Telephone: (605) 335-4995
E-mail: meredithm@cutlerlawfirm.com
*Attorney for Basin Electric*

J. Peter Coll, Jr.
Orrick Herrington & Sutcliffe
51 West 52nd Street
New York, NY  10019-6142
Telephone: (212) 506-5000
E-mail: pcoll@orrick.com
*Attorney for Basin Electric (PHV)*

Jonathan A. Direnfeld
Orrick Herrington & Sutcliffe
1152 15th Street, NW
Washington, D.C.  20005-1706
Telephone: (202) 339-8400
E-mail: jdirenfeld@orrick.com

Matthew D. LaBrie
Orrick Herrington & Sutcliffe
222 Berkeley Street, Ste. 2000
Boston, MA  02116
Telephone: (617) 880-1800
E-mail: mlabrie@orrick.com

15

*Attorney for Basin Electric (PHV)*        *Attorney for Basin Electric (PHV)*

*/s/ Michael L. Luce*
Michael L. Luce

# EXHIBIT C

```
 1              UNITED STATES DISTRICT COURT

 2              DISTRICT OF SOUTH DAKOTA

 3                 SOUTHERN DIVISION

 4   * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                      *
 5   DAKOTA ENERGY COOPERATIVE, INC., *      4:20-cv-4192-LLP
                                      *
 6                   Plaintiff,       *     STATUS CONFERENCE
     v.                               *
 7                                    *
     EAST RIVER ELECTRIC POWER        *
 8   COOPERATIVE, INC.,               *
                                      *
 9                   Defendant,       *
     v.                               *
10                                    *
     BASIN ELECTRIC POWER             *
11   COOPERATIVE,                     *
                                      *
12                   Intervenor.      *
                                      *
13   * * * * * * * * * * * * * * * * * * * * * * * * * * *
     TIME AND PLACE:      May 24, 2021
14                        U.S. District Court
                          400 S. Phillips
15                        Sioux Falls, SD  57104

16   BEFORE:              HON. LAWRENCE L. PIERSOL (in person)
                          U.S. District Court
17                        400 S. Phillips Ave., Ste. 202
                          Sioux Falls, SD  57104
18
     APPEARANCES:         MR. LEE A. Schoenbeck (in person)
19                          Schoenbeck Law
                            P.O. Box 1325
20                          Watertown, SD 57201
                            (605) 886-0010
21                        ATTORNEY FOR PLAINTIFF
                          Email: lee@schoenbecklaw.com
22
                          MR. PETER W. HERZOG (in person)
23                          Wheeler Trigg O'Donnell LLP
                            211 N. Broadway, Suite 2825
24                          St. Louis, MO 63102
                            (314) 326-4129
25                          Email: pherzog@wtotrial.com
                          ATTORNEY FOR PLAINTIFF
```

1   that are necessary for us to discover, Your Honor.  First of

2   all, the question -- we would seek discovery of East River and

3   have sought discovery of East River, and we would seek

4   deposition testimony on how East River and its board has

5   interpreted the bylaw provision regarding withdraw and how

6   it's interpreted Section 14 of the whole power contract.  We

7   would --

8           **THE COURT:**  What difference does it make to me as to

9   how they interpret it if I'm going to interpret it?

10          **MR. HERZOG:**  Well, you would have to -- you would

11  have to conclude, Your Honor, that it's not -- that it is --

12  that parol evidence is not necessary to interpret it and that

13  it's clear as a matter of law.  And, Your Honor, I would submit

14  to you that, if it were clear as a matter of law, then East

15  River would have filed a motion to dismiss, but they didn't.

16  They filed an answer and now are resisting discovery after

17  having filed an answer and a counterclaim on which we are

18  seeking discovery.  Even their proposal in the Rule 26

19  conference of counsel report that was provided to you,

20  Your Honor, envisions a period of time for discovery on the

21  meaning of the bylaw provision that permits an equitable

22  withdrawal.

23          If it's a legal question, you don't get discovery on

24  a legal question.  That's a question for the Court to decide

25  initially.  But they have proposed that there be discovery on

1    the question of what the bylaw means, and we believe that that

2    is appropriate because we believe that we're entitled to

3    conduct discovery of East River, of its board, and to present

4    to the Court interpretations of the bylaw that are very

5    consistent with the allegation with our interpretation as

6    alleged in our complaint, Your Honor.

7         **THE COURT:** So you're saying is what some board,

8    compromised of a bunch of laypersons, did would be something

9    that the Court should consider in determine what the bylaw

10   says?

11        **MR. HERZOG:** Well, the Court could certainly consider

12   that testimony in determining whether or not the bylaw is

13   ambiguous. I believe that the -- that the case law is fairly

14   settled, that an individual cannot admit a legal interpretation

15   of the document. But I do believe that the fact that -- that

16   members of the board of directors, as they may, may interpret

17   that provision, particularly in the course of dealing, and

18   whether that course of dealing would, therefore, contribute to

19   the -- to the evidence on how that bylaw should be construed.

20        I do think in that circumstance, yes, Your Honor,

21   that would be admissible as a course of dealing. It wouldn't

22   be admissible as an admission against interest as to the legal

23   interpretation of a contract. Of course, that would be your

24   job, Your Honor.

25        **THE COURT:** All right. I'll hear from --

# EXHIBIT D

# In The Matter Of:

*Dakota Energy Cooperative, Inc. v.*
*East River Electric Power Cooperative, Inc., et al.*

---

*Tom Boyko*
*September 20, 2021*
*Rough Draft*

---

*Pat Beck, Court Reporter*

Original File 092021ROUGHDRAFT.txt

Min-U-Script® with Word Index

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 45

1 A   Yes.
2 Q   All right.
3 A   Correct.
4 Q   Did you make notes on any of the documents?
5 A   I might have.  I don't know.  I left -- yeah,
6 maybe.  More than likely, I guess.
7 Q   Where would those documents be now, Mr. Boyko?
8 A   At home.
9 Q   Okay.  Did you make any notes to help yourself
10 get ready to prepare today?
11     MR. ORR: Object to form.
12 Q   (By Mr. Herzog) I mean, other than the ones
13 that you may have written on the documents, did you,
14 you know, take the notice of deposition and make
15 notes?  Did you make notes on a separate piece of
16 paper, anything to help you testify today?
17     MR. ORR: Object to the form.
18 A   No, other than I got a couple notes here I just
19 wrote down.
20 Q   (By Mr. Herzog) Okay.  When did you write those
21 down?
22 A   Just sitting here.
23 Q   When?
24 A   While I was sitting here this morning.
25 Q   Before the deposition started?

Page 46

1 A   No.
2 Q   While -- while we were taking the deposition?
3 A   While we were -- yeah, while we were taking the
4 deposition.
5 Q   Okay.  And what are those notes, Mr. Boyko?
6     MR. ORR: Object to the extent -- Mr. Boyko,
7 I'm just going to object if any of those notes
8 concern attorney/client communications, but if not,
9 you can go ahead and answer.
10     MR. HERZOG: He's referring to them in the
11 deposition, Mr. Orr.
12 Q   (By Mr. Herzog) What do the notes say,
13 Mr. Boyko?
14     MR. ORR: Same objection.
15 A   Actually, it's scribbled, so two -- well, one
16 says typo.  One says contracts 75.  One says no
17 buy-out, one says fulfill contract.
18 Q   (By Mr. Herzog) Okay.  And you made those
19 during the deposition while you were on camera?
20     MR. ORR: I'm going to object to the question
21 to the extent it calls for any disclosure of any
22 attorney/client communication.
23     MR. HERZOG: I mean, it's been waived, Mr. Orr.
24     MR. ORR: No, it hasn't.  I didn't waive it.  I
25 didn't waive any objection.

Page 47

1     MR. HERZOG: The witness did.
2     MR. ORR: No, he didn't.  I asserted the
3 objection.
4     MR. HERZOG: You assert your objection.  That's
5 just specious.
6     MR. ORR: No, it's not.
7     MR. HERZOG: Yes, it is.
8 Q   (By Mr. Herzog) Mr. Boyko --
9     MR. ORR: No, it's not.
10     MR. HERZOG: Don't argue with me.
11     MR. ORR: I'm not.  I'm instructing the witness
12 that if your notes reflect attorney/client
13 communications you are not to discuss those at
14 this deposition.
15 Q   (By Mr. Herzog) Did -- you just testified,
16 Mr. Boyko, that you made those notes during this
17 deposition, didn't you?
18 A   Well, right at the beginning.  I don't know if
19 we were on video or not.
20 Q   But you made those notes to help you testify at
21 deposition; right?
22 A   It wasn't to help.  It was just -- I was just
23 sitting here.
24 Q   Well, what were you making them for, Mr. Boyko?
25 A   Sitting here kind of nervous.  Okay?

Page 48

1 Q   Right.  And I got no problem with that.
2 But that -- and, you know, witnesses do that all the
3 time, Mr. Boyko, and they make notes because they
4 don't want to forget something and that's perfectly
5 appropriate.  Is that what -- the purpose for which
6 you were making the notes, making sure you didn't --
7 you didn't forget anything?
8 A   It wasn't so I wouldn't forget anything.  It
9 was just things that were on my mind.
10 Q   Okay.  What was on your mind, sir?
11 A   This deposition.
12 Q   Okay.  So were you making the notes to help you
13 testify in the deposition?
14     MR. ORR: Object to the form of the question.
15 Asked and answered.
16 A   No, not specifically.  I was sitting here,
17 nervous, I wrote some things.  There was no reason.
18 Q   (By Mr. Herzog) All right.  Well, Mr. Boyko, do
19 you have a cell phone?
20 A   Yes, I do.
21 Q   Could you take a picture of those notes for us,
22 sir?
23     MR. ORR: Object to the form of the question.
24 We can take this up on break.  We're not --
25     MR. HERZOG: No, we're not.  No, we're not.  I

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

**Rough Draft**

Tom Boyko
September 20, 2021

Page 49

1 mean, this is absolutely -- I've never seen anything
2 like this. This is so obstructionistic, it's hard
3 to imagine.
4 Q (By Mr. Herzog) Mr. Boyko, do you have a cell
5 phone, sir?
6 A Yes.
7 Q Would you please take a picture of the notes to
8 preserve it?
9 MR. ORR: That's fine.
10 A (Witness complies with request.)
11 Q (By Mr. Herzog) All right.
12 MR. LUCE: Peter, this is Mike Luce. I just
13 want to make clear I have no idea what these notes
14 are. I haven't seen them. But we had a meeting
15 about the executive privilege or attorney/client
16 privilege. I don't know if any of those notes
17 relate to that. So before those are transmitted, I
18 want to make sure on that.
19 MR. HERZOG: Yeah. Mike, we can talk about
20 this offline. I've never seen such conduct in my
21 life where a witness has notes in a deposition that
22 may have been taken in connection with discussions
23 with counsel while the witness was on the stand
24 during a break and now counsel is objecting to the
25 notes on the basis that they may include

Page 50

1 attorney/client privileged communications. I've
2 never seen anything like that.
3 MR. LUCE: You don't have to editorialize. I
4 don't know what you've seen and I don't really care.
5 All I know -- what I care about is we had a private
6 meeting in the middle of the deposition because --
7 to address what you were asking about in terms of an
8 attorney/client privilege. I don't know if he put
9 something down. I didn't ask him to. I haven't
10 seen these notes, but I'm certainly as an attorney
11 not going to permit attorney/client notions, if he
12 writes down Mike Luce said this, I am not going to
13 be doing my job if I don't look at them, so you can
14 editorialize all you want.
15 MR. HERZOG: You know, Mike, enough. I mean,
16 it's just mind boggling what you folks are claiming.
17 MR. ORR: All we're saying is we're going to
18 review these notes. We had a communication which we
19 said we were going to do. We took a break in the
20 deposition. We met with the witness and we
21 discussed in an attorney/client session, we're just
22 saying if these notes reflect attorney/client
23 communications for that meeting, we want to take a
24 look at those before turning them over. He's
25 preserved them, so let's move on.

Page 51

1 MR. HERZOG: Mr. Orr, just so the record is
2 clear, he testified on the video, on the record,
3 that he made the notes during the deposition. And,
4 you know, now we're -- now we're on to something
5 where he's making notes about a communication that
6 may have taken place during the break that he's
7 referring to as he's testifying. He's already
8 testified to what's in the notes.
9 MR. ORR: Okay. Then let's just --
10 MR. HERZOG: It's just an absolute bizarre
11 series of events.
12 Q (By Mr. Herzog) All right. I'm going to share
13 my screen again with you, sir. And this is number
14 14. Do you have that in front of you, sir, or do
15 you want to just --
16 A I have no idea where it's at.
17 Q Well, I thought that Mr. Luce was going to
18 provide you exhibits in printed form. You're
19 welcome to follow along with me on the screen, if
20 you'd like, sir. Let me know when you have it in
21 front of you, please.
22 MR. LUCE: Tom, I put numbers on the right on
23 little sticker notes corresponding with that index,
24 so you should be able to see those.
25 THE WITNESS: I got it.

Page 52

1 Q (By Mr. Herzog) This is number 14, which, for
2 the record, in the lower right-hand corner has the
3 numbers 31DEC Member and 32DEC Member. Do you have
4 that?
5 A Yes.
6 Q Okay. So I'm showing you now on the screen an
7 e-mail from Mr. Studer dated November 19, 2020, at
8 6:37. Do you see that? I'm hovering over it with
9 my cursor.
10 A No.
11 Q Do you see on November 19, 2020, at 6:37 p.m.
12 Chris Studer wrote? Do you see that, about
13 two-thirds of the way down the page labeled 31DEC
14 Member?
15 A I see it here, yes.
16 Q Okay. And it says, Thank you all so much for
17 joining the call tonight. Do you see that?
18 A Yes.
19 Q Were you involved in that call?
20 A No.
21 Q Did Mr. Studer make you aware of that call?
22 A He told me about it afterwards.
23 Q Okay. And what did he tell you about it?
24 A That they had a call, I guess.
25 Q That who had a call?

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 53

1  A  I don't recall.  That Chris had a call with
2  some Dakota members.
3  Q  Which Dakota members?
4  A  I don't recall who he said.  I'm sure he
5  probably said Pat and Jim Probst, but I don't recall
6  specifically.
7  Q  You understand that you're supposed to be
8  prepared to testify about this information today?
9  Do you understand that?
10     MR. ORR: Object to the form of the question.
11  A  I understand.
12  Q  (By Mr. Herzog) Okay.  Do you have any
13  documents available to you that would allow you to
14  tell us who was on the call?
15  A  I do not.
16  Q  Okay.
17  A  Not that I'm aware of, I guess.
18  Q  Okay.  Did you ask Mr. Studer whether he had
19  any documents that might allow you to be able to
20  testify about that call?
21  A  The specific call?  No.
22  Q  Okay.  Did you authorize this call, sir, by
23  Mr. Studer?
24     MR. ORR: Object to the form of the question.
25  A  Specifically, no.

Page 54

1  Q  (By Mr. Herzog) Did the East River board
2  authorize this call by Mr. Studer?
3  A  Specifically, no.
4  Q  All right.  Did you consult with anyone -- did
5  you, sir, consult with anyone at Basin Electric
6  about this phone call?
7  A  Not that I recall, no.
8  Q  Do you know whether Mr. Studer consulted with
9  anyone at Basin Electric about this phone call?
10  A  I have no idea.
11  Q  Do you know whether Mr. Studer had any
12  communications with anyone at Basin Electric
13  regarding his communications with Pat Doak and
14  others?
15  A  I couldn't say.  My guess is he did, but I
16  don't know.
17  Q  Did you ask him in preparation for your
18  deposition here today, sir?
19  A  No.
20  Q  Okay.  Do you know whether Mr. Studer was
21  authorized to offer financial assistance to the
22  group that he was speaking -- the group of members
23  that he was speaking with at Dakota Energy?
24     MR. DIRENFELD: Object to form.
25     MR. ORR: Object to form.  Exceeds the scope of

Page 55

1  phase one.
2  Q  (By Mr. Herzog) You can answer.
3     MR. ORR: Can you explain how it's within the
4  scope of phase one, Counsel?
5     MR. HERZOG: I don't need to explain how it's
6  within the scope of phase one.  Please answer the
7  question.
8  Q  (By Mr. Herzog) Was Mr. Studer authorized to
9  spend East River funds to assist to the group that
10  he was speaking with?
11     MR. ORR: Counsel, we can do this offline.  I
12  know you're -- I don't want to make speaking
13  objections, but there is a limitation on discovery
14  and it's limited to the phase one issues, so...
15  Q  (By Mr. Herzog) You can answer the question,
16  sir.
17     MR. ORR: I'm going to object, Counsel, and I'm
18  happy to go offline and talk about the phase one
19  limitation.
20     MR. HERZOG: Mr. Orr we're not going to go
21  through this.  He can answer the question of whether
22  he was authorized -- whether East River authorized
23  expenditures to try to assist this group in
24  preventing a decision on the question of whether
25  they have a right to withdraw or not.

Page 56

1     MR. ORR: Preventing a decision on whether they
2  have a right to withdraw.  I'm not sure what you're
3  asking about.
4     MR. HERZOG: Well, then object to the form,
5  Mr. Orr.
6     MR. ORR: I'll object to the form.  And I'll --
7  you know, a little leeway here, but we're not -- we
8  are going to object to phase -- questions that go
9  beyond phase one.
10     MR. HERZOG: Was Mr. -- then object to them and
11  then we'll move on.
12  Q  (By Mr. Herzog) So was Mr. Studer authorized by
13  you, Mr. Boyko, to spend East River cooperative
14  money assisting a group to oppose the efforts by
15  Dakota Energy to obtain an exit charge to withdraw
16  from East River?
17     MR. ORR: Object to the form of the question.
18     MR. DIRENFELD: Object to form.
19  Q  (By Mr. Herzog) You can answer.
20  A  Not specifically.
21  Q  Did the board authorize Mr. Studer to make East
22  River expenditures for such a purpose?
23     MR. ORR: Same objection.
24     MR. DIRENFELD: Object to form.
25     MR. ORR: And beyond phase one.

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

**Rough Draft**

Tom Boyko
September 20, 2021

Page 57

1  Q   (By Mr. Herzog) You may answer, Mr. Boyko?
2  A   Not specifically.
3  Q   Okay.  So was Mr. Studer offering to assist
4  with expenditures on his own?  Was that within the
5  scope of his individual authority at East River?
6       MR. ORR: Object to the form of the question,
7  beyond -- and exceeds phase one.
8       MR. DIRENFELD: Object to form.
9  A   Mr. Studer was acting within the scope of his
10 job.
11 Q   (By Mr. Herzog) Okay.  Did Mr. -- did
12 Mr. Studer tell you that he was going to spend East
13 River money to assist the group that was opposing
14 the efforts of Dakota Energy to obtain an exit
15 charge number for purposes of determining whether it
16 wanted to withdraw from East River?  Did Mr. Studer
17 Dell you that?
18      MR. ORR: Object to the form and exceeds phase
19 one.
20      MR. DIRENFELD: Object to form.  Lacks
21 foundation.
22 A   What was the question?
23 Q   (By Mr. Herzog) Did Mr. Studer tell you that he
24 was going to spend East River money for those
25 purposes?

Page 58

1       MR. ORR: Object to the form.  Exceeds phase
2  one.  Lack of foundation.
3       MR. DIRENFELD: Same objection.
4  A   He told me some ideas he had.
5  Q   (By Mr. Herzog) Did he tell you that he
6  intended to offer financial support to Mr. Doak and
7  that group who was opposing East River's request for
8  an exit charge number so it could consider whether
9  or not to withdraw -- or Dakota Energy's request for
10 an exit charge number so he could consider whether
11 or not to withdraw from East River?
12      MR. ORR: Same objections.
13 A   I have to ask what the question was again.
14 That went a long time.
15 Q   (By Mr. Herzog) Mr. Boyko, did Mr. Studer share
16 with you that he was planning to offer financial
17 assistance to Mr. Doak and others who were opposing
18 the efforts of Dakota Energy to obtain an exit
19 charge number to determine whether or not it was in
20 the best interests of Dakota Energy to withdraw as a
21 member of East River?  Did Mr. Studer tell you he
22 was going to offer financial assistance for that
23 purpose?
24      MR. ORR: Object to the form.  Lacks
25 foundation.  Exceeds the scope of phase one.

Page 59

1  A   I don't recall specifically saying that.  I
2  know he was talking to him, but I don't recall
3  specifically asking him finances.
4  Q   (By Mr. Herzog) Okay.  Would he have needed
5  approval to offer financial assistance?
6       MR. ORR: Object to the form of the question.
7  Lacks foundation.  Exceeds the scope of phase one.
8  A   Generally, no.
9  Q   (By Mr. Herzog) Okay.  He has a budget that he
10 can use this for?
11      MR. ORR: Same objections.
12 A   Yup.
13 Q   (By Mr. Herzog) Okay.  Did you review any of
14 the communications between Mr. Studer and Mr. Doak
15 and his group --
16 A   Yes.
17 Q   -- at any time?
18 A   Yes.
19 Q   I'm sorry.  I think you answered.  Say again.
20 I'm sorry.
21 A   Yes, during preparation.
22 Q   When?
23 A   Wednesday or Saturday.
24 Q   Okay.  And had you seen them at any time before
25 your preparation last Wednesday or last Saturday?

Page 60

1       MR. ORR: Object to the form of the question.
2  A   Not that I recall, I guess.  There -- he might
3  have shown me something, but I don't recall it.
4  Q   (By Mr. Herzog) You don't recall reviewing any
5  of Mr. Studer's communications before you saw them
6  in preparation for the deposition; is that fair?
7       MR. ORR: Object to the form of the question.
8  A   Yes.
9  Q   (By Mr. Herzog) Okay.  Did you, sir, have any
10 communications with anyone at Basin about assisting
11 Mr. Doak or others?
12      MR. ORR: Object to the form.
13 Q   (By Mr. Herzog) You may answer, Mr. Boyko.
14 A   I would have probably given an update.  That
15 would be about it.
16 Q   To whom?
17 A   It probably would have been Paul Sukut.
18 Q   Okay.  And what would the update have included?
19      MR. ORR: Object to the form of the question.
20 Exceeds phase one.
21      MR. DIRENFELD: Same objection.
22 A   Basically, in general, what we were seeing the
23 members do out there in the public.
24 Q   (By Mr. Herzog) And what -- what did you see
25 the members doing out there in the public?

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 61

1   A   Their letters to the editor.
2   Q   Do you know whether Mr. Studer assisted in the
3   preparation of those letters to the editor?
4       MR. ORR: I'm going to object. This is way
5   beyond the scope of phase one.
6       MR. HERZOG: No, it's not. No, it's not. Your
7   client is attempting to interfere in the governance
8   of Dakota Energy, and if there's no right to
9   withdraw, Mr. Orr, you don't have any reason to
10  interfere in the governance of Dakota Energy.
11      MR. ORR: Well, I object --
12      MR. HERZOG: It's not beyond phase one. This
13  goes directly to the question of why you were
14  interfering in the governance of Dakota Energy if
15  it's so clear that there's no right to withdraw. I
16  will continue to ask my questions and if you want to
17  instruct him not to answer, that's fine. We'll take
18  it up with the Magistrate. Okay?
19      MR. ORR: Let me just object. I totally
20  disagree with the premise of your comments.
21  Q   (By Mr. Herzog) Are you aware of any effort on
22  the part of Mr. Studer to encourage Mr. Doak and
23  others to prepare a member petition for purposes of
24  precluding this litigation?
25      MR. ORR: Object to the form of the question.

Page 62

1   Exceeds phase one. I'll instruct the witness not to
2   answer, but happy to talk offline with counsel about
3   it.
4   Q   (By Mr. Herzog) Are you aware of any
5   correspondence -- strike that.
6       Did you review any correspondence in
7       preparation for your deposition where
8       Mr. Studer suggested to Mr. Doak the
9       possibility of amending the bylaws to preclude
10      the lawsuit?
11  A   I believe there was an e-mail to that extent,
12  but I can't recall off the top of my head.
13  Q   Did -- did Mr. -- did East River assist
14  Mr. Doak and others in identifying an attorney to
15  represent Mr. Doak and others in an effort to amend
16  the bylaws of Dakota Energy for purposes of
17  precluding this lawsuit?
18      MR. ORR: Object to the form of the question.
19  Exceeds phase one. I'll instruct the witness not to
20  answer, but happy to talk with counsel about it
21  offline.
22  Q   (By Mr. Herzog) Are you aware of any
23  recommendation to -- that was provided by East River
24  to Mr. Doak and others about an attorney to
25  represent Mr. Doak and others in an effort to amend

Page 63

1   the bylaws of Dakota Energy to preclude this
2   litigation?
3       MR. ORR: Same objection. Instruct the witness
4   not to answer. Happy to talk with counsel offline
5   about it.
6   Q   (By Mr. Herzog) Are you aware of any
7   correspondence -- strike that.
8       Did you review any correspondence in
9       preparation for your deposition in which Pat
10      Doak and others asked for a recommendation from
11      East River for an attorney to assist them? You
12      may answer.
13      MR. ORR: He may have lost audio.
14      THE VIDEOGRAPHER: Looks like he lost his
15  audio, so we might want to go off the record to
16  correct that somehow.
17      MR. ORR: Tom, can you speak again and let's
18  see if we can hear you? I don't think he can hear
19  us.
20      MR. LUCE: I'll get my legal assistant in and
21  see if we can figure out what the problem is.
22      THE VIDEOGRAPHER: Can we go off the record to
23  correct this?
24      MR. HERZOG: Yes.
25      MR. ORR: Yes.

Page 64

1       THE VIDEOGRAPHER: We're going to go off the
2   record shortly. We're off the record.
3           (Recess taken.)
4       THE VIDEOGRAPHER: Okay. We're back on the
5   record. It's now 12:00 p.m. We are on the record.
6   Q   (By Mr. Herzog) I'm going to share my screen
7   with you again, sir. So this is the document, it's
8   number 14 again, Mr. Boyko, that we were looking at
9   previously. And this is the one you said that you
10  saw in preparation for your deposition; is that
11  correct?
12  A   That's correct.
13  Q   All right. And do you remember when you saw
14  that? Did you see that on Wednesday or on Saturday,
15  sir?
16  A   I don't recall.
17  Q   Did you look at any documents on Saturday?
18  A   Yes.
19  Q   And did you look at documents on Wednesday?
20  A   Yes.
21  Q   Okay. And this says, Thank you -- we went over
22  this before. Thank you you all so much for joining
23  the call tonight. Do you see that, where I'm
24  hovering with my cursor?
25  A   Yes.

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

**Rough Draft**

Tom Boyko
September 20, 2021

Page 89

1 initiated that call?
2 A   No.
3 Q   Who did?
4 A   The manager.
5 Q   Who is the manager?
6 A   Char Hager.
7 Q   Okay.  And who did he speak with?
8 A   It was a she.  She talked to me.
9 Q   I'm sorry.  Who did she speak with?  You,
10 Mr. Boyko?
11 A   Yes.
12 Q   Did she tell you that Mr. Oliver was prepared
13 to be an adviser to Mr. Doak and his group?
14 A   No.
15 Q   So do you see the number two here that I've got
16 my cursor hovering over?  It says, Harvey would be
17 able to answer your question, Jim, about legal
18 considerations of people gathering with this group
19 if there are any.  Do you see that?
20 A   Yes.
21 Q   Do you have an understanding what Mr. Studer
22 was referring to there?
23      MR. ORR: Object.  Calls for speculation.
24      MR. HERZOG: Well, he's supposed to know about
25 this stuff.

Page 90

1      MR. ORR: Object, Counsel.  He doesn't -- his
2 knowledge doesn't have to extend to every line of
3 every e-mail that was exchanged between East River
4 and somebody else.
5 Q   (By Mr. Herzog) Do you know what Mr. Studer was
6 referring to there?
7 A   I think he just gave Harvey's name to ask
8 questions.
9 Q   Yeah, but it says, Answer your question, Jim,
10 about legal considerations of people gathering with
11 this group.  Did you have an understanding of what
12 Jim Propst had asked of Chris Studer?
13      MR. ORR: Object to the form.
14 A   No, not specifically, no.
15 Q   (By Mr. Herzog) Did you call Mr. Studer and ask
16 him about it?  Did you ask him anything about this
17 communication in preparation for your deposition
18 today?
19 A   No.  Not specifically, no.
20 Q   Is Mr. Studer --
21 A   Wait.  Yes.  Yes, I did.  On one of these --
22 one item.
23 Q   Which one?
24 A   Number seven.
25 Q   Now, Mr. Boyko, you've told me a number of

Page 91

1 times already this morning that you didn't call
2 Mr. Studer to talk with him about anything in
3 preparation for the deposition.  Are you now telling
4 me that you did?
5 A   Sir, when you asked me that, it was when the
6 deposition started Wednesday.  I don't know all
7 these terms.  I'm trying to get this as straight as
8 possible for you.
9 Q   And I get it.  I'm just asking you:  You told
10 me multiple times before that you haven't talked to
11 Mr. Studer in preparation for your deposition and
12 now I understand you to be testifying differently;
13 is that correct?
14      MR. ORR: Object to the form.  Mischaracterizes
15 his testimony.
16 A   I asked one question on number seven.  I didn't
17 share with him or anything else.
18 Q   (By Mr. Herzog) I'm not -- there's nothing
19 wrong with you sharing it with him.  I'm asking.
20 Okay?  Did you talk with Mr. Studer in preparation
21 for your deposition testimony here today?  Yes or
22 no?
23      MR. ORR: Object to the form of the question.
24 A   I asked him on one question.
25 Q   (By Mr. Herzog) So is that a yes?

Page 92

1 A   Yes.  I asked him on one question, yes.
2 Q   Okay.  Did you call him on the telephone and
3 ask him about something?
4 A   No.
5 Q   Did you see him in person and ask him about it?
6 A   Yes.  He stopped by my office.
7 Q   Okay.  And is the only thing that you talked
8 with Mr. Studer about what you referred to just a
9 moment ago as number seven?
10 A   Yes.
11 Q   Okay.  Didn't ask him about any other aspect of
12 this document, just item number seven?
13 A   That's correct.
14 Q   Okay.  And --
15 A   And to be fair, it was the issue in item number
16 seven.  It wasn't that question.  It was just to
17 make sure I understood the issue.
18 Q   And so if --
19      MR. ORR: I think he was -- I'm not sure he was
20 finished, Counsel.
21      MR. HERZOG: Okay.  I think he was.
22 Q   (By Mr. Herzog) If you're not, Mr. Boyko, go
23 ahead and finish.
24 A   It was the issue surrounding seven, not the
25 question itself is what I asked.

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 109

1  Q  Do you have it, sir?
2  A  Yes.
3  Q  All right.  And is this a document that you
4  reviewed in preparation for your deposition?
5  A  Yes, I did.
6  Q  When you reviewed the documents in preparation
7  for your deposition, did they have those Bates
8  numbers on them, sir?  The one at the --
9  A  Did they have what?
10  Q  -- lower right-hand corner.
11  A  I don't know.  No idea.
12  Q  This is -- this document is another e-mail
13  exchange between Mr. Propst, Mr. Doak, and
14  Mr. Studer.  And this one is from Jim Propst to
15  Mr. Doak and Mr. Studer calling to them separately.
16  And Mr. Propst says, ERC will garner most of the
17  support you refer to, Basin, et al.  Did -- do you
18  know whether Mr. Studer told Mr. Propst that East
19  River would give Basin support for their effort?
20       MR. ORR: Object to form.
21       MR. DIRENFELD: Object to the form.
22  A  I don't recall.  I'm sure he said he's talked
23  to Basin, but that's all I know.
24  Q  (By Mr. Herzog) Did Basin offer to contribute
25  funds to your knowledge to support Mr. Doak and his

Page 110

1  group
2       MR. ORR: Object to form.
3  A  No, not -- no.  No, not to my knowledge.
4  Q  (By Mr. Herzog) Do you know if Mr. Studer asked
5  Basin if they would contribute funds to support
6  Mr. Doak and his group?
7       MR. ORR: Object to form.
8       MR. DIRENFELD: Object to form.
9  A  Not to my -- not to my knowledge.
10  Q  (By Mr. Herzog) Did you and Mr. Studer have any
11  conversation about him making such a request of
12  Basin?
13       MR. ORR: Object to the form.
14       MR. DIRENFELD: Object to the form.
15  A  No, not to my knowledge.
16  Q  (By Mr. Herzog) I'm going to show you another
17  document bearing the identifying numbers 52DEC
18  Member and 53DEC Member and so on.
19       MR. ORR: Is this number 18?
20       MR. HERZOG: This is number 18, Mr. Orr.
21       MR. ORR: Okay.  Thank you.
22  Q  (By Mr. Herzog) And this is an e-mail, if you
23  scroll to the top.  Do you have that in front of
24  you, Mr. Boyko?
25  A  Yes.

Page 111

1  Q  And it's an e-mail from Mr. Doak to Chris
2  Studer with a bunch of CCs, as you can see, and it
3  includes some information that had been passed along
4  by Mr. Studer.  Do you see that?
5  A  Yes.
6  Q  All right.  And do you see this little dash
7  that my cursor is hovering over where it talks about
8  a co-op attorney from Northern Electric?
9  A  Yes.
10  Q  And it says that a co-op attorney from the
11  Northern Electric area has pledged to help out the
12  concerned group of members from Dakota with any
13  legal advice, pro bono, things like getting
14  petitions together, if it gets to that point, and
15  other potential actions that the group might be able
16  to take.  Do you see that?
17  A  Yes.
18  Q  Did Mr. Studer and you talk about the potential
19  for Mr. Doak's group to get a petition together?
20       MR. ORR: Object to the form of the question.
21  Exceeds the scope of phase one discovery.  Hold on.
22  Could you state your question again?  I may have
23  another -- or I may have another objection.
24  Q  (By Mr. Herzog) Did you and Mr. Studer talk
25  about getting a petition -- helping the Doak group

Page 112

1  get a petition together to address the lawsuit or
2  the withdrawal?
3       MR. ORR: Same objection.  Exceeds the scope of
4  phase one, but I'll allow this answer.  Object to
5  the form also.
6  A  If I remember correctly, the members asked
7  Chris for some help and he told me about that.
8  Q  (By Mr. Herzog) What did he tell you?
9       MR. ORR: Same objection.  Go ahead.
10  A  They would like some help on ideas on what to
11  do.
12  Q  (By Mr. Herzog) And did Mr. Studer tell you
13  that he recommended a petition to amend the bylaws?
14       MR. ORR: Object to the form of the question.
15  A  I don't recall that.
16  Q  (By Mr. Herzog) Well, he -- he did.  You know
17  that, don't you, because you saw it in a document
18  you reviewed in preparation for your testimony?
19       MR. ORR: Object to the form of the question.
20       MR. DIRENFELD: Object to the form.
21  A  I saw that he talked about that with him.  I
22  can't remember who brought it up.
23  Q  (By Mr. Herzog) Mr. Studer helped them get a
24  petition to try to amend the bylaws, didn't he?
25       MR. ORR: I'm going to object to the form of

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 113

1 the question and instruct the witness not to answer.
2 This exceeds the limitations imposed by the Court on
3 phase one discovery.
4 Q (By Mr. Herzog) Mr. Studer told you that he had
5 recommended a petition to amend the bylaws, didn't
6 he, sir?
7     MR. ORR: Same objection. Instruct the witness
8 not to answer.
9     MR. HERZOG: And just so I'm clear, Mr. Orr,
10 the basis of your instruction is that this exceeds
11 the scope of phase one?
12     MR. ORR: It exceeds the scope of phase one and
13 the limitation ordered by the Court with respect to
14 the scope of phase one discovery.
15     MR. HERZOG: That's all I wanted to know.
16     MR. ORR: Right. And, I mean, I got other
17 objections, too, but that's the basis for
18 instructing him not to answer.
19     MR. HERZOG: That's all I asked you, Mr. Orr,
20 was the basis for the instruction. I don't care
21 about the other objections.
22     MR. ORR: Right. Just want to be clear.
23 Q (By Mr. Herzog) Now, you said you didn't know
24 whether there were Zoom calls or telephone calls;
25 right? Do you remember that testimony?

Page 114

1 A Yes, I do. Yeah.
2 Q You reviewed this in preparation for your
3 deposition last week; right?
4 A Yes, I did.
5 Q And in this document it says, I'll include
6 information on another Zoom call for next Tuesday.
7 Right? Do you see that?
8 A That's correct.
9 Q Do you know whether those Zoom calls were
10 recorded or not, sir?
11 A I don't believe so.
12 Q Did you ask Mr. Studer in preparation for your
13 deposition?
14 A No.
15 Q Did you ask Mr. Studer in preparation for your
16 deposition whether he had recommended a petition to
17 the members for purposes of amending the Dakota
18 Energy bylaws?
19     MR. ORR: Same objection. Instruct the witness
20 not to answer.
21 Q (By Mr. Herzog) Did you participate in any of
22 the Zoom calls with Pat Doak and his group,
23 Mr. Boyko?
24 A No.
25 Q Do you know whether anyone else from East River

Page 115

1 participated in the Zoom calls with Mr. Studer and
2 Pat Doak's group?
3 A I am not aware of anyone else.
4 Q Did you ask Mr. Studer how frequently he had
5 communications with Pat Doak's group in preparation
6 for your deposition today?
7 A No, just looked at his e-mails here.
8 Q I'm going to show you what's been produced in
9 the case pursuant to Magistrate Duffy's order as
10 document 94DEC Member and 95DEC Member. Let me ask
11 you this before I get to this: Were Chris Studer's
12 e-mails searched as part of the discovery process in
13 this case to produce documents that were requested?
14 A I believe so, yeah. I believe, but I'm not
15 sure.
16 Q Did you review this document or e-mail in
17 preparation for your deposition, sir? This is
18 number 19, Mr. Boyko.
19 A I got it. I don't remember reviewing this one.
20 I believe so, but I just don't remember it.
21 Q So do you see on page 94DEC Member, the e-mail
22 from Chris Studer talking about the video from
23 Mr. Felderman. Do you see that?
24 A Yes.
25 Q And it says, Full of half truths or

Page 116

1 straight-out inaccuracies. Do you see that?
2 A Yes. Yes.
3 Q Did you ask Mr. Studer what the half truths or
4 inaccuracies were?
5 A I did not.
6 Q Do you see here where I'm hovering my cursor
7 again, Mr. Boyko, that second paragraph of Mr.
8 Studer's e-mail where he says, Or maybe shoot a
9 video interview if we would produce something? Do
10 you see that?
11 A Yes.
12 Q And did you understand Mr. Studer to be
13 offering for East River to produce a video on behalf
14 of Pat Doak's group?
15     MR. ORR: Object to the form. Exceeds the
16 scope of phase one.
17 Q (By Mr. Herzog) Go on.
18 A He offered to produce a video.
19 Q Did you talk to him about that in connection
20 with preparing yourself to testify about
21 communications with third parties?
22     MR. ORR: Object to the form.
23 A No, that -- I don't think we ever produced a
24 video with the members, so I'm not --
25 Q (By Mr. Herzog) Do you know?

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 117

1 A  -- aware of anything.
2 Q  Do you know?
3 A  To the best of my recollection, no, we did not.
4 Q  Did somebody tell you that?
5 A  No.
6 Q  How would you know?
7 A  Because I didn't see one out there.
8 Q  It doesn't mean -- it might mean you never
9 released it, but it doesn't mean you didn't produce
10 it; right?
11     MR. ORR: Object.  Argumentative.
12 A  There's always that possibility, but nothing I
13 know of, I guess.
14 Q  (By Mr. Herzog) You don't know one way or the
15 other, do you, sir?
16     MR. ORR: Object to the form.
17 A  I'm not aware of producing any video.
18 Q  (By Mr. Herzog) We would have to ask Mr.
19 Studer; right?
20 A  He would -- he would know that answer.
21 Q  I'm going to turn to document number 20.  Do
22 you see that in front of you?  It's a document
23 that's from Mr. Studer with the Bates label 60DEC
24 Member and then a bunch of supporting stuff.
25 A  Yes.

Page 118

1 Q  Okay.  Did you review this in preparation for
2 your deposition?
3 A  I did look at this, yes.
4 Q  And it says, Dakota is not guaranteed
5 transmission if they leave the East River
6 membership.  Do you see that?
7 A  Yes.
8 Q  And that was something that you've told to Pat
9 Doak's group, wasn't it?  Not you personally, sir,
10 but that came from Mr. Studer and East River; right?
11     MR. ORR: Object to the form of the question.
12 A  Yes.
13 Q  (By Mr. Herzog) And that was something that
14 East River wanted to get out there to try to prevent
15 Dakota from withdrawing as a member and even getting
16 an exit charge, wasn't it?
17     MR. ORR: Object to the form of the question.
18 Exceeds the scope of phase one.
19     MR. DIRENFELD: Object to form.
20 A  No, actually, Dakota was telling their
21 membership that transition wouldn't change, they
22 would have the same rates they do today.  And their
23 membership -- and I had asked Chris -- that's not
24 right, is it?  And so he explained it.
25 Q  (By Mr. Herzog) Okay.  And are you saying that

Page 119

1 if Dakota Energy -- if this Court finds that there's
2 a right to withdraw and Dakota Energy ultimately
3 withdraws, that you're going to try to keep them
4 from getting transmission rights?
5     MR. ORR: Object to the form of the question,
6 calls for speculation, hypothetical and a legal
7 conclusion.  You do not need to answer that
8 question.
9     MR. HERZOG: On what grounds?
10     MR. ORR: Calls for a legal conclusion.  It's
11 hypothetical and exceeds the scope of phase one.
12 Phase one is about whether they have the right to
13 withdraw, not about conditions --
14     MR. HERZOG: I'm asking him about a document
15 that the Court ordered produced in phase one,
16 Mr. Orr.
17     MR. ORR: I understand that, but that doesn't
18 mean every sentence in a document produced is
19 relevant to phase one.
20 Q  (By Mr. Herzog) Are you -- is East River going
21 to preclude Dakota from accessing transmission if it
22 withdraws?
23     MR. ORR: Object to the form of the question.
24 That exceeds the scope of phase one.  It calls for a
25 legal conclusion and a hypothetical and I instruct

Page 120

1 the witness not to answer.
2     MR. HERZOG: What's the basis of the
3 instruction?
4     MR. ORR: Exceeds the limitation that the court
5 imposed on phase one discovery.
6 Q  (By Mr. Herzog) What do you understand, in your
7 role as the CEO of East River, Mr. Boyko, is a
8 member's right to access transmission if they
9 withdraw as a member?
10     MR. ORR: Objection.  You're just asking the
11 same question a different way, Counsel.
12     MR. HERZOG: I'm entitled to.  You're not
13 entitled to instruct him on this stuff and you know
14 it.  It's just bad faith.
15     MR. ORR: No, it's not bad faith.
16     MR. HERZOG: It is bad faith, Mr. Orr, and I'm
17 sick and tired of it.  These are documents that the
18 Magistrate ordered produced in phase one and all
19 you're doing is interfering in this examination and
20 you've been interfering in it from the start of the
21 deposition.
22     MR. ORR: No.  And I would ask you not to raise
23 your voice with me, Counsel.
24     MR. HERZOG: You're right on that.  I
25 apologize.  I shouldn't have.

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 137

1 letters to the editor, and he wrote the letter to
2 the members, he was assisting Pat Doak's group in
3 trying to stop the lawsuit? Yes or no?
4     MR. ORR: Object to the form of the question.
5     MR. DIRENFELD: Object to form.
6 A   He drafted a letter to the membership. He did
7 provide some background information and he drafted
8 this verbiage for a radio ad.
9 Q   (By Mr. Herzog) To try to help Pat Doak's group
10 stop the lawsuit; correct?
11     MR. ORR: Object to the form. Calls for
12 speculation.
13     MR. DIRENFELD: Object to form.
14 A   I say it over and over. This is what he gave
15 him. It speaks for itself.
16 Q   (By Mr. Herzog) Well, you're no lawyer, sir.
17 A   That's right.
18 Q   You knew what he was doing and this was East
19 River's effort to assist Pat Doak's group to stop
20 the lawsuit? Yes or no? And I want a yes-or-no
21 answer, please, or I want an explanation why you
22 cannot answer the question yes or no.
23     MR. ORR: Object to the form of the question.
24 Asked and answered.
25     MR. DIRENFELD: Object to form.

Page 138

1 A   Again, we provided information and verbiage to
2 the membership if they wanted to use to help stop
3 the lawsuit.
4     MR. HERZOG: Thank you.
5     MR. ORR: Can we take a break? We've been
6 going a little over an hour.
7     MR. HERZOG: Yes, we can. Keep it short,
8 please.
9     MR. ORR: Sure.
10     THE VIDEOGRAPHER: We're off the record at
11 5:53 -- or excuse me. I'm sorry. 2:52.
12         (Recess taken.)
13     THE VIDEOGRAPHER: Okay. It's now 2:59 p.m.
14 and we are back on the record, so we can proceed.
15 Q   (By Mr. Herzog) I'm going to share my screen
16 again. I'm going to show you another document that
17 was produced to us as a result of Magistrate Duffy's
18 order and it bears the document numbers -- it's 26
19 in the numerical list of the documents Mr. Luce
20 provided you and it's 104DEC Member through 106.
21     So here is what I'd like you to look at
22 is -- this is from Mr. Studer dated March 26th
23 2021. Good afternoon. Attached -- are you
24 here with me, Mr. Boyko?
25 A   Yes.

Page 139

1 Q   Is this document one that you reviewed in
2 preparation for your deposition today?
3 A   I believe so.
4 Q   Okay. I'm going mark this as Exhibit 6 to your
5 deposition, sir. And here's Mr. Studer passing
6 along the finalized versions of the special member
7 meeting petitions and the instructions for the
8 petition circulators. Do you see that?
9 A   Yes.
10 Q   Did Mr. Studer inform you that he had drafted
11 the petitions pursuant to which Mr. Doak and his
12 group would seek to amend the bylaws of Dakota
13 Energy to preclude this lawsuit?
14     MR. ORR: Object to the form.
15 A   No.
16 Q   (By Mr. Herzog) Were you aware that he did
17 that?
18     MR. ORR: Object to the form.
19 A   No.
20 Q   (By Mr. Herzog) You were not?
21 A   No, he didn't draft it.
22 Q   Who drafted them, sir?
23 A   Their attorney Harvey Oliver.
24 Q   So why was Mr. Studer passing them along?
25 A   He was just providing assistance, my

Page 140

1 understanding.
2 Q   So he got these from Mr. Oliver and passed them
3 along?
4 A   That's my understanding.
5 Q   Do you know whether Mr. Studer provided any
6 input into the petitions?
7 A   I believe so, as far as review, but Harvey
8 drafted it.
9 Q   Okay. And Mr. Oliver was not representing East
10 River, was he?
11 A   He's representing the membership.
12 Q   What membership? He wasn't representing the
13 membership?
14 A   All the energy members.
15 Q   He was representing Mr. Doak and his group;
16 right?
17     MR. ORR: Object to the form.
18 Q   (By Mr. Herzog) I can't hear you, Mr. Boyko?
19 A   The Dakota Energy members.
20 Q   Right. A handful of Dakota Energy members;
21 right?
22 A   Of which East River is one.
23 Q   Right. Was he representing East River?
24     MR. ORR: Object.
25 A   He was representing that handful.

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 153

1  A   Yes.
2  Q   Mr. Boyko, how did you know -- and who was on
3  it, it was you and Mr. Dudke and who, Mr. Sahr?
4  A   I believe my general counsel.
5  Q   Is that Mr. Sahr?
6  A   Yes.
7  Q   Okay.  You, Mr. Dudke and Mr. Sahr.  Anybody
8  else?
9  A   We had an attorney from Sutherland.
10 Q   Okay.  Who?
11 A   I believe it was Peter.  I don't remember his
12 last name.
13 Q   Peter who?
14 A   Peter -- I don't remember his last name.
15 Q   How did you know who to call at RUS?
16 A   I don't know.  Our attorneys lined it up.
17 Q   Okay.  So Sutherland lined it up?
18 A   I think so.  I don't recall exactly.
19 Q   Okay.  And how long did the conversation last,
20 approximately?
21 A   I don't remember.  It was short.  Five minutes,
22 ten minutes.
23 Q   And what was the subject of the conversation?
24 A   Just in general, we're a borrower, what's their
25 concern level --

Page 154

1      MR. ORR: I'm going to -- I'm going to -- let
2  me object.  I think I need to talk to the witness
3  about this call.  And I understand that -- I just
4  need to make sure he's not inadvertently disclosing
5  some attorney/client communication.
6      MR. HERZOG: I mean, it's a conversation, James
7  I'm not going to -- I'm not going to agree to this
8  one.  It's a conversation with RUS.  There's no
9  possible privilege that could apply.
10     MR. ORR: Hold on.  Hold up.
11     MR. HERZOG: James, I don't want this time used
12 against me.
13     MR. ORR: Yes, I know.  I'm trying to do it by
14 text so that I don't break.
15     MR. HERZOG: I see.
16     MR. ORR: We won't count this against you.  I
17 appreciate your patience.  I need to just call Bob
18 Sahr, if I may, if we can just --
19     MR. HERZOG: James, he testified about a
20 conversation that he had on the telephone with RUS.
21     MR. ORR: Right.
22     MR. HERZOG: What possible claim to privilege
23 could there be?
24     MR. ORR: Okay.  I just want -- I need to
25 clarify something with Bob Sahr.  There may not be

Page 155

1  any possible claim for privilege.  I just need to
2  clarify something with Bob Sahr before we go
3  forward, so let me do that.  I'll be brief.
4      MR. HERZOG: All right.  Doug, I'm going to put
5  myself on mute and run to the men's room real quick
6  so we don't have to take another break.  If James
7  comes back, I'll be right back.  Okay.
8      THE VIDEOGRAPHER: We'll just stay on the
9  record and keep rolling.
10     MR. HERZOG: Okay.
11     MR. LUCE: Mike Luce is, too.
12     MR. ORR: I apologize for the interruption.
13 Please proceed.
14 Q   (By Mr. Herzog) All right.  So about six months
15 ago you had a conversation with RUS; correct?
16 A   Yeah.  Yeah, we did.
17 Q   And you called them to talk about the Dakota
18 Energy request for buy-out?
19 A   About the lawsuit.
20 Q   And the request for a buy-out; right?
21 A   Well, it was about the lawsuit.
22 Q   What's the difference?
23 A   I don't know.  Why are you asking it?  There's
24 a lawsuit --
25 Q   You keep quibbling with me whether it's a

Page 156

1  lawsuit or the buy-out.  The lawsuit requests a
2  buy-out; right?
3      MR. ORR: Object to the form of the question.
4  A   Well, we told them there's a lawsuit against us
5  by Dakota Energy.  I don't remember talking
6  specifically on the buy-out.
7  Q   (By Mr. Herzog) Did you tell them what the
8  lawsuit was about, Mr. Boyko?
9  A   I'm sure we did, I guess.
10 Q   Okay.  And what did you tell them the lawsuit
11 was about?
12 A   That Dakota wanted to get out of the contract.
13 Q   And what did RUS say?
14 A   Basically from what I recall, it wasn't big
15 enough for them to get too concerned about and they
16 left it there.
17 Q   Okay.  And was there any memorialization of
18 that discussion with RUS?
19 A   Not that I remember, no.
20 Q   Okay.  And so you came away from that
21 understanding that RUS wasn't terribly concerned
22 about it given the size of Dakota Energy; true?
23     MR. ORR: Object to the form.
24     MR. DIRENFELD: Object to form.
25 A   They weren't concerned with the remaining loan

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 157

1 portfolio they had with East River because of the
2 size.
3 Q (By Mr. Herzog) Did they tell you there's no
4 right to withdraw or buy-out of your contract?
5 A We didn't ask them that.
6 Q Did they tell you that?
7 A Not that I recall.
8 Q And why wouldn't you ask them that question,
9 Mr. Boyko?
10 MR. ORR: Objection to the form of the
11 question.
12 MR. DIRENFELD: Object to form.
13 A It's our contract with the member.
14 Q (By Mr. Herzog) Yeah, but it's guaranteeing the
15 RUS debt; right?
16 A Yeah, that's why we talked to them.
17 Q And -- right. And you understand that these
18 contracts are financing instruments; right?
19 MR. ORR: Object to the form of the question.
20 Calls for a legal conclusion.
21 Q (By Mr. Herzog) Go ahead, Mr. Boyko.
22 A Understand they used the contracts to get the
23 financing, yes.
24 Q Okay. I mean, you know Duane Heile over at
25 Tri-State, don't you?

Page 158

1 A I think I met him once. That's about it.
2 Q Mr. Heile testified they're financing
3 instruments; right? Would you disagree with that?
4 MR. DIRENFELD: Object to form.
5 MR. ORR: Object to form.
6 A I don't know what he testified, but I wouldn't
7 disagree that they're financing instruments.
8 Q (By Mr. Herzog) Okay.
9 A They're more than that. They're contracts.
10 Q Mr. -- so you don't recall the name of the
11 individual that you spoke with at RUS?
12 A No, I don't.
13 Q Who would know the name?
14 A Probably Dustin Zubke.
15 Q Okay. Now, do you know how to get ahold of
16 Dustin?
17 A Yes.
18 Q Okay. Do you see number two here, any
19 discussion, whether oral or in writing, involving
20 East River and any lender regarding any actual,
21 potential, or proposed withdrawal or the terms of
22 any actual, potential, or proposed withdrawal of any
23 member from East River or Basin Electric? Did you
24 call Mr. Dudke in preparation for your testimony
25 here today and ask him, Hey, who was that fellow or

Page 159

1 that woman that we talked to at RUS that said they
2 weren't that concerned about it given the size of
3 Dakota Energy? Did you do that?
4 MR. ORR: Object to the form.
5 A No.
6 Q (By Mr. Herzog) Is there a reason you didn't do
7 that?
8 A We asked him if he contacted the lenders and he
9 said yes.
10 Q Well, you were on the phone call with RUS and
11 you can't remember the name of the individual who
12 you spoke with, and you didn't think that that might
13 be of interest to us in discovery?
14 MR. ORR: Object to the form of the question.
15 A Actually, yeah, I don't remember who we talked
16 to or if I was just briefed afterwards, no, I don't.
17 Q (By Mr. Herzog) Now, wait a minute. You're
18 changing your testimony again. Were you on the call
19 or were you not on the call?
20 A I -- I know the call took place. We -- we had
21 talked -- we talked -- or staff at least talked to
22 them and the result was they weren't concerned.
23 Q Right.
24 A I thought I was on. I honestly don't remember.
25 Q Did you speak with anybody while we were

Page 160

1 waiting for Mr. Orr to get back to us about whether
2 this was attorney/client privilege? Did you speak
3 with Mr. Sahr or did you speak with Mr. Orr or Mr.
4 Luce while we were waiting for him to return?
5 A Yes. I saw them in the hallway on the way to
6 the bathroom, but they did not direct me to do
7 anything, no.
8 MR. HERZOG: Fellas, that's just totally
9 improper. That is completely and totally unethical
10 and I'm going to raise it with the Court. I told
11 you I didn't want you discussing this with the
12 witness because of the problems that we've had
13 previously with the witness changing his testimony.
14 And you've got a witness on the stand, we are on the
15 record, and one of you communicated with the witness
16 in direct violation of my request.
17 A They did not talk about this.
18 MR. ORR: I disagree.
19 Q (By Mr. Herzog) You just testified they did.
20 A I said I saw them when I went to the bathroom.
21 MR. HERZOG: This is a very, very troubling
22 issue and I intend to raise it with the Magistrate.
23 If you did not speak with Mr. Boyko, then please put
24 that on the record because what he just testified to
25 was that one of you communicated with him on his way

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 161

1 to the restroom about a subject that was a current
2 and pending question, we never went off the record
3 and I specifically said I wasn't willing to go off
4 the record because of my concern about prior
5 testimony changing during breaks.
6  MR. ORR: No, you didn't say that. I don't
7 recall you saying that.
8  MR. HERZOG: I did. I didn't say that. I said
9 I'm not willing to have you go speak with the
10 witness. I'm not going to agree to that. That's
11 what I said. You told me you were talking to Bob
12 Sahr.
13  MR. ORR: Yeah, I did.
14  MR. HERZOG: Okay. And if Mr. Sahr or Mr. Luce
15 spoke with the witness, I'm taking it up with the
16 Magistrate, and I want to know whether you did or
17 you didn't.
18  MR. HERZOG: Mr. Luce, did you speak with the
19 witness?
20  MR. LUCE: Yes, I saw him.
21  MR. HERZOG: Did you speak with him?
22  MR. LUCE: I just said I did. I saw him.
23  MR. HERZOG: Okay. I'm going to take this up
24 with the Magistrate?
25  MR. LUCE: That's fine. We were on break as I

Page 162

1 understood it.
2  MR. HERZOG: No, we weren't on break, Mr. Luce.
3  MR. LUCE: You were gone. I walked out
4 wondering where everybody was and I saw him.
5  MR. HERZOG: That's an absolute falsehood and I
6 know you know, that, sir, because you were on --
7  MR. LUCE: No, I don't know that and --
8  (Crosstalk)
9  MR. ORR: We're going to take a break. This
10 has gotten too heated. We're going to take a break.
11  MR. HERZOG: I'm taking it up with the
12 Magistrate, Mr. Luce.
13  THE VIDEOGRAPHER: Are we going to take a
14 break, then? We're all in agreement?
15  MR. ORR: Yes. Yes. We're going to take a
16 five-minute.
17  MR. HERZOG: Mr. Orr, it's only by agreement
18 and I will agree to a five-minute break and that's
19 it.
20  THE VIDEOGRAPHER: Okay. Then we're taking a
21 five-minute break. We're going off the record.
22 It's 3:45.
23  (Recess taken.)
24  THE VIDEOGRAPHER: Okay. We're ready to go.
25 Please standby. Okay. We're back on the record.

Page 163

1 It's 3:54 p.m. Please proceed.
2  Q (By Mr. Herzog) Did you have any conversations
3 with your attorneys during that break?
4  A Yes, just briefly.
5  Q With whom?
6  A Just that I said, We're ready to go. I went to
7 the bathroom. They met separately.
8  Q Who did you have conversations with --
9  A Bob Sahr.
10  Q -- the most recent break?
11  A Bob Sahr said we're ready to go.
12  Q All right.
13  A Out in the hallway.
14  MR. ORR: Peter, can we -- I'd like to go --
15 I'd like to clarify the prior break because I know
16 you had concerns about that. When I asked for a
17 break, I was aware that there was more than one
18 phone call. And the sole purpose of communicating
19 with Mr. Boyko was to make sure that there was no --
20 no attorney/client communication was revealed. Some
21 phone calls that related --
22  MR. HERZOG: No, no, no. You can tell it to
23 the Magistrate, too, Mr. Orr because we've done
24 this. We did not go off the record at any time,
25 specifically you knew that. You told me you were

Page 164

1 talking to Mr. Sahr. I want to proceed with my
2 deposition. I don't want to discuss this any
3 further. You can put whatever information you want
4 to put into your response to the Magistrate. Now, I
5 am going to conduct the deposition of Mr. Boyko and
6 I'm going to ask you to stop interfering in that
7 examination.
8  MR. ORR: I haven't been interfering, but
9 please go ahead.
10  Q (By Mr. Orr) Mr. Boyko, if we could turn please
11 to number two of Exhibit No. 1. Any discussion,
12 whether oral or in writing, involving East River and
13 any lender regarding any actual potential or
14 proposed withdrawal, is RUS a current lender of East
15 River?
16  A Yes.
17  Q And you had a conversation with that lender RUS
18 about the potential withdrawal of Dakota Energy;
19 fair?
20  MR. ORR: Object to the form.
21  A We had a question about the lawsuit, yes.
22  Q (By Mr. Orr) Okay. And the lawsuit involves
23 the potential withdrawal. Why do you keep quibbling
24 with me about that, Mr. Boyko? Do you think the
25 lawsuit has something to do with -- with something

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

Tom Boyko
September 20, 2021

Page 213

1 that's -- if they think that's discouraging, that's
2 a different interpretation.
3 Q   (By Mr. Herzog) Do you agree or disagree that
4 East River members are entitled to information that
5 would allow them to estimate an exit charge
6 calculation?
7       MR. ORR: Object to the form.  Calls for a
8 legal conclusion.
9 Q   (By Mr. Herzog) You can answer.
10 A   They're entitled to our financial information.
11 And Basin, we provide that every month, if that's
12 what you're asking.
13 Q   No.  Do you agree or disagree that they're
14 entitled to information that would allow them to
15 estimate an exit charge calculation?
16       MR. ORR: Object to form.
17 A   I don't know what information -- I don't know
18 what information you're talking about.
19 Q   (By Mr. Herzog) You can't figure that out?
20       MR. ORR: Object to form.
21 A   They have access to all of our financial
22 information, what else are you asking?
23 Q   (By Mr. Herzog) Well, what would it cost to
24 buy-out of the contract?
25 A   Well, that would be --

Page 214

1       MR. ORR: Object to the form.
2 A   It's not allowed.
3 Q   (By Mr. Herzog) Okay.  It's not allowed.  So
4 let me mark for identification as Exhibit 7 this
5 document from Mr. Sukut.  And am I saying that
6 right?  Sukut?
7 A   Sukut, yes.
8 Q   He was the general manager and CEO of Basin,
9 correct?
10 A   Correct.
11 Q   And this is a -- this is a letter that he sent
12 to all class A members.  And East River is a class A
13 member, is that correct?
14 A   That's correct.
15 Q   Okay.  And Mr. Sukut provided a resolution that
16 had been passed by Basin, correct?
17 A   Correct.
18 Q   And you're familiar with this, you read this in
19 preparation for your deposition today, didn't you?
20 A   Correct.
21 Q   Are you relying on anything other than this in
22 your conclusion that the WPC between East River and
23 Dakota Energy doesn't permit any early termination?
24       MR. ORR: Object to the extent it calls for
25 revealing attorney/client communication.

Page 215

1 A   I just -- I read the termination provisions.
2 You have to get all your -- meet all your contract
3 requirements.
4 Q   (By Mr. Herzog) Right.  But are you relying on
5 anything other than this in your review of the
6 termination provision?
7       MR. ORR: Same objection.
8 A   Yeah.  The rest would be attorney/client.
9 Q   (By Mr. Herzog) Did you see any of the
10 information that was provided to Basin by its
11 general counsel or its outside counsel on this
12 issue?
13       MR. ORR: Object to the extent -- object to the
14 extents it's covered by the JDA.
15 A   This -- the only discussions we had on this
16 were in the JDA meetings.  That's all I had.
17 Q   (By Mr. Herzog) Okay.  Let me -- let me just
18 focus on this whereas clause of Exhibit No. 7 to
19 your deposition.  It says, Whereas, the
20 cooperative -- and you understand that's referring
21 to Basin; right?
22 A   Yes.
23 Q   Has been advised by both its general counsel
24 and its outside counsel, Orrick Herrington and
25 Sutcliff, that the all requirements contracts of

Page 216

1 both the class A members with the cooperative and
2 the class C members with the class A members do not
3 contain any provision permitting the member to
4 buy-out of its all requirements contract with the
5 cooperative or the class A member as applicable.  Do
6 you see that?
7 A   Yes.
8 Q   Was any information from Basin's general
9 counselor its outside counsel provided to you or to
10 East River to support this conclusion?
11       MR. ORR: Object, I believe the witness has
12 said that would be covered by the JDA and it's
13 privileged.
14 Q   (By Mr. Herzog) I didn't ask him what it was, I
15 asked him whether it was communicated?
16       MR. ORR: Same objection.
17 Q   (By Mr. Herzog) You can answer, Mr. Boyko?
18 A   Any communications we had on that were covered
19 by the JDA.
20 Q   You know, you can repeat what your counsel
21 says, Mr. Boyko, but I'm entitled to an answer.  Did
22 you receive opinions from Basin's general counselor
23 or Rick on this issue, whether, I didn't ask you
24 whether what the opinions were, I asked you whether
25 they shared them?

# EXHIBIT E

# In The Matter Of:

*Dakota Energy Cooperative, Inc. v.*
*East River Electric Power Cooperative, Inc., et al.*

---

*James Ryken*
*September 22, 2021*
*Rough Draft*

---

*Pat Beck, Court Reporter*

Original File 092121ROUGHDRAFT.txt

Min-U-Script® with Word Index

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

**Rough Draft**

James Ryken
September 22, 2021

Page 105

1  this letter before you signed this?
2  A  I don't recall.
3  Q  In preparation for your deposition today, did
4  you do anything to refresh your recollection of --
5  did you do anything to refresh your recollection of
6  the topics that are included in this letter?
7      MR. ORR: Object to form.
8  A  No.
9  Q  (By Mr. Neckers) Does this letter contain your
10  own opinions or thoughts about the Dakota request
11  for a buy-out or does it contain the thoughts and
12  opinions of others?
13      MR. ORR: Object to form.
14  A  It has the opinion of the board and so, yes, it
15  has my opinion in it.
16  Q  (By Mr. Neckers) In your view, this letter
17  contains the opinion of the board of directors of
18  East River?
19  A  Yes, I was authorized to sign the letter on
20  behalf of the board.
21  Q  Was there a specific board resolution to that
22  effect?
23  A  I'm not sure.
24  Q  Do you recall either way as to whether there
25  was an affirmative vote of the East River board of

Page 106

1  directors authorizing you to send this letter?
2  A  I don't recall.
3  Q  Would it -- based on your general practice
4  working on the board at East River for the last 23
5  or so years, would it have been, in your mind,
6  within your authority as board president to send
7  this letter absent an affirmative vote of the
8  directors?
9      MR. ORR: Object to form.
10  A  Probably not, no.
11  Q  (By Mr. Neckers) Do you remember if -- do you
12  remember attending a board meeting then or having a
13  written consent authorizing you to send this letter?
14  A  I don't recall.
15  Q  Mr. Ryken, I'm not suggesting that you did
16  anything wrong here, just to be clear. I'm just
17  trying to understand the process that went into
18  writing and sending out this letter. Okay?
19      So what else do you recall, if anything,
20  about the process by which this letter and its
21  contents were drafted?
22  A  We had a board meeting around -- you know, I
23  don't know what day of the week March 7th is, but
24  sometime the first Thursday in March we would have
25  had a meeting. I'm just assuming --

Page 107

1      MR. ORR: Objection. You doesn't have to
2  assume. And let me just caution you not to reveal
3  anything that may have been discussed in executive
4  session with counsel.
5  Q  (By Mr. Neckers) Go ahead.
6  A  As far as I know, there was discussion held and
7  I was authorized to sign the letter.
8  Q  Was there discussion held in an executive
9  session or during the regular board meeting?
10  A  Executive session.
11  Q  And do you remember -- who attends the
12  executive sessions of the board meetings at East
13  River?
14      MR. ORR: Object to form.
15  A  Depends on the situation. Most of the time the
16  manager and, of course, the attorney and then
17  appropriate senior staff.
18  Q  (By Mr. Neckers) And so you sent this letter on
19  behalf of the East River board to Garry Dearborn who
20  is the president of Dakota Energy Cooperative at the
21  time, right?
22  A  Yes.
23  Q  When you -- and I take it you wouldn't have
24  signed this letter if you didn't think it was
25  accurate, right?

Page 108

1  A  Correct.
2  Q  When you signed this letter, what was the basis
3  for your belief that the wholesale power contract
4  between East River and Dakota Energy does not
5  provide for a buy-out as you indicated in this
6  letter?
7      MR. ORR: Object to the extent it calls for
8  revealing attorney/client communication.
9  A  The discussion was held during executive
10  session and --
11      MR. ORR: Mr. Ryken, and let me just be clear
12  that Mr. Neckers is not asking you about discussions
13  that occurred in executive session because those
14  were attorney/client privilege and so you're not to
15  -- you're not to talk about discussions that were
16  held in that -- those executive sessions because it
17  would reveal attorney/client communications.
18  Q  (By Mr. Neckers) Mr. Ryken, do you have any
19  basis for the statement that is the last sentence in
20  the first full paragraph on the second page of your
21  letter for your conclusion that the wholesale power
22  contract doesn't provide for a buy-out other than
23  information you learned during executive session?
24  A  No.
25  Q  So to be clear, the conclusion that is in your

Dakota Energy Cooperative, Inc. v.
East River Electric Power Cooperative, Inc., et al.

Rough Draft

James Ryken
September 22, 2021

Page 109

1  letter that the wholesale power contract between
2  East River and Dakota does not provide for a buy-out
3  is based only on information that came out of or was
4  discussed in executive session, is that correct?
5      MR. ORR: Object to the form.
6  A  Yes.
7  Q  (By Mr. Neckers) Were you relying on anything
8  else other than that information that I'm not going
9  to ask you about that came out of executive session
10 when you signed your name to the letter offering the
11 conclusion that the supplemental wholesale power
12 contract does not contain a buy-out provision?
13 A  No.
14 Q  Has that been your position as the president of
15 the board at East River all along since the day that
16 Dakota Energy provided to East River its resolution
17 asking for a buy-out figure?
18     MR. ORR: Object to the form.
19 A  Yes.
20 Q  (By Mr. Neckers) In other words, it's been your
21 position all along, Mr. Ryken, as the president of
22 the board at East River that East River has no
23 obligation whatsoever to provide Dakota Energy with
24 a buy-out number, correct?
25     MR. ORR: Object to the form.  Calls for a

Page 110

1  legal conclusion.
2  A  Yes.
3  Q  (By Mr. Neckers) Attached to that letter -- to
4  your letter of March 7th, 2019, to Dakota Energy was
5  a letter from Basin and its CEO to class A members
6  forwarding a resolution that Basin passed as well,
7  right?
8  A  Yes.
9  Q  When was the first time you heard about Basin's
10 resolution and this letter dated February 15th,
11 2019?
12 A  Around that time.
13 Q  Tell me what you remember about that.
14 A  They adopted a resolution at the Basin board
15 meeting that didn't allow buying out of an
16 all-requirements contract.
17 Q  Did you have -- other than in executive
18 session, did you have any discussions with anyone
19 about that Basin resolution?
20 A  Not that I recall.
21 Q  You didn't discuss it with Mr. Boyko or the
22 other staff at East River?
23 A  Only if Bob was around, Mr. Sahr.
24 Q  Bob Sahr?
25 A  Yes.

Page 111

1  Q  Did you discuss the resolution with Clay Union
2  Electric?
3  A  I may have mentioned that Basin passed a
4  resolution, but we didn't discuss it.
5  Q  I'm flipping now to the fourth page of tab 20,
6  which was attached to your letter.  This is a copy
7  of the resolution that was passed by the Basin
8  board, is that right?
9  A  Yes.
10 Q  Do you remember when the first time it was that
11 you saw this document, sir?
12 A  I don't recall.
13 Q  Would it have been around the time that it
14 passed in February of 2019?
15 A  Yes.
16 Q  Did you rely on this resolution and the
17 information contained in here for purposes of
18 forming your own understanding as to whether there
19 was a right to withdraw from East River?
20 A  Yes.
21 Q  Did you personally have any discussions with
22 anyone from Basin about this resolution specifically
23 or the topics discussed in this resolution?
24 A  No.
25 Q  So you understood -- and this was a resolution

Page 112

1  that was forwarded to you by somebody at East River,
2  is that right?
3  A  Yes.
4  Q  Or did you receive this directly from someone
5  at Basin, Mr. Ryken?
6  A  I did not get it from Basin.
7  Q  Okay.  And in the ordinary course of business,
8  I take it you'd receive documents like this from
9  people at East River as opposed to from employees or
10 representatives of Basin itself, is that fair?
11     MR. DIRENFELD: Object to form.
12 A  I see it.
13 Q  (By Mr. Neckers) Okay.  Would you look at the
14 third paragraph of this document that I will -- I
15 was going to try and highlight it, but I won't do
16 that.  You see the third paragraph beginning,
17 Whereas, the cooperative has been advised by?
18 A  I see it.
19 Q  And it goes on to say, The cooperative has been
20 advised by both its general counsel and its outside
21 counsel, Orrick Herrington & Sutcliffe, LLP, that
22 the all-requirements contracts of both the class A
23 members with the cooperative and the class C members
24 with the class A members do not contain any
25 provision permitting the member to buy-out of its