UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA ENERGY COOPERATIVE, INC., <br><br>                 Plaintiff/Counter-Claim Defendant, <br><br>     vs. <br><br> EAST RIVER ELECTRIC POWER COOPERATIVE, INC., <br><br>                 Defendant/Counter-Claim Plaintiff/Cross-Claim Defendant, <br><br>                 and <br><br> BASIN ELECTRIC POWER COOPERATIVE, <br><br>                 Intervenor Defendant/Counter-Claim Plaintiff/Cross-Claim Plaintiff. | 4:20-CV-04192-LLP <br><br><br><br> ORDER DENYING  MOTION TO COMPEL BY DAKOTA ENERGY COOPERATIVE, INC. <br><br> Docket No. 88 |

**INTRODUCTION**

This matter is pending before the court on the complaint by Dakota Energy Cooperative, Inc. (hereinafter "Dakota Energy") seeking to extricate itself from a wholesale power contract ("WPC") with East River Electric Power Cooperative, Inc. ("East River").  Docket No. 1-1 at pp. 2-12.  East River removed this matter from South Dakota state court pursuant to 28 U.S.C.

§ 1442(a)(1), asserting that it acted under the direction of a federal officer. Docket No. 1 at pp. 2-3.  Basin Electric Power Cooperative ("Basin") later intervened in the action.  Docket Nos. 23 & 38.  Now pending is a motion to compel discovery by Dakota Energy.  Docket No. 88.  The parties have consented to this magistrate judge resolving that motion.  Id.

## FACTS

Basin generates power and sells and transmits it to its Class A members for resale and retransmission to its Class C members.  East River is a Class A member of Basin; its membership predates 2015.  Dakota Energy is a Class C member of Basin; its membership also predates 2015.  Each Class C member of Basin enters into a long-term WPC with a Class A member.  East River in turn has a long-term, all-requirements WPC with Basin.

On August 6, 2015, East River extended its WPC with Basin to December 31, 2075, sixty (60) years into the future.  On August 6, 2015, East River also extended its WPC with Dakota Energy to December 31, 2075.

Dakota Energy alleges that East River greatly increased the electricity rates for Dakota Energy in recent years, an increase that was necessarily passed on to Dakota Energy consumers.  Dakota Energy sought to withdraw from East River, which East River declined to grant.

Dakota Energy brought suit asking, in part, for a declaration of Dakota Energy's right to withdraw from East River under East River's bylaws upon Dakota Energy's compliance with equitable terms and conditions.  East River and Basin have counterclaimed.

2

The district court issued a scheduling order bifurcating the discovery and motions practice in this case.  Docket No. 57.  Discovery on Phase One is to be ongoing until November 15, 2021.  Id. at p. 2, ¶ 3.  The scope of discovery for Phase One as set forth by the district judge is as follows:

     a.     The negotiation, execution, and decision by Dakota to enter into the 1995 WPC, the 2006 amendment to the WPC (extending the term to 2058), and the 2015 amendment to the WPC (extending the term to 2075);

     b.     Communications with Guzman Energy or any other power supplier or marketer regarding a buyout, termination, or withdrawal right;

     c.     Dakota's interpretation of the WPC;

     d.     Any parole or other extrinsic evidence that Dakota believes supports its interpretation of the WPC and Bylaws as to the Phase One issues, including but not limited to such evidence Dakota claims is relevant to show course of dealing and/or custom and usage;

     e.     Depositions of any expert witnesses designated by Dakota Energy.

     f.     Discovery about the terms of becoming and terminating membership in East River.

Id. at pp. 2-3, ¶ 5.

Dakota Energy noticed the depositions of James Ryken, the Chairman of East River's Board of Directors, and Tom Boyko, whose position was not described by Dakota Energy in its pleadings.  See Docket No. 88-1 at pp. 2-5. The court assumes Mr. Boyko is either an officer or employee of East River.[1] During those depositions, East River's lawyer(s) prohibited inquiry into

---

[1] The parties do not state whether these depositions were pursuant to FED. R. CIV. P. 30(b)(6) or if the depositions were individually noticed.

3

Mr. Boyko's and Mr. Ryken's conversations with East River's attorney(s) about the interpretation of the WPC at issue between East River and Dakota Energy. In addition, Dakota Energy sought to inquire into whether East River had instigated a petition filed by members of Dakota Energy to attempt to force Dakota Energy to terminate this lawsuit. East River prohibited inquiry into that topic as beyond the scope of phase one discovery as set forth by the district court.

## DISCUSSION

### A.   Meet and Confer

A prerequisite to a motion to compel discovery is "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." <u>See</u> Fed. R. Civ. P. 37(a)(1). Likewise, the local rules in this district require a movant to attempt to informally resolve matters with his or her opponent before filing a discovery motion. <u>See</u> D.S.D. LR 37.1. East River half-heartedly, in a footnote, objects that Dakota Energy has not satisfied the meet-and-confer requirement. <u>See</u> Docket No. 88-2 at p. 2, n.1.

It is true Dakota Energy began the communication in high-handed fashion and not in particular good faith. Its counsel sent an email at 11:20 a.m. on Friday, October 1, 2021, demanding that he be allowed to re-depose Mr. Boyko and Mr. Ryken on the matters objected to. Docket No. 88-1 at p. 10. Dakota Energy stated that it would declare an impasse if East River did not capitulate to Dakota Energy's demands by 5 p.m. that day. <u>Id.</u>

If Dakota Energy had filed its motion to compel on October 1 the court would agree it had failed to satisfy the requirement of conferring with opposing counsel in good faith.  However, Dakota Energy did not file the instant motion October 1 and communication between the parties continued thereafter. Docket No. 88-1 at pp. 7-9.

On October 4, 2021, counsel for East River proposed that Dakota Energy provide him with the page and line number of the depositions of Mr. Boyko and Mr. Ryken about which Dakota Energy complained.  Docket No. 88-1 at pp. 7-8.  Counsel for Dakota Energy then provided East River's counsel with an advance copy of its motion to this court, including the deposition excerpts with highlighted page and line numbers of the testimony to which Dakota Energy objected.  Id. at p. 7.

Dakota Energy then waited two more days before filing the instant motion on October 6, 2021.  The court concludes Dakota Energy started off on the wrong foot, but ultimately did satisfy the requirement that it confer in good faith with East River before filing the instant motion.

B.      **Attorney-Client Privilege**

1.      **Deposition Testimony of James Ryken**

The discovery dispute over attorney-client privilege rests on the depositions of James Ryken and Tom Boyko.  Mr. Ryken testified in his deposition as to his understanding of the meaning of the WPC and the East River by-laws.  See Docket No. 881- at pp. 13-14 (Depo. Trans. of James Ryken at pp. 185-92).  Mr. Ryken was then asked by Dakota Energy's counsel what

5

his understanding was based on.  Id.  Mr. Ryken testified his understanding

was based on reading the words contained in the documents and also based on

the advice of his counsel.  Id.  Dakota Energy's counsel then demanded to

know what exactly counsel's advice was.  Id.  Dakota Energy did not obtain this

information.

Earlier in his deposition, Mr. Ryken was being questioned about a letter

sent by East River's board, signed by him, to Dakota Energy stating that the

WPC contract did not provide for a buy-out in order to terminate the contract

before the end of its scheduled duration.  Id. at pp. 20-21 (Ryken depo. at

pp. 105-12).  Dakota Energy asked Mr. Ryken what his letter was based on and

Mr. Ryken testified it was based on information discussed by East River's

board in executive session with its lawyer(s).  Id.

### 2.   Deposition Testimony of Tom Boyko

Another alleged dispute occurred during Tom Boyko's deposition when

Dakota Energy's counsel asked Mr. Boyko if he had made any notes to help

him testify in his deposition.  Id. at pp. 17.  Mr. Boyko responded that he had

made a couple of notes while his deposition was being taken.  Id.  Dakota

Energy demanded to know the content of the notes.  Id.  East River objected "to

the extent" it called for the disclosure of attorney-client privileged information,

but told Mr. Boyko he could otherwise answer the question.  Id.  Mr. Boyko

then described what his notes said.  Id.  This is a red herring.  Dakota Energy

got the discovery it wanted.  There is no dispute with regard to this portion of

Mr. Boyko's testimony.

Also in Mr. Boyko's deposition, he was asked by Dakota Energy "what would it cost to buy-out of the contract?" Id. at p. 24. Mr. Boyko responded that Dakota Energy was not allowed to buy-out its contract. Id. Dakota Energy asked Mr. Boyko what he relied upon in coming to that conclusion. Id. He stated he relied upon his own reading of the termination provisions which he believed indicated Dakota Energy must meet all its contract requirements. Id. In coming to that conclusion, Mr. Boyko testified he also relied on East River's counsel's advice and a resolution passed by Basin. Id. Dakota Energy was prevented from inquiring into what East River's own lawyers told him or what Basin's lawyers may have told him pursuant to a joint defense agreement. Id.

### 3.    The Law of Attorney-Client Privilege

The parties do not address whether state law or federal law applies to resolve the question of privilege in this case, but they cite to only federal decisions. The deposition questions posed which elicited the claim of privilege concern the interpretation of the contract, the WPC, between Dakota Energy and East River. See Docket No. 1-1 at pp. 31-39.

The WPC recites that Dakota Energy is a cooperative corporation organized and existing under the laws of South Dakota. Id. at p. 31. The WPC contains a choice-of-law provision designating South Dakota state law as the governing law of the contract. Id. at p. 38, ¶ 15. Federal Rule of Evidence 501 addresses the issue of privilege in federal court proceedings:

7

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> > --the United States Constitution;
> > --a federal statute; or
> > --rule prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

See FED. R. EVID. 501.  Here, South Dakota state law supplies the rule of decision as to interpretation of the WPC.  Docket No. 1-1 at p. 38, ¶ 15.  Because the subject matter Dakota Energy seeks to question the deponents about—the interpretation of the WPC--is governed by the law of the state of South Dakota, Rule 501 dictates that state law supplies the rule of privilege.

Under South Dakota law, a privileged communication has four elements: (1) it is confidential and (2) communicated for the purpose of rendering or receiving legal services to a (3) client who is (4) in one of five statutorily-enumerated relationships.  SDCL § 19-13-3.

A client may assert the attorney-client privilege in order to prevent disclosure of confidential communications made between the client and the client's attorney for the purpose of facilitating the rendition of professional legal services.  See SDCL § 19-13-3.  A client may waive the privilege if he voluntarily discloses or consents to disclose any significant part of the privileged matter.  State v. Catch the Bear, 352 N.W.2d 640, 647 (S.D. 1984).

The burden of establishing that a particular communication is protected by the attorney-client privilege rests with the party asserting the privilege.

8

State v. Rickabaugh, 361 N.W.2d 623, 624 (S.D. 1985). The burden of establishing waiver of the lawyer-client privilege is on the party asserting the waiver. Catch the Bear, 352 N.W.2d at 647. Once a communication is deemed to come within the attorney-client privilege, courts are loathe to invade that privilege. See 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2017, p. 258 (2d ed. 1994) ("Once communications are deemed to fall within the attorney-client privilege, those communications are 'zealously protected,' ").

Neither party here seriously disputes that the discovery Dakota Energy seeks is protected by the attorney-client privilege. Although the parties do not clearly explain themselves, the court gathers that East River's board met in executive session with its lawyer(s) and the board and the lawyer(s) discussed the interpretation of the WPC as well as East River's by-laws. Clearly, then, an attorney-client relationship existed. By holding the meeting in executive session the board took reasonable steps to ensure the confidentiality of the communications that occurred. East River's board and their lawyer(s) made disclosures in the reasonable belief they would (respectively) receive and render legal advice, which in fact occurred.

The court holds East River has carried its burden to show that the discovery sought is protected by the attorney-client privilege. The question, then, turns on whether East River waived that privilege. It is Dakota Energy's burden to establish a waiver. Catch the Bear, 352 N.W.2d at 647.

In <u>Nylen v. Nylen</u>, 873 N.W.2d 76, 77-78 (S.D. 2015), Mary Ellen Nylen shared oral communications and documents that were privileged communications between she and her lawyers with Irene Schrunk, who was a lawyer, a friend, and who had previously represented Mary Ellen.  On January 1, 2014, Mary Ellen's husband served her with a complaint seeking a divorce. <u>Id.</u>  Shrunk told Mary Ellen at that time that she could not represent Mary Ellen.  <u>Id.</u>

Later, during related litigation brought by Mary Ellen's children against Mary Ellen, the children attempted to obtain discovery of the communications between Mary Ellen and Schrunk.  <u>Id.</u> at 78.  Mary Ellen resisted the discovery, asserting attorney-client privilege.  <u>Id.</u>

The circuit court ruled that information shared between Schrunk and Mary Ellen prior to January 1, 2014, were privileged because Mary Ellen could reasonably have expected to receive legal advice from Schrunk about the topics they discussed.  <u>Id.</u>  The documents and information Mary Ellen shared with Schrunk after Schrunk explicitly told Mary Ellen she was not representing her on January 1, 2014, were not protected.  As to the attorney-client privileged documents from her litigation lawyers which Mary Ellen shared with Schrunk in 2014, the court held Mary Ellen had waived the attorney-client privilege as to those documents by sharing them with Schrunk.  <u>Id.</u>  The South Dakota Supreme Court affirmed in all respects.  <u>Id.</u> at 81.

Here, Dakota Energy cites only one case in support of its position that it is entitled to the discovery on the basis of waiver:  <u>Fort James Corp. v. Solo</u>

10

Cup Co., 412 F.3d 1340 1349 (Fed. Cir. 2005).  That case is inapposite.  In

Fort James, Fort James had concededly waived attorney-client privilege by

producing document JR0028487 in discovery in two separate lawsuits.  Id. at

1343-44.  The question before the court was whether document 99 was within

the scope of the waiver created by Fort James' voluntary disclosure of

document JR0028486.  Id. at 1349-50.  Here, Dakota Energy has not shown

that East River has voluntarily disclosed either the substance of its attorney's

advice or any document reflecting that advice.  The question is not the scope of

the waiver, but whether any waiver at all has occurred.

The court notes East River has not asserted its attorney's advice as an

affirmative defense in its answer. Docket No. 10 at pp. 9-10 (East River's

answer).  Nor has East River disclosed documents revealing its attorney's

advice.  Nor has any witness testified in his or her deposition describing the

attorney's confidential communication to East River.  In short, there has been

no waiver.  Dakota Energy has failed to carry its burden.

Sometimes there is an implied or constructive waiver of the attorney-

client privilege when a client places the subject matter of the privileged

communication at issue, such as when advice of counsel is asserted as an

affirmative defense or when a client brings a claim of legal malpractice or

ineffective assistance of counsel against their former lawyer.  Baker v. Gen.

Motors Corp., 209 F.3d 1051, 1055 (8th Cir. 2000); Hollins v. Powell, 773 F.2d

191, 196 (8th Cir. 1985);  Sedco Intern, S.A. v. Cory, 683 F.2d 1201,  1206 (8th

Cir. 1982 (unpub'd); Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974).

Again, though, East River has done neither in this case.  The court denies Dakota Energy's motion to compel as to communications between East River and its lawyers during executive session of the board of directors.

**C.     Inquiry Into Circumstances Surrounding the Petition**

At some point after this litigation began, some members of Dakota Energy signed a petition and presented it to Dakota Energy's board asking that this litigation be dismissed.  Dakota Energy believes East River instigated this petition and supported the petitioners financially and otherwise in a subversive attempt to interfere with Dakota Energy's business, allegedly in contravention of South Dakota law.

Dakota Energy's complaint in this matter does not plead a claim for tortious interference with its corporate governance.  See Docket No. 1-1 at pp. 2-12.  The district court's order establishing the boundaries for phase one discovery encompass only the negotiation, execution and interpretation of the WPC.  Docket No. 57 at pp. 2-3, ¶ 5.  Whether East River instigated some members of Dakota Energy to draft, sign and present the petition to Dakota Energy is simply not relevant to those issues which the district court permitted during phase one of the discovery in this matter.  The court accordingly denies Dakota Energy's motion to compel East River to allow discovery into this topic.

## CONCLUSION

Based on the foregoing law, facts and analysis, the court denies in its entirety Dakota Energy's motion to compel [Docket No. 88] in accordance with this opinion.

12

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED October 12, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge