# EXHIBIT A

```
                                                                      1

 1                  IN THE UNITED STATES DISTRICT COURT
                         DISTRICT OF SOUTH DAKOTA
 2                          SOUTHERN DIVISION

 3                                        Case 4:20-cv-04192-LLP

 4     DAKOTA ENERGY COOPERATIVE, INC.,           )
                                                  )
 5                  Plaintiff/                    )
                    Counter-Claim Defendant,      )
 6                                                )
              v.                                  )
 7                                                )
       EAST RIVER ELECTRIC POWER                  )
 8     COOPERATIVE, INC.,                         )
                                                  )
 9                  Defendant/                    )
                    Counter-Claim Plaintiff/      )
10                  Cross-Claim Defendant,        )
                                                  )
11              and                               )
                                                  )
12     BASIN ELECTRIC POWER COOPERATIVE,          )
                                                  )
13                  Intervenor-Defendant/         )
                    Counter-Claim Plaintiff/      )
14     _____Cross-Claim Plaintiff._____ )

15

16                          VIDEOCONFERENCE

17                            DEPOSITION

18                                OF

19                          **DAVID RAATZ**,

20       **on behalf of BASIN ELECTRIC POWER COOPERATIVE**

21                       September 23, 2021

22                            9:12 a.m.

23
       LOCATION:
24       All parties appearing via Zoom.

25     REPORTER:   CAROLYN TAYLOR PEKAS, RPR
```

Page 74

1  Energy's request to withdraw from East River?
2       MR. ORR:  Object to form.
3       MR. DIRENFELD:  Same objection.
4   A.  I'd have to go back in to review the
5  resolutions.
6   Q.  (BY MR. JASILLI)  Is there any board
7  resolution that Basin contends governs East River's
8  response to Dakota Energy's request to buy out of its
9  wholesale power contract with East River?
10      MR. DIRENFELD:  Object to form.
11      MR. ORR:  Object to form.
12  A.  I believe there are -- there's at least one
13 board resolution that pertains to a member exiting
14 and -- you know, from membership, and providing
15 buyout numbers.
16  Q.  (BY MR. JASILLI)  Have you ever seen that
17 resolution?
18  A.  Yes, I have.
19  Q.  When did you see it?
20  A.  When it was being developed and in
21 preparation for discussions today.
22  Q.  Do you recall any specifics about that
23 resolution?
24      MR. DIRENFELD:  And I'm just going to -- on
25 this note, referring to the, at least, portion where

Page 75

1  he talks -- Dave was referring to the development of
2  the resolution, I'll counsel him not to reveal any
3  conversations with legal counsel or conversations
4  that may have occurred in executive session of the
5  board with legal counsel.
6   A.  So the resolution basically said with the
7  advice of legal counsel, the board did not feel it's
8  appropriate to provide a buyout number, in essence.
9   Q.  (BY MR. JASILLI)  Is it Basin's position
10 that that resolution is binding on East River?
11      MR. DIRENFELD:  Object to form.
12      MR. ORR:  Object to form.
13  A.  I believe that resolution is referencing
14 what the board believes is an appropriate
15 interpretation of some of the all-requirements
16 arrangements between the parties.
17  Q.  (BY MR. JASILLI)  Can you go to Tab 14,
18 please?
19      MR. JASILLI:  And I'm going to mark this as
20 Exhibit 3.
21      (Deposition Exhibit Number 3 marked for
22 identification.)
23  Q.  (BY MR. JASILLI)  Mr. Raatz, do you
24 recognize this document?
25  A.  Yes, I do.

Page 76

1   Q.  What is this document?
2   A.  It's the -- a board resolution outlining --
3  where the board indicates the board has considered
4  the request of a Class A member and the advice of
5  counsel and concluded that it is not in the best
6  interests of the cooperative or the membership to
7  allow any buyout of the all-requirements contracts
8  with the cooperative or any of the Class A members.
9   Q.  Is it Basin's position that this board
10 resolution creates any obligations for its Class A
11 members?
12      MR. DIRENFELD:  Object to form.
13  A.  I think this resolution, as it states in the
14 third whereas clause of the resolution, where it
15 indicates, basically, the all-requirements contracts
16 between both the Class A members of the cooperative
17 and the Class C members of the Class A members do not
18 contain any provisions permitting the member to buy
19 out of the all-requirements contract, that the
20 cooperative or the Class A member is applicable.
21  Q.  (BY MR. JASILLI)  So is this resolution
22 directing Class A members not to allow buyouts of the
23 all-requirements contracts?
24  A.  I think it's reflecting the terms of the
25 existing contracts and a reiteration of what those

Page 77

1  terms are.
2   Q.  So this is Basin telling its Class A members
3  what their wholesale power contracts mean with their
4  Class C members; right?
5   A.  Basin's interpretation of what those
6  contracts say.
7   Q.  And Basin is telling its Class A members
8  that their wholesale power contracts do not allow
9  buyouts; is that right?
10      MR. DIRENFELD:  Object to form.
11  A.  I think it's laying out what Basin's
12 interpretation is, and it's providing that
13 interpretation to its members, where they have
14 directed the CEO to furnish a copy of the resolution
15 to the Class A members of the cooperative who are
16 making the statement that this is our interpretation.
17  Q.  (BY MR. JASILLI)  And Basin's interpretation
18 of the Class A members' wholesale power contracts is
19 that they do not allow buyouts; right?
20  A.  Uh-huh.
21  Q.  Is that --
22  A.  Yes, that's what it says.
23  Q.  And is Basin directing its Class A members
24 to follow Basin's interpretation of those contracts?
25      MR. DIRENFELD:  Object to form.

86

1  talking objections, please.
2       MR. DIRENFELD:  Yeah.  I'm instructing the
3  witness not to answer, so we'll move on.  I've made
4  an instruction.
5    Q.   (BY MR. JASILLI)  So is there any factual
6  basis for the interpretation that isn't privileged?
7       MR. DIRENFELD:  I don't quite understand
8  what you mean by "factual basis."
9    Q.   (BY MR. JASILLI)  Is there a factual basis
10  for the interpretation that East -- of the wholesale
11  power contracts that East River put in this
12  resolution?
13    A.   The factual basis is the words of the
14  all-requirements contract, the words of the bylaws.
15  That's the factual information, the contracts and the
16  bylaws.
17    Q.   So what Basin did here was take its
18  counsel's interpretation of those words and put them
19  in this resolution; right?
20       MR. DIRENFELD:  Objection.  I'm going to
21  instruct the witness not to answer because you --
22  based on privileged communications.
23       MR. JASILLI:  Mr. Direnfeld, if Basin put
24  the advice of its counsel directly in a resolution
25  that it admits it expected to be widely distributed

87

1  amongst its membership, that advice is not
2  privileged.  They have waived that privilege.
3       MR. DIRENFELD:  We have not waived that
4  privilege.  I'm instructing the witness not to
5  answer.  Move on.
6       MR. JASILLI:  You're instructing the witness
7  not to answer if the statement in this resolution is
8  the advice of its counsel?
9       MR. DIRENFELD:  Yes.
10       MR. JASILLI:  If the statement is the advice
11  of counsel, then the privilege was waived.  You have
12  to let your witness answer whether or not this
13  statement is the advice of counsel.
14       MR. DIRENFELD:  I do not have to.  I'm
15  instructing him.  We can move on.  I've made my
16  instruction.
17       MR. JASILLI:  All right.  Well, I'm going to
18  reserve on that topic as I have said the record
19  indicates that Basin placed the advice of counsel
20  directly into this resolution, and it is Dakota
21  Energy's position that it would like to reserve the
22  ability to raise that waiver of privilege with the
23  Court at a later time.
24       MR. DIRENFELD:  Yeah, and I will state for
25  the record that the witness did not say that he put

88

1  the advice of counsel into the resolution.  The
2  resolution speaks for itself.
3       I'll also note that the witness was not
4  designated and we objected to talking about the
5  interpretation of the agreements.  The witness gave
6  you the factual basis, and we've objected and made an
7  instruction on privilege, and we can now move on.
8    Q.   (BY MR. JASILLI)  In the next whereas, it
9  says, "As a result, neither the cooperative nor any
10  Class A member has any obligation to develop,
11  calculate, or furnish any information required in
12  connection with the buyout or otherwise permit any
13  such member to buy out of its all-requirements
14  contract."  Do you see that?
15    A.   Yes, I do.
16    Q.   What is Basin's basis for that statement?
17       MR. DIRENFELD:  Again, the witness can speak
18  to any factual basis, but do not -- do not -- do not
19  reveal any privileged communications.
20    A.   I guess it's the -- Basin's opinion that the
21  all-requirements contract be read in conjunction with
22  the bylaws does not provide -- or has provisions for
23  the withdrawal of membership, and you -- it's the
24  board's interpretation or opinion that that cannot
25  be -- a termination of the all-requirements contract

89

1  is not provided for until the expiration of its
2  contract.
3    Q.   (BY MR. JASILLI)  When you said that it's
4  the board's opinion, who specifically on the board
5  came up with that opinion?
6    A.   It's the board in its whole.  It's the
7  board's opinion, the board's resolution.
8    Q.   And how did the board reach that opinion as
9  a whole?
10       MR. DIRENFELD:  Objection.  I'll instruct
11  the witness not to answer to the extent it reveals
12  any privileged communications with counsel.
13    A.   Again, it was discussed in executive session
14  and under attorney-client privilege.
15    Q.   (BY MR. JASILLI)  Did the board adopt the
16  opinion or the advice of its counsel?
17       MR. DIRENFELD:  Objection.  Again, I'm going
18  to instruct the witness not to answer -- to reveal
19  attorney-client privilege of conversations that
20  occurred with attorneys in executive session.  The
21  resolution speaks for itself.
22    Q.   (BY MR. JASILLI)  I'm just going to ask you
23  point-blank, Mr. Raatz:  Is this resolution -- are
24  the words in this resolution the advice of Basin's
25  counsel?

90

1  MR. DIRENFELD: Objection. I'm going to
2  instruct the witness not to answer again,
3  Mr. Jasilli. Same -- same instruction. You're
4  trying to get into privileged conversations.
5  MR. JASILLI: I'm going to make the same
6  reservation that I made previously, which is that if
7  Basin placed the advice of its counsel directly into
8  a document that it then shared with all of its
9  Class A members and presumed would be shared with all
10 of its Class C members, then the privilege is waived.
11 MR. DIRENFELD: We disagree --
12 MR. JASILLI: We reserve the right to raise
13 that issue with the Court.
14 MR. DIRENFELD: We disagree with that
15 position, and we're happy to go ahead and raise it
16 with the Court. You can move on.
17 Q. (BY MR. JASILLI) So other than the words of
18 the bylaws and the wholesale power contracts, is
19 there any basis for the opinions in this resolution
20 other than advice of counsel?
21 A. All those issues were discussed in executive
22 session and under attorney-client privilege.
23 MR. DIRENFELD: I'll make my same
24 instruction.
25 MR. JASILLI: And I'll make the same

91

1  reservation.
2  MR. DIRENFELD: Yeah.
3  Q. (BY MR. JASILLI) Was the board's reasoning
4  for the opinions contained in this resolution ever
5  shared with Basin's Class A members?
6  MR. DIRENFELD: Objection. I'll also --
7  objection to the extent that any -- any materials
8  were exchanged under joint defense agreements.
9  MR. ORR: Same objection.
10 A. I believe the -- the basis for the
11 conclusions is in the all-requirements -- in the
12 words of the all-requirements contract and the
13 bylaws, and I do believe there have been discussions
14 with members on the words in those contracts.
15 Q. (BY MR. JASILLI) Did you ever discuss --
16 let me rephrase that.
17 Did Basin ever discuss with any Class A
18 member the specific advice from its counsel regarding
19 the meaning of those words in the bylaws and
20 wholesale power contracts?
21 MR. DIRENFELD: Same objection to the extent
22 that those conversations occurred pursuant to joint
23 defense agreements.
24 MR. ORR: Yes, I'll concur in that
25 objection. To the extent any of those

92

1  communications, which were privileged, occurred in
2  the context of a joint defense agreement, that joint
3  defense agreement protects those privileges, and the
4  witness should not testify about those
5  communications.
6  MR. DIRENFELD: I echo Mr. Orr's statement
7  there.
8  A. Those discussions did happen with legal
9  counsel present.
10 Q. (BY MR. JASILLI) Which legal counsel?
11 MR. DIRENFELD: I'm going to -- at this
12 point, now, I will object and instruct the witness
13 not to answer. The witness has stated that they've
14 taken place pursuant to joint defense agreements.
15 MR. JASILLI: You're instructing your
16 witness not to answer which counsel were present
17 during the discussions?
18 MR. DIRENFELD: I will allow the witness to
19 answer only to the extent of identifying which
20 counsel was present, similar to a privilege log.
21 So you may answer -- you may answer, Dave,
22 who was present.
23 A. Bob Sahr and Mark Foss.
24 Q. (BY MR. JASILLI) Was there any counsel
25 present for any of the Class A members?

93

1  MR. ORR: Just a clarification. Bob Sahr is
2  counsel for East River, which is a Class A member.
3  A. I'm not aware of a general discussion with
4  the entire membership. It was more one-on-one.
5  Q. (BY MR. JASILLI) So which members did Basin
6  have one-on-one conversations with?
7  MR. DIRENFELD: Objection. Again, beyond
8  the scope of identifying who, I'm going to instruct
9  the witness not to answer about any -- any details
10 the conversations covered under a joint defense
11 agreement relating to privileged communications.
12 THE WITNESS: So I'm supposed to answer the
13 question?
14 MR. DIRENFELD: Dave, you can answer who.
15 Do not reveal the contents of any conversations.
16 THE WITNESS: Okay.
17 A. With East River and Upper Missouri
18 specifically.
19 Q. (BY MR. JASILLI) So Basin did not have
20 discussions about the underlying reasoning for the
21 opinions in the resolution with any of its members
22 other than Upper Missouri and East River?
23 A. Not that I participated in.
24 Q. What about conversations that you didn't
25 participate in?

**EXHIBIT 3**

WHEREAS, one of the Cooperative's Class A Members has received requests from two of the Cooperative's Class C Members for a price for those Class C Members to buy out of their all-requirements contracts with the Class A Member;

WHEREAS, the Cooperative also has received a request from one of its Class A Members for the process and parameters to calculate a price if that Class A Member was to buy out of its all-requirements contract with the Cooperative;

WHEREAS, the Cooperative has been advised by both its General Counsel and its outside counsel, Orrick, Herrington & Sutcliffe LLP, that the all-requirements contracts of both the Class A Members with the Cooperative and the Class C Members with the Class A Members do not contain any provision permitting the member to buy-out of its all-requirements contract with the Cooperative or the Class A Member, as applicable;

WHEREAS, as a result, neither the Cooperative nor any Class A Member has any obligation to develop, calculate or furnish any information required in connection with a buy out or otherwise permit any such member to buy-out of its all-requirements contract; and

WHEREAS, the Board of Directors has considered the request of the Class A Member and the advice of counsel and concluded that it is not in the best interests of the Cooperative or its membership to allow any buy out of any all-requirements contracts with the Cooperative or any of its Class A Members;

NOW, THEREFORE, BE IT RESOLVED, that the General Manager and CEO is hereby authorized and directed to furnish a copy of this resolution to all Class A Members of the Cooperative.

4140-3169-5130.1